IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BO SHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS AND PAR CHADHA,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§  Civil Action No. 3:20-cv-00691-D<br>§<br>§<br>§<br>§<br>§<br>§ |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

ARGUMENT AND AUTHORITIES.................................................................................... 1

I.     DEFENDANTS APPROPRIATELY DISCLOSED THE DELAWARE SUIT ............... 1

II.    THE "VISIBILITY" DISCLOSURES AND PROJECTIONS WERE NOT
REMOTELY FRAUDULENT ................................................................................... 6

III.   THE "ADJUSTED EBITDA" DISCLOSURES WERE NOT FRAUDULENT .............. 8

IV.   PLAINTIFFS' JUDICIAL NOTICE MOTION IS IMPROPER...................................... 9

CONCLUSION AND PRAYER FOR RELIEF ........................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Alamosa Holdings, Inc.*,
   382 F. Supp. 2d 832 (N.D. Tex. 2005) ....................................................................................3

*In re AOL Inc.*,
   2018 WL 1037450 (Del. Ch. Feb. 23, 2018) .......................................................................4, 5

*U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*,
   668 F. Supp. 2d 780 (E.D. La. 2009) ....................................................................................10

*DSAM Global Value Fund v. Altris Software, Inc.*,
   288 F.3d 385 (9th Cir. 2002) ..................................................................................................6

*Employees' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*,
   935 F.3d 424 (5th Cir. 2019) ..................................................................................................7

*Gamboa v. Citizens, Inc.*,
   2018 WL 2107205 (W.D. Tex. May 7, 2018) ........................................................................2

*Gillis v. QRX Pharma Ltd.*,
   197 F. Supp. 3d 557 (S.D.N.Y. 2016).....................................................................................7

*Goldstein v. MCI Worldcom*,
   340 F.3d 238 (5th Cir. 2003) ..................................................................................................6

*Halbert v. Credit Suisse AG*,
   402 F. Supp. 3d 1288 (N.D. Ala. 2019) ..................................................................................3

*Heinze v. Tesco Corp.*,
   971 F.3d 475 (5th Cir. 2020) ..................................................................................................1

*Ho v. Flotek*,
   248 F. Supp. 3d 847 (S.D. Tex. 2017), *aff'd*, 915 F.3d 975 (5th Cir. 2019) ...........................2

*Ironworkers Local 580 – Joint Funds v. Linn Energy, LLC*,
   29 F. Supp. 3d 400 (S.D.N.Y. 2014).......................................................................................8

*Kakkar v. Bellicum Pharms., Inc.*,
   2020 WL 2845279 (S.D. Tex. May 29, 2020).....................................................................1, 3

*Local 731 I.B. of T. Excavators and Pavers Pens. Fund v. Diodes, Inc.*,
   810 F.3d 951 (5th Cir. 2016) ..................................................................................................7

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
   277 F. Supp. 3d 500 (S.D.N.Y. 2017).....................................................................................4

*Miller v. Cadence Bancorporation*,
  2020 WL 4581736 (S.D. Tex. Aug. 7, 2020) ..................................................................1

*N. Collier Fire Control and Rescue Dist. Firefighter Pens. Plan v. MDC Partners, Inc.*,
  2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016)................................................................8

*Neiman v. Bulmahn*,
  854 F.3d 741 (5th Cir. 2017) ..........................................................................................7

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) .................................................................................2, 3, 4

*Phillips v. Harvest Nat. Res, Inc.*,
  2016 WL 4523849 (S.D. Tex. Aug. 25, 2016) ...............................................................5

*Pinson v. Santana*,
  2015 WL 1000914 (N.D. Tex. Mar. 6, 2015) (Fitzwater, J.)........................................10

*Richman v. Goldman Sachs Group, Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012)........................................................................2, 5

*SEC v. SafeNet, Inc. et al.*,
  No. 09-2117 (D.D.C. Nov. 12, 2009) .............................................................................9

*Silsby v. Icahn*,
  17 F. Supp. 3d 348 (S.D.N.Y. 2014)..............................................................................2

*Tran v. Beyond Meat, Inc.*,
  No. CV20-963-MWF, 2020 WL 6826476 (C.D. Cal. Oct. 8, 2020) ..............................2

