# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| BO SHEN, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 3:20-cv-00691-D |
| EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS AND PAR CHADHA, | § § § § | |
| Defendants. | § § § | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT AND AUTHORITIES ................................................................................. 1

    I.      PLAINTIFFS' "RANGE OF LOSS" CLAIM DOES NOT SHOW
           FRAUD ........................................................................................................ 1

           A.     Estimating "Value" and Estimating "Liability" Are Distinct
                    Concepts........................................................................................... 1

           B.     The Opposition Ignores the Impact of SourceHOV's "Dire"
                    Condition.......................................................................................... 2

           C.     The SAC Does Not Actually Identify the "Minimum" Alleged
                    Liability........................................................................................... 3

           D.     The Allegations Do Not Support a Cogent and Compelling
                      Inference of Fraud........................................................................... 4

    II.     PLAINTIFFS' OTHER CLAIMS HAVE NOT SUBSTANTIALLY
           CHANGED ................................................................................................. 9

CONCLUSION AND PRAYER FOR RELIEF ............................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alaska Elec. Pension Fund v. Asar,*
  768 F. App'x 175 (5th Cir. 2019) ........................................................................4, 7

*Alberici v. Recro Pharma, Inc.,*
  2020 WL 806719 (E.D. Pa. Feb. 14, 2020) ...............................................................6

*Allegheny County Employees' Ret. Sys. v. Energy Transfer LP,*
  -- F. Supp. 3d --, 2021 WL 1264027 (E.D. Pa. Apr. 6, 2021) ....................................7

*In re ArthroCare Corp. Sec. Litig.,*
  726 F. Supp. 2d 696 (W.D. Tex. 2010).......................................................................5

*In re Bank of Am. AIG Disclosure Sec. Litig.,*
  980 F. Supp. 2d 564 (S.D.N.Y. 2013)........................................................................6

*Chun v. Fluor Corp.,*
  2021 WL 1788626 (N.D. Tex. May 5, 2021) ...........................................................10

*Crutchfield v. Match Group, Inc.,*
  2021 WL 1167578 (N.D. Tex. Mar. 26, 2021).........................................................4

*DSAM Global Value Fund v. Altris Software, Inc.,*
  288 F.3d 385 (9th Cir. 2002) .....................................................................................7

*Fin. Acquisition Partners LP v. Blackwell,*
  440 F.3d 278 (5th Cir. 2006) ...................................................................................10

*In re Fleming Cos., Inc. Sec. & Deriv. Litig.,*
  2004 WL 5278716 (E.D. Tex. June 16, 2004)............................................................5

*Gamboa v. Citizens, Inc.,*
  2018 WL 2107205 (W.D. Tex. May 7, 2018) .............................................................6

*In re GeoPharma, Inc. Secs. Litig.,*
  399 F. Supp. 2d 432 (S.D.N.Y. 2005).........................................................................6

*Golden Telecom, Inc. v. Global GT LP,*
  11 A.3d 214 (Del. 2010) .............................................................................................2

*Goldstein v. MCI Worldcom,*
  340 F.3d 238 (5th Cir. 2003) ......................................................................................6

*Haack v. Max Internet Commc'ns, Inc.,*
  2002 WL 511514 (N.D. Tex. Apr. 2, 2002) ...............................................................5

*Ho v. Flotek Indus., Inc.*,
  248 F. Supp. 3d 847 (S.D. Tex. 2017), *aff'd sub nom. Alaska Electrical
  Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th Cir. 2019) ............................................6

*In re I.C.H. Corp.*,
  No. 397CV2385–G, 1998 WL 386165 (N.D. Tex. July 8, 1998) ...............................................8

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*,
  537 F.3d 527 (5th Cir. 2008) ...................................................................................................4

*Kakkar v. Bellicum Pharms., Inc.*,
  2020 WL 2845279 (S.D. Tex. May 29, 2020) ..........................................................................9

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) .....................................................................................................6

*Kaltman v. Key Energy Servs., Inc.*,
  447 F. Supp. 2d 648 (W.D. Tex. 2006) .....................................................................................5

*M.G. Bancorporation, Inc. v. Le Beau*,
  737 A.2d 513 (Del. 1999) .........................................................................................................2

