# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | |
| v. | Case No. 3:20-CV-00691-D |
| EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADA | **CLASS ACTION** |
| Defendants | |

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS; AND BRIEF IN SUPPORT THEREOF**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................... 1

II.   OVERVIEW OF THE LITIGATION .............................................................. 2

III.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................................ 4

    A.   Lead Plaintiff and His Counsel Have Adequately Represented the Settlement Class .......................................................................................................... 7

    B.   The Settlement Stems From Arm's Length Negotiations Between Experienced Counsel and There is No Fraud or Collusion ........................................................... 8

    C.   The Relief Provided for the Settlement Class is Adequate ................................... 9

        1.   The Settlement Amount Supports Approval ............................................. 10

        2.   The Cost, Risk, and Delay of Trial and Appeal Support Approval .......... 11

        3.   Other Factors Established by Rule 23(e)(2)(C) Support Approval .......... 14

    D.   All Settlement Class Members Are Treated Equitably ........................................ 16

    E.   The Remaining *Reed* Factors Warrant Preliminary Approval ............................. 16

        1.   The Stage of the Proceedings and the Amount of Discovery Completed Support Approval ................................................................................... 16

        2.   The Probability of Plaintiff's Success on the Merits and The Range of Possible Recovery .................................................................................. 17

        3.   The Opinions of Lead Counsel, Lead Plaintiff, and Absent Settlement Class Members Support Approval .................................................................. 19

IV.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE ................... 19

    A.   The Method of Notice is Adequate ..................................................................... 19

    B.   The Content of the Notice is Adequate ............................................................... 21

V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............................... 22

VI.   PROPOSED SETTLEMENT SCHEDULE ........................................................... 24

VII.  CONCLUSION.......................................................................................... 25

## **<u>TABLE OF AUTHORITIES</u>**

<u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
　572 F.3d 221 (5th Cir. 2009) ................................................................. 12

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
　2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ..................................... 7, 15

*Amchem, Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997).............................................................................. 24

*Amgen Inc. v. Ct. Ret. Plans & Trust Funds*,
　133 S. Ct. 1184 (2013).......................................................................... 24

*Basic Inc. v. Levinson*,
　485 U.S. 224 (1988).............................................................................. 24

*Berger v. Compaq Computer Corp.*,
　257 F.3d 475 (5th Cir. 2001) ................................................................. 7

*Buettgen v. Harless*,
　2011 WL 1938130 (N.D. Tex. May 19, 2011) ........................................ 7

*Buettgen v. Harless*,
　2013 WL 12303143 (N.D. Tex. Nov. 13, 2013)............................... 13, 18

*Celeste v. Intrusion, Inc.*,
　2022 WL 17736350 (E.D. Tex. Dec. 16, 2022)................................ 11, 13

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
　No. CIV. 6:12-1609, 2015 WL 965693 (W.D. La. Mar. 3, 2015).............. 12, 16, 24

*Cotton v. Hinton*,
　559 F.2d 1326 (5th Cir. 1977) ............................................ 5, 11, 17, 18

*Dura Pharms., Inc., v. Broudo*,
　544 U.S. 336 (2005).............................................................................. 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
　2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ....................... 9, 15, 16, 18

*Goldstein v. MCI WorldCom*,
　340 F.3d 238 (5th Cir. 2003) ............................................................... 19

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011) ............................................................................. 24

*Hays v. Eaton Grp. Attorneys, LLC*,
    2019 WL 427331 (M.D. La. Feb. 4, 2019) .................................. 8, 10, 11

*IBEW v. Int'l Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ............................................. 11

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................. 20

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .............................................. 12

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ......................................... 10

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ........................................ 16

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .................................................................... 13

*In re China Med. Corp. Sec. Litig.*,
    2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ........................................... 9

*In re Elec. Data Sys. Corp. Sec. Litig.*,
    226 F.R.D. 559 (E.D. Tex. 2005) ............................................................ 23

*In re Enron Corp.*,
    2003 WL 22494413 (S.D. Tex. July 24, 2003) ....................................... 21

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
    574 F.3d 29 (2d Cir. 2009) ............................................................... 10, 11

*In re Mut. Funds Inv. Litig.*,
    2010 WL 2342413 (D. Md. May 19, 2010) ............................................ 20

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F.2d 1088 (5th Cir. 1977) ............................................................... 22

*In re OCA, Inc. Secs. & Deriv. Litig.*,
    CIV A 05-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ................ 21

*In re OCA, Inc. Sec. & Derivative Litig.*,
   2009 WL 512081 (E.D. La. Mar. 2, 2009) ...................................................... 12, 13

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................................... 7

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .................................................................. 12

*Jones v. Singing River Health Servs. Found.*,
   865 F.3d 285 (5th Cir. 2017) ............................................................................... 9

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................................ 5

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ............................................................................... 13

*Ludlow v. BP, P.L.C.*,
   800 F.3d 674 (5th Cir. 2015) ............................................................................... 24

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ............................................................................... 5

*Manchaca v. Chater*,
   927 F. Supp. 962 (E.D. Tex. 1996) ..................................................................... 17

*Manichaean Cap., LLC et al. v. SourceHOV Holdings, Inc.*,
   2020 WL 496606, (Del. Ch. Jan. 30, 2020) ...................................................... 3

*McNamara v. Bre-X Minerals Ltd.*,
   214 F.R.D. 424 (E.D. Tex. 2002) ....................................................................... 5

*Morgan v. Public Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. 2016) ............................................................... 9

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 233- (E.D. Mich. 2016) .................................................................... 15

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ........................................................................ passim