*Veal v. LendingClub Corp.*,
  423 F. Supp. 3d 785 (N.D. Cal. 2019) ...........................................................................2

*Wyche v. Advanced Drainage Sys., Inc.*,
  No. 15 Civ. 5955 (KPF), 2017 WL 971805 (S.D.N.Y. Mar. 10, 2017) .........................4

*Yates v. Mun. Mortg. & Equity, LLC*,
  744 F.3d 874 (4th Cir. 2014) ......................................................................................3, 4

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ..........................................................................................3

**Rules and Statutes**

15 U.S.C. § 78u-4(b)(1) and (2)............................................................................................10

Fed. R. Civ. P. 9(b) ................................................................................................................3

## INTRODUCTION

Plaintiffs' Opposition identifies no specific allegations supporting a strong inference that Defendants knew Exela's auditor-approved financial statements were in any way improper, let alone that Exela's disclosure of the Delaware litigation was so blatantly and indisputably misleading as to support a strong, cogent, and compelling inference of fraud. Exela specifically identified the appraisal litigation – which is a matter of public record – and warned investors that Exela could not assure a positive outcome. There is nothing remotely fraudulent about Exela's cautious statements. Plaintiffs likewise identify no particularized facts showing that Exela's forward-looking guidance was knowingly false, or that the "visibility" statements were fraudulent. The Opposition also ignores Defendants' specific disclosures identifying what charges were added to EBITDA and making clear that Exela would continue to incur these types of expenses in subsequent quarters. The Complaint should thus be dismissed, with no further amendment.[1]

## ARGUMENT AND AUTHORITIES

### I. DEFENDANTS APPROPRIATELY DISCLOSED THE DELAWARE SUIT

The Opposition identifies no particularized facts showing that Defendants' litigation disclosures were misleading (let alone so blatantly and inarguably deficient as to support a strong

---

[1] Courts routinely deny leave to amend when, as here, the initial amended complaint after the appointment of lead plaintiffs does not satisfy the PSLRA's requirements and the plaintiff makes a bare "nested" request to amend at the end of their opposition brief without identifying any additional factual allegations that would salvage the complaint. *See, e.g., Kakkar v. Bellicum Pharms., Inc.*, 2020 WL 2845279, at *5 (S.D. Tex. May 29, 2020) (denying similar "nested" request to amend initial amended complaint in footnote at end of response); *Heinze v. Tesco Corp.*, 971 F.3d 475, 485 (5th Cir. 2020) (affirming denial of leave to amend initial amended complaint where securities plaintiff "already had one opportunity to amend" and "has not identified how amendment would cure the defects . . . ."); *Miller v. Cadence Bancorporation*, 2020 WL 4581736, at *5 (S.D. Tex. Aug. 7, 2020) (dismissing initial amended complaint with prejudice).

inference of fraud[2]) or that the restatement was the product of fraud. Courts routinely reject allegations that standard litigation disclosures like those made by Exela here are actionable or fraudulent.[3] As in *Tran* (where, unlike here, the company made affirmative statements that it believed it would prevail in the litigation), Exela's cautious litigation disclosures identified the appraisal case (which is a matter of public record) and warned investors that Exela could not assure against an adverse outcome.[4] These disclosures weigh heavily against any inference of fraud.[5]

The Opposition is also incorrect in asserting that Exela was required to forecast a $29 million (or greater) liability based on the testimony of Exela's expert in the appraisal matter. (*See* Opp. at 3.) The Complaint itself does not contain specific allegations regarding the calculation of Exela's appraisal expert, other than a bare allegation that "Exela 'disagreed with its own expert

---

[2] *See Ho v. Flotek*, 248 F. Supp. 3d 847, 857 (S.D. Tex. 2017) ("Even if Flotek could have provided clearer disclosures . . . Flotek's actual disclosures are not so blatantly misleading as to be severely reckless"), *aff'd*, 915 F.3d 975 (5th Cir. 2019); *Gamboa v. Citizens, Inc.*, 2018 WL 2107205, at *3 (W.D. Tex. May 7, 2018) (plaintiff "must show more than that it is debatable whether the disclosures were adequate"); *see also* ECF #28, Defendants' Motion to Dismiss ("MTD") at 17 n. 36 (collecting numerous other cases for same proposition).