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
  251 A.3d 694 (Del. Ch. 2021) ..................................................................................................7

*In re Medicis Pharm. Corp. Sec. Litig.*,
  2010 WL 3154863 (D. Ariz. Aug. 9, 2010) ...........................................................................5, 8

*MicroCapital Fund LP v. Conn's Inc.*,
  2019 WL 3451153 (S.D. Tex. July 24, 2019) ...........................................................................9

*Neiman v. Bulmahn*,
  854 F.3d 741 (5th Cir. 2017) ...................................................................................................9

*Oppenheim Pramerica Asset Mgmt. S.A.R.L. v. Encysive Pharms., Inc.*,
  2007 WL 2720074 (S.D. Tex. Sept. 18, 2007) .........................................................................9

*Ortiz v.Canopy Growth Corp.*,
  No. 2:19-cv-20543-KM_ESK, 2021 WL 1967714 (D.N.J. May 17, 2021) ...............................8

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) .................................................................................................4, 6

*Phillips v. Harvest Nat. Res, Inc.*,
  2016 WL 4523849 (S.D. Tex. Aug. 25, 2016) ..........................................................................8

*Proter v. Medifast, Inc.*,
  2013 WL 1316034 (D. Md. Mar. 28, 2013) ..............................................................................9

*Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*,
  935 F.3d 424 (5th Cir. 2019) .................................................................................................4, 9

*Richman v. Goldman Sachs Group, Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012) ................................................................................3, 6, 8

*Sanders v. AVEO Pharm., Inc.*,
  2015 WL 1276824 (D. Mass. Mar. 20, 2015).................................................................6

*Schiller v. Phys. Res. Grp.*,
  2002 WL 318441 (N.D. Tex. Feb. 26, 2002)..................................................................6

*Schleicher v. Wendt*,
  529 F. Supp. 2d 959 (S.D. Ind. 2007) ...........................................................................5

*Shen v. Exela Technologies, Inc.*,
  2021 WL 2589584 (N.D. Tex. June 24, 2021) ........................................................1, 3, 4, 9

*Silsby v. Icahn*,
  17 F. Supp. 3d 348 (S.D.N.Y. 2014)..............................................................................6

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
  365 F.3d 353 (5th Cir. 2004) ........................................................................................9

*Stephens v. Uranium Energy Corp.*,
  2016 WL 3855860 (S.D. Tex. July 15, 2016)..................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...................................................................................................1, 4

*Town of Davie Pens. Plan v. Pier 1 Imports, Inc.*,
  325 F. Supp. 3d 728 (N.D. Tex. 2018) ........................................................................10

*Tran v. Beyond Meat, Inc.*,
  No. CV20-963-MWF, 2020 WL 6826476 (C.D. Cal. Oct. 8, 2020) ...............................6

*White v. H&R Block Inc.*,
  No. 02 CIV. 8965 (MBM), 2004 WL 1698628 (S.D.N.Y. July 28, 2004).......................5

*Yates v. Mun. Mortg. & Equity, LLC*,
  744 F.3d 874 (4th Cir. 2014) ........................................................................................8

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ........................................................................................8

**Rules and Statutes**

15 U.S.C. § 78u-4(b)..........................................................................................................3

**INTRODUCTION**

Plaintiffs' Opposition confirms that this case should be dismissed with prejudice. The Opposition primarily argues that Exela was required by GAAP to accrue liability for the appraisal litigation. The facts pled in support of this argument, however, are not substantively different from those the Court rejected in dismissing the prior complaint and do not support a cogent and compelling inference that Defendants acted deceitfully or recklessly towards investors.[1] Plaintiffs' arguments regarding the other alleged misstatements are largely a rehash of the same arguments correctly rejected in the Court's prior opinion. Leave to amend again should be denied.

**ARGUMENT AND AUTHORITIES**

**I.      PLAINTIFFS' "RANGE OF LOSS" CLAIM DOES NOT SHOW FRAUD**

The Opposition fails to identify facts showing that Defendants' statement that it could not "estimate any loss or range of loss that may arise from the Appraisal Action" was actionably false or fraudulent, or that Exela committed fraud by not immediately accruing a loss. The allegations are not substantively different than those previously rejected.[2] Indeed, the fact that Plaintiffs cite numerous wildly different valuation calculations[3] supports a strong inference that Defendants could *not* estimate the likely "loss or range of loss," which was highly uncertain and disputed.