*Rooney v. EZCORP, Inc.*,
   330 F.R.D. 439 (W.D. Tex. 2019) ............................................................. 22, 23, 24

*Rougier v. Applied Optoelectronics, Inc.*,
   2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) ........................................................ 23

*Schwartz v. TCU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005).................................................. 18, 19

*Shen v. Exela Techs., Inc.*,
   2021 WL 2589584 (N.D. Tex. June 24, 2021) .................................................. 3, 12

*Shen v. Exela Techs., Inc.*,
   2022 WL 198402 (N.D. Tex. Jan. 21, 2022) .................................................... 4, 12

*SourceHOV Holdings, Inc. v. Manichaean Cap., LLC*,
   246 A.3d 139 (Del. 2021) ............................................................................... 18

*Stott v. Capital Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) .................................................................... 14

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) .......................................................................... 17

*Vaughn v. Am. Honda Motor Co.*,
   627 F. Supp. 2d 738 (E.D. Tex. 2007)....................................................... 19, 22

*W. Wash. Laborers-Employers Pension Tr. v. Panera Bread Co.*,
   2011 WL 720060 (E.D. Mo. Feb. 22, 2011)..................................................... 21

*Zeidman v. J. Ray McDermott & Co.*,
   651 F.2d 1030 (5th Cir. 1981) ........................................................................ 23

## STATUTES

15 U.S.C. §78u-4(a)(4) .......................................................................................... 16

15 U.S.C. § 78u-4(a)(7) ......................................................................................... 21

## RULES

Fed. R. Civ. P. 23................................................................................. *passim*

Court-appointed lead plaintiff Insur Shamgunov ("Lead Plaintiff"), on behalf of himself and the proposed Settlement Class, respectfully submits this unopposed motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure seeking: (i) preliminary approval of the proposed Settlement as set forth in the Stipulation and Agreement of Settlement dated July 27, 2023 ("Stipulation"); (ii) preliminary certification of the proposed Settlement Class; (iii) approval of the form and manner of providing notice to Settlement Class Members; and (iv) a hearing date for the Court to consider (a) final approval of the Settlement, (b) approval of the proposed Plan of Allocation, and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses.[1]

## I.    INTRODUCTION

The proposed Settlement will resolve all claims against Defendants[2] in exchange for a non-reversionary, all cash payment of $5,000,000 (the "Settlement Amount") for the benefit of the Settlement Class.  This is a very favorable result for the Settlement Class and represents a recovery of approximately 7.4% of the *maximum* recoverable damages related to the pending claims, which is well above the median recovery of 3.8% of estimated damages for securities class actions with similar damages settled in 2022.  For this reason, and as further discussed herein, the Settlement is substantively fair.

---

[1] Unless otherwise defined, all capitalized terms have the same meanings as in the Stipulation.  The Stipulation and its exhibits are collectively attached as Exhibit 2 to the Appendix in Support of Lead Plaintiff's Unopposed Motion for: (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice to the Settlement Class (the Appendix is cited herein as "App.").  App. 4 - 41.  Additionally, all emphasis is added and all internal citations and quotations are omitted.

[2] Defendants are: Exela Technologies, Inc. ("Exela" or the "Company"), and Ronald Cogburn, Parvinder Chadha and James G. Reynolds (collectively, the "Individual Defendants"; and, together with Exela, the "Defendants"; and together with Lead Plaintiff, the "Parties").

The Settlement is also procedurally fair.  By the time the Settlement was reached, Lead Plaintiff and his counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses.  Prior to reaching the Settlement, Lead Counsel, *inter alia*:

- conducted an extensive investigation into Defendants' allegedly wrongful acts, which included working with a private investigator to locate and interview former Exela employees and consultation with experts in the fields of accounting, loss causation, and damages;

- drafted two comprehensive amended complaints based on their research and investigation;

- engaged in substantial briefing opposing Defendants' two motion to dismiss, each of which included oral argument;

- engaged in significant discovery, which included serving and responding to party discovery, taking the depositions of Exela's Chief Accounting Officer ("CAO") and Chief Executive Officer ("CEO"), defending Lead Plaintiff's deposition, and targeted review and analysis of the 2.2 million pages of documents produced by Exela;

- filed a motion for class certification that included an expert report on market efficiency; and

- exchanged mediation briefs containing detailed analyses of the strengths, risks, and potential issues in the litigation with Defendants, participated in an unsuccessful full-day mediation session with a well-respected mediator of complex cases—Jed Melnick, Esq. of JAMS—and engaged in months of further negotiations that culminated in a mediator's recommendation to resolve the Action for $5,000,000 in cash for the benefit of the Settlement Class.

The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced neutral.

As discussed in greater detail below, Lead Plaintiff and his counsel believe that the proposed Settlement meets the standards for preliminary approval and is in the best interests of the Settlement Class.  Accordingly, Lead Plaintiff respectfully requests that the Court to grant preliminary approval of the Settlement.  Defendants do not oppose Lead Plaintiff's request.

## II.    OVERVIEW OF THE LITIGATION

This is a putative class action against all Defendants under Section 10(b) of the Securities

Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and under Section 20(a) of the Exchange Act against the Individual Defendants.  The initial complaint in the Action was filed on March 23, 2020.  ECF No. 1.  By Order dated June 12, 2020, the Court appointed Insur Shamgunov and Elena Shamgunova Lead Plaintiffs[3]; and approved Lead Plaintiffs' selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel and the Kendall Law Group, PLLC ("Kendall Law Group") as Local Counsel for the putative class.  ECF No. 11. Following an extensive investigation, on August 11, 2020, Lead Plaintiffs filed their 98-page (371-paragraph) First Amended Complaint ("FAC").  ECF No. 26.