[3] *See* MTD at 18 n. 38 (collecting numerous cases rejecting fraud claims over litigation disclosures); *Tran v. Beyond Meat, Inc.*, No. CV20-963-MWF, 2020 WL 6826476, at *9-10 (C.D. Cal. Oct. 8, 2020) (rejecting claim over more optimistic litigation disclosure stating belief that company would prevail; disclosure stated company could not assure against adverse judgment).

[4] *See Tran*, 2020 WL 6826476, at *9-10; *see also Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 809 (N.D. Cal. 2019) (rejecting claim where company disclosed FTC investigation).

[5] *See Owens v. Jastrow*, 789 F.3d 529, 540-41 (5th Cir. 2015) (noting that while plaintiffs disputed the sufficiency of defendant's disclosures of alleged "red flags," the fact that the red flags were "disclosed to the public . . . negates the inference that defendants acted with scienter"); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 369-70 (S.D.N.Y. 2014) (holding that company's disclosures regarding litigation risks "weigh heavily against scienter"); *Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261, 274-76 (S.D.N.Y. 2012) (observing that defendants provided at least "some notice about ongoing governmental investigations" and rejecting fraud claim over failure to disclose Wells notice given lack of an "obvious duty to disclose" the notice); *Schiller v. Phys. Res. Grp.*, 2002 WL 318441, at *14 (N.D. Tex. Feb. 26, 2002) (rejecting fraud claim where company publicly disclosed arbitration proceeding against seller of allegedly overvalued assets, which undercut inference that company acted fraudulently by not immediately writing off the assets).

over which revenue projections to use in the DCF analysis and ultimately separated from its expert with respect to SourceHOV's fair value.'"[6] Nor does the Complaint specifically plead the "unable to predict" disclosure as an alleged misstatement. Plaintiffs must identify specific alleged misstatements and plead scienter "with particularity" *in their Complaint*, and may not rest on unpled allegations in a response brief.[7] The Opposition cites no authority for Plaintiffs' apparent belief that everything in the public record may be treated as having been pled with particularity in the Complaint merely because it is purportedly "incorporated" or subject to judicial notice.[8]

Even if the Opposition's assertions are credited as having been pled, courts have routinely dismissed securities fraud complaints premised on allegations that employees, auditors or others disagreed with a company's estimates or accounting judgments.[9] Plaintiffs plead no facts

---

[6] *See* Compl. ¶ 78.

[7] *See In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832 (N.D. Tex. 2005) ("Plaintiffs cannot amend the Complaint by way of the Response [brief] to attempt to include" unpled allegations); *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1309 n. 6 (N.D. Ala. 2019) ("'[A] party may not insert new claims and allegations by way of a brief in opposition to a motion to dismiss' . . . . Moreover, under Rule 9(b) and [the] PSLRA, a plaintiff must identify each allegedly misleading or false statement in the complaint") (internal citation omitted).

[8] This theory doubles down on the improper tactic of "puzzle pleading" and is inconsistent with Rule 9(b) and the PSLRA, which require plaintiffs to "state" facts with particularity in the complaint, rather than forcing defendants to guess as to what facts in the public record or incorporated documents might purportedly support a claim. *See In re Alamosa Holdings*, 382 F. Supp. 2d at 857-58 (rejecting "puzzle pleading"); *Kakkar*, 2020 WL 2845279, at *4 n. 2 ("Plaintiff has failed to tie any of the purported allegations of scienter to any specific misstatement. . . .").

[9] *See Owens*, 789 F.3d at 542-43 (allegation that individual defendants were advised by confidential witness of deficiencies in pricing model and discussed potential writedowns did not support strong inference of fraud, as "[a]pplying GAAP often involves subjective determinations"); *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 893-94 (4th Cir. 2014) (fact that outside auditor had "recommended that the Company reconsider its LIHTC Fund accounting prior to the first restatement," and that "some officers may have believed that MuniMae's accounting was flawed by mid-2006," held insufficient to support strong inference of scienter; fact that other officers disagreed with auditor "makes it difficult" to infer fraudulent intent); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998-99 (9th Cir. 2009) (allegations "that there was some disagreement within the corporation over its accounting processes" and "disagreement and questioning within [Digimarc] about the [accounting numbers]" was insufficient to show