**A.  Estimating "Value" and Estimating "Liability" Are Distinct Concepts**

At the outset, Plaintiffs erroneously conflate the distinct concepts of calculating a valuation and estimating the outcome of an appraisal lawsuit. Exela did not represent that it was impossible

---

[1] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 326 (2007) (emphasizing that courts must assess allegations "holistically" and determine whether inference of scienter is "cogent" and "compelling").

[2] *See Shen v. Exela Technologies, Inc.*, 2021 WL 2589584, at *7 (N.D. Tex. June 24, 2021).

[3] *See* Opp. at 5 (listing chart with five valuation numbers); *id.* at 4-5 (listing two other valuations in paragraph at bottom of page 4 and top of page 5).

for any banker or valuation expert to come up with an estimate of value, or that no banker or expert had ever done so for SourceHOV Holdings, Inc.  Bankers value companies all the time, even highly speculative ones.  That such valuations were performed, however, does not mean that Exela could actually estimate – or that it had in fact estimated – the outcome of the appraisal *litigation.* Deciding an appraisal lawsuit is not simply a matter of accepting one valuation estimate over another, but requires a holistic assessment that "take[s] into account all relevant factors,"[4] including the company's "operative reality" at the time of the transaction.[5]  The appraisal statute "calls upon the Court of Chancery to perform an *independent* evaluation of 'fair value' at the time of a transaction" and "vests the Chancellor and Vice Chancellors with significant discretion" to consider all relevant factors to the company's value as a going concern.[6]  Thus, Exela's disclosure that it could not estimate what its *litigation liability* would be was not remotely fraudulent.

### B.  The Opposition Ignores the Impact of SourceHOV's "Dire" Condition

The Opposition also ignores Defendants' arguments about Plaintiffs' express admissions that SourceHOV's "operative reality" was "dire."[7]  When assessing fair value in an appraisal lawsuit, a Delaware court must value the company as a "going concern," with the assumption that the transaction at issue would not have gone forward.[8]  Plaintiffs admitted that SourceHOV was in "dire" financial straits at the time of the transaction, needed a "financial lifeline," and essentially

---

[4] *See Golden Telecom, Inc. v. Global GT LP*, 11 A.3d 214, 217 (Del. 2010).

[5] *See M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 525 (Del. 1999) ("operative reality" is "an independent element of value that must be taken into account in determining a fair value").

[6] *See Golden Telecom*, 11 A.3d at 217.

[7] *See* ECF #49, Motion to Dismiss Amended Complaint ("Exela Mot.") at 10, 22.

[8] *See M.G. Bancorporation*, 737 A.2d at 525; *Golden Telecom*, 11 A.3d at 217 (emphasizing that "fair value" for appraisal purposes is "the value to a stockholder of the firm as a going concern, as opposed to the firm's value in the context of an acquisition or other transaction").

lucked its way into securing such a "lifeline" by fortuitously crossing paths with special purpose acquisition company (Quinpario) that faced its own tight deadline to deploy capital and was therefore willing to "take its chances" on acquiring a troubled company.[9]  The appraisal court must calculate SourceHOV's value assuming that no "lifeline" from Quinpario had been thrown.  The Opposition tellingly fails to address the impact of the SAC's admissions regarding SourceHOV's "dire" condition, which support a reasonable belief that SourceHOV could win the appraisal case.

### C.  The SAC Does Not Actually Identify the "Minimum" Alleged Liability

Further, while the Opposition asserts that "GAAP required, at a minimum, accrual of the lowest estimate" (in apparent contradiction of Plaintiffs' prior arguments),[10] the SAC does not plead with particularity which specific estimate should have been used as the minimum.[11]  Instead, the SAC offers a meandering 15-paragraph narrative about the purported "minimum" liability "bookend" without actually identifying with particularity what precise number Plaintiffs contend Exela should have identified as the minimum liability.[12]  In the middle of that narrative, the SAC

---

[9] *See* ECF #49, Exela Mot. at 22; SAC ¶¶ 52, 59, 65, 66.