Among other things, the FAC alleged that Defendants made materially false and misleading statements about: (i) Exela's revenue visibility; (ii) its operating performance as measured by its Adjusted EBITDA; and (iii) the Company's undisclosed liability with respect to unrelated litigation that was then ongoing in the Delaware Court of Chancery ("Appraisal Action").[4]  On October 12, 2020, Defendants moved to dismiss the FAC (ECF No. 28), which, following full briefing and oral argument, the Court granted on June 24, 2021.  *See Shen v. Exela Techs., Inc.*, 2021 WL 2589584 (N.D. Tex. June 24, 2021) ("*Shen I*").

In response to *Shen I*, Lead Plaintiffs continued their investigation and sought to address the perceived pleading deficiencies the Court identified.  To that end, Plaintiffs filed their 118-page Second Amended Complaint ("SAC") on August 5, 2021.  ECF No 44.  On September 3,

---

[3] On December 20, 2022, Elena Shamgunova voluntarily dismissed her claim.  ECF Nos. 69-70. Following her voluntary dismissal, only one lead plaintiff represented the proposed class. Therefore, for clarity, hereinafter two defined terms are used depending on the timeframe: (1) "Lead Plaintiffs," which shall mean *both* Insur Shamgunov and Elena Shamgunova; and (2) "Lead Plaintiff," which shall mean *only* Insur Shamgunov.

[4] *See Manichaean Cap., LLC et al. v. SourceHOV Holdings, Inc. et al.*, 2020 WL 496606, (Del. Ch. Jan. 30, 2020).

2021, Defendants moved to dismiss the SAC, and following full briefing and oral argument, on January 21, 2022, the Court denied Defendants' motion. *See Shen v. Exela Techs., Inc.*, 2022 WL 198402 (N.D. Tex. Jan. 21, 2022) ("*Shen II*"). Following *Shen II*, the automatic stay of discovery under the Private Securities Litigation Reform Act of 1995 ("PSLRA") was lifted, and discovery began.

On September 8, 2022, the Parties held a virtual mediation session that was overseen by Mr. Melnick. Mr. Melnick is an experienced and well-respected mediator of complex disputes. No agreement was reached during the mediation, and the litigation continued, as did settlement negotiations facilitated by Mr. Melnick.

On April 14, 2023, Lead Plaintiff moved for class certification and sought appointment of Insur Shamgunov as class representative. ECF No. 81. Before Defendants' opposition to Plaintiffs' class certification motion was due, depositions of Lead Plaintiff, Exela's CAO, and Exela's CEO took place. On June 1, 2023, Mr. Melnick proposed, by way of a mediator's proposal, that the Parties settle the Action for a $5.0 million cash payment to the Settlement Class, in return for a release of the Settlement Class's claims against Defendants. On June 3, 2023, the Parties accepted Mr. Melnick's recommendation, and, following negotiation of the Stipulation and exhibits, this unopposed motion followed.

## III.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the court, and judicial approval must be obtained. The issue of whether a proposed settlement should be granted preliminary approval is a matter within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring

the pretrial settlement of class action lawsuits.  *See, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").   "[C]ourts are to adhere to a strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources—absent evidence weighing against approval." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010).   Thus, "[w]here the court finds that counsel have adequately represented the interests of the class, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Id.* at 649 (quoting *Cotton*, 559 F.2d at 1330); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) ("[T]he court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties.").   "In other words, in determining the fairness, reasonableness, and adequacy of a proposed settlement, neither the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute." *Maher*, 714 F.2d at 455 n.31.

"Approval of a class action settlement involves a two-step process." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).   "First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel." *Id.*   "Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.*

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."   As for Rule 23(e)(2)—which governs final approval—courts consider the factors below in determining whether a proposed settlement is

fair, reasonable, and adequate:

    (A)    have the class representatives and class counsel adequately represented the class;

    (B)    was the proposal negotiated at arm's length;

    (C)    is the relief provided for the class adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)    does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919); *see also*, *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (establishing Fifth Circuit factors used to evaluate the propriety of a class action settlement).[5]

---

[5] The *Reed* factors are: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed*, 703 F.2d at 172.

Thus, the traditional Fifth Circuit factors (some of which overlap with Rule 23(e)(2)) are still relevant.  *See, e.g.*, *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019) (considering "the criteria set forth in Fed. R. Civ. P. 23 (e)(2) as well as the Fifth Circuit's *Reed* factors").  As discussed below, application of each of the four factors specified in Rule 23(e)(2), and the relevant, non-duplicative *Reed* factors, demonstrates that the Settlement merits final approval.

### A.      Lead Plaintiff and His Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  Here, Lead Plaintiff and Plaintiff's Counsel have adequately represented the Settlement Class by zealously advocating on their behalf for over three years.   Lead Plaintiff produced documents, responded to written discovery (including interrogatories), underwent a deposition, and regularly consulted with Lead Counsel as to strategy and case developments.  *See* App. 112, ¶¶7-9, Ex. 3 (Declaration of Dr. Insur Shamgunov ("Shamgunov Decl.")); *see also Berger v. Compaq Computer Corp.,* 257 F.3d 475, 483 (5th Cir. 2001) (adequate class representatives in securities fraud actions are "informed and can demonstrate they are directing the litigation."); *Buettgen v. Harless*, 2011 WL 1938130, at *5 (N.D. Tex. May 19, 2011) (proposed class representatives adequate because they were informed of the progress of the case; were producing documents; and one of two proposed representatives had been deposed). Moreover, Lead Plaintiff's claims are typical of, and coextensive with, the claims of the Settlement Class, and he has no interests antagonistic thereto.   Indeed, given Lead Plaintiff's substantial investment in Exela common stock and Settlement Class Period losses, his interest in obtaining the largest possible recovery is plainly aligned with that of the other Settlement Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class

members share the common goal of maximizing recovery, there is no conflict of interest.").