disputing that the valuation of SourceHOV's shares was an uncertain, subjective and complex undertaking,[10] nor do Plaintiffs dispute that Exela disagreed with the expert and vigorously advocated for a lower valuation during the appraisal action, which remains on appeal.[11] The fact that a company like SourceHOV experienced growth in prior years does not mean one can confidently project growth in future years for valuation purposes, particularly when, as Plaintiffs themselves allege, SourceHOV had since run aground and was "teetering on insolvency and close to tripping a debt covenant" before the merger.[12] Indeed, Plaintiffs allege that SourceHOV's past "growth" was the product of a debt-fueled "growth by merger" strategy, a difficult gameplan to sustain in future years when a company is facing insolvency and has more debt than its assets are worth.[13] Plaintiffs allege no specific facts regarding the basis for estimating future organic growth in the absence of additional debt-funded acquisitions.[14] The strongest inference by far from Plaintiffs' own allegations is that Exela had a colorable basis for genuinely believing SourceHOV

---

fraud); *Wyche v. Advanced Drainage Sys., Inc.*, No. 15 Civ. 5955 (KPF), 2017 WL 971805, at *15 (S.D.N.Y. Mar. 10, 2017) (allegation that "the Individual Defendants and a handful of their employees disagreed about the adequacy of the Company's accounting" did not show scienter); *In re I.C.H. Corp.*, No. 397CV2385–G, 1998 WL 386165, at *5 (N.D. Tex. July 8, 1998) (holding that company's disagreement with its auditor regarding accounting issue did not establish scienter).

[10] *See Owens*, 789 F.3d at 541 (noting that "the valuation" at issue "involved subjective accounting concepts"); *In re AOL Inc.*, 2018 WL 1037450, at *8 (Del. Ch. Feb. 23, 2018) (emphasizing that Delaware courts must take into account the "operative realty of the company" and consider "all relevant factors" in deciding fair value for appraisal cases; and that appraisal is a "flexible process" often involving "widely divergent views" by experts with "no perfect methodology for arriving at fair value for a given set of facts") (internal citations omitted); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, (S.D.N.Y. 2017) (rejecting claim in part because loss contingency disclosure rule is "qualitative" and "requires many judgment calls").

[11] *See Yates*, 744 F.3d 874, 893-94 (fact that other officers disagreed with auditor and supported company's accounting decision "makes it difficult" to infer fraudulent intent).

[12] *See* Compl. ¶¶ 49-51; 56, 67.

[13] *See id.* ¶¶ 49-51.

[14] *See id.* ¶ 51 (alleging that SourceHOV's debt exceeded the value of its assets).

was worth little and would be found to be worth less than the merger price.[15] To the extent Plaintiffs are trying to claim that Exela misstated the likelihood of a future adverse outcome in the litigation, such a statement is also forward-looking and is protected by the PSLRA safe harbor.[16]

Further, as previously stated, there are no particularized allegations about the specifics of the underlying accounting rules that led to the restatement, let alone particularized facts showing that Exela misled its auditor or otherwise violated an accounting or disclosure rule that was so "obvious" as to support a strong inference of fraud.[17] There are likewise no particularized allegations that Exela actually relied at trial on the so-called "backdated valuation" produced in discovery (which, again, Exela disputes was improperly characterized as "backdated"), or that Exela otherwise made specific misstatements to investors about this issue. The fact that Exela's outside auditor approved the financial disclosure at issue likewise weighs against inferring fraud.[18]

In sum, Exela made clear to investors that it was involved in a hotly contested appraisal case involving a major shareholder. Exela publicly identified the case and refrained from making strident predictions of victory. Even facts supporting a strong inference that the disclosures were grossly mismanaged or grossly negligent – which the Complaint comes nowhere close to pleading

---

[15] *See, e.g., In re AOL Inc.*, 2018 WL 1037450, at *8 (emphasizing that appraisal court must take into account the "operative realty of the company" and consider "all relevant factors").

[16] *See* MTD at 22 & n. 47.

[17] *See Richman*, 868 F. Supp. 2d at 274-76 (no scienter where disclosure duty not "obvious").