[10] *See* Opp. at 12.  The Court previously noted that "Plaintiffs acknowledged at oral argument that Exela was not *required* to estimate a range of liability, but they maintain that because defendants 'went a step further' and told investors that Exela could not estimate a range, this demonstrates scienter in omitting the Appraisal Action liability." *Shen*, 2021 WL 2589584, at *7 (emphasis in original).  Plaintiffs now apparently believe Exela *was* required to estimate such a range.  (*See* Opp. at 13.)  Plaintiffs' own confusion on this point further undercuts any inference that the alleged duty to disclose such a range was so clear-cut and obvious as to render Exela's disclosures fraudulent.  *See Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261, 274-76 (S.D.N.Y. 2012) (refusing to infer scienter given lack of an "obvious duty to disclose" the undisclosed fact).

[11] This violates the requirements under Rule 9(b) and the PSLRA that Plaintiffs "state with particularity" the facts supporting their fraud claims.  *See Shen*, 2021 WL 2589584, at *3-4; FED. R. CIV. P. 9(b); 15 U.S.C. § 78u-4(b).  The SAC alleges that the minimum liability was "informed in part by" Exela's litigation expert (SAC ¶ 86), but does not specifically plead what precise "minimum" number should have been accrued.

[12] *See* SAC ¶¶ 86-100.

admits Defendant Chadha testified at trial that SourceHOV was "worth zero."[13]  That view is supported by Plaintiffs' own admissions regarding SourceHOV's "dire" operative reality.  As with the prior complaint, the SAC's concession that Exela did not agree with its expert weighs heavily against inferring that Exela's cautious litigation disclosures were false, let alone fraudulent.[14]

### D. The Allegations Do Not Support a Cogent and Compelling Inference of Fraud

The Opposition also fails to explain how, taken ***holistically***, the allegations support a cogent and compelling inference that the litigation disclosures and accounting decisions regarding the potential appraisal liability were reckless or fraudulent.[15]  Even assuming *arguendo* that GAAP required Exela to accrue the lowest estimate of litigation damages, and even if Plaintiffs had sufficiently pled the existence of a minimum estimate of litigation liability that should have been accrued, it is well-settled that "a failure to follow GAAP, without more, does not establish scienter."[16]  The Fifth Circuit has rejected fraud claims over alleged GAAP violations in circumstances far more conducive of a potential scienter inference[17] than what is alleged here,

---

[13] *See id.* ¶¶ 91, 93.

[14] *See Shen*, 2021 WL 2589584, at *7.

[15] *See Tellabs*, 551 U.S. at 314, 326 (courts must assess allegations "holistically" and weigh competing inferences).

[16] *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008); *Owens v. Jastrow*, 789 F.3d 529, 543 (5th Cir. 2015) ("That the reported figures are alleged to have violated GAAP is not, by itself, actionable"); *Shen*, 2021 WL 2589584, at *9.

[17] *See Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 180-89 (5th Cir. 2019) (affirming dismissal ***despite $87 million restatement and Audit Committee conclusion that former CFO engaged in inappropriate accounting practices***); *Owens*, 789 F.3d at 538, 541 (affirming dismissal even though bank ***had to write down entire $1.62 billion portfolio***); *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.,* 935 F.3d 424, 432-33 (5th Cir. 2019) (affirming dismissal of securities action against Pier 1 despite allegations showing that officers knew of inventory backlog that preceded significant price markdowns).

where Exela **publicly disclosed** the litigation, made no assurances that it was likely to prevail or that the claims lacked merit,[18] and **warned it may face significant liability**.

Unlike in the inapposite cases cited by Plaintiffs (which involved accounting decisions about **internal** revenue recognition or earnings calculations under circumstances far more suspect than those alleged here[19]), the accounting and disclosure issues here pertain to an indisputably **public** litigation proceeding that Exela **disclosed.** Investors had no way of verifying whether the companies in Plaintiffs' cited authorities were correctly reporting their own revenues and earnings. Here, by contrast, investors were told about the litigation – which was a publicly accessible proceeding in open court[20] – and could see for themselves that a large shareholder backed by

---

[18] Again, courts have rejected claims involving far more optimistic litigation disclosures. *See Crutchfield v. Match Group, Inc.*, 2021 WL 1167578, at \*6, \*14-15 (N.D. Tex. Mar. 26, 2021) (collecting cases and rejecting allegations based on litigation disclosure that claims against company were "completely meritless" and "without merit").