Lead Plaintiff also retained counsel who are highly experienced in securities and class action litigation, with excellent track records. *See* App.114-145 Ex. 4 (GPM firm résumé); Ex. 5 (Kendall Law Group résumé). Before reaching the Settlement, Plaintiff's Counsel vigorously prosecuted Plaintiff's claims, which, entailed, *inter alia*: conducting an exhaustive investigation of Defendants; working with accounting and economic experts regarding falsity, damages, and loss causation issues; drafting the 98-page FAC and 118-page SAC, which incorporated the information gathered during Plaintiff's Counsel's investigation; opposing two motions to dismiss; drafting a motion for class certification; conducting a targeted review and analysis of the approximately 321,431 documents (totaling over 2.24 million pages) produced by Defendants; drafting a mediation statement addressing Defendants' arguments; taking and defending depositions; engaging in settlement discussions before, during, and after the mediation session before an experienced mediator, including protracted negotiations regarding the terms of the proposed Settlement; and drafting the initial versions of the Stipulation and exhibits. Lead Plaintiff and Plaintiff's Counsel have, therefore, adequately represented the Settlement Class. *See Hays v. Eaton Grp. Attorneys, LLC*, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) (representation adequate where proposed settlement was "negotiated by experienced, informed counsel . . .with substantial experience in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues").

### B. The Settlement Stems From Arm's Length Negotiations Between Experienced Counsel and There is No Fraud or Collusion

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Similarly, one of the *Reed* factors examines whether there was "fraud or collusion behind the settlement." *Reed*, 703 F.2d at 172. In conducting this analysis, courts recognize that "[t]he

involvement of 'an experienced and well-known' mediator 'is also a strong indicator of procedural fairness.'" *Jones v. Singing River Health Servs. Found.,* 865 F.3d 285, 295 (5th Cir. 2017); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (approving securities class action settlement that was "obtained through formal mediation before [an experienced mediator], which strongly suggests the settlement was not the result of improper dealings.").

As noted above, the proposed Settlement was achieved only after a mediation session followed by months of additional arm's length negotiations—overseen by a well-respected third-party mediator, Mr. Melnick.  As part of those discussions, Lead Counsel and Exela's Counsel prepared submissions concerning, among other things, their views of the Action's merits and damages on a class-wide basis.  The negotiations focused on heavily disputed issues, which were explored with substantial input from Mr. Melnick, and the Settlement is the result of a mediator's recommendation.  Thus, "[t]here is no evidence that fraud or collusion affected the settlement in any respect."  *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1248 (S.D. Fla. 2016); *see also In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive").

### C.    The Relief Provided for the Settlement Class is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court should consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).  This factor is satisfied where the settlement provides significant immediate relief for the class and where "a trial would be lengthy, burdensome, [] would consume tremendous time and resources of the Parties and the Court [and] any judgment would likely be

appealed." *Hays*, 2019 WL 427331, at *10.

### 1.   The Settlement Amount Supports Approval

The $5,000,000 Settlement Amount is well-within the range of reasonableness under the circumstances to warrant preliminary approval.  Plaintiffs' damages expert estimates that if Plaintiffs had ***fully prevailed*** on their Exchange Act claims at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' ***best case scenario***—the total ***maximum*** damages would be approximately $68 million.  Thus, the $5,000,000 Settlement Amount represents approximately 7.4% of the total ***maximum*** damages ***potentially*** available in this Action.  However, if only the damages that pertained to Exela's revenue visibility statements (*i.e.*, the statements the Court ruled were actionable in *Shen II*) were considered, the ***maximum*** recoverable damages would drop to $38.1 million.  Under such a scenario, a $5,000,000 recovery equates to 13.1% of total potential damages.  And, as discussed in section III.C.2 *infra*, even these reduced damages estimates were not without risk, as Defendants had very real disaggregation arguments that could have substantially reduced damages, if not eliminated them.  *Cf. In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict based on plaintiffs' expert's failure to disaggregate certain negative information).[6]

A recovery of 7.4-13.1% of maximum recoverable damages is well-within the range of reasonableness.  *Cf. Celeste Neely*, 2022 WL 17736350, at *7 (approving $3.25 million settlement,

---

[6] *See also*, *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 36 (2d Cir. 2009) ("to establish loss causation, *Dura* requires plaintiffs to disaggregate those losses caused by changed economic circumstances, 'changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events,' from disclosures of the truth behind the alleged misstatements." quoting *Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 343 (2005)).

noting "while the high end of the class's potential recovery was $42.7 million, the low end of the class's potential recovery was $0.00—with the balance of probabilities weighing in favor of recovery closer to the low end than to the high end.").  It is also well above the 3.8% - 5.2% median percentage recovery of total damages in securities class actions settlements with similar potential damages.  *See* App. 158-163 Ex. 6 ((Janeen McIntosh, Svetlana Starykh, and Edward Flores, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review, at 17, Fig. 18 (NERA Jan. 24, 2023) (median recovery for securities class actions that settled between December 2011 and December 2022 was 3.8% for cases with estimated damages between $50-$99 million, and 5.2% for those with estimated damages of $20-$49 million)); *see also*, *IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities class action settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years").

Thus, the amount recovered by Lead Plaintiff supports preliminary approval.