[18] *See Phillips v. Harvest Nat. Res, Inc.*, 2016 WL 4523849, at *3 (S.D. Tex. Aug. 25, 2016) (that "major accounting firm approved the filings" weighs against fraud). Plaintiffs try to distinguish *Phillips* by contending that Defendant Chadha "concealed" from the auditors his belief that "SourceHOV's equity was essentially worthless. . . ." (*See* Opp. at 11.) But such a belief is entirely ***consistent*** with the decision not to accrue a litigation loss for accounting purposes, and thus does not show the auditor was misled.

– are insufficient to survive dismissal. [19] The allegations fall far short of this circuit's appropriately difficult requirements for pleading securities fraud claims based on accounting restatements.

## II. THE "VISIBILITY" DISCLOSURES AND PROJECTIONS WERE NOT REMOTELY FRAUDULENT

The Opposition likewise fails to explain how Exela's forward-looking guidance and statements about revenue "visibility" were untrue when made, let alone so beyond-the-pale misleading as to be fraudulent. As previously stated, Exela achieved (indeed, exceeded) its 2018 revenue guidance and made prompt revisions to its guidance estimates during 2019 as facts on the ground evolved. (*See* MTD at 8.) The Opposition does not appear to dispute that the guidance itself is protected by the PSLRA safe harbor for forward-looking statements, nor do Plaintiffs identify any particularized facts showing that the guidance was knowingly false.

The "visibility" statements were similarly non-fraudulent. Plaintiffs focus on the words "as we've discussed historically" in the "90% visibility" disclosure (*see* Opp. at 12), but gloss over the word "typically," which again makes clear that this statement was based on what visibility the company has seen ***historically***. Plaintiffs fail to plead any facts showing that Exela had not "typically" seen 90% visibility up to that point. "Typically" does not mean "always," nor is it a guarantee that Exela will actually have 90% visibility on future revenue. "90%" likewise does not mean "100%." Further, Exela did not "admit" that 100% of pass-through postal revenue was completely unpredictable. As previously stated, Exela's actual results were well within 90% of

---

[19] *See Goldstein v. MCI Worldcom*, 340 F.3d 238, 253-54 (5th Cir. 2003) ("gross mismanagement" of accounting compliance leading to large financial restatement fails to demonstrate strong inference of scienter); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002) ("Negligence, even gross negligence, does not rise to the level of the nefarious mental state necessary to constitute securities fraud").

Exela's original projections and were fully consistent with a company that drew the vast majority of its revenue from predictable long-term contracts. Exela did not defraud anyone.

To the extent Plaintiffs are contending that Exela was making an assurance as to its ability to predict the future, any such assurance would also be protected by the PSLRA safe harbor, which Plaintiffs again have not overcome. Plaintiffs assert that Exela's statements were "devoid of cautionary language" (Opp. at 12), while wholly ignoring the numerous cautionary statements cited on pages 11-14 of Defendants' MTD. The allegations likewise fail to show that Defendants had actual knowledge of falsity regarding any forward-looking statement. (*See* MTD at 22-23.)

Plaintiffs also groundlessly assert that Defendants had "even more motive" to overstate the "predictability" of postage revenue because it supposedly affected liquidity. (*See* Opp. at 17.) The Opposition does not dispute that postage revenue was simply a pass-through reimbursement of postage expenses incurred by Exela. (*See* MTD at 10.) By definition, a pass-through has no net liquidity impact. The fact that Plaintiffs feel compelled to make such an implausible motive argument[20] – coupled with the absence of any allegations that Defendants engaged in insider sales or otherwise had a specific financial motive and the relative ***unimportance*** of pass-through revenue as compared to other revenue – is a strong indication that scienter is not pled.[21]

---

[20] *See Local 731 I.B. of T. Excavators and Pavers Pens. Fund v. Diodes, Inc.*, 810 F.3d 951, 960 (5th Cir. 2016) (finding scienter theory "neither 'compelling' nor 'cogent'" where alleged scheme did not make sense). Plaintiffs' "capital raising" motive fails as stated on page 17 of the MTD. There is no assertion of any specific funding that was secured by the alleged misstatements. The argument about Reynolds' resignation likewise does not show scienter. *See Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 956 (S.D. Tex. 2016) (resignations do not show scienter).