[19] *See In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 712-13, 722 (W.D. Tex. 2010) (involving outright "fraudulent practices" where company relied on "insurance fraud" to inflate its revenues, and where "the relative simplicity of the issues" that led to a restatement "significantly" contributed to scienter); *Haack v. Max Internet Commc'ns, Inc.*, 2002 WL 511514, at \*7 (N.D. Tex. Apr. 2, 2002) (finding inference of fraud where company overstated its online revenues **by 98%**); *Kaltman v. Key Energy Servs., Inc.*, 447 F. Supp. 2d 648, 664 (W.D. Tex. 2006) (finding inference of scienter where, unlike here, company's CEO was terminated "for cause" over \$78 million accounting writedown, with allegations of "massive fraud in the South Texas Division, including an elaborate scam to siphon money"); *In re Fleming Cos., Inc. Sec. & Deriv. Litig.*, 2004 WL 5278716, at \*15-21 (E.D. Tex. June 16, 2004) (detailing numerous specific allegations from former employees about "pervasive methods of inflating" company's earnings); *Schleicher v. Wendt*, 529 F. Supp. 2d 959, 963 (S.D. Ind. 2007) (company allegedly failed to disclose \$900 million in guaranty obligations while treating payments to itself as operating income, among numerous other allegations); *In re Medicis Pharm. Corp. Sec. Litig.*, 2010 WL 3154863, at \*5 (D. Ariz. Aug. 9, 2010) (emphasizing that plaintiffs "cannot merely point at a GAAP principle and contend that a correct interpretation was simple or obvious"; and finding scienter where company violated straightforward revenue recognition policies).

[20] Plaintiffs make no allegation that the appraisal litigation was sealed or otherwise inaccessible to the public. *See White v. H&R Block Inc.*, No. 02 CIV. 8965 (MBM), 2004 WL 1698628, at \*6 (S.D.N.Y. July 28, 2004) ("This is not a case involving private information held internally by the company, hidden away from the public and available only to the officers or directors. To the contrary, the information that plaintiffs allege Block concealed involved public filings in public proceedings in publicly accessible courts all across the country. There is no allegation that the

-5-

formidable counsel was pursuing a significant claim in open court.  The Fifth Circuit and other courts have long observed that the scienter calculus is different – and that the inference of scienter is not strong, cogent, or compelling – when the company made at least some disclosure of the matter or risk at issue,[21] or where the allegedly "concealed" matters are public.[22]

Like the cases cited in footnotes 21 and 22, the Opposition identifies no facts supporting a strong inference that Exela's cautious disclosures were rendered so blatantly and inexcusably misleading by the absence of an accrual (or a numerical range-of-liability disclosure) that they rise to the level of fraud or severe recklessness.[23]  While Plaintiffs cite the Delaware Rule 12 veil-

numerous pleadings and motions in any of these proceedings, much less all of them, were filed under seal. In short, the 'concealed' information was inherently public information").

[21] *See Owens*, 789 F.3d at 540-41 (noting that while plaintiffs disputed the sufficiency of defendant's disclosures of alleged "red flags," the fact that the red flags were "disclosed to the public . . . negates the inference that defendants acted with scienter"); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 369-70 (S.D.N.Y. 2014) (holding that company's disclosures regarding litigation risks "weigh heavily against scienter"); *Richman*, 868 F. Supp. 2d at 274-76 (observing that defendants provided at least "some notice about ongoing governmental investigations"; failure to disclose Wells notice did not show scienter given lack of an "obvious duty to disclose" the notice); *Schiller v. Phys. Res. Grp.*, 2002 WL 318441, at *14 (N.D. Tex. Feb. 26, 2002) (rejecting fraud claim where company publicly disclosed arbitration proceeding against seller of allegedly overvalued assets, which undercut inference that company acted fraudulently by not immediately writing off the assets); *Tran v. Beyond Meat, Inc.*, No. CV20-963-MWF, 2020 WL 6826476, at *9-10 (C.D. Cal. Oct. 8, 2020) (rejecting claim over more optimistic litigation disclosure stating belief that company would prevail; disclosure stated company could not assure against adverse judgment).