### 2.     The Cost, Risk, and Delay of Trial and Appeal Support Approval

In evaluating a settlement under Rule 23(e)(2)(C), courts also consider "the costs, risks, and delay of trial and appeal."  Similarly, the second *Reed* factor instructs the Court to consider "the complexity, expense, and likely duration of the litigation."  *Reed*, 703 F.2d at 172.  "Even where the claims are not particularly complex, approval of settlement is favored where settling avoids the risks and burdens of potentially protracted litigation."  *Hays*, 2019 WL 427331, at *10.

Here, the claims are complex and there is no question that continued litigation would have been costly, risky, and protracted.  "It is common knowledge that class action suits have a well-deserved reputation as being most complex."  *Cotton*, 559 F.2d at 1331.  Moreover, courts have repeatedly recognized that securities litigation "is a highly technical and specialized area of the

law" and that claims brought under the federal securities laws are "extremely complex." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. CIV. 6:12-1609, 2015 WL 965693, at *7 (W.D. La. Mar. 3, 2015). Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). And, these challenges are especially acute in the Fifth Circuit. *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009) ("Although counsel faces risks in litigating any securities class action post-PSLRA, counsel faces even more challenges in the Fifth Circuit."). Given the "notorious complexity" of securities class actions, settlement is appropriate to "circumvent the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

The motion to dismiss process highlighted many of the risks of the Action, including the potential to recover nothing. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("[t]he court needs to look no further than its own order dismissing the . . . litigation to assess the risks involved."). While the Court did allow the case to proceed, it only explicitly ruled for Lead Plaintiff on one of his three theories of liability (*i.e.*, the revenue visibility claim). *See Shen II*, 2022 WL 198402, at *9 ("the Court expresses no view about whether plaintiffs have rectified the deficiencies in their other theories, which the court rejected in *Shen I*."). Thus, considerable uncertainty remained as to whether Lead Plaintiff could prevail on (at least) two-thirds of his case at summary judgment and trial. *See Shen I*, 2021 WL 2589584 at *17 (holding that "at all times, Exela told the whole truth and nothing but about how it was calculating EBITDA and adjusted EBITDA.").

Nor did the win on the revenue visibility theory guarantee a recovery. Lead Plaintiff would

still have to prove that it was the disclosure of the alleged securities violations that caused him to suffer loss, as opposed to unrelated matters. *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 255 (5th Cir. 2009). This posed significant challenges because Lead Plaintiff would have to demonstrate that it was the revelation that Defendants **lacked visibility** into Exela's revenue that caused the drop in Exela's share price, not ***the reduction in revenue guidance itself*** (or any other bad news revealed at the time). *See Celeste Neely*, 2022 WL 17736350, at *6 (weighing towards settlement was the court's consideration that "it is likely that Intrusion would vigorously dispute the connection between its alleged wrongdoing and the drop in its stock price."). Such "disaggregation" issues are particularly potent here because some of the SAC's alleged corrective disclosures revealed news relevant to more than one of Lead Plaintiff's theories. *See* ECF No. 44, ¶¶339-340, 342-43. Defenses to loss causation and damages pose substantial risks to a plaintiff's potential recovery at trial because each side would have presented expert testimony on the issue. "One cannot predict which expert's testimony or methodology a jury would find reliable. If the jury agreed with Defendants, Plaintiffs would have had their damages significantly reduced or their claims fail as a matter of law." *Buettgen v. Harless,* 2013 WL 12303143, at *8 (N.D. Tex. Nov. 13, 2013); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Finally, given, among other the things, the extensive discovery necessary to prove the case, and the significant expert testimony that would have been needed to establish liability, loss causation and damages, there is no doubt that continued prosecution of the Action would have been both time intensive and costly. *See In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at *11 (E.D. La. Mar. 2, 2009) (noting continued litigation, including through discovery, class

certification, trial and appeals, "would consume substantial judicial and attorney time and resources, and avoiding such costs weighs in favor of settlement").

The above uncertainties pose a significant risk that continued litigation would have yielded a smaller recovery—or no recovery at all—several years from now.  In contrast, the $5,000,000 Settlement provides a favorable, immediate recovery and eliminates all risk, delay, and expense of continued litigation.  *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("[s]ecurities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case").

### 3.      Other Factors Established by Rule 23(e)(2)(C) Support Approval

Under Rule 23(e)(2)(C), courts should consider whether the relief provided is adequate in light of (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (2) "the terms of any proposed award of attorneys' fees, including timing of payment," and (3) "any agreement required to be identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  All three factors support approval.

*First*, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund.  Here, Epiq Class Action & Claims Solutions, Inc. ("Epiq")—the Claims Administrator selected by Lead Counsel subject to Court approval—will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or ask the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval.[7]  The proposed manner of

---

[7] Epiq has substantial experience serving as the claims administrator in securities class action cases

processing Claims is standard in securities class actions because it is effective and necessary insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8]  *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 233-34, 245 (E.D. Mich. 2016) (approving settlement with similar distribution process), *aff'd*, No. 1601821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

**Second**, as disclosed in the Notice and Postcard Notice, Lead Counsel will apply for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate Plaintiffs' Counsel for services rendered on behalf of the Settlement Class.  A proposed attorneys' fees of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  It also consistent with awards in similar complex class action cases.  *See, e.g.*, *Woodforest*, 2019 WL 387409, at *4 ("The fee represents one-third of the . . . settlement fund, which is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Halliburton*, 2018 WL 1942227, at *12 ("The 33⅓% requested by Class Counsel is within the range of typical awards, and is not the highest fee awarded in securities class action cases.").  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement cannot be terminated based on any ruling over attorneys' fees.  *See* App. 23 (Stipulation ¶16).