[21] "A failure to show motive means that 'the strength of the circumstantial evidence of scienter must be correspondingly greater." *Employees' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 431 (5th Cir. 2019) (quoting *Neiman v. Bulmahn*, 854 F.3d 741, 748 (5th Cir. 2017)); *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016) ("Absent allegations of insider sales during the period of stock-price inflation, there would be no concrete benefit to defendants to justify [the] risks" that the alleged scheme "would be revealed[] in relatively short order" and would "likely have generated recriminations – or worse" for defendants).

### III. THE "ADJUSTED EBITDA" DISCLOSURES WERE NOT FRAUDULENT

The Opposition similarly fails to explain how Exela's "Adjusted EBITDA" disclosures were false or fraudulent. Plaintiffs unavailingly attempt to manufacture a contradiction between the SEC's May 2016 interpretive guidance and the *MDC Partners* and *LINN Energy* decisions, for which Plaintiffs otherwise offer little basis for distinguishing.[22] There is no contradiction, and certainly none of any import with respect to the facts alleged here. The 2016 guidance merely recognized that excluding "normal, recurring, cash operating expenses necessary to operate a registrant's business *could* be misleading."[23] "Could be misleading" is a far cry from "is always misleading." Nothing in the guidance states that a company may never exclude expenditures from a non-GAAP metric merely because they continue in future quarters, let alone that excluding such expenditures from Adjusted EBITDA is somehow misleading when a company specifically tells investors that the expenditures at issue will occur in future periods. Exela repeatedly disclosed that the restructuring and optimization costs would continue to occur.[24] That analysts were allegedly disappointed by the *amount* of subsequent optimization and restructuring costs does not show that the analysts were misled into believing that such costs would never occur again at all.[25]

Plaintiffs also erroneously assert that it "matters not" under Item 10(e) "whether investors may have been told that O&R would continue" (Opp. at 21). The SEC's guidance actually says the opposite: "The fact that a registrant cannot describe a charge or gain as non-recurring . . . *does*

---

[22] *See* MTD at 6 & n. 13 (citing *N. Collier Fire Control and Rescue Dist. Firefighter Pens. Plan v. MDC Partners, Inc.*, 2016 WL 5794774, at *12 (S.D.N.Y. Sept. 30, 2016) and *Ironworkers Local 580 – Joint Funds v. Linn Energy, LLC*, 29 F. Supp. 3d 400, 426 (S.D.N.Y. 2014)).

[23] *See* Opp. at 19.

[24] *See* MTD at 7-8 & n. 17.

[25] Indeed, Exela specifically told analysts that "we will continue to have some of the biz op and restructuring on a go-forward basis" (Compl. ¶ 125) and made numerous similar disclosures.

*not mean that the registrant cannot adjust for that charge or gain*" if, as here, the company states that the expenses may continue in future periods.[26] Exela acted consistently with the guidance.

The continued occurrence of these charges moreover does not automatically transform them into ordinary or routine operating expenses. Exela was undergoing a significant business transformation following the SourceHOV merger and made clear that it would incur substantial costs.[27] Unlike in *SafeNet*, Plaintiffs allege no particularized facts supporting their assertion that Exela misclassified ordinary business expenses as optimization and restructuring expenses.[28]

In sum, Plaintiffs allege no facts supporting a strong inference that Exela's disclosures were so blatantly and beyond-the-pale misleading as to be fraudulent. Plaintiffs acknowledge (Opp. at 18) that the Fifth Circuit has not held that Regulation S-K can even be the predicate for a Section 10(b) claim. Regardless, Plaintiffs allege no facts showing that the rule is so clear-cut and "obvious" as applied to these facts that it would support a strong inference of scienter.[29]

## IV. PLAINTIFFS' JUDICIAL NOTICE MOTION IS IMPROPER

As set forth above, while public SEC and court filings can be judicially noticeable,[30] Plaintiffs cite no authority that would permit judicial notice to be used as a dumping ground for

---

[26] https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm (emphasis added).