[22] *See In re GeoPharma, Inc. Secs. Litig.*, 399 F. Supp. 2d 432, 452 (S.D.N.Y. 2005) ("Plaintiffs have cited no case, and I am aware of none, where a plaintiff adequately pled scienter based solely on the contradiction between **public** information and the company's public statements") (emphasis in original); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 586 (S.D.N.Y. 2013) ("third party disclosure" of relevant facts weighed against scienter); *Alberici v. Recro Pharma, Inc.*, 2020 WL 806719, at *16-18 (E.D. Pa. Feb. 14, 2020) (holding that public availability of clinical data weighed against scienter).

[23] *See Ho v. Flotek Indus., Inc.*, 248 F. Supp. 3d 847, 857 (S.D. Tex. 2017) ("Even if Flotek could have provided clearer disclosures . . ., Flotek's actual disclosures are not so blatantly misleading as to be severely reckless."), *aff'd sub nom. Alaska Electrical Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th Cir. 2019); *see also Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir. 2001) (claim fails where "the duty to disclose . . . was not so clear"); *Gamboa v. Citizens, Inc.*, 2018 WL 2107205, at *3 (W.D. Tex. May 7, 2018) (plaintiff "must show more than that it is debatable

-6-

piercing decision for the proposition that "Exela knew that SourceHOV Holdings would be required to pay a judgment of some amount, at the latest, when Plaintiffs sent their appraisal demand in September 2017," Plaintiffs do not and cannot deny that the appraisal demand and lawsuit were **publicly disclosed**, and that the veil-piercing decision cited **Exela's own public March 16, 2018 Form 10-K litigation disclosure** as being supportive of this conclusion.[24]  Nor do Plaintiffs address that the veil piercing opinion was decided under a lower pleading standard and did not assess if investors were misled.[25]  Even findings by a company's own audit committee that the company engaged in inappropriate accounting practices requiring a restatement have been held insufficient to show scienter in this circuit.[26]  None of Plaintiffs' allegations demonstrate scienter.

The Opposition likewise identifies no specific facts that would demonstrate any individual Defendant knew **from an accounting standpoint** that Exela's disclosures were unsupportable, let alone that they would deceive investors given Exela's sober cautionary disclosures about the litigation.  Again, simply alleging that various valuation estimates existed does not show that the

---

whether the disclosures were adequate"); *Sanders v. AVEO Pharm., Inc.*, 2015 WL 1276824, at *10 (D. Mass. Mar. 20, 2015) (scienter not pled when disclosures are "at least debatable"); *see also Goldstein v. MCI Worldcom*, 340 F.3d 238, 253-54 (5th Cir. 2003) (even "gross mismanagement" of accounting compliance leading to large financial restatement fails to demonstrate strong inference of scienter); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002) ("Negligence, even gross negligence, does not rise to the level of the nefarious mental state necessary to constitute securities fraud").

[24] *See Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 708 (Del. Ch. 2021) ("Indeed, Exela recognized in its Form 10-K, filed on March 16, 2018, that there was a risk of a significant loss associated with the Appraisal Action").  Being "required to pay a judgment of some amount" is also not a particularized finding that Exela knew what the actual "minimum" liability would be.

[25] *Manichaean*, 251 A.3d at 704 (describing more lenient Delaware "reasonably conceivable" pleading standard); *Allegheny County Employees' Ret. Sys. v. Energy Transfer LP*, -- F. Supp. 3d --, 2021 WL 1264027, at *6 n. 13 (E.D. Pa. Apr. 6, 2021) (giving state court decision under lower pleading standard "minimal weight" in assessing scienter allegations under PSLRA).