**Third**, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the

---

and was selected by Lead Counsel following an RFP process in which it was the low bidder.  *See* App. 164-171, Ex. 7 (Epiq securities settlement experience).

[8] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* App. 22 (Stipulation ¶13).

Settlement if Settlement Class Members, who collectively purchased a specific number of shares of the Company's common stock, request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and does not erode the fairness of the Settlement. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *5 (approving settlement with similar confidential agreement); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) ("opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest").

    **D.**    **All Settlement Class Members Are Treated Equitably**

Rule 23(e)(2)(D) requires courts to evaluate whether settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Under the proposed Plan of Allocation,[9] each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund. Because the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class member, segment of the Settlement Class, or to Lead Plaintiff, this factor supports preliminary approval of the proposed Settlement. *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *15 (W.D. La. Mar. 3, 2015) (approving plan of allocation where class members receive a *pro rata* share of the funds based on calculation of recognized losses).[10]

    **E.**    **The Remaining *Reed* Factors Warrant Preliminary Approval**

        **1.**    **The Stage of the Proceedings and the Amount of Discovery Completed Support Approval**

The third *Reed* factor is "the stage of the proceedings and the amount of discovery

---

[9] The proposed Plan of Allocation is set forth at pages 13-17 of the Notice, which is Exhibit A-1 to Exhibit 2 (the Stipulation). *See* App. 70-74.

[10] Pursuant to the PSLRA, Lead Plaintiff may separately seek reimbursement of costs (including lost wages) incurred as a result of his representation of the Settlement Class. *See* 15 U.S.C. §78u-4(a)(4).

completed." *Reed*, 703 F.2d at 172.  Under this factor, the inquiry is whether the plaintiff has a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement.  *Cotton*, 559 F.2d at 1332.

As discussed above, Lead Counsel conducted a thorough investigation; consulted with experts in the fields of accounting, loss causation, and damages; drafted and filed two comprehensive amended complaints; briefed and argued two motions to dismiss; engaged in substantial discovery; filed a motion for class certification, including an expert report on market efficiency; and participated in a lengthy, hard-fought mediation process.  Thus, by the time settlement discussions proved fruitful, Lead Plaintiff and his counsel had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).[11]

### 2.    The Probability of Plaintiff's Success on the Merits and The Range of Possible Recovery

"A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172.  Courts also consider the range of possible recovery in the action.  *Id*.  "In ascertaining whether a settlement falls within the range of possible approval, courts will compare the settlement amount to the relief the class could expect to recover at trial, *i.e.*, the strength of the plaintiff's case." *Halliburton*, 2018 WL 1942227, at *5.  Courts, however, are admonished against trying cases in

---

[11] Although not the case here, even in cases where "very little formal discovery was conducted" and where "there is no voluminous record in the case," the Fifth Circuit has declared that "the lack of such does not compel the conclusion that insufficient discovery was conducted."  *Id*.; *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (affirming approval of securities class action settlement where there had been no "formal discovery" but "class counsel had conducted informal discovery by hiring private investigators and experts," the settlement compared favorable to similar settlements, and the parties were "well informed about the merits of their respective positions").

evaluating the propriety of a settlement because "the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172. Indeed, "the trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained." *Cotton*, 559 F.2d at 1330.

As noted in § III.C.2, *supra*, in every complex case of this kind, plaintiffs face formidable obstacles to recovery at trial—both on liability and damages. And while Lead Plaintiff believes he would have succeeded, and that his allegations would be supported by the evidence, he also recognizes that he faced significant hurdles to proving liability and damages at trial. *See id.* "If litigation were to proceed, the issues would be hotly disputed by the parties. Litigation relating to such fact-intensive and difficult-to-prove claims would thus be extraordinarily complicated and time consuming, and require expert testimony." *Schwartz v. TCU Corp.*, 2005 WL 3148350, at *18 (N.D. Tex. Nov. 8, 2005). Consequently, "[t]here was a very real risk that Plaintiffs would not have convinced a jury that the alleged misrepresentations and omissions were materially false or misleading when made or that damages related to them." *Buettgen v. Harless*, 2013 WL 12303143, at *8 (N.D. Tex. Nov. 13, 2013).

Even if Plaintiffs could establish liability at trial, and prove damages, "they still could expect a vigorous appeal by Defendants and an accompanying delay in the receipt of any relief," *Schwartz*, 2005 WL 3148350, at *19. The prospect of appeal here is not speculative as Defendants appealed unfavorable rulings they faced in the Appraisal Action. *See SourceHOV Holdings, Inc. v. Manichaean Cap., LLC*, 246 A.3d 139 (Del. 2021) (affirming Delaware Court of Chancery ruling against SourceHOV Holdings, Inc.). But unlike the Appraisal Action, there is no guarantee that Lead Plaintiff here would necessarily prevail at the trial court, or on any appeal. *See*, *e.g.*, *Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with

prejudice of securities class action against Bernard Ebbers and WorldCom that resulted in a $685 million write-off of accounts receivable and a criminal conviction).

### 3. The Opinions of Lead Counsel, Lead Plaintiff, and Absent Settlement Class Members Support Approval

Finally, courts consider "the opinions of the class counsel, class representatives, and absent class members" in determining the propriety of a settlement. *Reed*, 703 F.2d at 172. "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Class Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Schwartz*, 2005 WL 3148350, at *21.