[27] Plaintiffs' reliance on the non-precedential *SafeNet* SEC settlement only confirms why this suit fails, as that matter involved far more specific allegations that executives intentionally directed accounting personnel to misclassify ordinary operating expenses as integration expenses (along with allegations of stock options backdating and other specific accounting manipulations that were intentionally made for the purpose of misrepresenting quarterly earnings). *See SEC v. SafeNet, Inc. et al.*, No. 09-2117 (D.D.C. Nov. 12, 2009) (complaint available at https://www.sec.gov/litigation/complaints/2009/comp21290.pdf; *see especially* ¶¶ 74-129).

[28] This case also bears no resemblance to *Zagami v. Natural Health Trends Corp.*, which involved violations of a "clear" related-party-disclosure rule. 540 F. Supp. 2d 705, 713 (N.D. Tex. 2008).

[29] *See supra* footnotes 10, 17 (scienter not inferred where disclosure duty was not obvious).

[30] For example, Plaintiffs do not contest Defendants' request for judicial notice, which simply attached full copies of SEC filings and press releases cited in the Complaint. *See* MTD at 3 n. 4.

unpled allegations. Allowing this tactic would violate the statutory requirement that "the *complaint* shall specify" the purportedly misleading statements and "state with particularity" facts supporting a strong inference of fraud.[31] Judicial notice is also inappropriate because the proposed exhibits are irrelevant.[32] Plaintiffs fail to explain how Exhibits 1 and 2 in Plaintiffs' appendix are relevant to their claims or where they are specifically incorporated in the Complaint.[33] Exhibits 3 and 4 are simply deposition notices and discovery schedules from the appraisal case. Exhibit 5 is a discovery response that is barely mentioned in Plaintiffs' briefing and does nothing to show scienter. Exhibit 6 is a transcript that is cited once in the Opposition and does not appear to be cited in the Complaint, other than to the extent testimony was quoted in the Delaware opinion. Plaintiffs fail to plead or explain how these documents support their claims, let alone where these documents were expressly incorporated into the Complaint. Even if these documents are properly considered, they contribute nothing to an inference of falsity or scienter.

## CONCLUSION AND PRAYER FOR RELIEF

This case again sits squarely on the "dismissal" side of the PSLRA cut line. The Section 20 claim likewise fails due to the absence of a viable primary liability claim. As set forth in footnote 1, courts routinely deny further leave to amend when an initial consolidated amended complaint does not satisfy the PSLRA. The Court should dismiss this action with prejudice.

---

[31] 15 U.S.C. § 78u-4(b)(1) and (2); s*ee supra* footnote 8 (discussing rejection of "puzzle pleading" as inconsistent with PSLRA's requirement for particularized pleading).

[32] *See Pinson v. Santana*, 2015 WL 1000914, at *2 (N.D. Tex. Mar. 6, 2015) (Fitzwater, J.) (declining to take judicial notice where it was "unclear . . . how their content is relevant to the merits") (citing *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 789 (E.D. La. 2009) (stating that courts should not take judicial notice of irrelevant facts)).

[33] Contrary to Plaintiffs' assertion (Opp. at 11), the $65,000,000 number in Exhibit 2 was simply a threshold for an "Event of Default" provision in a loan agreement, not a statement by Exela that it expected a $65 million adverse judgment.

Dated: January 21, 2021                Respectfully submitted,

                                       NORTON ROSE FULBRIGHT US LLP


                                       /s/ *Gerard G. Pecht*
                                       Gerard G. Pecht (Attorney-in-Charge)
                                       State Bar No. 15701800
                                       1301 McKinney, Suite 5100
                                       Houston, TX 77010-3095
                                       Telephone: (713) 651-5151

                                       Ellen B. Sessions
                                       State Bar No. 00796282
                                       2200 Ross Avenue, Suite 3600
                                       Dallas, Texas 75201-7921
                                       Telephone: (214) 855-7465

                                       Peter A. Stokes
                                       State Bar No. 24028017
                                       peter.stokes@nortonrosefulbright.com
                                       98 San Jacinto Boulevard, Suite 1100
                                       Austin, Texas 78701-4255
                                       Telephone: (512) 474-5201

                                       *Counsel for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on January 21, 2021, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

                                       /s/ *Gerard G. Pecht*
                                       Gerard G. Pecht