[26] *See Asar*, 768 F. App'x at 180-89 (affirming dismissal **despite Audit Committee conclusion that former CFO engaged in inappropriate accounting practices**).

individual Defendants knew the ***accounting*** was incorrect.  Further, while the Opposition asserts in conclusory fashion that Chadha "misled Exela's auditors as to SourceHOV's value" (Opp. at 15), the cited paragraphs of the SAC do not even show that Chadha ever actually communicated with the auditors.  (SAC ¶ 91.)  Plaintiffs also do not and cannot allege that Exela's public June 26, 2017 proxy disclosure of a $644.8 million equity value for SourceHOV (or the appraisal suit itself) was unavailable or unknown to the auditors.  That the auditors approved Exela's accounting treatment despite knowing of the $644.8 million proxy disclosure and the appraisal lawsuit severely undermines any inference that Exela's accounting was so obviously wrong as to be reckless.[27]  Conversely, Plaintiffs plead no specific facts showing that any Defendant was advised in real time that Exela's accounting treatment of the appraisal action was wrong.[28]  As made clear by Plaintiffs' own citations, Plaintiffs "cannot merely point at a GAAP principle and contend that a correct interpretation was simple or obvious" when, as here, it was plainly not.[29]

The Opposition also fails to explain how Ex-Sigma 2's single April 2018 sale of less than 10% of its Exela stock holdings demonstrates scienter.  Plaintiffs cite older non-Fifth Circuit outlier cases with different facts and timing (*see* Opp. at 24 n. 52), while ignoring Fifth Circuit law

---

[27] *See Ortiz v.Canopy Growth Corp.*, No. 2:19-cv-20543-KM_ESK, 2021 WL 1967714, at *43 (D.N.J. May 17, 2021) (approval by outside auditor "weighs heavily against scienter"); *Phillips v. Harvest Nat. Res, Inc.*, 2016 WL 4523849, at *3 (S.D. Tex. Aug. 25, 2016) (approval by outside auditors undercuts scienter).

[28] Courts have granted or affirmed dismissal even where, unlike here, there are specific allegations that company employees or accountants disagreed over accounting issues.  *See Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 893-94 (4th Cir. 2014) (affirming dismissal though auditor had "recommended that the Company reconsider its LIHTC Fund accounting prior to the first restatement"); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998-99 (9th Cir. 2009) (allegations of "disagreement and questioning within [Digimarc] about the [accounting numbers]" was insufficient to show fraud); *In re I.C.H. Corp.*, No. 397CV2385–G, 1998 WL 386165, at *5 (N.D. Tex. July 8, 1998) (disagreement with auditor did not establish scienter).

[29] *In re Medicis*, 2010 WL 3154863, at *5.

holding that sales of much larger percentages are not suspicious.[30] The absence of sufficient motive allegations means that the other scienter allegations must be "correspondingly greater," which further supports dismissal.[31] Plaintiffs' other scienter allegations fail for substantially the same reasons as set forth in the Court's prior opinion.[32]

## II.   PLAINTIFFS' OTHER CLAIMS HAVE NOT SUBSTANTIALLY CHANGED

As with the SAC, the Opposition rehashes essentially the same substantive arguments with respect to the Adjusted EBITDA, visibility, and postage revenue claims that the Court rejected in its prior opinion.[33] The Opposition ignores Defendants' arguments that: (i) the chart in paragraph 176 of the SAC *confirms* that postage revenue was stable and predictable through the first quarter of 2019 (Exela Mot. at 6, 14), and (ii) Defendants specifically disclosed that "biz op" (*i.e.*, optimization and restructuring, or "O&R") charges would continue in future quarters (*see id.* at 4, 17.). Plaintiffs also identify no particularized facts showing that the inclusion of headcount

---

[30] *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 368 (5th Cir. 2004) (sales of 26%, 27%, and 33% by three different defendants on the same day did not raise a strong inference of scienter); *see also MicroCapital Fund LP v. Conn's Inc.*, 2019 WL 3451153, at *17 (S.D. Tex. July 24, 2019) (sale of 9.55% not suspicious); *Oppenheim Pramerica Asset Mgmt. S.A.R.L. v. Encysive Pharms., Inc.*, 2007 WL 2720074, at *5 (S.D. Tex. Sept. 18, 2007) (sale of 17.59% not suspicious); *Proter v. Medifast, Inc.*, 2013 WL 1316034, at n. 20 (D. Md. Mar. 28, 2013) (noting that there are "legion[s]" of cases finding "no inference of scienter despite similar or greater percentages of sales," with few cases inferring scienter from smaller percentages).

[31] *Employees' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.,* 935 F.3d 424, 431 (5th Cir. 2019) (quoting *Neiman v. Bulmahn*, 854 F.3d 741, 748 (5th Cir. 2017)).