Here, Plaintiff's Counsel have considerable experience in complex class action and securities litigation, are well-informed of the strengths and weakness of the case, and believe the Settlement merits approval. *See* App. 114-145 Ex. 4 (firm résumé). Lead Plaintiff also supports the proposed Settlement. Accordingly, this factor favors preliminary approval.

For all the foregoing reasons, the proposed Settlement falls within the range of what could be found to be fair, reasonable, and adequate and warrants this Court's preliminary approval.

## IV. THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE

### A. The Method of Notice is Adequate

In connection with a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Rule 23(c)(2) and Rule 23(e). *See Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 744 (E.D. Tex. 2007), *stay granted, order amended sub nom.*, 507 F.3d 295 (5th Cir. 2007); *Schwartz*, 2005 WL 3148350, at *10. Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e) is less specific, requiring only that notice of the

proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal."

Here, Lead Counsel propose to mail, by first-class mail, individual copies of the Postcard Notice (App.96-97 (Exhibit A-4 to the Stipulation)) to all potential Settlement Class Members who can be identified with reasonable effort, as well as to brokerage firms and others who regularly act as nominees for beneficial purchasers of stock. Along with the mailing of the Postcard Notice, copies of the Notice (Exhibit A-1 to the Stipulation) and the Claim Form (Exhibit A-2 to the Stipulation) will be posted on a website to be developed for the Settlement (*i.e.*, www.ExelaSecuritiesLitigation.com (the "Settlement Website")). From the Settlement Website, potential Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form. No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Exhibit A-3 to the Stipulation) will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

In securities class actions, it is "more than sufficient" to use "a combination of a mailed postcard directing class members to a more detailed online notice." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (citing cases); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6 (D. Md. May 19, 2010) (finding that a combination of postcard notices, summary notices, and a long-form notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements.").[12]  Thus, the combination of the mailed Postcard, published Summary

---

[12] With an estimated Settlement Class size of up to 45,000 shareholders, dissemination of the Notice and Proof of Claim form via U.S. Mail would be far more expensive than the Postcard Notice, and multiple claims administrators have expressed to Lead Counsel that there is no material

Notice, and online access to the Notice provides the best notice practicable under the circumstances.

### B.    The Content of the Notice is Adequate

The proposed notice program also satisfies the requirements of Rule 23(c)(2)(B) by setting forth: (i) the nature of the action; (ii) the Settlement Class definition; (iii) a description of the claims and defenses; (iv) the ability of Settlement Class Members to enter an appearance through counsel; (v) the Settlement Class Member's ability to be excluded from the Settlement Class; and (vi) the binding effect of a Settlement Class judgment.  Additionally, the notice program satisfies the PSLRA's notice requirements, 15 U.S.C. § 78u-4(a)(7), by setting forth: (i) a cover page summarizing the Notice information; (ii) a statement of plaintiff recovery, and the estimated recovery per damaged share; (iii) a statement of potential outcomes of the case; (iv) a statement of attorneys' fees or costs sought; (v) contact information for counsel; and (vi) the reasons for settlement.  Finally, the notice program will provide the date, time, and location of the Settlement Hearing and the process for submitting an objection to the Settlement.

Courts routinely find that comparable notice programs meet the requirements of due process, Rule 23 and the PSLRA.  *See In re Enron Corp.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003); *In re OCA, Inc. Secs. & Deriv. Litig.*, CIV A 05-2165, 2008 WL 4681369, at *14-16 (E.D. La. Oct. 17, 2008); *W. Wash. Laborers-Employers Pension Tr. v. Panera Bread Co.*, 2011 WL 720060, at *2-3 (E.D. Mo. Feb. 22, 2011).  Accordingly, Lead Plaintiff respectfully requests that the Court approve the form and content of the proposed notice program.  *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977) (notice must contain "information that a reasonable person would consider to be material in making an informed,

---

difference in response rates between the two notice methods.

intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment."); *Vaughn*, 627 F. Supp. 2d at 744.

## V.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

Class actions may be certified for the purpose of settlement as long as the class meets the certification requirements under Rules 23(a) and (b)(3).[13]  Such is the case here.[14]

First, numerosity is satisfied here under Rule 23(a)(1) because there are likely thousands of members of the Settlement Class.  While the exact number of Settlement Class Members is presently unknown, Exela had around 150.9 million shares of common stock outstanding during the Settlement Class Period.  *See* ECF No. 83 Ex. A (Expert Report of Dr. Adam Werner, ("Werner Report")[15] ¶105.  Moreover, the average weekly trading volume during the Settlement Class Period was around 1.57 million shares.  Werner Report ¶26, n.32.  Thus, the Settlement Class is likely so large that joinder of all class members is impracticable.  *See Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 445 (W.D. Tex. 2019) (granting class certification, noting, "although the exact number of class members is unknown" because the company had more than 50 million shares outstanding during the Class Period, and the average weekly trading volume was approximately 2.7 million shares, certification was proper); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th

---

[13] Defendants do not object to certification of the Settlement Class for settlement purposes only. Defendants have reserved their rights to challenge certification if the Settlement does not become Final.

[14] Prior to settlement, Lead Plaintiff had filed his motion for class certification.  *See* ECF Nos. 81-83.  The memorandum of law in support of Lead Plaintiff's motion (ECF No. 82) provides a full recitation of how the Settlement Class meets the Rule 23 requirements.  In the interest of brevity, Lead Plaintiff respectfully refers the Court to that memorandum for a full briefing of these requirements and how the Settlement Class meets them.

[15] The Report of Dr. Werner was previously filed as Exhibit A to the Declaration of Kara Wolke in support of Plaintiffs' motion for class certification (ECF No. 83).