[32] *See Shen*, 2021 WL 2589584, at *15 n. 3 (resignations and experience of officers insufficient). Plaintiffs also plead no particularized facts suggesting that Exela is small enough for the "core operations" theory to apply. *See Stephens v. Uranium Energy Corp.*, 2016 WL 3855860, at *15 (S.D. Tex. July 15, 2016) ("core operations" theory applies in "rare" situations; refusing to apply exception to company with just 61 employees); *Kakkar v. Bellicum Pharms., Inc.*, 2020 WL 2845279, at *4 (S.D. Tex. May 29, 2020) ("[A] company with more than 100 employees would not comport with case law finding a 'special circumstance' for a small company').

[33] *See Shen*, 2021 WL 2589584, at *11 (rejecting customer margins claim); *14-15 (rejecting postage revenue/visibility claim); 18-21 (rejecting Adjusted EBITDA allegations).

charges as part of O&R (*see* Opp. at 19) was misleading.  Contrary to Plaintiffs' inaccurate assertion, Exela disclosed in its Form 10-Qs and 10-Ks throughout the class period that O&R included "net salary and benefits associated with positions that were terminated," plus additional disclosures on March 18, 2019 and May 9, 2019 that O&R charges included headcount.[34]  Staffing changes can quite plausibly be part of a restructuring or optimization initiative.  The bare assertion that the restatement led to a reduction in R&O expense for 2018 (and a small 2.7% overall reduction in Adjusted EBITDA) likewise does nothing to support a strong inference of scienter.[35]

## CONCLUSION AND PRAYER FOR RELIEF

The Opposition offers no grounds for reaching a different outcome than the Court reached in its thorough opinion rejecting the prior complaint.  Plaintiffs fail to cite any case in this circuit or elsewhere where scienter was inferred under remotely analogous circumstances.  Having amended a second time without pleading anything close to a viable securities fraud or control person claim, Plaintiffs should not receive another chance to amend.[36]  Indeed, the Opposition does not even request leave to amend.  The Court should thus dismiss this case with prejudice.

---

[34] *See* Supp. App. 0411 and App. 55; *see also* App. 186; App. 250; App. 318; App. 539; App. 652; SAC ¶ 288 (disclosing "$14.2 million in headcount cost" on March 18, 2019); Opp. at 19 (admitting that Exela disclosed inclusion of headcount costs in May 9, 2019).

[35] *See* Opp. at 18 (describing Adjusted EBITDA reduction from $283.8 million to $276.2 million).

[36] *See Town of Davie Pens. Plan v. Pier 1 Imports, Inc.*, 325 F. Supp. 3d 728, 749 (N.D. Tex. 2018) (denying further leave to amend where, like here, securities plaintiff was afforded opportunity to amend after dismissal of initial consolidated complaint, and amended complaint again failed to satisfy PSLRA); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006) (affirming denial of leave to amend after second amended complaint dismissed with prejudice); *Chun v. Fluor Corp.*, 2021 WL 1788626, at *3 (N.D. Tex. May 5, 2021) (denying leave to amend a third time, and observing that "further bites at the proverbial apple would prejudice the defendants by delaying this suit's conclusion and subjecting the defendants to additional costs").

Dated: October 28, 2021                     Respectfully submitted,

                                            NORTON ROSE FULBRIGHT US LLP


                                            /s/ *Peter A. Stokes*
                                            _____
                                            Gerard G. Pecht (Attorney-in-Charge)
                                            State Bar No. 15701800
                                            1301 McKinney, Suite 5100
                                            Houston, TX 77010-3095
                                            Telephone:  (713) 651-5151

                                            Ellen B. Sessions
                                            State Bar No. 00796282
                                            2200 Ross Avenue, Suite 3600
                                            Dallas, Texas 75201-7921
                                            Telephone: (214) 855-7465

                                            Peter A. Stokes
                                            State Bar No. 24028017
                                            peter.stokes@nortonrosefulbright.com
                                            98 San Jacinto Boulevard, Suite 1100
                                            Austin, Texas 78701-4255
                                            Telephone:  (512) 474-5201

                                            *Counsel for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on October 28, 2021, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.


                                            /s/ *Peter A. Stokes*
                                            _____
                                            Peter A. Stokes


-11-