Cir. 1981) ("The [numerosity] prerequisite . . . is generally assumed to have been met in class action suits involving nationally traded securities.").[16]

Second, commonality is satisfied under Rule 23(a)(2) because the proposed class representative shares at least one question of fact or law with the claims of the prospective class, including, without limitation, whether: (i) Defendants' statements or omissions violated the Exchange Act; (ii) Defendants' statements and omissions were materially false and/or misleading; (iii) the market price of Exela's securities was artificially inflated during the Settlement Class Period due to Defendants' alleged misrepresentations and omissions and, if so, to what extent; (iv) Defendants acted with scienter; and (v) members of the Settlement Class have sustained damages as a result of the alleged misconduct, and, if so, the proper measure thereof. *See EZCORP*, 330 F.R.D. at 445-46 (noting that "Plaintiff alleges Defendants made uniform representations and omissions to the class," which "implicate multiple questions common to the class").[17]

Third, typicality is satisfied under Rule 23(a)(3) because Plaintiffs' claims and those of the Settlement Class arise from the same alleged conduct by Defendants. *See EZCORP*, 330 F.R.D. at 446 (noting that "[a]ll putative class members, including Plaintiff, allegedly purchased EZCORP stock during the class period at prices inflated by Defendants' misstatements and omissions").

---

[16] *See also, In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 564 (E.D. Tex. 2005) ("Any class composed of buyers and sellers of a nationally traded security during a period in which hundreds or thousands or millions of shares of the security were traded is necessarily so numerous that joinder of all members is impracticable").

[17] In securities fraud cases, commonality is satisfied when claims are based on defendants' uniform misrepresentations to the investing public in SEC filings and press releases, these material misrepresentations and omissions artificially inflated the market price of company securities, and injured each class member who purchased the inflated securities. *See Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303 (S.D. Tex. Nov. 13, 2019), *report and recommendation adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019) (class certification granted in a § 10(b) case).

Fourth, as set forth above, adequacy is satisfied under Rule 23(a)(4) because there are "no conflicts between [Lead] Plaintiff and the members of the proposed class," and Lead Plaintiff has "demonstrated he is both willing and able to vigorously prosecute the interests of the class through qualified counsel." *Id.* at 446-47; *see also* App. 111-112 (Shamgunov Decl.) ¶¶2-3; 5-7.

Additionally, predominance and superiority are satisfied under Rule 23(b)(3). "Predominance is a test readily met in certain cases alleging securities fraud." *Amchem, Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). And, in 10(b) cases, the elements of falsity, materiality, scienter, and loss causation are all subject to class-wide proof.[18]

Finally, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[I]ndividual class members have little interest in controlling the prosecution because the cost of bringing individual suits to seek recovery would in most cases outweigh the recovery obtained"; "this forum is as desirable a forum as any given the geographic dispersal of investors and [Exela's] headquarters in [Irving], Texas"; and given that the Parties have already reached a settlement, "this putative class action presents no likely management difficulties." *See EZCORP*, 330 F.R.D. at 451-52.

Accordingly, class certification for the purposes of settlement is appropriate.

## VI.   PROPOSED SETTLEMENT SCHEDULE

Lead Plaintiff respectfully proposes the following procedural schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

---

[18] *See, e.g.*, *Amgen*, 133 S. Ct. at 1190 (materiality "is question common to all members of the class"); *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988) (reliance); *Halliburton I*, 131 S. Ct. 2185-86 (loss causation); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 687 (5th Cir. 2015) (damages); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *13 (W.D. La. Mar. 3, 2015) ("the issues of falsity [and] materiality . . . are common to all Class members").

| | |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") (Preliminary Approval Order ¶ 7(b)) | 25 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice (Preliminary Approval Order ¶ 7(d)) | 10 business days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses (Preliminary Approval Order ¶ 26) | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections (Preliminary Approval Order ¶ 17) | 21 calendar days prior to the Settlement Hearing |
| Deadline for requesting exclusion (Preliminary Approval Order ¶ 13) | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 26) | 7 calendar days prior to the Settlement Hearing |
| Settlement Fairness Hearing (Preliminary Approval Order ¶ 5) | At least 100 days after entry of the Preliminary Approval Order |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 10) | Postmarked 120 calendar days from the Notice Date |

The Court need only schedule a Settlement Hearing at least 100 days after granting preliminary approval; all other deadlines flow from the date of the Settlement Hearing and the date of entry of the Preliminary Approval Order. If this schedule is not convenient for the Court, Lead Plaintiff respectfully requests that the Court use at least the same or greater intervals between each event listed in the proposed schedule to provide all Parties sufficient time to comply with the proposed Preliminary Approval Order.

## VII.   CONCLUSION

For these reasons, Lead Plaintiff respectfully requests that the Court grant the unopposed motion and enter the proposed Preliminary Approval Order.

DATED: July 27, 2023

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Kara M. Wolke*
Kara M. Wolke (*pro hac vice*)
kwolke@glancylaw.com
Raymond D. Sulentic (*pro hac vice*)
rsulentic@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Lead Counsel for Lead Plaintiff and the Proposed Settlement Class*

**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015

*Local Counsel for Lead Plaintiff and the Proposed Settlement Class*

## CERTIFICATE OF CONFERENCE

Having reached agreement on all outstanding issues, on July 27, 2023, the Parties executed the Stipulation and Agreement of Settlement. On July 27, 2023, the Parties met and conferred concerning the finalization of the Lead Plaintiff's Motion for: (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice to the Settlement Class.

*/s/ Kara M. Wolke*
Kara M. Wolke

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of July, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Kara M. Wolke*_____
Kara M. Wolke (admitted *pro hac vice*)