**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA <br><br> Defendants. | Case No. 3:20-cv-00691-D |

**APPENDIX IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF <u>NOTICE TO THE SETTLEMENT CLASS</u>**

Lead Plaintiff Insur Shamgunov ("Lead Plaintiff") submits, pursuant to Rule 7.1(i) of the Local Rules for the Northern District of Texas, this appendix in support of Plaintiffs' Unopposed Motion for: (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice to the Settlement Class.

1

DATED: July 27, 2023                **GLANCY PRONGAY & MURRAY LLP**


By:   */s/ Kara M. Wolke*
Kara M. Wolke (admitted *pro hac vice*)
Raymond D. Sulentic (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: kwolke@glancylaw.com
        rsulentic@glancylaw.com

*Lead Counsel for Lead Plaintiff Insur Shamgunov and the Proposed Settlement Class*

**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone: (214) 744-3000
Email: jkendall@kendalllawgroup.com

*Local Counsel for Lead Plaintiff Insur Shamgunov and the Proposed Settlement Class*

2

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Kara M. Wolke
Kara M. Wolke (admitted *pro hac vice*)

**INDEX TO APPENDIX**

| Exhibit | Document | Page No. |
|---|---|---|
| 1 | Declaration of Raymond D. Sulentic | 2-3 |
| **STIPULATION OF SETTLEMENT AND ACCOMPANYING EXHIBITS** | | |
| 2 | Stipulation and Agreement of Settlement dated July 27, 2023 | 4-41 |
| Ex. A to Ex. 2 | [Proposed] Order Preliminarily Approving Settlement and Providing for Notice | 42-56 |
| Ex. A-1 to Ex. 2 | Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses | 57-80 |
| Ex. A-2 to Ex. 2 | Proof of Claim Form and Release | 81-91 |
| Ex. A-3 to Ex. 2 | Summary Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses | 92-95 |
| Ex. A-4 to Ex. 2 | Postcard Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses | 96-97 |
| Ex. B to Ex. 2 | Judgment Approving Class Action Settlement | 98-108 |
| **OTHER** | | |
| 3 | Declaration of Dr. Insur Shamgunov | 109-113 |
| 4 | Glancy Prongay & Murray LLP Résumé | 114-145 |
| 5 | Kendall Law Group PLLC Résumé | 146-157 |
| 6 | Excerpts from Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) | 158-163 |
| 7 | Epiq Class Action & Claims Solutions, Inc. Résumé | 164-171 |

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA<br><br>Defendants. | Case No. 3:20-cv-00691-D |

**DECLARATION OF RAYMOND D. SULENTIC IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION**
**SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III)**
**APPROVAL OF  NOTICE TO THE SETTLEMENT CLASS**

I, Raymond D. Sulentic, hereby declare:

1.      I am an attorney with the law firm Glancy Prongay & Murray LLP, counsel for Plaintiff Insur Shamgunov ("Plaintiff") and Lead Counsel for the Class in the above-captioned action. I am an attorney duly licensed to practice law in the State of California and I am admitted *pro hac vice* in this action. I am over 18 years of age and am fully competent in all respects to make this Declaration. I have personal knowledge of the facts set forth herein, or they are known to me in my capacity as an attorney with the Glancy Prongay & Murray LLP. If called upon to testify, I could and would do so truthfully and accurately.

2.      The Appendix in Support of Plaintiffs' Unopposed Motion For: (I) Preliminary Approval of Class Action Settlement; (II) Certification of The Settlement Class; and (III) Approval of Notice to The Settlement Class ("the Appendix") contains a true and correct copy of each document listed in the index to the Appendix.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct. Executed this 26th day of July, 2023.

/s/ *Raymond D. Sulentic*
Raymond D. Sulentic

1

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA <br><br> Defendants. | Case No. 3:20-cv-00691-D |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated as of July 27, 2023 (the "Stipulation") is entered into between (a) lead plaintiff Insur Shamgunov ("Lead Plaintiff"), on behalf of himself and the Settlement Class (defined below); and (b) defendants Exela Technologies, Inc. ("Exela" or the "Company"), and Ronald Cogburn, Parvinder Chadha and James G. Reynolds (collectively, the "Individual Defendants"; and, together with Exela, the "Defendants"; and together with Lead Plaintiff, the "Parties"), and embodies the terms and conditions of the settlement of the above-captioned action (the "Action").[1]  Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully, finally and forever compromise, settle, release, resolve, and dismiss with prejudice the Action and all claims asserted therein against Defendants.

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶ 1 herein.

Page 5

WHEREAS:

A.     On March 23, 2020, a class action complaint was filed in the United States District Court for the Northern District of Texas ("the Court"), styled *Bo Shen v. Exela Technologies Inc. et al.*, 3:20-cv-00691-D.  ECF No. 1.

B.     On May 22, 2020, Insur Shamgunov and Elena Shamgunova moved to be appointed lead plaintiffs.  ECF No. 8.  By Order dated June 12, 2020, the Court appointed Insur Shamgunov and Elena Shamgunova Lead Plaintiffs[2]; and approved Lead Plaintiffs' selection of Glancy Prongay & Murray LLP as Lead Counsel for the putative class.  ECF No. 11.

C.     On August 11, 2020, Lead Plaintiffs filed and served their 98-page (371-paragraph) Amended Complaint (the "Amended Complaint") asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act.  ECF No. 26.  Among other things, the Amended Complaint alleged that Defendants made materially false and misleading statements about: (1) Exela's revenue visibility; (2) its operating performance as measured by its Adjusted EBITDA; and (3) the Company's undisclosed liability related to the Appraisal Action.[3]  According to the Amended Complaint, the alleged misrepresentations proximately caused class member losses when the truth was revealed over a series of partial corrective disclosures throughout the class period.

---

[2] On December 20, 2022, Elena Shamgunova later voluntarily dismissed her claim.  ECF Nos. 69-70.  Following her December 20, 2022 voluntary dismissal, only one lead plaintiff represented the proposed class.  Therefore, for clarity, hereinafter two defined terms are used depending on the timeframe: (1) "Lead Plaintiffs", which shall mean *both* Insur Shamgunov and Elena Shamgunova; and (2) "Lead Plaintiff", which shall mean *only* Insur Shamgunov.

[3] "Appraisal Action" refers to the underlying proceedings discussed in the opinion of *Manichaean Cap., LLC et al. v. SourceHOV Holdings, Inc. et al.*, 2020 WL 496606, (Del. Ch. Jan. 30, 2020).

2

D.      On October 12, 2020, Defendants moved to dismiss the Amended Complaint.  ECF No. 26.  Roughly two months later, Lead Plaintiffs opposed Defendants' motion to dismiss (ECF No. 32) and, on January 21, 2021, Defendants served their reply papers (ECF No. 39).

E.      On May 20, 2021, Judge Sydney Fitzwater heard in-person oral arguments by the Parties.

F.      On June 24, 2021, the Court granted Defendants' motion to dismiss in a written opinion.  ECF No. 43; *Bo Shen v. Exela Techs., Inc.*, No. 3:20-CV-0691-D, 2021 WL 2589584, at (N.D. Tex. June 24, 2021).

G.      Following dismissal of the Amended Complaint, Lead Plaintiffs sought to address the perceived pleading deficiencies identified by the Court.  To that end, following additional investigation and analysis, Lead Plaintiffs filed their 118-page (394-paragraph) Second Amended Complaint ("Complaint" or "SAC") on August 5, 2021.  ECF No. 44.

H.      On September 3, 2021, Defendants moved to dismiss the SAC (ECF No. 49).  Lead Plaintiffs filed their opposition on October 13, 2021 (ECF No. 52), and on October 28, 2021, Defendants filed their reply.  ECF No. 55.

I.      On January 19, 2022, Judge Fitzwater heard virtual oral arguments by the Parties on Defendants' motion to dismiss the SAC.

J.      On January 21, 2022, the Court denied Defendants' motion to dismiss in its entirety.  ECF No. 59; *Shen v. Exela Techs., Inc.*, No. 3:20-CV-0691-D, 2022 WL 198402 (N.D. Tex. Jan. 21, 2022).

K.      Defendants answered the SAC on February 11, 2022.  ECF No. 61.

L.      Following the denial of Defendants' motion to dismiss Plaintiffs' SAC, and negotiation over the scope and manner of document production and the treatment of ESI, the

3

Parties began discovery pursuant to the Court's Protective Order dated April 27, 2022.  ECF Nos. 64-67.

M.    On September 8, 2022, the Parties held a virtual mediation session that was overseen by a well-respected mediator of complex actions, Jed Melnick, Esq. of JAMS.  No agreement was reached during the mediation, and discovery continued, as did negotiations facilitated by Mr. Melnick over a potential settlement.

N.    During February through April 2023, the Parties stipulated to continue the then-scheduled trial date (ECF Nos. 72, 78, 80), following several additional document productions by Defendants.  In total, Defendants produced approximately 321,431 documents (totaling over 2.24 million pages)—which consisted of, *inter alia*, documents related to all three major theories of liability in the case, and Defendants' insurance policies.

O.    On April 14, 2023, Lead Plaintiffs moved for class certification and sought appointment of Insur Shamgunov as the class representative.  ECF No. 81.

P.    On May 12, 2023, counsel for Defendants deposed Lead Plaintiff.  On March 16, 2023, Defendants deposed Lead Plaintiff's class certification expert.

Q.    Between May 24, 2023 and June 1, 2023, Lead Counsel deposed Exela's Chief Accounting Officer and Chief Executive Officer.  Roughly six more depositions of current and former Exela executives were scheduled over the following three weeks.

R.    During the course of discovery, the Parties continued to work towards a settlement with the assistance of Mr. Melnick.  These negotiations culminated in a recommendation by Mr. Melnick that the Parties settle the Action for a $5.0 million cash payment to the Settlement Class, in return for a release of the Settlement Class's claims against Defendants.  On June 3, 2023, the Parties accepted Mr. Melnick's recommendation.

4

S.      This Stipulation (together with the exhibits hereto) reflects the final and binding agreement between the Parties.

T.      Based upon their investigation, prosecution and mediation of the case, Lead Plaintiff and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Lead Plaintiff and the other members of the Settlement Class, and in their best interests.  Based on Lead Plaintiff's direct oversight of the prosecution of this matter and with the advice of his counsel, Lead Plaintiff has agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering, among other things: (a) the substantial financial benefit that Lead Plaintiff and the other members of the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

U.      This Stipulation constitutes a compromise of matters that are in dispute between the Parties.  Defendants are entering into this Stipulation solely to eliminate the uncertainty, burden and expense of further protracted litigation.  Each of the Defendants denies any wrongdoing, and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted.  The Defendants expressly deny that Lead Plaintiff has asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing or damages whatsoever.  Similarly, this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Lead Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.  Each of the Parties recognizes and

5

acknowledges, however, that the Action has been initiated, filed and prosecuted by Lead Plaintiff in good faith and defended by Defendants in good faith, that the Action is being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, adequate and reasonable.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among Lead Plaintiff (individually and on behalf of all other members of the Settlement Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiff's Claims as against the Defendants' Releasees and all Released Defendants' Claims as against the Plaintiff's Releasees shall be settled and released, upon and subject to the terms and conditions set forth below.

## DEFINITIONS

1.      As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

(a)      "Action" means the consolidated securities class action in the matter styled *Shen v. Exela Technologies, Inc., et al.*, Case No. 3:20-cv-00691-D, and includes all actions consolidated therein.

(b)      "Alternate Judgment" means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Stipulation.

(c)      "Appraisal Action" refers to the underlying proceedings discussed in the opinion of *Manichaean Cap., LLC et al. v. SourceHOV Holdings, Inc. et al.*, 2020 WL 496606, (Del. Ch. Jan. 30, 2020).

(d)      "Authorized Claimant" means a Settlement Class Member who submits a Proof of Claim Form to the Claims Administrator that is approved by the Court for payment from

6

the Net Settlement Fund.

(e)    "Claim" means a Proof of Claim Form submitted to the Claims Administrator.

(f)    "Claim Form" or "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, that a Claimant or Settlement Class Member must complete and submit should that Claimant or Settlement Class Member seek to share in a distribution of the Net Settlement Fund.

(g)    "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Settlement Fund.

(h)    "Claims Administrator" means the firm retained by Lead Plaintiff and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

(i)    "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(j)    "Complaint" or "SAC" means the Second Amended Class Action Complaint filed in the Action by Lead Plaintiffs on August 5, 2021.

(k)    "Court" means the United States District Court for the Northern District of Texas.

(l)    "Defendants" means Exela and the Individual Defendants.

(m)    "Defendants' Counsel" means Norton Rose Fulbright US LLP.

(n)    "Defendants' Releasees" means Defendants and their current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns,

7

assignees, employees, insurers, and attorneys, in their capacities as such.

(o)    "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in ¶ 31 of this Stipulation have been met and have occurred or have been waived.

(p)    "Escrow Account" means an account maintained at The Huntington National Bank wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

(q)    "Escrow Agent" means The Huntington National Bank.

(r)    "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

(s)    "Exela" means Exela Technologies, Inc.

(t)    "Final," with respect to the Judgment or, if applicable, the Alternate Judgment, or any other court order, means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses, or (ii) the plan of allocation of Settlement proceeds (as

8

submitted or subsequently modified), shall not in any way delay or preclude a judgment from becoming Final.

(u) "Immediate Family" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law. As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

(v) "Individual Defendants" means Ronald Cogburn, Parvinder Chadha and James G. Reynolds.

(w) "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court approving the Settlement.

(x) "Lead Counsel" means the law firm of Glancy Prongay & Murray LLP.

(y) "Lead Plaintiff means Insur Shamgunov.

(z) "Lead Plaintiffs" means Insur Shamgunov and Elena Shamgunova.

(aa) "Liaison Counsel" means Kendall Law Group PLLC.

(bb) "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting and settling the Action (which may include the costs and expenses of Lead Plaintiff directly related to their representation of the Settlement Class), for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund.

(cc) "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court.

(dd) "Notice" means the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for

9

an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which shall be made available online at a website maintained by the Claims Administrator or mailed to Settlement Class Members upon request.

(ee)    "Notice and Administration Costs" means the costs, fees and expenses that are incurred by the Claims Administrator and/or Lead Counsel in connection with: (i) providing notices to the Settlement Class; and (ii) administering the Settlement, including but not limited to the Claims process, as well as the costs, fees and expenses incurred in connection with the Escrow Account.

(ff)    "Officer" means any officer as that term is defined in Securities and Exchange Act Rule 16a-1(f).

(gg)    "Parties" means Defendants and Lead Plaintiff, on behalf of himself and the Settlement Class.

(hh)    "Plaintiff's Counsel" means Lead Counsel and Liaison Counsel.

(ii)    "Plaintiff's Releasees" means Lead Plaintiff, all other plaintiffs in the Action, their respective attorneys, and all other Settlement Class Members, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

(jj)    "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice.

(kk)    "Postcard Notice" means the Postcard Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 4 to Exhibit A, which is to be mailed

10

to Settlement Class Members.

(ll)    "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Settlement Class.

(mm)  "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended.

(nn)    "Released Claims" means all Released Defendants' Claims and all Released Plaintiff's Claims.

(oo)    "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against the Defendants.  Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement or any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

(pp)    "Released Plaintiff's Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the Complaint; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase or acquisition of publicly traded Exela common stock during the Settlement Class Period.  Released Plaintiff's Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any

11

shareholder derivative claims asserted in *Ezzat v. Cogburn, et al.*, Case No. 2022-2021 (Del. Chancery Ct.), *Moser v. Cogburn, et al.*, Case No. 3:20-cv-3691 (N.D. Tex.), and *McKenna v. Cogburn, et al.*, Case No. 3:20-cv-3691-1800 (N.D. Tex.); and (iii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

(qq)    "Releasee(s)" means each and any of the Defendants' Releasees and each and any of the Plaintiff's Releasees.

(rr)    "Releases" means the releases set forth in ¶¶ 5-6 of this Stipulation.

(ss)    "Settlement" means the settlement between Lead Plaintiff and Defendants on the terms and conditions set forth in this Stipulation.

(tt)    "Settlement Amount" means five million dollars ($5,000,000) in cash.

(uu)    "Settlement Class" means all persons and entities who or which purchased or otherwise acquired publicly traded Exela common stock between March 16, 2018 and March 16, 2020, inclusive (the "Settlement Class Period"), and were damaged thereby.  Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) (i) Defendants; (ii) the legal representatives, heirs, successors, assigns, and Immediate Family members of the Individual Defendants; (iii) the parents, subsidiaries, assigns, successors, predecessors and affiliates of Exela; (iv) any person who served as an Officer and/or director of Exela during the Settlement Class Period; (v) any entity in which any of the foregoing (i)-(iv) excluded persons have or had a majority ownership interest during the Settlement Class Period; (c) any trust of which any Individual Defendants is the grantor or settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Family; and (d) Defendants' liability insurance carriers.  Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

12

(vv) "Settlement Class Member" means each person and entity who or which is a member of the Settlement Class.

(ww) "Settlement Class Period" means the period between March 16, 2018 and March 16, 2020, inclusive.

(xx) "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

(yy) "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(zz) "Summary Notice" means the Summary Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 3 to Exhibit A, to be published as set forth in the Preliminary Approval Order.

(aaa) "Taxes" means: (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; and (ii) the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants).

(bbb) "Unknown Claims" means any Released Plaintiff's Claims which Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant or any other Defendants' Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her or it, might have

13

affected his, her or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly waive, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed to have waived, and by operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

## CLASS CERTIFICATION

2.     Solely for purposes of the Settlement and for no other purpose, Defendants stipulate and agree to: (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) certification of Lead Plaintiff as Class Representatives for the Settlement Class; and (c) appointment of Lead Counsel as Class Counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

## PRELIMINARY APPROVAL OF SETTLEMENT

3.     Promptly upon execution of this Stipulation, Lead Plaintiff will move for

14

preliminary approval of the Settlement, certification of the Settlement Class for settlement purposes only, and the scheduling of a hearing for consideration of final approval of the Settlement, which motion shall be unopposed by Defendants.  Concurrently with the motion for preliminary approval, Lead Plaintiff shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.

## **RELEASE OF CLAIMS**

4.    The obligations incurred pursuant to this Stipulation are in consideration of: (i) the full and final disposition of the Action as against Defendants; and (ii) the Releases provided for herein.

5.    Pursuant to the Judgment, or the Alternate Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Plaintiff's Claims on behalf of the respective Settlement Class Member in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiff's Claim against the Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiff's Claims against any of the Defendants' Releasees.

6.    Pursuant to the Judgment, or the Alternate Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Defendants' Claims on behalf of the Defendants in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released,

15

resolved, relinquished, waived and discharged each and every Released Defendants' Claim against Lead Plaintiff and the other Plaintiff's Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff's Releasees. This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

7.    Notwithstanding ¶¶ 5-6 above, nothing in the Judgment, or the Alternate Judgment, if applicable, shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment, or Alternate Judgment, if applicable.

## THE SETTLEMENT CONSIDERATION

8.    In consideration of the settlement of the Released Plaintiff's Claims against Defendants and the other Defendants' Releasees, Defendants shall pay or cause to be paid the Settlement Amount into the Escrow Account no later than twenty (20) business days after the later of: (a) the date of entry by the Court of an order preliminarily approving this Settlement; or (b) Defendants' Counsel's receipt from Lead Counsel of the information necessary to effectuate a transfer of funds to the Escrow Account, including wiring instructions that include the bank name and ABA routing number, account name and number, and a signed W-9 reflecting a valid taxpayer identification number for the qualified settlement fund in which the Settlement Amount is to be deposited.

## USE OF SETTLEMENT FUND

9.    The Settlement Fund shall be used to pay: (a) any Taxes; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court.  The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 18-29 below.

16

10.     Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.  The Escrow Agent shall invest any funds in the Escrow Account exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury Bills, a U.S. Treasury Fund, or a bank account that is either: (a) fully insured by the Federal Deposit Insurance Corporation; or (b) secured by instruments backed by the full faith and credit of the United States Government.  The Escrow Agent shall reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates.

11.     The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund.  Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  The Defendants' Releasees shall not have any liability or responsibility for any such Taxes.  Upon written request, Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).  Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such

17

elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

12.     All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Defendants' Releasees shall have no responsibility or liability for the acts or omissions of Lead Counsel or its agents with respect to the payment of Taxes, as described herein.

13.     The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

14.     Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, all Notice and Administration Costs actually incurred and paid or payable. Such costs and expenses shall include, without limitation, the actual costs of

18

printing and mailing the Postcard Notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Postcard Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Defendants, any of the other Defendants' Releasees, or any other person or entity who or which paid any portion of the Settlement Amount.

### ATTORNEYS' FEES AND LITIGATION EXPENSES

15.     Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiff's Counsel to be paid from (and out of) the Settlement Fund.  Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses, which may include a request for reimbursement of Lead Plaintiff's costs and expenses directly related to his representation of the Settlement Class, to be paid from (and out of) the Settlement Fund.  Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiff other than what is set forth in this Stipulation.

16.     Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiff's Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of

19

attorneys' fees and/or Litigation Expenses is reduced or reversed and such order reducing or reversing the award has become Final.  Plaintiff's Counsel shall make the appropriate refund or repayment in full no later than thirty (30) days after: (a) receiving from Defendants' Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees and/or Litigation Expenses has become Final.  An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein.  Neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

17.    Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiff's Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution and settlement of the Action.  Defendants' Releasees shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses.  The attorneys' fees and Litigation Expenses that are awarded to Plaintiff's Counsel shall be payable solely from the Escrow Account.

<u>**NOTICE AND SETTLEMENT ADMINISTRATION**</u>

18.    As part of the Preliminary Approval Order, Lead Plaintiff shall seek appointment of a Claims Administrator.  The Claims Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing and approving or denying Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court.  Other than Exela's obligation to provide its securities holders records as provided in ¶ 19 below, none of the Defendants, nor any other Defendants' Releasees, shall have any involvement in or any responsibility, authority or liability whatsoever for the selection of the Claims Administrator, the

20

Plan of Allocation, the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiff, any other Settlement Class Members or Lead Counsel in connection with the foregoing.  Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

19.     In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Postcard Notice to those members of the Settlement Class as may be identified through reasonable effort.  Lead Counsel shall also cause the Claims Administrator to: (a) post downloadable copies of the Notice and Claim Form online at www.ExelaSecuritiesLitigation.com; and (b) have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court.  For the purposes of identifying and providing notice to the Settlement Class, within fifteen (15) business days of the date of entry of the Preliminary Approval Order, Exela shall provide or cause to be provided to the Claims Administrator in electronic format (at no cost to the Settlement Fund, Lead Counsel or the Claims Administrator) its security lists (consisting of names and addresses) of the purchasers of publicly traded Exela common stock during the Settlement Class Period.

20.     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice attached hereto as Exhibit 1 to Exhibit A, or in such other plan of allocation as the Court approves).

21.     The Plan of Allocation proposed in the Notice is not a necessary term of the

Settlement or of this Stipulation and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action.  Defendants and the other Defendants' Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action.  No Defendant, nor any other Defendants' Releasees, shall have any involvement with or liability, obligation or responsibility whatsoever for the application of the Court-approved plan of allocation.

22.     Any Settlement Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation and Settlement, including the terms of the Judgment or, the Alternate Judgment, if applicable, to be entered in the Action and the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendants' Releasees with respect to the Released Plaintiff's Claims in the event that the Effective Date occurs with respect to the Settlement.

23.     Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.  No Defendant, or any other Defendants' Releasees, shall be permitted to review, contest or object to any Claim Form, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

24.     For purposes of determining the extent, if any, to which a Settlement Class Member

shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)      Each Settlement Class Member shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)      All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice.  Any Settlement Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternate Judgment, if applicable, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Defendants' Releasees with respect to any Released Plaintiff's Claim.  Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)      Each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the plan of allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)      Claim Forms that do not meet the submission requirements may be rejected.

23

Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)   If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

25.   Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

26.   Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any

24

administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

27.    Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members.  All Settlement Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternate Judgment, if applicable, to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendants' Releasees with respect to any and all of the Released Plaintiff's Claims.

28.    No person or entity shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator or any other agent designated by Lead Counsel, or the Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or any order of the Court.  Lead Plaintiff and Defendants, and their respective counsel, and Lead Plaintiff's damages expert and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

29.    All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of

law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court. All Settlement Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## TERMS OF THE JUDGMENT

30.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

## CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

31.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a)     the Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit A attached hereto, as required by ¶ 3 above;

(b)     the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶ 8 above;

(c)     Defendants have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation (including the Supplemental Agreement described in ¶ 35 below);

(d)     Lead Plaintiff has not exercised his option to terminate the Settlement pursuant to the provisions of this Stipulation; and

(e)     the Court has approved the Settlement as described herein, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment and the Judgment has become Final, or the Court has entered

26

an Alternate Judgment and none of the Parties seek to terminate the Settlement and the Alternate Judgment has become Final.

32.    Upon the occurrence of all of the events referenced in ¶ 31 above, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

33.    If (i) Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Lead Plaintiff exercises his right to terminate the Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

(a)    The Settlement and the relevant portions of this Stipulation shall be canceled and terminated.

(b)    Lead Plaintiff and Defendants shall revert to their respective positions in the Action as of June 3, 2023.

(c)    The terms and provisions of this Stipulation, with the exception of this ¶ 33 and ¶¶ 14, 16, 36 and 56, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment, or Alternate Judgment, if applicable, or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

(d)    Within five (5) business days after joint written notification of termination is sent by Defendants' Counsel and Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest thereon and any funds received by Lead Counsel consistent with ¶ 16 above), less any Notice and Administration Costs actually incurred, paid or payable and less any Taxes paid, due or owing shall be refunded by the Escrow Agent to Defendants and/or to

27

Defendants' insurer(s), in accordance with each payor's contribution to the Settlement Fund. In the event that the funds received by Lead Counsel consistent with ¶ 16 above have not been refunded to the Settlement Fund within the five (5) business days specified in this paragraph, those funds shall be refunded by the Escrow Agent to the payor(s) (or such other persons or entities as the payor(s) may direct) immediately upon their deposit into the Escrow Account consistent with ¶ 16 above.

34.    It is further stipulated and agreed that Lead Plaintiff, and Defendants, provided the Defendants unanimously agree, shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to the other Parties to this Stipulation within thirty (30) days of: (a) the Court's final refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's final refusal to approve the Settlement or any material part thereof; (c) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; (d) the date upon which the Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Fifth Circuit or the United States Supreme Court; or (e) the date upon which an Alternate Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Fifth Circuit or the United States Supreme Court, and the provisions of ¶ 33 above shall apply. However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or reimbursement of Litigation Expenses or with respect to any plan of allocation shall not be considered material to the Settlement, shall not affect the finality of any Judgment or Alternate Judgment, if applicable, and shall not be grounds for termination of the Settlement.

35.    In addition to the grounds set forth in ¶ 34 above, Defendants, provided they unanimously agree, shall have the unilateral right to terminate the Settlement in the event that

28

Settlement Class Members timely and validly requesting exclusion from the Settlement Class meet the conditions set forth in Defendants' confidential supplemental agreement with Lead Plaintiff (the "Supplemental Agreement"), in accordance with the terms of that agreement. The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until the Court otherwise directs or a dispute arises between Lead Plaintiff and Defendants concerning its interpretation or application, in which event the Parties shall submit the Supplemental Agreement to the Court *in camera* and request that the Court afford it confidential treatment.

## NO ADMISSION OF WRONGDOING

36. Neither this Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation, nor any proceedings taken pursuant to or in connection with this Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a) shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any civil,

29

criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)     shall be offered against any of the Plaintiff's Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff's Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiff's Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## MISCELLANEOUS PROVISIONS

37.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

38.     Defendants warrant that, as to the payments made or to be made by or on behalf of them, at the time of entering into this Stipulation and at the time of such payment they, or to their knowledge any persons or entities contributing to the payment of the Settlement Amount, were not

30

insolvent, nor will the payment required to be made by or on behalf of them render them insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.  This representation is made by each of the Defendants and not by their counsel.

39.    In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiff, Lead Plaintiff and Defendants shall jointly move the Court to vacate and set aside the Releases given and the Judgment or Alternate Judgment, if applicable, entered in favor of Defendants and the other Releasees pursuant to this Stipulation, in which event the releases and Judgment, or Alternate Judgment, if applicable, shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 33 above and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid or payable) shall be returned as provided in ¶ 33.

40.    The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiff and any other Settlement Class Members against the Defendants' Releasees with respect to the Released Plaintiff's Claims.  Accordingly, Lead Plaintiff and their counsel and Defendants and their counsel agree not to assert in any forum that this Action was brought by Lead Plaintiff or defended by Defendants in bad faith or without a reasonable basis.  No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution,

31

defense, or settlement of this Action. The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties, including through a mediation process supervised and conducted by Jed Melnick, Esq., of JAMS, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

41.     While retaining their right to deny that the claims asserted in the Action were meritorious, Defendants and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that the Action was commenced or prosecuted in bad faith, nor will they deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel. In all events, Lead Plaintiff and their counsel and Defendants and their counsel shall not make any accusations of wrongful or actionable conduct by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

42.     The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of both Lead Plaintiff and Defendants (or their successors-in-interest).

43.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

44.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to

32

Plaintiff's Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

45.    The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

46.    This Stipulation and its exhibits and the Supplemental Agreement constitute the entire agreement among Lead Plaintiff and Defendants concerning the Settlement and this Stipulation and its exhibits.  All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party hereto concerning this Stipulation, its exhibits or the Supplemental Agreement other than those contained and memorialized in such documents.

47.    This Stipulation may be executed in one or more counterparts, including by a .pdf/.tif image of the signature transmitted via email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

48.    This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate or reorganize.

49.    The construction, interpretation, operation, effect and validity of this Stipulation, the Supplemental Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of Texas without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

50.    Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court.

51.     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

52.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

53.     Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

54.     If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or facsimile or email transmission, with confirmation of receipt.  Notice shall be provided as follows:

If to Lead Plaintiff or Lead Counsel:   Glancy Prongay & Murray LLP
Attn:  Kara M. Wolke, Esq.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Email: kwolke@glancylaw.com

If to Defendants:   Norton Rose Fulbright US LLP
Attn:  Peter A. Stokes, Esq.
98 San Jacinto Blvd
Suite 1100
Austin, TX 78701-4255

34

Telephone: (512) 536-5287
Email: peter.stokes@nortonrosefulbright.com

55.     Except as otherwise provided herein, each Party shall bear its own costs.

56.     Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Stipulation confidential.

57.     All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

58.     Exela shall be responsible for sending notices required by the Class Action Fairness Act and for all costs and expenses related thereto.

59.     No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

35

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed,

by their duly authorized attorneys, as of July 27, 2023.

**GLANCY PRONGAY & MURRAY LLP**

By: _____

Kara M. Wolke (*pro hac vice*)
Raymond D. Sulentic (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-915
Email: kwolke@glancylaw.com
rsulentic@glancylaw.com

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

Joe Kendall (Texas Bar No. 11260700)
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone: (214) 744-3000
Email: jkendall@kendalllawgroup.com

*Local Counsel for Lead Plaintiff*
*and the Settlement Class*

36

**NORTON ROSE FULBRIGHT US LLP**

By: *Peter A. Stokes*
_____

Gerard G. Pecht (Attorney-in-Charge)
State Bar No. 15701800
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Email: gerard.pecht@nortonrosefulbright.com

Ellen B. Sessions
State Bar No. 00796282
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7921
Telephone: (214) 855-7465
Email:
ellen.sessions@nortonrosefulbright.com

Peter A. Stokes
State Bar No. 24028017
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone: (512) 474-5201
Email: peter.stokes@nortonrosefulbright.com

*Counsel for Defendants*

37

# EXHIBIT A

**Exhibit A**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA <br><br> Defendants. | Case No. 3:20-cv-00691-D |

**[PROPOSED] ORDER PRELIMINARILY APPROVING
SETTLEMENT AND PROVIDING FOR NOTICE**

WHEREAS, a consolidated class action is pending in this Court entitled *Bo Shen v. Exela Technologies, Inc., et al.*, Case No. 3:20-cv-00691-D (the "Action");

WHEREAS, (a) lead plaintiff Insur Shamgunov ("Lead Plaintiff"), on behalf of himself and the Settlement Class (defined below), and (b) defendant Exela Technologies, Inc. ("Exela" or the "Company"), and Ronald Cogburn, Parvinder Chadha and James G. Reynolds (collectively, the "Individual Defendants"; and, together with Exela, the "Defendants"; and together with Lead Plaintiff, the "Parties") have determined to settle all claims asserted against Defendants in this Action with prejudice on the terms and conditions set forth in the Stipulation and Agreement of Settlement dated July 27, 2023 (the "Stipulation") subject to approval of this Court (the "Settlement");

WHEREAS, Lead Plaintiff has made an application, pursuant to Rule 23 of the Federal

Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with the Stipulation, certifying the Settlement Class for purposes of the Settlement only, and allowing notice to Settlement Class Members as more fully described herein;

WHEREAS, the Court has read and considered: (a) Lead Plaintiff's motion for preliminary approval of the Settlement, and the papers filed and arguments made in connection therewith; and (b) the Stipulation and the exhibits attached thereto; and

WHEREAS, unless otherwise defined herein, all capitalized words contained herein shall have the same meanings as they have in the Stipulation;

NOW THEREFORE, IT IS HEREBY ORDERED:

1. **Class Certification for Settlement Purposes** – Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Court certifies, solely for purposes of effectuating the proposed Settlement, a Settlement Class consisting of all persons and entities who or which purchased or otherwise acquired publicly traded Exela common stock between March 16, 2018 and March 16, 2020, inclusive (the "Settlement Class Period"), and were damaged thereby. Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) (i) Defendants; (ii) the legal representatives, heirs, successors, assigns, and Immediate Family members of the Individual Defendants; (iii) the parents, subsidiaries, assigns, successors, predecessors and affiliates of Exela; (iv) any person who served as an Officer and/or director of Exela during the Settlement Class Period; (v) any entity in which any of the foregoing (i)-(iv) excluded persons have or had a majority ownership interest during the Settlement Class Period; (c) any trust of which any Individual Defendants is the grantor or settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Family; and (d) Defendants' liability insurance carriers. Also excluded from the Settlement Class are any persons or entities

2

who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

2.      **Class Findings** – Solely for purposes of the proposed Settlement of this Action, the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met: (a) the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of Lead Plaintiff in the Action are typical of the claims of the Settlement Class; (d) Lead Plaintiff and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

3.      The Court hereby finds and concludes that pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, Lead Plaintiff Insur Shamgunov is an adequate class representative and certifies him as the Class Representative for the Settlement Class.  The Court also appoints Lead Counsel as Class Counsel for the Settlement Class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

4.      **Preliminary Approval of the Settlement** – The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation, as being fair, reasonable and adequate to the Settlement Class, subject to further consideration at the Settlement Hearing to be conducted as described below.

5.      **Settlement Hearing** – The Court will hold a settlement hearing (the "Settlement Hearing") on _____, 2023 at __:__ _.m. in Courtroom 1351 of the United States Courthouse, Courtroom 1351, 1100 Commerce Street, Dallas, Texas 75242-1003, for the

3

following purposes: (a) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate to the Settlement Class, and should be approved by the Court; (b) to determine whether a Judgment substantially in the form attached as Exhibit B to the Stipulation should be entered dismissing the Action with prejudice against Defendants; (c) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (d) to determine whether the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement.  Notice of the Settlement and the Settlement Hearing shall be given to Settlement Class Members as set forth in paragraph 7 of this Order.

6.      The Court may adjourn the Settlement Hearing without further notice to the Settlement Class, and may approve the proposed Settlement with such modifications as the Parties may agree to, if appropriate, without further notice to the Settlement Class.

7.      **Retention of Claims Administrator and Manner of Giving Notice** – Lead Counsel is hereby authorized to retain Epiq Class Action & Claims Solutions, Inc. (the "Claims Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims as more fully set forth below.  Notice of the Settlement and the Settlement Hearing shall be given by Lead Counsel as follows:

(a)      within fifteen (15) business days of the date of entry of this Order, Exela shall provide or cause to be provided to the Claims Administrator in electronic format (at no cost to the Settlement Fund, Lead Counsel or the Claims Administrator) its security holder lists (consisting of names and addresses) for the purchasers of publicly traded Exela common stock during the Settlement Class Period;

4

(b)      not later than twenty-five (25) business days after the date of entry of this Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Postcard Notice, substantially in the form attached hereto as Exhibit 4, to be mailed by first-class mail to potential Settlement Class Members at the addresses set forth in the records provided by Exela or in the records which Exela caused to be provided, or who otherwise may be identified through further reasonable effort;

(c)      contemporaneously with the mailing of the Postcard Notice, the Claims Administrator shall cause copies of the Notice and the Claim Form to be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded;

(d)      not later than ten (10) business days after the Notice Date, the Claims Administrator shall cause the Summary Notice, substantially in the form attached hereto as Exhibit 3, to be published once in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*; and

(e)      not later than seven (7) calendar days prior to the Settlement Hearing, Lead Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such mailing and publication.

8.      **Approval of Form and Content of Notice** – The Court (a) approves, as to form and content, the Notice, the Claim Form, the Summary Notice, and the Postcard Notice attached hereto as Exhibits 1, 2, 3, and 4, respectively, and (b) finds that the mailing and distribution of the Postcard Notice, the posting of the Notice and Claim Form online, and the publication of the Summary Notice in the manner and form set forth in paragraph 7 of this Order (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the

5

circumstances, to apprise Settlement Class Members of the pendency of the Action, of the effect of the proposed Settlement (including the Releases to be provided thereunder), of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, of their right to object to the Settlement, the Plan of Allocation and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses, of their right to exclude themselves from the Settlement Class, and of their right to appear at the Settlement Hearing; (iii) constitutes due, adequate and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules. The date and time of the Settlement Hearing shall be included in the Postcard Notice, Notice, and Summary Notice before they are mailed, posted online, and published, respectively.

9.    **<u>Nominee Procedures</u>** – Brokers and other nominees who purchased or otherwise acquired publicly traded Exela common stock during the Settlement Class Period for the benefit of another person or entity shall (a) within seven (7) calendar days of receipt of the Postcard Notice, request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; (b) request from the Claims Administrator a link to the Notice and Claim Form and, within seven (7) calendar days of receipt of the link, email the link to all such beneficial owners for whom valid email addresses are available; or (c) within seven (7) calendar days of receipt of the Postcard Notice send a list of the names and addresses of all such beneficial owners to the Claims Administrator, in which event the Claims Administrator shall promptly mail the Postcard Notice to such beneficial owners. Upon full compliance with

6

Page 48

these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred up to a maximum of $0.05 per name and address provided to the Claims Administrator; up to $0.05 per Postcard Notice actually mailed, plus postage at the rate used by Claims Administrator; or up to $0.05 per link to the Notice and Claim Form transmitted by email, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. Such properly documented expenses incurred by nominees in compliance with the terms of this Order shall be paid from the Settlement Fund, with any disputes as to the reasonableness or documentation of expenses incurred subject to review by the Court.

10.    **Participation in the Settlement** – Settlement Class Members who wish to participate in the Settlement and to be eligible to receive a distribution from the Net Settlement Fund must complete and submit a Claim Form in accordance with the instructions contained therein. Unless the Court orders otherwise, all Claim Forms must be postmarked no later than one hundred twenty (120) calendar days after the Notice Date. Notwithstanding the foregoing, Lead Counsel may, at its discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class. By submitting a Claim, a person or entity shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim and the subject matter of the Settlement.

11.    Each Claim Form submitted must satisfy the following conditions: (a) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of the preceding paragraph; (b) it must be accompanied by adequate supporting documentation for the transactions and holdings reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement, or such other

7

documentation as is deemed adequate by Lead Counsel or the Claims Administrator; (c) if the person executing the Claim Form is acting in a representative capacity, a certification of his, her or its current authority to act on behalf of the Settlement Class Member must be included in the Claim Form to the satisfaction of Lead Counsel or the Claims Administrator; and (d) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

12.    Any Settlement Class Member that does not timely and validly submit a Claim Form or whose Claim is not otherwise approved by the Court: (a) shall be deemed to have waived his, her or its right to share in the Net Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Stipulation and the Settlement and all proceedings, determinations, orders and judgments in the Action relating thereto, including, without limitation, the Judgment or Alternate Judgment, if applicable, and the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Plaintiff's Claims against each and all of the Defendants' Releasees, as more fully described in the Stipulation and Notice. Notwithstanding the foregoing, late Claim Forms may be accepted for processing as set forth in paragraph 10 above.

13.    **<u>Exclusion From the Settlement Class</u>** – Any member of the Settlement Class who wishes to exclude himself, herself or itself from the Settlement Class must request exclusion in writing within the time and in the manner set forth in the Notice, which shall provide that: (a) any such request for exclusion from the Settlement Class must be mailed or delivered such that it is received no later than twenty-one (21) calendar days prior to the Settlement Hearing, to: *Exela Tech. Securities Litigation*, EXCLUSIONS, c/o Epiq Class Action & Claims Solutions, Inc., P.O.

8

Box 2147, Portland, OR 97208-2147, and (b) each request for exclusion must (i) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (ii) state that such person or entity "requests exclusion from the Settlement Class in *Bo Shen v. Exela Technologies, Inc., et al.*, Case No. 3:20-cv-00691-D"; (iii) state the number of shares of publicly traded Exela common stock that the person or entity requesting exclusion purchased/acquired and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale; and (iv) be signed by the person or entity requesting exclusion or an authorized representative.  A request for exclusion shall not be effective unless it provides all the required information and is received within the time stated above, or is otherwise accepted by the Court.

14.    Any person or entity who or which timely and validly requests exclusion in compliance with the terms stated in this Order and is excluded from the Settlement Class shall not be a Settlement Class Member, shall not be bound by the terms of the Settlement or any orders or judgments in the Action and shall not receive any payment out of the Net Settlement Fund.

15.    Any Settlement Class Member who or which does not timely and validly request exclusion from the Settlement Class in the manner stated in this Order: (a) shall be deemed to have waived his, her or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of the Stipulation and Settlement and all proceedings, determinations, orders and judgments in the Action, including, but not limited to, the Judgment or Alternate Judgment, if applicable, and the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Plaintiff's Claims against any of the Defendants' Releasees, as more fully

9

described in the Stipulation and Notice.

16.     **Appearance and Objections at Settlement Hearing** – Any Settlement Class Member who does not request exclusion from the Settlement Class may enter an appearance in the Action, at his, her or its own expense, individually or through counsel of his, her or its own choice, by filing with the Clerk of Court and delivering a notice of appearance to both Lead Counsel and Defendants' Counsel, at the addresses set forth in paragraph 17 below, such that it is received no later than twenty-one (21) calendar days prior to the Settlement Hearing, or as the Court may otherwise direct.  Any Settlement Class Member who does not enter an appearance will be represented by Lead Counsel.

17.     Any Settlement Class Member who does not request exclusion from the Settlement Class may file a written objection to the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and appear and show cause, if he, she or it has any cause, why the proposed Settlement, the proposed Plan of Allocation and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses should not be approved; *provided, however*, that no Settlement Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of Litigation Expenses unless that person or entity has filed a written objection with the Court and served copies of such objection on Lead Counsel and Defendants' Counsel at the addresses set forth below such that they are received no later than twenty-one (21) calendar days prior to the Settlement Hearing.

| **Lead Counsel** | **Defendants' Counsel** |
|---|---|
| Glancy Prongay & Murray LLP | Norton Rose Fulbright US LLP |
| Kara M. Wolke, Esq. | Peter A. Stokes, Esq. |

10

1925 Century Park East, Suite 2100                98 San Jacinto Blvd, Suite 1100
Los Angeles, CA 90067                                    Austin, TX 78701-4255

18.      Any objections, filings and other submissions by the objecting Settlement Class Member: (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of publicly traded Exela common stock that the objecting Settlement Class Member purchased/acquired and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale.  Objectors who enter an appearance and desire to present evidence at the Settlement Hearing in support of their objection must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the hearing.

19.      Any Settlement Class Member who or which does not make his, her or its objection in the manner provided herein shall be deemed to have waived his, her or its right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and shall be forever barred and foreclosed from objecting to the fairness, reasonableness or adequacy of the Settlement, the Plan of Allocation or the requested attorneys' fees and Litigation Expenses, or from otherwise being heard concerning the Settlement, the Plan of Allocation or the requested attorneys' fees and Litigation Expenses in this or any other proceeding.

20.      **Stay and Temporary Injunction** – Until otherwise ordered by the Court, the Court stays all proceedings in the Action other than proceedings necessary to carry out or enforce the

11

terms and conditions of the Stipulation.  Pending final determination of whether the Settlement should be approved, the Court bars and enjoins Lead Plaintiff, and all other members of the Settlement Class, from commencing or prosecuting any and all of the Released Plaintiff's Claims against each and all of the Defendants' Releasees.

21.    **Settlement Administration Fees and Expenses** – All reasonable costs incurred in identifying Settlement Class Members and notifying them of the Settlement as well as in administering the Settlement shall be paid as set forth in the Stipulation without further order of the Court.

22.    **Settlement Fund** – The contents of the Settlement Fund held by The Huntington National Bank (which the Court approves as the Escrow Agent), shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

23.    **Taxes** – Lead Counsel is authorized and directed to prepare any tax returns and any other tax reporting form for or in respect to the Settlement Fund, to pay from the Settlement Fund any Taxes owed with respect to the Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Stipulation.

24.    **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation, the Settlement is not approved, or the Effective Date of the Settlement otherwise fails to occur, this Order shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Order shall be without prejudice to the rights of Lead Plaintiff, the other Settlement Class Members and Defendants, and the Parties shall

12

revert to their respective positions in the Action as of June 3, 2023, as provided in the Stipulation.

25.    **Use of this Order** – Neither this Order, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):  (a) shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; (b) shall be offered against any of the Plaintiff's Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff's Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiff's Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or (c) shall be construed against any of the Releasees as an admission, concession, or

13

presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; *provided, however*, that if the Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted thereunder or otherwise to enforce the terms of the Settlement.

26.    **Supporting Papers** – Lead Counsel shall file and serve the opening papers in support of the proposed Settlement, the Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses no later than thirty-five (35) calendar days prior to the Settlement Hearing; and reply papers, if any, shall be filed and served no later than seven (7) calendar days prior to the Settlement Hearing.

27.    The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

SO ORDERED this _____ day of _____, 2023.

_____
The Honorable Sidney A Fitzwater
United States District Judge

14

# EXHIBIT A-1

**Exhibit A-1**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA <br><br> Defendants. | Case No. 3:20-cv-00691-D |

**NOTICE OF (I) PENDENCY OF CLASS ACTION, CERTIFICATION OF SETTLEMENT CLASS, AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:**  Please be advised that your rights may be affected by the above-captioned securities class action (the "Action") pending in the United States District Court for the Northern District of Texas (the "Court"), if, during the period between March 16, 2018 and March 16, 2020, inclusive (the "Settlement Class Period"), you purchased or otherwise acquired the publicly-traded common stock of Exela Technologies, Inc. ("Exela" or the "Company") and were damaged thereby (the "Settlement Class").[1]

**NOTICE OF SETTLEMENT:**  Please also be advised that the Court-appointed lead plaintiff, Insur Shamgunov ("Lead Plaintiff"), on behalf of himself and the Settlement Class (as defined in ¶28 below), has reached a proposed settlement of the Action for $5,000,000 in cash that, if approved, will resolve all claims in the Action (the "Settlement").

**PLEASE READ THIS NOTICE CAREFULLY.  This Notice explains important rights you may have, including the possible receipt of cash from the Settlement.  If you are a member of the Settlement Class, your legal rights will be affected whether or not you act.**

---

[1]  All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 27, 2023 (the "Stipulation"), which is available at www.ExelaSecuritiesLitigation.com.

**If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact Exela, any other Defendants in the Action, or their counsel.  All questions should be directed to Lead Counsel or the Claims Administrator (*see* ¶ 93 below).**

1. **Description of the Action and the Settlement Class:**  This Notice relates to a proposed Settlement of claims in a pending securities class action brought by investors alleging, among other things, that defendants Exela, and Ronald Cogburn, Parvinder Chadha and James G. Reynolds (collectively, the "Individual Defendants"; and, together with Exela, the "Defendants") violated the federal securities laws by making false and misleading statements regarding Exela. A more detailed description of the Action is set forth in paragraphs 11-27 below.  The proposed Settlement, if approved by the Court, will settle claims of the Settlement Class, as defined in paragraph 28 below.

2. **Statement of the Settlement Class's Recovery:**  Subject to Court approval, Lead Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle the Action in exchange for a settlement payment of $5,000,000 in cash (the "Settlement Amount") to be deposited into an escrow account.  The Net Settlement Fund (*i.e.*, the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (a) any Taxes, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court, and (d) any attorneys' fees awarded by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class.  The proposed plan of allocation (the "Plan of Allocation") is set forth on pages __-__ below.

3. **Estimate of Average Amount of Recovery Per Share:**  Based on Lead Plaintiffs' damages expert's estimates of the number of shares of Exela common stock purchased during the Settlement Class Period that may have been affected by the conduct at issue in the Action and assuming that all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses and costs as described herein) per eligible share is $0.09.  Settlement Class Members should note, however, that the foregoing average recovery per share is only an estimate.  Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, the number of shares of Exela common stock they purchased, when and at what prices they purchased/acquired or sold their Exela common stock, and the total number of valid Claim Forms submitted.  Distributions to Settlement Class Members will be made based on the Plan of Allocation set forth herein (*see* pages __-__ below) or such other plan of allocation as may be ordered by the Court.

4. **Average Amount of Damages Per Share:**  The Parties do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiffs were to prevail in the Action.  Among other things, Defendants do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by any members of the Settlement Class as a result of their conduct.

5. **Attorneys' Fees and Expenses Sought:**  Plaintiffs' Counsel, which have been prosecuting the Action on a wholly contingent basis since its inception in 2020, have not received any payment of attorneys' fees for their representation of the Settlement Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action.  Court-appointed Lead Counsel,

Glancy Prongay & Murray LLP, will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 33⅓% of the Settlement Fund. In addition, Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution and resolution of the claims against the Defendants, in an amount not to exceed $430,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class. Any fees and expenses awarded by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses. Estimates of the average cost per affected share of Exela common stock, if the Court approves Lead Counsel's fee and expense application, is $0.036 per eligible security.

6. **Identification of Attorneys' Representatives:** Lead Plaintiffs and the Settlement Class are represented by Kara M. Wolke, Esq. of Glancy Prongay & Murray LLP, 1925 Century Park East, Suite 2100, Los Angeles, CA 90067, (888) 773-9224, settlements@glancylaw.com.

7. **Reasons for the Settlement:** Lead Plaintiff's principal reason for entering into the Settlement is the substantial immediate cash benefit for the Settlement Class without the risk or the delays inherent in further litigation. Moreover, the substantial cash benefit provided under the Settlement must be considered against the significant risk that a smaller recovery – or indeed no recovery at all – might be achieved after contested motions, a trial of the Action and the likely appeals that would follow a trial. This process could be expected to last several years. Defendants, who deny all allegations of wrongdoing or liability whatsoever, are entering into the Settlement solely to eliminate the uncertainty, burden and expense of further protracted litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
| --- | --- |
| **SUBMIT A CLAIM FORM POSTMARKED NO LATER THAN _____, 202_.** | This is the only way to be eligible to receive a payment from the Settlement Fund. If you are a Settlement Class Member and you remain in the Settlement Class, you will be bound by the Settlement as approved by the Court and you will give up any Released Plaintiff's Claims (defined in ¶42 below) that you have against Defendants and the other Defendants' Releasees (defined in ¶43 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 202__.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund. This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or the other Defendants' Releasees concerning the Released Plaintiff's Claims. |

3

| | |
|---|---|
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 202__.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like them.  You cannot object to the Settlement, the Plan of Allocation or the fee and expense request unless you are a Settlement Class Member and do not exclude yourself from the Settlement Class. |
| **GO TO A HEARING ON _____, 202__ AT __:__ __.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN _____, 202__.** | Filing a written objection and notice of intention to appear by _____, 202__ allows you to speak in Court, at the discretion of the Court, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses.  If you submit a written objection, you may (but you do not have to) attend the hearing and, at the discretion of the Court, speak to the Court about your objection. |
| **DO NOTHING.** | If you are a member of the Settlement Class and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement Fund.  You will, however, remain a member of the Settlement Class, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |

---

**WHAT THIS NOTICE CONTAINS**

Why Did I Get The Postcard Notice? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page [ ]
What Is This Case About? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page [ ]
How Do I Know If I Am Affected By The Settlement?  Who Is Included
        In The Settlement Class? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page [ ]
What Are Lead Plaintiffs' Reasons For The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . .  Page [ ]
What Might Happen If There Were No Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page [ ]
How Are Settlement Class Members Affected By The Action And
        The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page [ ]
How Do I Participate In The Settlement?  What Do I Need To Do? . . . . . . . . . . . . . . . . . . Page [ ]
How Much Will My Payment Be? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page [ ]
What Payment Are The Attorneys For The Settlement Class Seeking?
        How Will The Lawyers Be Paid? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page [ ]
What If I Do Not Want To Be A Member Of The Settlement Class?
        How Do I Exclude Myself? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page [ ]
When And Where Will The Court Decide Whether To Approve The Settlement?
        Do I Have To Come To The Hearing?  May I Speak At The Hearing If I
        Don't Like The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page [ ]
What If I Bought Shares On Someone Else's Behalf? . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page [ ]

4

Can I See The Court File?  Whom Should I Contact If I Have Questions? . . . . . . . . . . . .  Page [ ]

| **WHY DID I GET THE POSTCARD NOTICE?** |
|---|

8.      The Court directed that the Postcard Notice be mailed to you because you or someone in your family or an investment account for which you serve as a custodian may have purchased or otherwise acquired publicly traded Exela common stock during the Settlement Class Period.  The Court also directed that this Notice be posted online at www.ExelaSecuritiesLitigation.com and mailed to you upon request to the Claims Administrator.  The Court has directed us to disseminate these notices because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement.  Additionally, you have the right to understand how this class action lawsuit may generally affect your legal rights.  If the Court approves the Settlement, and the Plan of Allocation (or some other plan of allocation), the claims administrator selected by Lead Plaintiff and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

9.      The purpose of this Notice is to inform you of the existence of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so.  It is also being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation and the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing").  *See* paragraphs 83-84 below for details about the Settlement Hearing, including the date and location of the hearing.

10.     The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement.  If the Court approves the Settlement and a plan of allocation, then payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing.  Please be patient, as this process can take some time to complete.

| **WHAT IS THIS CASE ABOUT?** |
|---|

11.     This litigation stems from alleged violations of the federal securities laws.  The alleged violations arise out of various statements the Defendants made which Lead Plaintiff alleged were false and/or misleading. These alleged false statements concerned three broad issues related to Exela's financial statements and financial performance: (1) whether the Defendants overstated the visibility that Exela management claimed to have into Exela's revenue; (2) whether the exclusion of various costs that Exela added back to its Adjusted EBITDA figures was misleading; and (3) whether and to what extent Exela had the ability to estimate its potential liability with respect to unrelated litigation that was then ongoing in the Delaware Court of Chancery (the "Appraisal Action").

12.     The procedural history of this Action follows below.

13.     On March 23, 2020, a class action complaint was filed in the United States District Court for the Northern District of Texas ("the Court"), styled *Bo Shen v. Exela Technologies Inc. et al.*, 3:20-cv-00691-D.  The March 23, 2020, complaint alleged, in substance, that the Defendants made

5

certain false statements about an undisclosed liability on Exela's financial statements that stemmed from the Appraisal Action.

14. Following the filing of the March 23, 2020 complaint, on May 22, 2020, Insur Shamgunov and Elena Shamgunova (collectively, "Lead Plaintiffs") filed a motion with the Court asking to be appointed lead plaintiffs, which the Court granted. The Court also approved their selection of Glancy Prongay & Murray LLP to serve as Lead Counsel for the putative class.

15. Following appointment as Lead Plaintiffs and Lead Counsel, Lead Counsel conducted an in-depth investigation into Exela and, on August 11, 2020, filed a 98-page Amended Complaint (the "Amended Complaint").

16. Unlike the initial complaint, which alleged just one theory of liability, the Amended Complaint alleged three theories of liability. *First*, Lead Plaintiffs alleged that even though Exela represented that it had 90% visibility into its revenue, in truth it did not — because at least 20% of Exela's revenue came from pass-through postage revenue, which the Company later admitted was unpredictable. *Second*, Lead Plaintiffs alleged that Exela improperly excluded certain costs from its Adjusted EBITDA, a measure of operating earnings, which misleadingly made Exela appear more profitable than it really was. *Third*, Lead Plaintiffs alleged that Exela failed to disclose a known liability that it had the ability to estimate related to the Appraisal Action.

17. According to the Amended Complaint, the alleged misrepresentations and omissions proximately caused class member losses when the truth was revealed over a series of partial corrective disclosures throughout the class period.

18. In response to the filing of the Amended Complaint, the Defendants asked the Court to dismiss Lead Plaintiffs' case in a motion to dismiss, which was filed on October 12, 2020. Lead Plaintiffs opposed the Defendants' motion to dismiss, and Defendants filed reply papers. On May 20, 2021, United States District Court Judge Sydney Fitzwater heard in-person oral arguments by the Parties.

19. Approximately one month later, the Judge Fitzwater granted the Defendants' motion to dismiss in a written opinion styled *Bo Shen v. Exela Techs., Inc*., No. 3:20-CV-0691-D, 2021 WL 2589584, at (N.D. Tex. June 24, 2021) ("*Shen I*"). Even though the Court granted the Defendants' motion to dismiss, it still gave Lead Plaintiffs an opportunity to amend their complaint to address perceived shortcomings that the Court identified in its *Shen I* opinion.

20. In response to the *Shen I* opinion and the Court's dismissal, Lead Plaintiffs continued their investigation and sought to address the perceived pleading deficiencies identified by *Shen I*. To that end, Lead Plaintiffs filed their 118-page Second Amended Complaint, or "SAC", on August 5, 2021.

21. While Lead Plaintiffs felt the SAC addressed the issues raised by the Court in *Shen I*, the Defendants filed another motion to dismiss on September 3, 2021, which Lead Plaintiffs again opposed. On January 19, 2022, the Court heard argument by counsel for the Parties on the Defendants' motion to dismiss the SAC. Two days later, the Court issued a ruling denying the Defendants' second motion to dismiss in a written order styled *Shen v. Exela Techs., Inc*., No. 3:20-CV-0691-D, 2022 WL 198402 (N.D. Tex. Jan. 21, 2022) ("*Shen II*"). Following the denial of the Defendants' motion to dismiss the SAC, the case entered discovery, and soon after, Exela began turning over hundreds of thousands of documents—totaling more than 2.2 million pages by the time their document production was complete.

22.    Following several months of discovery, on September 8, 2022, the Parties held a virtual mediation session that was overseen by a well-respected mediator of complex class actions, Jed Melnick, Esq. of JAMS.  No agreement was reached during the mediation, and discovery continued, as did negotiations facilitated by Mr. Melnick over a potential settlement.

23.    As the case progressed, one of the two Lead Plaintiffs, Elena Shamgunova, dismissed her case, leaving just one Lead Plaintiff, Insur Shamgunov.  On April 14, 2023, Lead Plaintiff moved for class certification and sought appointment of Insur Shamgunov as the class representative.

24.    During the course of discovery, the Parties continued to work towards a settlement with the assistance of Mr. Melnick.  These negotiations culminated in a recommendation by Mr. Melnick that the Parties settle the Action for a $5.0 million cash payment to the Settlement Class in return for a release of the Settlement Class's claims against the Defendants.  On June 3, 2023, the Parties accepted Mr. Melnick's recommendation.

25.    Based on the investigation, litigation and mediation of the case and Lead Plaintiff's direct oversight of the prosecution of this matter and with the advice of his counsel, Lead Plaintiff has agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering, among other things: (a) the substantial financial benefit that Lead Plaintiff and the other members of the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

26.    Defendants are entering into the Stipulation solely to eliminate the uncertainty, burden and expense of further protracted litigation.  Each of the Defendants denies any fault, liability, or wrongdoing.

27.    On _____, 202__, the Court preliminarily approved the Settlement, authorized the Postcard Notice to be mailed to potential Settlement Class Members and this Notice to be posted online and mailed to potential Settlement Class Members upon request, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

---

### HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? WHO IS INCLUDED IN THE SETTLEMENT CLASS?

---

28.    If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded.  The Settlement Class consists of:

> all persons and entities who or which purchased or otherwise acquired publicly traded Exela common stock between March 16, 2018 and March 16, 2020, inclusive (the "Settlement Class Period"), and were damaged thereby.[2]

Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) (i) Defendants; (ii) the legal representatives, heirs, successors, assigns, and Immediate Family members of the Individual Defendants; (iii) the parents, subsidiaries, assigns, successors,

---

[2]  During the Settlement Class Period, Exela common stock was listed and traded on the Nasdaq Stock Market, under the ticker symbol "XELA."  After the Settlement Class Period, Exela common stock underwent three reverse stock splits (a 1-for-3 reverse split on January 26, 2021; a 1-for-20 reverse split on July 26, 2022; and a 1-for-200 reverse split on May 15, 2023).  Herein, Exela common stock prices are *not* adjusted for any reverse stock splits.

predecessors and affiliates of Exela; (iv) any person who served as an Officer and/or director of Exela during the Settlement Class Period; (v) any entity in which any of the foregoing (i)-(iv) excluded persons have or had a majority ownership interest during the Settlement Class Period; (c) any trust of which any Individual Defendants is the grantor or settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Family; and (d) Defendants' liability insurance carriers. Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in this Notice. *See* "What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself," on page [__] below.

**PLEASE NOTE: RECEIPT OF THE POSTCARD NOTICE DOES NOT MEAN THAT YOU ARE A SETTLEMENT CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.**

> **If you are a Settlement Class Member and you wish to be eligible to participate in the distribution of proceeds from the Settlement, you are required to submit the Claim Form that is available online at www.ExelaSecuritiesLitigation.com or which can be mailed to you upon request to the Claims Administrator, and the required supporting documentation as set forth therein, postmarked no later than _____, 20__.**

| WHAT ARE LEAD PLAINTIFF'S REASONS FOR THE SETTLEMENT? |
| :---: |

29.    Lead Plaintiff and Lead Counsel believe that the claims asserted against the Defendants have merit. They recognize, however, many offsetting factors such as the expense and length of the continued proceedings necessary to pursue their claims against the Defendants through trial and appeals, as well as the very substantial risks they would face in establishing liability and damages. For instance, as discussed above, Lead Plaintiffs alleged three areas about which Exela allegedly made false and/or misleading statements: Exela's revenue; its earnings (Adjusted EBITDA); and its balance sheet (the Appraisal Action liability). In 2021, when the Court initially dismissed Plaintiffs' case in *Shen I*, it found all three theories lacking in varying ways. Indeed, in *Shen I*, with respect to Lead Plaintiffs' Adjusted EBITDA theory, the Court held "at all times, Exela told the whole truth and nothing but about how it was calculating EBITDA and adjusted EBITDA." Lead Plaintiffs disagreed with the Court's holding in *Shen I*, and further felt that Lead Plaintiffs' Second Amended Complaint addressed any prior pleading defects that may have existed, there would still be significant uncertainty as to whether the Court would even permit Lead Plaintiff's Adjusted EBITDA theory to continue beyond the Defendants' anticipated motion for summary judgment.

30.    Also, while the Court initially dismissed all three of Plaintiffs' theories in *Shen I*, in 2022, when the Court denied the Defendants' second motion for dismissal in *Shen II*, the Court only explicitly ruled for Plaintiffs on one of their three theories—the theory that related to Exela's revenue visibility. In other words, while the Court denied the Defendants' motion to dismiss in *Shen II*, it did not address whether Lead Plaintiffs adequately stated a claim apart from their revenue visibility theory. Thus, it is certainly possible that the Court harbored skepticism about two of Lead Plaintiff's three theories, including its Adjusted EBITDA theory—even after the Court's denial of the Defendants' motion to dismiss in *Shen II*.

31.    More broadly, for Lead Plaintiff to prevail on summary judgment, he would have to *prove*

8

five elements of his case, while the Defendants need only prove one for Lead Plaintiff and the class to lose.  Those five elements are: (1) falsity (*i.e.*, that the Defendants made false statements; (2) materiality (that the Defendants made false statements about a *material* fact); (3) scienter (that there was a strong, or cogent inference that the Defendants made such materially false statements on purpose, or recklessly); (4) loss causation (that the Defendants materially false statements proximately caused the later decline in Exela's stock price, not something else—like a weakening business overall); and (5) damages.

32.   Each element had its respective risks.  For instance, as discussed above, it is unclear whether the Court would ultimately find Lead Plaintiff's Adjusted EBITDA theory viable on falsity grounds.  Moreover, in *Shen I*, the Court held that "[e]ven if plaintiffs had plausibly alleged that Exela's Adjusted EBITDA figures were false or misleading, the court would still grant defendants' motion to dismiss plaintiffs' claim based on Exela's Adjusted EBITDA figures because plaintiffs have not plausibly pleaded a strong inference of scienter."  Therefore, even if Lead Plaintiff could adequately prove falsity as to Exela's Adjusted EBITDA statements, he would still face a significant challenge in proving scienter.

33.   Even if the hurdles to establishing liability were overcome—*i.e.*, proving falsity, materiality, scienter, and loss causation, the amount of damages that could be attributed to the allegedly false statements would be hotly contested because other disclosures concerning Exela's financials were made at the time of the alleged disclosure of the alleged fraud.  For instance, Lead Plaintiff would have to prove that it was the revelation that the Defendants lacked visibility into Exela's revenue, and not the reduction in revenue guidance itself (or any other bad news revealed at the time), that caused Exela's shares to fall.  Such "disaggregation" issues were particularly potent here because many of the corrective disclosures that Lead Plaintiffs alleged revealed news that was relevant to more than one of their theories.

34.   Simply put, if the litigation were to continue, Lead Plaintiff would need to prevail on multiple elements, and at several stages—motions for class certification, summary judgment, and trial—in order to recovery anything.  And if he prevailed at all those stages, he would likely face appeals—just as an appeal followed when Exela confronted unfavorable court rulings in the Appraisal Action.  Thus, there were very significant risks attendant to the continued prosecution of the Action, and even if Lead Plaintiff prevailed, it would be several years in the future.

35.   In light of these risks and other considerations, the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class.  Lead Plaintiff and Lead Counsel believe that the Settlement provides a substantial benefit to the Settlement Class, namely $5,000,000 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Action would produce a smaller, or no recovery after class certification, summary judgment, trial and appeals, possibly years in the future.

36.   The Defendants have denied the claims asserted against them in the Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever.  The Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation.  Accordingly, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

**WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?**

9

37.    If there were no Settlement and Lead Plaintiff failed to establish any essential legal or factual element of their claims against Defendants, neither Lead Plaintiff nor the other members of the Settlement Class would recover anything from Defendants.  Also, if Defendants managed to prove any of their defenses, either at summary judgment, at trial or on appeal, the Settlement Class could recover substantially less than that provided by the Settlement, or perhaps nothing at all.

**HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED BY THE ACTION AND THE SETTLEMENT?**

38.    As a Settlement Class Member, you are represented by Lead Plaintiff and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her appearance on the attorneys listed in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," on page __ below.

39.    If you are a Settlement Class Member and do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section entitled, "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself?," on page __ below.

40.    If you are a Settlement Class Member and you wish to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," below.

41.    If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court.  If the Settlement is approved, the Court will enter a judgment (the "Judgment").  The Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Plaintiff's Claims (as defined in ¶42 below) on behalf of the respective Settlement Class Member in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiff's Claim against the Defendants and the other Defendants' Releasees (as defined in ¶43 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiff's Claims against any of the Defendants' Releasees.

42.    "Released Plaintiff's Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the Complaint; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase or acquisition of publicly traded Exela common stock during the Settlement Class Period.  Released Plaintiff's

10

Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any shareholder derivative claims asserted in *Ezzat v. Cogburn, et al.*, Case No. 2022-2021 (Del. Chancery Ct.), *Moser v. Cogburn, et al.*, Case No. 3:20-cv-3691 (N.D. Tex.), and *McKenna v. Cogburn, et al.*, Case No. 3:20-cv-3691-1800 (N.D. Tex.); and (iii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

43.  "Defendants' Releasees" means Defendants and their current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, insurers, and attorneys, in their capacities as such.

44.  "Unknown Claims" means any Released Plaintiff's Claims which Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant or any other Defendants' Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly waive, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed to have waived, and by operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff and the Defendants acknowledge, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

45.  The Judgment will also provide that, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Defendants' Claims (as defined in ¶46 below) on behalf of the Defendants in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against Lead Plaintiff and the other Plaintiff's Releasees (as defined in ¶47 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff's Releasees. This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

46.  "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against the Defendants.  Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement or any claims

11

against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

47.   "Plaintiff's Releasees" means Lead Plaintiff, all other plaintiffs in the Action, their respective attorneys, and all other Settlement Class Members, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

## HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

48.   To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Settlement Class and you must timely complete and return the Claim Form with adequate supporting documentation **postmarked no later than _____, 202__**.  A Claim Form is available on the website maintained by the Claims Administrator for the Settlement, www.ExelaSecuritiesLitigation.com, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-888-306-3146.  Please retain all records of your ownership of and transactions in Exela common stock, as they may be needed to document your Claim.  If you request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

## HOW MUCH WILL MY PAYMENT BE?

49.   At this time, it is not possible to make any determination as to how much any individual Settlement Class Member may receive from the Settlement.

50.   Pursuant to the Settlement, Defendants have agreed to pay or caused to be paid five million dollars ($5,000,000) in cash.  The Settlement Amount will be deposited into an escrow account. The Settlement Amount plus any interest earned thereon is referred to as the "Settlement Fund." If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state and/or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed to Settlement Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

51.   The Net Settlement Fund will not be distributed unless and until the Court has approved the Settlement and a plan of allocation, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

52.   Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalf are entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final.  Defendants shall not have any liability, obligation or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund or the plan of allocation.

53.   Approval of the Settlement is independent from approval of a plan of allocation.  Any

12

determination with respect to a plan of allocation will not affect the Settlement, if approved.

54.   Unless the Court otherwise orders, any Settlement Class Member who fails to submit a Claim Form postmarked on or before _____, 202_ shall be fully and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a Settlement Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given. This means that each Settlement Class Member releases the Released Plaintiff's Claims (as defined in ¶42 above) against the Defendants' Releasees (as defined in ¶43 above) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiff's Claims against any of the Defendants' Releasees whether or not such Settlement Class Member submits a Claim Form.

55.   Participants in and beneficiaries of a plan covered by ERISA ("ERISA Plan") should NOT include any information relating to their transactions in Exela common stock held through the ERISA Plan in any Claim Form that they may submit in this Action. They should include ONLY those shares that they purchased or acquired outside the ERISA Plan. Claims based on any ERISA Plan's purchases or acquisitions of Exela common stock during the Settlement Class Period may be made by the plan's trustees. If any of the Defendants or any of the other persons or entities excluded from the Settlement Class are participants in the ERISA Plan, such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from the Settlement by the ERISA Plan.

56.   The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

57.   Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim Form.

58.   Only Settlement Class Members, *i.e.*, persons and entities who purchased or otherwise acquired Exela publicly traded common stock during the Settlement Class Period and were damaged as a result of such purchases or acquisitions will be eligible to share in the distribution of the Net Settlement Fund. Persons and entities that are excluded from the Settlement Class by definition or that exclude themselves from the Settlement Class pursuant to request will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms. Publicly traded Exela common stock is the only security included in the Settlement.

## PROPOSED PLAN OF ALLOCATION

59.   The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial. Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

60.   The Plan of Allocation generally measures the amount of loss that a Settlement Class Member can claim for purposes of making *pro rata* allocations of the cash in the Net Settlement Fund to Authorized Claimants. The Plan of Allocation is not a formal damage analysis.

13

Recognized Loss Amounts are based primarily on the price declines observed over the period which Lead Plaintiffs allege corrective information was entering the market place. In this case, Lead Plaintiffs allege that Defendants made false statements and omitted material facts between March 16, 2018 and March 16, 2020, inclusive, which had the effect of artificially inflating the price of Exela common stock. The estimated alleged artificial inflation in the price of Exela common stock during the Settlement Class Period is reflected in Table 1 below. The computation of the estimated alleged artificial inflation in the price of Exela common stock during the Settlement Class Period is based on certain misrepresentations alleged by Lead Plaintiffs and the price change in the stock, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Lead Plaintiffs.

61.   In order to have recoverable damages, disclosure of the alleged misrepresentations must be the cause of the decline in the price of the Exela common stock. In this matter, Lead Plaintiffs allege that corrective disclosures removed the artificial inflation from the price of Exela common stock on the following dates: November 9, 2018; March 19, 2019; March 20, 2019; May 10, 2019; May 22, 2019; May 23, 2019; August 9, 2019; November 13, 2019; March 17, 2020; and March 18, 2020 (the "Corrective Disclosure Dates").[3] Accordingly, in order to have a Recognized Loss Amount, Exela common stock must have been purchased or acquired during the Settlement Class Period and held through at least one of these Corrective Disclosure Dates.

62.   To the extent a Claimant does not satisfy the conditions set forth in the preceding paragraph, his, her or its Recognized Loss Amount for those transactions will be zero.

| Table 1 Artificial Inflation in Exela Common Stock* | | |
|---|---|---|
| **From** | **To** | **Per-Share Price Inflation** |
| March 16, 2018 | November 8, 2018 | $3.79 |
| November 9, 2018 | March 18, 2019 | $2.99 |
| March 19, 2019 | March 19, 2019 | $2.78 |
| March 20, 2019 | May 9, 2019 | $2.54 |
| May 10, 2019 | May 21, 2019 | $2.39 |
| May 22, 2019[4] | May 22, 2019 | $1.86 |
| May 23, 2019 | August 8, 2019 | $1.42 |
| August 9, 2019 | November 12, 2019 | $0.29 |
| November 13, 2019 | March 16, 2020 | $0.04 |
| March 17, 2020 | March 17, 2020 | $0.02 |
| March 18, 2020 | Thereafter | $0.00 |

\* For each day during the Settlement Class Period, the per-share price inflation in Exela common

---

[3]  An alleged corrective disclosure also occurred on May 16, 2020. However, after netting out market and industry effects, there was no decline in the price of Exela common stock that day.

[4]  The alleged corrective disclosure on May 22, 2019 occurred late in the trading day. Thus, in order to avoid potentially understating the Recognized Loss Amount for Claimants who transacted

14

stock shall be limited to that day's closing price of the stock.

63.     The "90-day look back" provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA") is incorporated into the calculation of the Recognized Loss Amount for Exela common stock.  The limitations on the calculation of the Recognized Loss Amount imposed by the PSLRA are applied such that losses on Exela common stock purchased during the Settlement Class Period and held as of the close of the 90-day period subsequent to the Settlement Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for such stock and its average price during the 90-Day Lookback Period.  The Recognized Loss Amount on Exela common stock purchased during the Settlement Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for such stock and its rolling average price during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

64.     In the calculations below, all purchase and sale prices shall exclude any fees, taxes and commissions.  If a Recognized Loss Amount is calculated to be a negative number, that Recognized Loss Amount shall be set to zero.  Any transactions in Exela common stock executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

### CALCULATION OF RECOGNIZED LOSS AMOUNTS

65.     Based on the formula set forth below, a "Recognized Loss Amount" shall be calculated for each purchase or acquisition of Exela common stock during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided.

    I.   For each share purchased or otherwise acquired between March 16, 2018 and March 16, 2020, inclusive:

        a.   that was subsequently sold prior to November 9, 2018, the Recognized Loss Amount is $0.00.

        b.   that was subsequently sold during the period November 9, 2018 through March 16, 2020, inclusive, the Recognized Loss Amount is *the lesser of*:

            i.   the amount of per-share price inflation on the date of purchase as appears in Table 1 above *minus* the amount of per-share price inflation on the date of sale as appears in Table 1 above; or

           ii.   the purchase price *minus* the sale price.

        c.   that was subsequently sold on March 17, 2020, the Recognized Loss Amount is *the least of*:

            i.   the amount of per-share price inflation on the date of purchase as appears in Table 1 above *minus* the amount of per-share price inflation on the date of sale as appears in Table 1 above; or

---

in Exela common stock on May 22, 2019, purchases of Exela common stock that day shall be assumed to have occurred at the pre-disclosure price inflation amount (*i.e.*, $2.39 per share).  Sales of Exela common stock that day shall be assumed to have occurred at the post-disclosure price inflation amount (*i.e.*, $1.86 per share).

15

ii.   the purchase price *minus* the sale price; or

iii.   the purchase price *minus* the "90-Day Lookback Value" on March 17, 2020, which is $0.17.

d.  that was subsequently sold during the period March 18, 2020 through June 12, 2020, inclusive, the Recognized Loss Amount is *the least of*:

i.   the amount of per-share price inflation on the date of purchase as appears in Table 1; or

ii.   the purchase price *minus* the sale price; or

iii.   the purchase price *minus* the "90-Day Lookback Value" on the date of sale as appears in Table 2 below.

e.  that was still held as of the close of trading on June 12, 2020, the Recognized Loss Amount is *the lesser of*:

i.   the amount of per-share price inflation on the date of purchase as appears in Table 1; or

ii.   the purchase price *minus* the average closing price for Exela common stock during the 90-Day Lookback Period, which is $0.27.

II.  For each share purchased or otherwise acquired on or after March 17, 2020, the Recognized Loss Amount is $0.00.

| Table 2 | | | | | |
|---|---|---|---|---|---|
| Sale/ Disposition Date | 90-Day Lookback Value | Sale/ Disposition Date | 90-Day Lookback Value | Sale/ Disposition Date | 90-Day Lookback Value |
| 3/17/2020 | $0.17 | 4/16/2020 | $0.18 | 5/15/2020 | $0.22 |
| 3/18/2020 | $0.16 | 4/17/2020 | $0.18 | 5/18/2020 | $0.22 |
| 3/19/2020 | $0.16 | 4/20/2020 | $0.18 | 5/19/2020 | $0.22 |
| 3/20/2020 | $0.17 | 4/21/2020 | $0.18 | 5/20/2020 | $0.22 |
| 3/23/2020 | $0.17 | 4/22/2020 | $0.18 | 5/21/2020 | $0.23 |
| 3/24/2020 | $0.17 | 4/23/2020 | $0.18 | 5/22/2020 | $0.23 |
| 3/25/2020 | $0.17 | 4/24/2020 | $0.18 | 5/26/2020 | $0.23 |
| 3/26/2020 | $0.18 | 4/27/2020 | $0.18 | 5/27/2020 | $0.23 |
| 3/27/2020 | $0.18 | 4/28/2020 | $0.18 | 5/28/2020 | $0.24 |
| 3/30/2020 | $0.18 | 4/29/2020 | $0.19 | 5/29/2020 | $0.24 |
| 3/31/2020 | $0.18 | 4/30/2020 | $0.19 | 6/1/2020 | $0.24 |
| 4/1/2020 | $0.18 | 5/1/2020 | $0.19 | 6/2/2020 | $0.24 |
| 4/2/2020 | $0.18 | 5/4/2020 | $0.20 | 6/3/2020 | $0.24 |
| 4/3/2020 | $0.18 | 5/5/2020 | $0.20 | 6/4/2020 | $0.25 |
| 4/6/2020 | $0.17 | 5/6/2020 | $0.20 | 6/5/2020 | $0.25 |
| 4/7/2020 | $0.17 | 5/7/2020 | $0.20 | 6/8/2020 | $0.25 |

| 4/8/2020 | $0.17 | 5/8/2020 | $0.21 | 6/9/2020 | $0.26 |
|----------|-------|----------|-------|----------|-------|
| 4/9/2020 | $0.17 | 5/11/2020 | $0.21 | 6/10/2020 | $0.27 |
| 4/13/2020 | $0.17 | 5/12/2020 | $0.21 | 6/11/2020 | $0.27 |
| 4/14/2020 | $0.17 | 5/13/2020 | $0.22 | 6/12/2020 | $0.27 |
| 4/15/2020 | $0.17 | 5/14/2020 | $0.22 | N/A | N/A |

## ADDITIONAL PROVISIONS

66.    The Net Settlement Fund will be allocated among all Authorized Claimants whose Distribution Amount (defined in paragraph 74 below) is $10.00 or greater.

67.    **FIFO Matching:** If a Settlement Class Member has more than one purchase/acquisition or sale of Exela common stock, all purchases/acquisitions and sales shall be matched on a First In, First Out ("FIFO") basis. Settlement Class Period sales will be matched first against any holdings at the beginning of the Settlement Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Settlement Class Period.

68.    **Calculation of Claimant's "Recognized Claim":** A Claimant's "Recognized Claim" under the Plan of Allocation shall be the sum of his, her, or its Recognized Loss Amounts for all shares of the Exela common stock.

69.    **"Purchase/Sale" Dates:** Purchases or acquisitions and sales of Exela common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance, or operation of law of Exela common stock during the Settlement Class Period shall not be deemed a purchase, acquisition, or sale of Exela common stock for the calculation of an Authorized Claimant's Recognized Loss Amount, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of any Exela common stock unless (i) the donor or decedent purchased or otherwise acquired such Exela common stock during the Settlement Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Exela common stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

70.    **Short Sales:** The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Exela common stock. The date of a "short sale" is deemed to be the date of sale of Exela common stock. Under the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero. In the event that a Claimant has an opening short position in Exela common stock, the earliest Settlement Class Period purchases or acquisitions shall be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.

71.    **Common Stock Purchased/Sold Through the Exercise of Options:** Option contracts are not securities eligible to participate in the Settlement. With respect to Exela common stock purchased or sold through the exercise of an option, the purchase/sale date of the stock is the exercise date of the option and the purchase/sale price of the stock is the excise (strike) price of the option. Any Recognized Loss Amount arising from purchases of Exela common stock acquired during the Settlement Class Period through the exercise of an option on Exela common stock shall be computed as provided for other purchases of Exela common stock in the Plan of

17

Page 74

Allocation.

72.    **Market Gains and Losses:** To the extent a Claimant had a market gain with respect to his, her, or its overall transactions in Exela common stock during the Settlement Class Period, the value of the Claimant's Recognized Claim shall be zero.  To the extent that a Claimant suffered an overall market loss with respect to his, her, or its overall transactions in Exela common stock during the Settlement Class Period, but that market loss was less than the total Recognized Claim calculated above, then the Claimant's Recognized Claim shall be limited to the amount of the actual market loss.

73.    For purposes of determining whether a Claimant had a market gain with respect to his, her, or its overall transactions in Exela common stock during the Settlement Class Period or suffered a market loss, the Claims Administrator shall determine the difference between (i) the Total Purchase Amount[5] and (ii) the sum of the Total Sales Proceeds[6] and the Holding Value.[7]  If the Claimant's Total Purchase Amount _minus_ the sum of the Total Sales Proceeds and the Holding Value is a positive number, that number will be the Claimant's market loss on such securities; if the number is a negative number or zero, that number will be the Claimant's market gain on such securities.

74.    **Determination of Distribution Amount:**  The Net Settlement Fund will be distributed to Authorized Claimants on a _pro rata_ basis based on the relative size of their Recognized Claims. Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  If any Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to such Authorized Claimant.  Any Distribution Amounts of less than $10.00 will be included in the pool distributed to those Settlement Class Members whose Distribution Amounts are $10.00 or greater.

75.    After the initial distribution of the Net Settlement Fund, the Claims Administrator shall make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the fund nine (9) months after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do

---

[5] The "Total Purchase Amount" is the total amount the Claimant paid (excluding commissions and other charges) for all Exela common stock purchased or acquired during the Settlement Class Period.

[6] The Claims Administrator shall match any sales of Exela common stock during the Settlement Class Period, first against the Claimant's opening position in Exela common stock (the proceeds of those sales will not be considered for purposes of calculating market gains or losses).  The total amount received (excluding commissions and other charges) for the remaining sales of Exela common stock sold during the Settlement Class Period shall be the "Total Sales Proceeds."

[7] The Claims Administrator shall ascribe a "Holding Value" to shares of Exela common stock purchased or acquired during the Settlement Class Period and still held as of the close of trading on March 16, 2020, which shall be $0.15 (_i.e._, the closing price of the stock on the last Corrective Disclosure Date, March 18, 2020).  The total calculated holding values for all Exela common stock shall be the Claimant's "Total Holding Value."

18

so, the Claims Administrator shall conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution.  Additional re-distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective.  At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court.

76.    Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, shall be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, Lead Plaintiffs' damages expert, Defendants, Defendants' Counsel, or any of the other Releasees, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court.  Lead Plaintiffs, Defendants and their respective counsel, and all other Defendants' Releasees, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

The Plan of Allocation set forth herein is the plan that is being proposed to the Court for its approval by Lead Plaintiffs after consultation with their damages expert.  The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Settlement Class.  Any Orders regarding any modification of the Plan of Allocation will be posted on the settlement website, www.ExelaSecuritiesLitigation.com.

| **WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING? HOW WILL THE LAWYERS BE PAID?** |
|---|

77.    Plaintiffs' Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Settlement Class, nor have Plaintiffs' Counsel been reimbursed for their out-of-pocket expenses.  Before final approval of the Settlement, Lead Counsel will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 33⅓% of the Settlement Fund.  At the same time, Lead Counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $430,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class in an amount not to exceed $25,000.  The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses.  Such sums as may be approved by the Court will be paid from the Settlement Fund.  Settlement Class Members are not personally liable for any such fees or expenses.

## WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS? HOW DO I EXCLUDE MYSELF?

78.    Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Settlement Class, addressed to *Exela Tech. Securities Litigation,* EXCLUSIONS, c/o Epiq Class Action & Claims Solutions, Inc., P.O. Box 2147, Portland, OR 97208-2147.  The exclusion request must be ***received*** no later than _____, 202__.  You will not be able to exclude yourself from the Settlement Class after that date.  Each Request for Exclusion must: (a) state the name, address and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity " requests exclusion from the Settlement Class in *Shen v. Exela Technologies, Inc., et al.*, Case No. 3:20-cv-00691-D"; (c) state the number of shares of publicly traded Exela common stock that the person or entity requesting exclusion purchased/acquired and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale; and (d) be signed by the person or entity requesting exclusion or an authorized representative.  A Request for Exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

79.    If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiff's Claim against any of the Defendants' Releasees.

80.    If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Fund.

81.    Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Lead Plaintiff and Defendants.

## WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?  DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?

82.    **Settlement Class Members do not need to attend the Settlement Hearing.  The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not attend the hearing.  You can participate in the Settlement without attending the Settlement Hearing**.

83.    The Settlement Hearing will be held on _____, 202__ at __:__ _.m., before the Honorable Sidney A. Fitzwater at the United States District Court for the Northern District of Texas, United States Courthouse, Courtroom 1351, 1100 Commerce Street, Dallas, Texas 75242-1003.  The Court reserves the right to approve the Settlement, the Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and/or any other matter related to the Settlement at or after the Settlement Hearing without further notice to the members of the Settlement Class.

84.    Any Settlement Class Member who or which does not request exclusion may object to the

20

Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. Objections must be in writing. You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the Southern District of Texas at the address set forth below on or before _____, 202__. You must also serve the papers on Lead Counsel and on Defendants' Counsel at the addresses set forth below so that the papers are *received* **on or before _____, 202__.**

| **Clerk's Office** | **Lead Counsel** | **Defendants' Counsel** |
|---|---|---|
| United States District Court Northern District of Texas Clerk of the Court United States Courthouse 1100 Commerce Street Room 1452 Dallas, Texas 75242 | **Glancy Prongay & Murray LLP** Kara M. Wolke, Esq. 1925 Century Park East Suite 2100 Los Angeles, CA 90067 | **Norton Rose Fulbright US LLP** Peter A. Stokes, Esq. 98 San Jacinto Blvd. Suite 1100 Austin, TX  78701-4255 |

85.   Any objection: (a) must state the name, address and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of publicly traded Exela common stock that the objecting Settlement Class Member purchased/acquired and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale. You may not object to the Settlement, the Plan of Allocation or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

86.   You may file a written objection without having to appear at the Settlement Hearing. You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

87.   If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you timely file and serve a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth above so that it is *received* **on or before _____, 202__.** Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. Such persons may be heard orally at the discretion of the Court.

88.   You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing. However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it

21

on Lead Counsel and Defendants' Counsel at the addresses set forth in ¶85 above so that the notice is *received* **on or _____, 202__.**

89.  The Settlement Hearing may be adjourned by the Court without further written notice to the Settlement Class.  If you intend to attend the Settlement Hearing, you should confirm the date and time with Lead Counsel.

90.  **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

91.  If you purchased or otherwise acquired publicly traded Exela common stock between March 16, 2018 and March 16, 2020, inclusive, for the beneficial interest of persons or organizations other than yourself, you must either: (a) within seven (7) calendar days of receipt of the Postcard Notice, request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; (b) request from the Claims Administrator a link to the Notice and Claim Form and, within seven (7) calendar days of receipt of the link, email the link to all such beneficial owners for whom valid email addresses are available; or (c) within seven (7) calendar days of receipt of the Postcard Notice, provide a list of the names and addresses of all such beneficial owners to *Exela Tech. Securities Litigation*, c/o Epiq Class Action & Claims Solutions, Inc., P.O. Box 2147, Portland, OR 97208-2147.  If you choose the third option, the Claims Administrator will send a copy of the Postcard Notice to the beneficial owners.  Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred up to a maximum of $0.05 per name and address provided to the Claims Administrator; up to $0.05 per Postcard Notice actually mailed, plus postage at the rate used by Claims Administrator; or up to $0.05 per link to the Notice and Claim Form transmitted by email, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Copies of this Notice and the Claim Form may be obtained from the website maintained by the Claims Administrator, www. ExelaSecuritiesLitigation.com, or by calling the Claims Administrator toll-free at 1-888-306-3146.

## CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

92.  This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the Northern District of Texas, United States Courthouse, 1100 Commerce Street, Dallas, Texas 75242.  Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.ExelaSecuritiesLitigation.com.

All inquiries concerning this Notice and the Claim Form should be directed to the Claims Administrator or Lead Counsel at:

| | | |
|---|---|---|
| *In re Exela Tech. Securities Litigation*<br>c/o Epiq Class Action & Claims Solutions, Inc.<br>P.O. Box 2147<br>Portland, OR 97208-2147<br>888-306-3146<br>www.ExelaSecuritiesLitigation.com | and/or | Kara M. Wolke, Esq.<br>Glancy Prongay & Murray LLP<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>(310) 201-9150<br>settlements@glancylaw.com |

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS OR THEIR COUNSEL REGARDING THIS NOTICE.**

Dated: _____, 2023

By Order of the Court
United States District Court
Southern District of Texas

23

Page 80

# EXHIBIT A-2

**Exhibit A-2**

*Exela Tech. Securities Litigation*
*c/o* **Epiq Class Action & Claims Solutions, Inc.**
*P.O. Box 2147*
**Portland, OR 97208-2147**
**Toll Free Number: (888) 306-3146**
**Settlement Website: www.ExelaSecuritiesLitigation.com**
**Email:  info@ExelaSecuritiesLitigation.com**

## PROOF OF CLAIM AND RELEASE FORM

To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must be a Settlement Class Member and complete and sign this Proof of Claim and Release Form ("Claim Form") and submit it online at www.ExelaSecuritiesLitigation.com or mail it by first-class mail to the above address, **submitted online or postmarked no later than** _____.

Failure to submit your Claim Form by the date specified will subject your claim to rejection and may preclude you from being eligible to recover any money in connection with the Settlement.

**Do not mail or deliver your Claim Form to the Court, the settling parties or their counsel. Submit your Claim Form only to the Claims Administrator at the address set forth above.**

| TABLE OF CONTENTS | PAGE # |
|---|---|
| **PART I – CLAIMANT INFORMATION** | _ |
| **PART II – GENERAL INSTRUCTIONS** | _ |
| **PART III – SCHEDULE OF TRANSACTIONS IN EXELA COMMON STOCK** | _ |
| **PART IV – RELEASE OF CLAIMS AND SIGNATURE** | _ |

1

## PART I – CLAIMANT INFORMATION

(Please read General Instructions below before completing this page.)

The Claims Administrator will use this information for all communications regarding this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above.

Beneficial Owner's Name

Co-Beneficial Owner's Name

Entity Name (if Beneficial Owner is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address1 (street name and number)

Address2 (apartment, unit or box number)

City                                              State          Zip Code

Foreign Country (only if not USA)

Last four digits of Social Security Number or Taxpayer Identification Number

Telephone Number (home)                           Telephone Number (work)

Email address (Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.):

Account Number (account(s) through which the securities were traded)[1]:

Claimant Account Type (check appropriate box):
- ☐  Individual (includes joint owner accounts)     ☐  Pension Plan      ☐  Trust
- ☐  Corporation                                    ☐  Estate
- ☐  IRA/401K                                       ☐  Other _____ (please specify)

---

[1] If the account number is unknown, you may leave blank.  If the same legal entity traded through more than one account you may write "multiple."  Please see paragraph 12 of the General Instructions for more information on when to file separate Claim Forms for multiple accounts, *i.e.*, when you are filing on behalf of distinct legal entities.

2

## PART II – GENERAL INSTRUCTIONS

1.      It is important that you completely read and understand the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") that accompanies this Claim Form, including the Plan of Allocation of the Net Settlement Fund set forth in the Notice.  The Notice describes the proposed Settlement, how Settlement Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court.  The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form.  By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the releases described therein and provided for herein.

2.      This Claim Form is directed to all persons and entities who or which purchased or otherwise acquired publicly traded Exela Technologies, Inc. ("Exela") common stock ("Exela Stock") between March 16, 2018 and March 16, 2020, inclusive (the "Settlement Class Period"), and were damaged thereby (the "Settlement Class").  All persons and entities that are members of the Settlement Class are referred to as "Settlement Class Members."

3.      Excluded from the Settlement Class are: (a) persons who suffered no compensable losses;  and  (b) (i) Defendants;  (ii) the  legal  representatives,  heirs,  successors,  assigns,  and Immediate Family members of the Individual Defendants; (iii) the parents, subsidiaries, assigns, successors, predecessors and affiliates of Exela; (iv) any person who served as an Officer and/or director of Exela during the Settlement Class Period; (v) any entity in which any of the foregoing (i)-(iv) excluded persons have or had a majority ownership interest during the Settlement Class Period; (c) any trust of which any Individual Defendants is the grantor or settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Family; and (d) Defendants' liability insurance carriers.  Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

4.      If you are not a Settlement Class Member do not submit a Claim Form.  YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A SETTLEMENT CLASS MEMBER.  THUS, IF YOU ARE EXCLUDED FROM THE CLASS (AS SET FORTH IN PARAGRAPH 3 ABOVE), ANY CLAIM FORM THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

5.      If you are a Settlement Class Member, you will be bound by the terms of any judgments or orders entered in the Action WHETHER OR NOT YOU SUBMIT A CLAIM FORM, unless you submit a request for exclusion from the Settlement Class.  Thus, if you are a Class Member, the Judgment will release, and you will be barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal or administrative forum, asserting each and every Released Plaintiffs' Claims (including Unknown Claims) against Defendants' Releasees.

6.      You are eligible to participate in the distribution of the Net Settlement Fund only if you are a member of the Settlement Class and if you complete and return this form as specified

3

below. If you fail to submit a timely, properly addressed, and completed Claim Form with the required documentation, your claim may be rejected and you may be precluded from receiving any distribution from the Net Settlement Fund.

7. Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlement. The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation approved by the Court.

8. Use the Schedules of Transactions in Part III of this Claim Form to supply all required details of your transaction(s) (including free transfers) in and holdings of the applicable Exela Stock. On the Schedules of Transactions, please provide all of the requested information with respect to your holdings, purchases, acquisitions and sales of the applicable Exela Stock, whether such transactions resulted in a profit or a loss. Failure to report all transaction and holding information during the requested time periods may result in the rejection of your claim.

9. Please note: Only Exela Stock purchased/acquired during the Settlement Class Period (*i.e.*, from March 16, 2018 and March 16, 2020, inclusive) are eligible under the Settlement. However, because the PSLRA provides for a "90-day look-back period" (described in the Plan of Allocation set forth in the Notice), you must provide documentation related to your purchases and sales of Exela Stock during the period from March 16, 2020 through and including June 12, 2020, (*i.e.*, the 90-Day Lookback Period) in order for the Claims Administrator to calculate your Recognized Loss Amount under the Plan of Allocation and process your claim.

10. You are required to submit genuine and sufficient documentation for all of your transactions and holdings of the applicable Exela Stock set forth in the Schedules of Transactions in Part III of this Claim Form. Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement. The Parties and the Claims Administrator do not independently have information about your investments in Exela Stock. IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OR EQUIVALENT CONTEMPORANEOUS DOCUMENTS FROM YOUR BROKER. FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM. DO NOT SEND ORIGINAL DOCUMENTS. **Please keep a copy of all documents that you send to the Claims Administrator. Also, please do not highlight any portion of the Claim Form or any supporting documents.**

11. Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions through an account that is in the name of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made through an account in the individual's name). Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity on one Claim Form, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

12. All joint beneficial owners must sign this Claim Form. If you purchased or otherwise acquired Exela Stock during the Settlement Class Period and held the securities in your name, you are the beneficial owner as well as the record owner and you must sign this Claim Form to participate in the Settlement. If, however, you purchased or otherwise acquired Exela Stock

4

during the Settlement Class Period and the securities were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these securities, but the third party is the record owner. The beneficial owner, not the record owner, must sign this Claim Form.

13.     Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

(a)     expressly state the capacity in which they are acting;

(b)     identify the name, account number, Social Security Number (or taxpayer identification number), address and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the Exela Stock; and

(c)     furnish herewith evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting. (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade stock in another person's accounts.)

14.     By submitting a signed Claim Form, you will be swearing that you:

(a)     own(ed) the Exela Stock you have listed in the Claim Form; or

(b)     are expressly authorized to act on behalf of the owner thereof.

15.     By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America. The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

16.     If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after the completion of all claims processing. This could take substantial time. Please be patient.

17.     PLEASE NOTE: As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her or its pro rata share of the Net Settlement Fund. If the prorated payment to any Authorized Claimant, however, calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, *Exela Tech. Securities Litigation*, c/o Epiq Class Action & Claims Solutions, Inc. at P.O. Box 2147, Portland, OR 97208-2147 or by email at info@ ExelaSecuritiesLitigation.com, or by toll-free phone at (888) 306-3146 or you may download the documents from the Settlement website, www.ExelaSecuritiesLitigation.com.

18.     NOTICE REGARDING ELECTRONIC FILES: Certain Claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. To obtain the mandatory electronic filing requirements and file layout, you may visit the Settlement website at www.ExelaSecuritiesLitigation.com or you may

email the Claims Administrator's electronic filing department at info@ExelaSecuritiesLitigation.com. Any file not in accordance with the required electronic filing format will be subject to rejection. No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email to that effect after processing your file with your claim numbers and respective account information. Do not assume that your file has been received or processed until you receive this email. If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at info@ExelaSecuritiesLitigation.com to inquire about your file and confirm it was received and acceptable.

19.    NOTICE REGARDING ONLINE FILING: Claimants who are not Representative Filers may submit their claims online using the electronic version of the Claim Form hosted at www.ExelaSecuritiesLitigation.com. If you are not acting as a Representative Filer, you do not need to contact the Claims Administrator prior to filing; you will receive an automated e-mail confirming receipt once your Claim Form has been submitted. If you are unsure if you should submit your claim as a Representative Filer, please contact the Claims Administrator at info@ExelaSecuritiesLitigation.com or (888) 306-3146. If you are not a Representative Filer, but your claim contains a large number of transactions, the Claims Administrator may request that you also submit an electronic spreadsheet showing your transactions to accompany your Claim Form

**IMPORTANT: PLEASE NOTE**

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD. THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL WITHIN 60 DAYS. IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, PLEASE CALL THE CLAIMS ADMINISTRATOR TOLL FREE AT (888) 306-3146.**

## PART III – SCHEDULE OF TRANSACTIONS IN EXELA STOCK

Complete this Part III if and only if you purchased/acquired Exela Stock during the period from March 16, 2018 through and including March 16, 2020. Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 10, above. Do not include information in this section regarding securities other than Exela Stock purchased.

**1. BEGINNING HOLDINGS** – State the total number of shares of Exela Stock held as of the close of trading on March 16, 2018. (Must be documented.) If none, write "zero" or "0." _____

**2. PURCHASES/ACQUISITIONS DURING THE SETTLEMENT CLASS PERIOD THROUGH JUNE 12, 2020** – Separately list each and every purchase/acquisition (including free receipts) of Exela Stock from after the opening of trading on March 16, 2018, through and including the close of trading on June 12, 2020. (Must be documented.)

| Date of Purchase/Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/ Acquired | Purchase/ Acquisition Price Per Share | Total Purchase/ Acquisition Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |

**3. SALES DURING THE SETTLEMENT CLASS PERIOD THROUGH JUNE 12, 2020** – Separately list each and every sale/disposition (including free deliveries) of Exela Stock from after the opening of trading on March 16, 2018, through and including the close of trading on June 12, 2020. (Must be documented.)    **IF NONE, CHECK HERE** ○

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |

**4. ENDING HOLDINGS –** State the total number of shares of Exela Stock held as of the close of trading on June 12, 2020. (Must be documented.) If none, write "zero" or "0." _____

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX** ☐
**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL NOT BE REVIEWED**

7

## *PART VI – RELEASE OF CLAIMS AND SIGNATURE*

## *YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW AND SIGN*

## *ON PAGE [ ] OF THIS CLAIM FORM.*

I (we) hereby acknowledge that as of the Effective Date of the Settlement, pursuant to the terms set forth in the Stipulation, I (we), on behalf of myself (ourselves) and my (our) successors and assigns, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever waived, released, discharged, and dismissed each and every Released Plaintiffs' Claim (as defined in the Stipulation and in the Notice) against Defendants' Releasees (as defined in the Stipulation and in the Notice) and shall forever be barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal or administrative forum asserting any or all of the Released Plaintiffs' Claims against any Defendants' Releasee.

### CERTIFICATION

By signing and submitting this Claim Form, the Claimant(s) or the person(s) who represent(s) the Claimant(s) certifies (certify), as follows:

1.      that I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2.      that the Claimant(s) is a (are) Settlement Class Member(s), as defined in the Notice and in paragraph 2 on page 3 of this Claim Form, and is (are) not excluded from the Settlement Class by definition or pursuant to request as set forth in the Notice and in paragraph 3 on page 3 of this Claim Form;

3.      that I (we) own(ed) the Exela Stock identified in the Claim Form and have not assigned the claim against the Defendants' Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

4.      that the Claimant(s) has (have) not submitted any other claim covering the same purchases/acquisitions of Exela Stock and knows (know) of no other person having done so on the Claimant's (Claimants') behalf;

5.      that the Claimant(s) submit(s) to the jurisdiction of the Court with respect to Claimant's (Claimants') claim and for purposes of enforcing the releases set forth herein;

6.      that I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator or the Court may require;

7.      that the Claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the Court's summary disposition of the determination of the validity or amount of the claim made by this Claim Form;

8.      that I (we) acknowledge that the Claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

8

9.    that the Claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the Claimant(s) is (are) exempt from backup withholding or (b) the Claimant(s) has (have) not been notified by the IRS that he/she/it is subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the Claimant(s) that he/she/it is no longer subject to backup withholding.  **If the IRS has notified the Claimant(s) that he, she or it is subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____

Signature of Claimant                                                                 Date

_____

Print your name here

_____

Signature of joint Claimant, if any                                            Date

_____

Print your name here

*If the Claimant is other than an individual, or is not the person completing this form, the following also must be provided:*

_____

Signature of person signing on behalf of Claimant                 Date

_____

Print your name here

_____

CAPACITY OF PERSON SIGNING ON BEHALF OF CLAIMANT, IF OTHER THAN AN INDIVIDUAL, *E.G.*, EXECUTOR, PRESIDENT, TRUSTEE, CUSTODIAN, *ETC*.  (MUST PROVIDE EVIDENCE OF AUTHORITY TO ACT ON BEHALF OF CLAIMANT – SEE PARAGRAPH 14 ON PAGE 5 OF THIS CLAIM FORM.)

9

## REMINDER CHECKLIST:

1. Please sign the above release and certification.  If this Claim Form is being made on behalf of joint Claimants, then both must sign.

2. Remember to attach only **copies** of acceptable supporting documentation as these documents will not be returned to you.

3. Please do not highlight any portion of the Claim Form or any supporting documents.

4. Do not send original security certificates or documentation.  These items cannot be returned to you by the Claims Administrator.

5. Keep copies of the completed Claim Form and documentation for your own records.

6. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days.  Your claim is not deemed filed until you receive an acknowledgement postcard.  **If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll free at (888) 306-3146.**

7. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, please send the Claims Administrator written notification of your new address.  If you change your name, please inform the Claims Administrator.

8. If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the address below, by email at info@ ExelaSecuritiesLitigation.com__, or toll-free at (888) 306-3146 or visit www.ExelaSecuritiesLitigation.com.  Please DO NOT call Exela or any of the other Defendants or their counsel with questions regarding your claim.

THIS CLAIM FORM MUST BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN _____, 2023**, ADDRESSED AS FOLLOWS:

*Exela Tech. Securities Litigation*
c/o Epiq Class Action & Claims Solutions, Inc.
P.O. Box 2147
Portland, OR 97208-2147

OR SUBMITTED ONLINE AT WWW.EXELASECURITIESLITIGATION.COM **ON OR BEFORE _____, 2023**.

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before _____, 2023 is indicated on the envelope and it is mailed First Class, and addressed in accordance with the above instructions.  In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms.  Please be patient and notify the Claims Administrator of any change of address.

10

# EXHIBIT A-3

**Exhibit A-3**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA<br><br>Defendants. | Case No. 3:20-cv-00691-D |

### SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

**TO:** **All persons and entities who, during the period between March 16, 2018 and March 16, 2020, inclusive, purchased or otherwise acquired the publicly traded common stock of Exela Technologies, Inc. ("Exela"), and were damaged thereby (the "Settlement Class"):[1]**

**PLEASE READ THIS NOTICE CAREFULLY, YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of Texas, that the above-captioned litigation (the "Action") has been certified as a class action on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

---

[1] All capitalized terms used in this Summary Notice that are not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 27, 2023 (the "Stipulation"), which is available at www.ExelaSecuritiesLitigation.com.

YOU ARE ALSO NOTIFIED that the Lead Plaintiff in the Action has reached a proposed settlement of the Action for $5,000,000 in cash (the "Settlement"), that, if approved, will resolve all claims in the Action.

A hearing will be held on _____, 2023 at __:__ _.m., before the Honorable Sidney A. Fitzwater at the United States District Court for the Northern District of Texas, United States Courthouse, Courtroom 1351, 1100 Commerce Street, Dallas, Texas 75242-1003, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the Releases specified and described in the Stipulation (and in the Notice) should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund**.  The Notice and Proof of Claim and Release Form ("Claim Form"), can be downloaded from the website maintained by the Claims Administrator, www.ExelaSecuritiesLitigation.com. You may also obtain copies of the Notice and Claim Form by contacting the Claims Administrator at *Exela Tech. Securities Litigation*, c/o Epiq Class Action & Claims Solutions, Inc., P.O. Box 2147, Portland, OR 97208-2147, 1-888-306-3146.

If you are a member of the Settlement Class, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form *postmarked* no later than _____, 2023.  If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is *received* no later than _____, 2023, in accordance with the instructions set forth in the Notice.  If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Lead Counsel and Defendants' Counsel such that they are *received* no later than _____, 2023, in accordance with the instructions set forth in the Notice.

**Please do not contact the Court, the Clerk's office, Exela, or its counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel or the Claims Administrator.**

Inquiries, other than requests for the Notice and Claim Form, should be made to Lead Counsel:

GLANCY PRONGAY & MURRAY LLP
Kara M. Wolke, Esq.

2

1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150
info@glancylaw.com

Requests for the Notice and Claim Form should be made to:

*Exela Tech. Securities Litigation*
c/o Epiq Class Action & Claims Solutions, Inc.
P.O. Box 2147
Portland, OR 97208-2147
888-306-3146
www.ExelaSecuritiesLitigation.com


By Order of the Court


3

# EXHIBIT A-4

In re Exela Tech. Securities Litigation
c/o Epiq Class Action & Claims Solutions, Inc.
PO Box 2147
Portland, OR 97208-2147

**Exhibit A-4**
[Postage Prepaid]

### *COURT-ORDERED LEGAL NOTICE*

**Important Notice about a Securities Class Action Settlement.**

**You may be entitled to a CASH payment. This Notice may affect your legal rights. Please read it carefully.**

*Bo Shen v. Exela Technologies, Inc., et al.*
Case No. 3:20-cv-00691-D

Name
Address
City, State
Zip

---

*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.*
*PLEASE VISIT WWW.EXELASECURITIESLITIGATION.COM FOR MORE INFORMATION.*

There has been a proposed Settlement of claims against Exela Technologies, Inc. ("Exela") and certain executives and directors of Exela (collectively, the "Defendants"). The Settlement would resolve a lawsuit in which the Plaintiff alleges that Defendants disseminated materially false and misleading information to the investing public about Exela's financial condition, in violation of the federal securities laws. Defendants deny any wrongdoing. You received this Postcard Notice because you or someone in your family may have purchased or otherwise acquired Exela common stock between March 16, 2018 and March 16, 2020, inclusive, and been damaged thereby.

Defendants have agreed to pay a Settlement Amount of $5,000,000. The Settlement provides that the Settlement Fund, after deduction of any Court-approved attorneys' fees and expenses, notice and administration costs, and taxes, is to be divided among all Settlement Class Members who submit a valid Claim Form, in exchange for the settlement of this case and the Releases by Settlement Class Members of claims related to this case. **For all details of the Settlement, read the Stipulation and full Notice, available at www.ExelaSecuritiesLitigation.com.**

Your share of the Settlement proceeds will depend on the number of valid Claims submitted, and the number, size and timing of your transactions in Exela common stock. If every eligible Settlement Class Member submits a valid Claim Form, the average recovery will be $0.09 per eligible share before expenses and other Court-ordered deductions. Your award will be determined *pro rata* based on the number of claims submitted. This is further explained in the detailed Notice found on the Settlement website.

**To qualify for payment, you must submit a Claim Form**. The Claim Form can be found on the website www.ExelaSecuritiesLitigation.com or will be mailed to you upon request to the Claims Administrator (888-306-3146). **Claim Forms must be postmarked by _____.** If you do not want to be legally bound by the Settlement, you must exclude yourself by _____, or you will not be able to sue the Defendants about the legal claims in this case. If you exclude yourself, you cannot get money from this Settlement. If you want to object to the Settlement, you may file an objection by _____. The detailed Notice explains how to submit a Claim Form, exclude yourself or object.

The Court will hold a hearing in this case on _____, to consider whether to approve the Settlement and a request by the lawyers representing the Settlement Class for up to 33⅓% of the Settlement Fund in attorneys' fees, plus actual expenses up to $430,000 for litigating the case and negotiating the Settlement, and reimbursement of Plaintiffs' costs and e expenses related to their representation of the Settlement Class in an amount not to exceed $0.036. You may attend the hearing and ask to be heard by the Court, but you do not have to. For more information, call toll-free (888-306-3146) or visit the website www.ExelaSecuritiesLitigation.com and read the detailed Notice.

Page 97

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff's,<br><br>   v.<br><br>EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA<br><br>   Defendants. | Case No. 3:20-cv-00691-D |

**JUDGMENT APPROVING CLASS ACTION SETTLEMENT**

WHEREAS, a consolidated class action is pending in this Court entitled *Bo Shen v. Exela Technologies, Inc., et al.*, Case No. 3:20-cv-00691-D (the "Action");

WHEREAS, (a) lead plaintiff Insur Shamgunov ("Lead Plaintiff"), on behalf of himself and the Settlement Class (defined below), and (b) defendant Exela Technologies, Inc. ("Exela" or the "Company"), and Ronald Cogburn, Parvinder Chadha and James G. Reynolds (collectively, the "Individual Defendants"; and, together with Exela, the "Defendants"; and together with Lead Plaintiff, the "Parties") have determined to settle all claims asserted against Defendants in this Action with prejudice on the terms and conditions set forth in the Stipulation and Agreement of Settlement dated July 27, 2023 (the "Stipulation"), that provides for a complete dismissal with prejudice of the claims asserted against Defendants in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall

have the same meaning as they have in the Stipulation;

WHEREAS, by Order dated _____ __, 2023 (the "Preliminary Approval Order"), this Court: (a) preliminarily approved the Settlement; (b) certified the Settlement Class solely for purposes of effectuating the Settlement; (c) ordered that notice of the proposed Settlement be provided to potential Settlement Class Members; (d) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the proposed Settlement; and (e) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Settlement Class;

WHEREAS, the Court conducted a hearing on _____ __, 2023 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable and adequate to the Settlement Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants; and

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.   **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members.

2.   **Incorporation of Settlement Documents** – This Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on _____ __, 2023; and (b) the Notice, the Summary Notice, and the Postcard Notice, all of which were filed with the Court on _____ __,

2

2023.

3.     **Class Certification for Settlement Purposes** – The Court hereby affirms its determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class consisting of all persons and entities who or which purchased or otherwise acquired publicly traded Exela common stock between March 16, 2018 and March 16, 2020, inclusive (the "Settlement Class Period"), and were damaged thereby. Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) (i) Defendants; (ii) the legal representatives, heirs, successors, assigns, and Immediate Family members of the Individual Defendants; (iii) the parents, subsidiaries, assigns, successors, predecessors and affiliates of Exela; (iv) any person who served as an Officer and/or director of Exela during the Settlement Class Period; (v) any entity in which any of the foregoing (i)-(iv) excluded persons have or had a majority ownership interest during the Settlement Class Period; (c) any trust of which any Individual Defendants is the grantor or settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Family; and (d) Defendants' liability insurance carriers.  [Also excluded from the Settlement Class are the persons and entities listed on Exhibit 1 hereto who or which are excluded from the Settlement Class pursuant to request.]

4.     **Adequacy of Representation** – Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby affirms its determinations in the Preliminary Approval Order certifying Lead Plaintiff as the Class Representative for the Settlement Class and appointing Lead Counsel as Class Counsel for the Settlement Class.  Lead Plaintiff and Lead Counsel have fairly and adequately represented the Settlement Class both in

3

terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

5.    **Notice** – The Court finds that the dissemination of the Postcard Notice, the online posting of the Notice, and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules.

6.    **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is,

4

in all respects, fair, reasonable and adequate to the Settlement Class.  The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

7.      The Action and all of the claims asserted against Defendants in the Action by Lead Plaintiff and the other Settlement Class Members are hereby dismissed with prejudice.  The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

8.      **Binding Effect** – The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiff and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. [The persons and entities listed on Exhibit 1 hereto are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Stipulation or this Judgment.]

9.      **Releases** – The Releases set forth in paragraphs 5 and 6 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects.  The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a)      Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Plaintiff's Claims on behalf of the respective Settlement Class Member in such capacity only, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiff's Claim against the Defendants and the other

5

Defendants' Releasees, and shall forever be enjoined from prosecuting any or all of the Released Plaintiff's Claims against any of the Defendants' Releasees.  For the avoidance of doubt, this Release shall not apply to any shareholder derivative claims asserted in *Ezzat v. Cogburn, et al.*, Case No. 2022-2021 (Del. Chancery Ct.), *Moser v. Cogburn, et al.*, Case No. 3:20-cv-3691 (N.D. Tex.), and *McKenna v. Cogburn, et al.*, Case No. 3:20-cv-3691-1800 (N.D. Tex.).  [Nor shall this Release apply to any person or entity listed on Exhibit 1 hereto.]

(b)      Without further action by anyone, and subject to paragraph 10 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Defendants' Claims on behalf of the Defendants in such capacity only, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against Lead Plaintiff and the other Plaintiff's Releasees, and shall forever be enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff's Releasees.  [This Release shall not apply to any person or entity listed on Exhibit 1 hereto.]

10.     Notwithstanding paragraphs 9(a) – (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

11.     **<u>Rule 11 Findings</u>** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

12.     **<u>No Admissions</u>** – Neither this Judgment, the Stipulation (whether or not

6

consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(b)     shall be offered against any of the Plaintiff's Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff's Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiff's Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession,

7

or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; provided, however, that the Parties and the Releasees and their respective counsel may refer to this Judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

13.   **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over:  (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses by Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to the Action.

14.   Separate orders shall be entered regarding approval of a plan of allocation and the motion of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses. Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

15.   **Modification of the Agreement of Settlement** – Without further approval from the Court, Lead Plaintiff and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement.  Without further order of the Court, Lead Plaintiff and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

8

16.    **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiff's, the other Settlement Class Members and Defendants, and the Parties shall revert to their respective positions in the Action as of June 3, 2023, as provided in the Stipulation.

17.    **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

SO ORDERED this _____ day of _____, 202_.

_____
The Honorable Sidney A Fitzwater
United States District Judge

9

**Exhibit 1**

**[List of Persons and Entities Excluded from the Settlement Class Pursuant to Request]**

10

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

BO SHEN, Individually and on Behalf of
All Others Similarly Situated,

               Plaintiffs,

    v.

EXELA TECHNOLOGIES, INC.,
RONALD COGBURN, JAMES G.
REYNOLDS, and PAR CHADHA

               Defendants.

Case No. 3:20-cv-00691-D

## DECLARATION OF INSUR SHAMGUNOV IN SUPPORT OF PLAINTIFFS' MOTION
## FOR CLASS CERTIFICATION

I, Dr. Insur Shamgunov, declare as follows:

1.     I am one of the lead plaintiffs in the above-captioned consolidated action. I submit this declaration in support of Plaintiffs' Motion for Class Certification. I have personal knowledge of the facts stated in this declaration. If called upon to do so, I could and would competently testify to these facts.

2.     I purchased 300 shares of Exela Technologies, Inc. ("Exela") common stock on April 8, 2019, at $ 3.78 per share. I purchased 1,700 shares of Exela common stock on April 26, 2019, at $3.38 per share. I purchased 3,000 shares of Exela common stock on August 16, 2019, at $1.15 per share. I purchased 4,000 shares of Exela common stock on October 22, 2019, at $0.82 per share. I made the transactions through my brokerage account at Interactive Investor Services Limited.

3.     I invested in Exela based upon the research that I conducted into the company and its financial performance and forecasts, which included news articles, and press releases.

4.     I joined this securities class action on behalf of all persons and entities who purchased or acquired the securities of Exela between March 16, 2018 and March 16, 2020, inclusive (the "Class Period"), and were damaged thereby (the "Class").

5.     I seek to be appointed Class Representative. I am committed to vigorously prosecuting this litigation and, should I be appointed as Class Representative, I intend to obtain the largest recovery for the Class consistent with good faith and sound judgment. I believe that I have the ability to adequately represent the interests of all investors who purchased or acquired the securities of Exela during the Class Period, and were damaged thereby.

6.     Since commencement of this action, I have supervised and monitored the progress of this litigation. For example, I have: (a) received regular status reports from counsel;

1

DocuSign Envelope ID: 6ADD6E32-62AE-4714-82C9-10B7104CA58D

(b) participated in discussions with counsel concerning significant developments in this litigation; (c) reviewed pleadings in this matter; (d) responded to discovery; and (e) am available to have my deposition taken.

7. I am committed to continuing to supervise, monitor, and participate in the ongoing prosecution of this action and, should I be appointed class representative, to fulfilling my fiduciary duty to all members of the proposed Class to provide fair and adequate representation. I intend to continue to provide fair and adequate representation by, among other things, participating in discovery, remaining aware of the progress of the litigation, and directing the efforts of my counsel, Glancy Prongay & Murray LLP, whom the Court previously appointed as Lead Counsel.

8. I retained Glancy Prongay & Murray LLP based on their experience, resources, and expertise in prosecuting securities class actions. I believe Glancy Prongay and Murray LLP and the Kendall Law Group, PLLC possess the necessary financial and human resources to prosecute this case effectively as Class Counsel. I believe that the proposed Class Counsel have done well to this point by, for example, defeating defendants' multiple efforts to dismiss this action.

9. I have kept, and will continue to keep, myself informed of the status and progress of this action, the strengths and weaknesses of the case, and the prospects for settlement. I will consult with counsel regarding major litigation event, such as important motions, settlement discussions, trial preparation, and trial. I recognize my duty (as a fiduciary) to act in the best interest of the proposed Class and, if appointed as class representative, I will take all steps necessary to fulfill that duty.

I declare under penalty of perjury under the laws of the United States of America and the state of Texas that the foregoing is true and correct.

2

DocuSign Envelope ID: 6ADD6E32-62AE-4714-82C9-10B7104CA58D

Executed this 6 _____ day of April 2023, at ___Liverpool_____, United

Kingdom.

_____ *Insur Shamgunov* _____

Dr. Insur Shamgunov

3

Page 113

# EXHIBIT 4

1925 Century Park East, Suite 2100
Los Angeles, CA 90067
T: 310.201.9150

**GPM** | Glancy
Prongay
& Murray LLP

## FIRM RESUME

**Glancy Prongay & Murray LLP** (the "Firm") has represented investors, consumers and employees for over 25 years. Based in Los Angeles, with offices in New York City and Berkeley, the Firm has successfully prosecuted class action cases and complex litigation in federal and state courts throughout the country.  As Lead Counsel, Co-Lead Counsel, or as a member of Plaintiffs' Counsel Executive Committees, the Firm's attorneys have recovered billions of dollars for parties wronged by corporate fraud, antitrust violations and malfeasance. Indeed, the Institutional Shareholder Services unit of RiskMetrics Group has recognized the Firm as one of the top plaintiffs' law firms in the United States in its Securities Class Action Services report for every year since the inception of the report in 2003.  The Firm's efforts have been publicized in major newspapers such as the *Wall Street Journal*, the *New York Times*, and the *Los Angeles Times*.

Glancy Prongay & Murray's commitment to high quality and excellent personalized services has boosted its national reputation, and we are now recognized as one of the premier plaintiffs' firms in the country. The Firm works tenaciously on behalf of clients to produce significant results and generate lasting corporate reform.

The Firm's integrity and success originate from our attorneys, who are among the brightest and most experienced in the field. Our distinguished litigators have an unparalleled track record of investigating and prosecuting corporate wrongdoing. The Firm is respected for both the zealous advocacy with which we represent our clients' interests as well as the highly-professional and ethical manner by which we achieve results. We are ideally positioned to pursue securities, antitrust, consumer, and derivative litigation on behalf of our clients. The Firm's outstanding accomplishments are the direct result of the exceptional talents of our attorneys and employees.

## SECURITIES CLASS ACTION SETTLEMENTS

Appointed as Lead or Co-Lead Counsel by judges throughout the United States, Glancy Prongay & Murray has achieved significant recoveries for class members in numerous securities class actions, including:

*In re Mercury Interactive Corporation Securities Litigation*, USDC Northern District of California, Case No. 05-3395-JF, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $117 million.

*In re Real Estate Associates Limited Partnership Litigation*, USDC Central District of California, Case No. 98-7035-DDP, in which the Firm served as local counsel and

868675.6                                   Page 1

plaintiffs achieved a $184 million jury verdict after a complex six week trial in Los Angeles, California and later settled the case for $83 million.

*In Re Yahoo! Inc. Securities Litigation*, USDC Northern District of California, Case No. 5:17-cv-00373-LHK, in which the Firm served as Co-Lead Counsel and achieved an $80 million settlement.

*The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank, N.A.*, USDC District of Minnesota, Case No. 10-cv-04372-DWF/JJG, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at $62.5 million.

*Shah v. Zimmer Biomet Holdings, Inc.*, USDC Northern District of Indiana, Case No. 3:16-cv-815-PPS-MGG, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $50 million.

*Schleicher v. Wendt*, (Conseco Securities Litigation), USDC Southern District of Indiana, Case No. 02-1332-SEB, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of over $41 million.

*Robb v. Fitbit, Inc.*, USDC Northern District of California, Case No. 3:16-cv-00151, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $33 million.

*Yaldo v. Airtouch Communications*, State of Michigan, Wayne County, Case No. 99-909694-CP, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $32 million for defrauded consumers.

*Lapin v. Goldman Sachs*, USDC Southern District of New York, Case No. 03-0850-KJD, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $29 million.

*In re Heritage Bond Litigation*, USDC Central District of California, Case No. 02-ML-1475-DT, where as Co-Lead Counsel, the Firm recovered in excess of $28 million for defrauded investors and continues to pursue additional defendants.

*In re Livent, Inc. Noteholders Litigation*, USDC Southern District of New York, Case No. 99 Civ 9425-VM, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of over $27 million.

*Mild v. PPG Industries, Inc.*, USDC Central District of California, Case No. 18-cv-04231, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $25 million.

*Davis v. Yelp, Inc.*, USDC Northern District of California, Case No. 18-cv-0400, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $22.5 million.

*In re ECI Telecom Ltd. Securities Litigation*, USDC Eastern District of Virginia, Case No. 01-913-A, in which the Firm served as sole Lead Counsel and recovered almost $22 million for defrauded ECI investors.

*In re Sesen Bio, Inc. Securities Litigation*, USDC Southern District of New York, Case No. 21-cv-07025, a securities fraud class action, in which the Firm served as Lead Counsel for the Class and achieved a settlement of $21 million.

*Senn v. Sealed Air Corporation*, USDC New Jersey, Case No. 03-cv-4372-DMC, a securities fraud class action, in which the Firm acted as Co-Lead Counsel for the Class and achieved a settlement of $20 million.

*In re Gilat Satellite Networks, Ltd. Securities Litigation*, USDC Eastern District of New York, Case No. 02-1510-CPS, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $20 million.

*In re Lumenis, Ltd. Securities Litigation*, USDC Southern District of New York, Case No.02-CV-1989-DAB, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $20 million.

*Wilson v. LSB Industries, Inc.*, USDC Southern District of New York, Case No. 15-cv-07614, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $18.45 million.

*In re Infonet Services Corporation Securities Litigation*, USDC Central District of California, Case No. CV 01-10456-NM, in which as Co-Lead Counsel, the Firm achieved a settlement of $18 million.

*Pierrelouis v. Gogo Inc.*, USDC Northern District of Illinois, Case No. 18-cv-04473, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $17.3 million.

*In re ESC Medical Systems, Ltd. Securities Litigation*, USDC Southern District of New York, Case No. 98 Civ. 7530-NRB, a securities fraud class action in which the Firm served as sole Lead Counsel for the Class and achieved a settlement valued in excess of $17 million.

*Macovski v. Groupon, Inc.*, USDC Northern District of Illinois, Case No. 20-cv-02581, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $13.5 million.

*In re Musicmaker.com Securities Litigation*, USDC Central District of California, Case No. 00-02018-CAS, a securities fraud class action in which the Firm was sole Lead Counsel for the Class and recovered in excess of $13 million.

*In re Lason, Inc. Securities Litigation*, USDC Eastern District of Michigan, Case No. 99 76079-AJT, in which the Firm was Co-Lead Counsel and recovered almost $13 million for defrauded Lason stockholders.

*In re Inso Corp. Securities Litigation*, USDC District of Massachusetts, Case No. 99 10193-WGY, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $12 million.

*In re National TechTeam Securities Litigation*, USDC Eastern District of Michigan, Case No. 97-74587-AC, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $11 million.

*Taft v. Ackermans (KPNQwest Securities Litigation)*, USDC Southern District of New York, Case No. 02-CV-07951-PKL, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement worth $11 million.

*Derr v. RA Medical Systems, Inc.*, USDC Southern District of California, Case No. 19-cv-01079, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $10 million.

*Jenson v. First Trust Corporation*, USDC Central District of California, Case No. 05-cv-3124-ABC, in which the Firm was appointed sole lead counsel and achieved an $8.5 million settlement in a very difficult case involving a trustee's potential liability for losses incurred by investors in a Ponzi scheme. Kevin Ruf of the Firm also successfully defended in the 9th Circuit Court of Appeals the trial court's granting of class certification in this case.

## ANTITRUST PRACTICE GROUP AND ACHIEVEMENTS

Glancy Prongay & Murray's Antitrust Practice Group focuses on representing individuals and entities that have been victimized by unlawful monopolization, price-fixing, market allocation, and other anti-competitive conduct. The Firm has prosecuted significant antitrust cases and has helped individuals and businesses recover billions of dollars. Prosecuting civil antitrust cases under federal and state laws throughout the country, the Firm's Antitrust Practice Group represents consumers, businesses, and Health and Welfare Funds and seeks injunctive relief and damages for violations of antitrust and commodities laws. The Firm has served, or is currently serving, as Lead Counsel, Co-Lead Counsel or Class Counsel in a substantial number of antitrust class actions, including:

*In re Nasdaq Market-Makers Antitrust Litigation*, USDC Southern District of New York, Case No. 94 C 3996-RWS, MDL Docket No. 1023, a landmark antitrust lawsuit in which the Firm filed the first complaint against all of the major NASDAQ market makers and served on Plaintiffs' Counsel's Executive Committee in a case that recovered $900 million for investors.

*Sullivan v. DB Investments*, USDC District of New Jersey, Case No. No. 04-cv-2819, where the Firm served as Co-Lead Settlement Counsel in an antitrust case against DeBeers relate to the pricing of diamonds that settled for $295 million.

*In re Korean Air Lines Antitrust Litig.*, USDC Central District of California, Master File No. CV 07-05107 SJO(AGRx), MDL No. 07-0189, where the Firm served as Co-Lead Counsel in a case related to fixing of prices for airline tickets to Korea that settled for $86 million.

*In re Urethane Chemical Antitrust Litig.*, USDC District of Kansas, Case No. MDL 1616, where the Firm served as Co-Lead counsel in an antitrust price fixing case that settled $33 million.

*In re Western States Wholesale Natural Gas Litig.*, USDC District of Nevada, Case No. MDL 1566, where the Firm served as Class Counsel in an antitrust price fixing case that settled $25 million.

*In re Aggrenox Antitrust Litig.,* USDC District of Connecticut, Case No. 14-cv-2516, where the Firm played a major role in achieving a settlement of $54,000,000.

*In re Solodyn Antitrust Litig.,* USDC District of Massachusetts, Case No. MDL 2503, where the Firm played a major role in achieving a settlement of $43,000,000.

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*, USDC Eastern District of Pennsylvania, Case No. 16-md-2427, where the Firm is representing a major Health and Welfare Fund in a case against a number of generic drug manufacturers for price fixing generic drugs.

*In re Actos End Payor Antitrust Litig.*, USDC Southern District of New York, Case No. 13-cv-9244, where the Firm is serving on Plaintiffs' Executive Committee.

*In re Heating Control Panel Direct Purchaser* Action, USDC Eastern District of Michigan, Case No. 12-md-02311, representing a recreational vehicle manufacturer in a price-fixing class action involving direct purchasers of heating control panels.

*In re Instrument Panel Clusters Direct Purchaser Action,* USDC Eastern District of Michigan, Case No. 12-md-02311, representing a recreational vehicle manufacturer in a price-fixing class action involving direct purchasers of instrument panel clusters.

In addition, the Firm is currently involved in the prosecution of many market manipulation cases relating to violations of antitrust and commodities laws, including *Sullivan v. Barclays PLC* (manipulation of Euribor rate), *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, *In re LIBOR-Based Financial Instruments Antitrust Litig.*, *In re Gold Futures & Options Trading Litig.*, *In re Platinum & Palladium Antitrust Litig.*, *Sonterra Cap. Master Fund v. Credit Suisse Group AG* (Swiss Libor rate manipulation), *Twin City Iron Pension Fund v. Bank of Nova Scotia* (manipulation of treasury securities), and *Ploss v. Kraft Foods Group* (manipulation of wheat prices).

Glancy Prongay & Murray has been responsible for obtaining favorable appellate opinions which have broken new ground in the class action or securities fields, or which have promoted shareholder rights in prosecuting these actions. The Firm successfully argued the appeals in a number of cases:

In *Smith v. L'Oreal*, 39 Cal.4th 77 (2006), Firm partner Kevin Ruf established ground-breaking law when the California Supreme Court agreed with the Firm's position that waiting penalties under the California Labor Code are available to *any* employee after termination of employment, regardless of the reason for that termination.

## OTHER NOTABLE ACHIEVEMENTS

Spearheaded by Firm attorney Kevin Ruf, the Firm served as Co-Lead Counsel for a class of drivers misclassified as independent contractors in the landmark case Lee v. Dynamex, Case No. BC332016 (Super. Ct. of Cal), which made new law for workers' rights in the California Supreme Court. The *Dynamex* decision altered 30 years of California law and established a new definition of employment that brings more workers within the protections of California's Labor Code. The California legislature, in response to the *Dynamex* decision, promulgated AB5, a statute that codifies the law of the *Dynamex* case and expands its reach.

Headed by Firm attorney Kara Wolke, the Firm served as additional plaintiffs' counsel in *Christine Asia Co. Ltd., et al. v. Jack Yun Ma et al. ("Alibaba")*, 1:15-md-02631 (SDNY), a securities class action on behalf of investors alleging violations of the Securities Exchange Act of 1934 in connection with Alibaba's historic $25 billion IPO, the then-largest IPO in history. After hard-fought litigation, including a successful appeal to the Second Circuit and obtaining class certification, the case settled for $250 million.

Other notable Firm cases include: *Silber v. Mabon I*, 957 F.2d 697 (9th Cir. 1992) and *Silber v. Mabon II*, 18 F.3d 1449 (9th Cir. 1994), which are the leading decisions in the Ninth Circuit regarding the rights of opt-outs in class action settlements. In *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000), the Firm won a seminal victory for investors before the Second Circuit Court of Appeals, which adopted a more favorable pleading standard for investors in reversing the District Court's dismissal of the investors' complaint. After this successful appeal, the Firm then recovered millions of dollars for defrauded investors of the GT Interactive Corporation. The Firm also argued *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), *as amended*, 320 F.3d 905 (9th Cir. 2003), and favorably obtained the substantial reversal of a lower court's dismissal of a cutting edge, complex class action initiated to seek redress for a group of employees whose stock options were improperly forfeited by a giant corporation in the course of its sale of the subsidiary at which they worked.

The Firm also has been involved in the representation of individual investors in court proceedings throughout the United States and in arbitrations before the American Arbitration Association, National Association of Securities Dealers, New York Stock Exchange, and Pacific Stock Exchange. Mr. Glancy has successfully represented

litigants in proceedings against such major securities firms and insurance companies as A.G. Edwards & Sons, Bear Stearns, Merrill Lynch & Co., Morgan Stanley, PaineWebber, Prudential, and Shearson Lehman Brothers.

One of the Firm's unique skills is the use of "group litigation" - the representation of groups of individuals who have been collectively victimized or defrauded by large institutions. This type of litigation brought on behalf of individuals who have been similarly damaged often provides an efficient and effective economic remedy that frequently has advantages over the class action or individual action devices. The Firm has successfully achieved results for groups of individuals in cases against major corporations such as Metropolitan Life Insurance Company, and Occidental Petroleum Corporation.

Glancy Prongay & Murray LLP currently consists of the following attorneys:

## PARTNERS

**LEE ALBERT**, a partner, was admitted to the bars of the Commonwealth of Pennsylvania, the State of New Jersey, and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey in 1986. He received his B.S. and M.S. degrees from Temple University and Arcadia University in 1975 and 1980, respectively, and received his J.D. degree from Widener University School of Law in 1986. Upon graduation from law school, Mr. Albert spent several years working as a civil litigator in Philadelphia, PA. Mr. Albert has extensive litigation and appellate practice experience having argued before the Supreme and Superior Courts of Pennsylvania and has over fifteen years of trial experience in both jury and non-jury cases and arbitrations. Mr. Albert has represented a national health care provider at trial obtaining injunctive relief in federal court to enforce a five-year contract not to compete on behalf of a national health care provider and injunctive relief on behalf of an undergraduate university.

Currently, Mr. Albert represents clients in all types of complex litigation including matters concerning violations of federal and state antitrust and securities laws, mass tort/product liability and unfair and deceptive trade practices. Some of Mr. Albert's current major cases include *In Re Automotive Wire Harness Systems Antitrust Litigation* (E.D. Mich.*); In Re Heater Control Panels Antitrust Litigation* (E.D. Mich.); *Kleen Products, et al. v. Packaging Corp. of America* (N.D. Ill.); *and In re Class 8 Transmission Indirect Purchaser Antitrust Litigation* (D. Del.). Previously, Mr. Albert had a significant role in *Marine Products Antitrust Litigation* (C.D. Cal.); *Baby Products Antitrust Litigation* (E.D. Pa.); *In re ATM Fee Litigation* (N.D. Cal.); *In re Canadian Car Antitrust Litigation* (D. Me.); *In re Broadcom Securities Litigation* (C.D. Cal.); and has worked on *In re Avandia Marketing, Sales Practices and Products Liability Litigation* (E.D. Pa.); *In re Ortho Evra Birth Control Patch Litigation* (N.J. Super. Ct.); *In re AOL Time Warner, Inc. Securities Litigation* (S.D.N.Y.); *In re WorldCom, Inc. Securities Litigation* (S.D.N.Y.); and *In re Microsoft Corporation Massachusetts Consumer Protection Litigation* (Mass. Super. Ct.).

**BRIAN D. BROOKS** joined the New York office of Glancy Prongay & Murray LLP in 2019, specializing in antitrust, consumer, and securities litigation. His current cases include *In re Zetia Antitrust Litigation*, No. 18-md-2836 (E.D. Va.); *Staley, et al. v. Gilead Sciences, Inc., et al.*, No. 3:19-cv-02573-EMC (N.D. Cal.); and *In re: Seroquel XR (Extended Release Quetiapine Fumarate) Litigation*, No. 1:19-cv-08296-CM (S.D.N.Y.).

Prior to joining the firm, Mr. Brooks was an associate at Murray, Frank & Sailer, LLP in New York, where his practice was focused on antitrust, consumer, and securities matters, and later a partner at Smith, Segura & Raphael, LLP, in New York and Louisiana. During his tenure at Smith Segura & Raphael, LLP, Mr. Brooks represented direct purchasers in numerous antitrust matters, including *In re: Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation*, No. 2:13-md-02445 (E.D. Pa.), *In re: Niaspan Antitrust Litigation*, No. 2:13-md-02460 (E.D. Pa.), and *In re: Novartis & Par Antitrust Litigation (Exforge)*, No. 18-cv-4361 (S.D.N.Y.), and was an active member of the trial team for the class in *In re: Nexium (Esomeprazole) Antitrust Litigation*, No. 12-md-2409 (D. Mass.), the first post-*Actavis* reverse-payment case to be tried to verdict. He was also an active member of the litigation teams in the *King Drug Company of Florence, Inc. et al. v. Cephalon, Inc., et al. (Provigil)*, No. 2:06-cv-1797 (E.D. Pa.); *In re: Prograf Antitrust Litigation*, No. 1:11-md-2242 (D. Mass.) and *In re: Miralax* antitrust matters, which collectively settled for more than $600 million, and a member of the litigation teams in *In re: Relafen Antitrust Litigation*, No. 01-cv-12239 (D. Mass.); *In re: Buspirone Antitrust Litigaiton*, MDL Dkt. No. 1410 (S.D.N.Y.); *In re: Remeron Antitrust Litigation,* No. 02-2007 (D.N.J.); *In re: Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317 (S.D. Fla.); and *In re K-Dur Antitrust Litigation*, No. 10-cv-1652 (D.N.J.).

Mr. Brooks received his B.A. from Northwestern State University of Louisiana in 1998 and his J.D. from Washington and Lee School of Law in 2002, where he was a staff writer for the Environmental Law Digest and clerked for the Alderson Legal Assistance Program, handling legal matters for inmates of the Federal Detention Center in Alderson, West Virginia. He is admitted to practice in all state courts in New York and Louisiana, as well as the United States District Courts for the Southern and Eastern Districts of New York and the Eastern and Western Districts of Louisiana.

**JOSEPH D. COHEN** has extensive complex civil litigation experience, and currently oversees the firm's settlement department, negotiating, documenting and obtaining court approval of the firm's securities, merger and derivative settlements.

Prior to joining the firm, Mr. Cohen successfully prosecuted numerous securities fraud, consumer fraud, antitrust and constitutional law cases in federal and state courts throughout the country. Cases in which Mr. Cohen took a lead role include: *Jordan v. California Dep't of Motor Vehicles*, 100 Cal. App. 4th 431 (2002) (complex action in which the California Court of Appeal held that California's Non-Resident Vehicle $300 Smog Impact Fee violated the Commerce Clause of the United States Constitution, paving the way for the creation of a $665 million fund and full refunds, with interest, to 1.7 million motorists); *In re Geodyne Res., Inc. Sec. Litig.* (Harris Cty. Tex.) (settlement of securities fraud class action, including related litigation, totaling over $200 million); *In*

*re Cmty. Psychiatric Centers Sec. Litig.* (C.D. Cal.) (settlement of $55.5 million was obtained from the company and its auditors, Ernst & Young, LLP); *In re McLeodUSA Inc., Sec. Litig.* (N.D. Iowa) ($30 million settlement); *In re Arakis Energy Corp. Sec. Litig.* (E.D.N.Y.) ($24 million settlement); *In re Metris Cos., Inc., Sec. Litig.* (D. Minn.) ($7.5 million settlement); *In re Landry's Seafood Rest., Inc. Sec. Litig.* (S.D. Tex.) ($6 million settlement); and *Freedman v. Maspeth Fed. Loan and Savings Ass'n*, (E.D.N.Y) (favorable resolution of issue of first impression under RESPA resulting in full recovery of improperly assessed late fees).

Mr. Cohen was also a member of the teams that obtained substantial recoveries in the following cases: *In re: Foreign Exchange Benchmark Rates Antitrust Litig.* (S.D.N.Y.) (partial settlements of approximately $2 billion); *In re Washington Mutual Mortgage-Backed Sec. Litig.* (W.D. Wash.) (settlement of $26 million); *Mylan Pharm., Inc. v. Warner Chilcott Public Ltd. Co.* (E.D. Pa.) ($8 million recovery in antitrust action on behalf of class of indirect purchasers of the prescription drug Doryx); *City of Omaha Police and Fire Ret. Sys. v. LHC Group, Inc.* (W.D. La.) (securities class action settlement of $7.85 million); and *In re Pacific Biosciences of Cal., Inc. Sec. Litig.* (Cal. Super. Ct.) ($7.6 million recovery).

In addition, Mr. Cohen was previously the head of the settlement department at Bernstein Litowitz Berger & Grossmann LLP. While at BLB&G, Mr. Cohen had primary responsibility for overseeing the team working on the following settlements, among others: *In Re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.* (D.N.J.) ($1.062 billion securities class action settlement); *New York State Teachers' Ret. Sys. v. General Motors Co.* (E.D. Mich.) ($300 million securities class action settlement); *In re JPMorgan Chase & Co. Sec. Litig.* (S.D.N.Y.) ($150 million settlement); *Dep't of the Treasury of the State of New Jersey and its Division of Inv. v. Cliffs Natural Res. Inc., et al.* (N.D. Ohio) ($84 million securities class action settlement); *In re Penn West Petroleum Ltd. Sec. Litig.* (S.D.N.Y.) ($19.76 million settlement); and *In re BioScrip, Inc. Sec. Litig.* ($10.9 million settlement).

**LIONEL Z. GLANCY**, a graduate of University of Michigan Law School, is the founding partner of the Firm. After serving as a law clerk for United States District Judge Howard McKibben, he began his career as an associate at a New York law firm concentrating in securities litigation. Thereafter, he started a boutique law firm specializing in securities litigation, and other complex litigation, from the Plaintiff's perspective. Mr. Glancy has established a distinguished career in the field of securities litigation over the last thirty years, having appeared and been appointed lead counsel on behalf of aggrieved investors in securities class action cases throughout the country. He has appeared and argued before dozens of district courts and a number of appellate courts. His efforts have resulted in the recovery of hundreds of millions of dollars in settlement proceeds for huge classes of shareholders. Well known in securities law, he has lectured on its developments and practice, including having lectured before Continuing Legal Education seminars and law schools.

Mr. Glancy was born in Windsor, Canada, on April 4, 1962. Mr. Glancy earned his undergraduate degree in political science in 1984 and his Juris Doctor degree in 1986,

868675.6                                  Page 9

both from the University of Michigan.  He was admitted to practice in California in 1988, and in Nevada and before the U.S. Court of Appeals, Ninth Circuit, in 1989.

**MARC L. GODINO** has extensive experience successfully litigating complex, class action lawsuits as a plaintiffs' lawyer. Since joining the firm in 2005, Mr. Godino has played a primary role in cases resulting in settlements of more than $100 million.  He has prosecuted securities, derivative, merger & acquisition, and consumer cases throughout the country in both state and federal court, as well as represented defrauded investors at FINRA arbitrations.  Mr. Godino manages the Firm's consumer class action department.

While a senior associate with Stull Stull & Brody, Mr. Godino was one of the two primary attorneys involved in *Small v. Fritz Co.*, 30 Cal. 4th 167 (April 7, 2003), in which the California Supreme Court created new law in the State of California for shareholders that held shares in detrimental reliance on false statements made by corporate officers.  The decision was widely covered by national media including *The National Law Journal*, the *Los Angeles Times*, the *New York Times*, and the *New York Law Journal*, among others, and was heralded as a significant victory for shareholders.

Mr. Godino's successes with Glancy Prongay & Murray LLP include: *Good Morning To You Productions Corp., et al., v. Warner/Chappell Music, Inc., et al.*, Case No. 13-04460 (C.D. Cal.) (In this highly publicized case that attracted world-wide attention, Plaintiffs prevailed on their claim that the song "Happy Birthday" should be in the public domain and achieved a $14,000,000 settlement to class members who paid a licensing fee for the song); *Ord v. First National Bank of Pennsylvania,* Case No. 12-766 (W. D. Pa.) ($3,000,000 settlement plus injunctive relief); *Pappas v. Naked Juice Co. of Glendora, Inc.,* Case No. 11-08276 (C.D. Cal.) ($9,000,000 settlement plus injunctive relief);*Astiana v. Kashi Company,* Case No. 11-1967 (S.D. Cal.) ($5,000,000 settlement); *In re Magma Design Automation, Inc. Securities Litigation*, Case No. 05-2394 (N.D. Cal.) ($13,500,000 settlement); *In re Hovnanian Enterprises, Inc. Securities Litigation*, Case No. 08-cv-0099 (D.N.J.) ($4,000,000 settlement); *In re Skilled Healthcare Group, Inc. Securities Litigation*, Case No. 09-5416 (C.D. Cal.) ($3,000,000 settlement); *Kelly v. Phiten USA, Inc.*, Case No. 11-67 (S.D. Iowa) ($3,200,000 settlement plus injunctive relief); (*Shin et al., v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (after defeating a motion to dismiss, the case settled on very favorable terms for class members including free replacement of cracked wheels); *Payday Advance Plus, Inc. v. MIVA, Inc.*, Case No. 06-1923 (S.D.N.Y.) ($3,936,812 settlement); *Esslinger, et al. v. HSBC Bank Nevada, N.A.*, Case No. 10-03213 (E.D. Pa.) ($23,500,000 settlement); *In re Discover Payment Protection Plan Marketing and Sales Practices Litigation*, Case No. 10-06994 ($10,500,000 settlement ); *In Re: Bank of America Credit Protection Marketing and Sales Practices Litigation,* Case No. 11-md-02269 (N.D. Cal.) ($20,000,000 settlement).

Mr. Godino was also the principal attorney in the following published decisions: *In re Zappos.com, Inc., Customer Data Sec. Breach Litigation*, 714 Fed Appx. 761 (9th Cir. 2018) (reversing order dismissing class action complaint); *Small et al., v. University Medical Center of Southern Nevada, et al.*, 2017 WL 3461364 (D. Nev. Aug. 10, 2017)

(denying motion to dismiss); *Sciortino v. Pepsico, Inc.*, 108 F.Supp. 3d 780 (N.D. Cal.. June 5, 2015) (motion to dismiss denied); *Peterson v. CJ America, Inc.*, 2015 WL 11582832 (S.D. Cal. May 15, 2015) (motion to dismiss denied); *Lilly v. Jamba Juice Company*, 2014 WL 4652283 (N. D. Cal. Sep 18, 2014) (class certification granted in part); *Kramer v. Toyota Motor Corp.,* 705 F. 3d 1122 (9th Cir. 2013) (affirming denial of Defendant's motion to compel arbitration); *Sateriale, et al. v. R.J. Reynolds Tobacco Co.*, 697 F. 3d 777 (9th Cir. 2012) (reversing order dismissing class action complaint); *Shin v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (motion to dismiss denied); *In re 2TheMart.com Securities Litigation*, 114 F. Supp. 2d 955 (C.D. Cal. 2002) (motion to dismiss denied); *In re Irvine Sensors Securities Litigation*, 2003 U.S. Dist. LEXIS 18397 (C.D. Cal. 2003) (motion to dismiss denied).

The following represent just a few of the cases Mr. Godino is currently litigating in a leadership position: *Small v. University Medical Center of Southern Nevada*, Case No. 13-00298 (D. Nev.); *Courtright, et al., v. O'Reilly Automotive Stores, Inc., et al.*, Case No. 14-334 (W.D. Mo); *Keskinen v. Edgewell Personal Care Co., et al.*, Case No. 17-07721 (C.D. CA); *Ryan v. Rodan & Fields, LLC*, Case No. 18-02505 (N.D. Cal)

**MATTHEW M. HOUSTON**, a partner in the firm's New York office, graduated from Boston University School of Law in 1988. Mr. Houston is an active member of the Bar of the State of New York and an inactive member of the bar for the Commonwealth of Massachusetts. Mr. Houston is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the District of Massachusetts, and the Second, Seventh, Ninth, and Eleventh Circuit Court of Appeals of the United States. Mr. Houston repeatedly has been selected as a New York Metro Super Lawyer.

Mr. Houston has substantial courtroom experience involving complex actions in federal and state courts throughout the country. Mr. Houston was co-lead trial counsel in one the few ERISA class action cases taken to trial asserting breach of fiduciary duty claims against plan fiduciaries, *Brieger et al. v. Tellabs, Inc.*, No. 06-CV-01882 (N.D. Ill.), and has successfully prosecuted many ERISA actions, including *In re Royal Ahold N.V. Securities and ERISA Litigation*, Civil Action No. 1:03-md-01539. Mr. Houston has been one of the principal attorneys litigating claims in multi-district litigation concerning employment classification of pickup and delivery drivers and primarily responsible for prosecuting ERISA class claims resulting in a $242,000,000 settlement; *In re FedEx Ground Package Inc. Employment Practices Litigation*, No. 3:05-MD-527 (MDL 1700). Mr. Houston recently presented argument before the Eleventh Circuit Court of Appeals on behalf of a class of Florida pickup and delivery drivers obtaining a reversal of the lower court's grant of summary judgment. Mr. Houston represented the interests of Nevada and Arkansas drivers employed by FedEx Ground obtaining significant recoveries on their behalf. Mr. Houston also served as lead counsel in multi-district class litigation seeking to modify insurance claims handling practices; *In re UnumProvident Corp. ERISA Benefits Denial Actions*, No. 1:03-cv-1000 (MDL 1552).

Mr. Houston has played a principal role in numerous derivative and class actions wherein substantial benefits were conferred upon plaintiffs: *In re: Groupon Derivative Litigation*, No. 12-cv-5300 (N.D. Ill. 2012) (settlement of consolidated derivative action

868675.6

Page 11

resulting in sweeping corporate governance reform estimated at $159 million) *Bangari v. Lesnik, et al.*, No. 11 CH 41973 (Illinois Circuit Court, County of Cook) (settlement of claim resulting in payment of $20 million to Career Education Corporation and implementation of extensive corporate governance reform); *In re Diamond Foods, Inc. Shareholder Litigation*, No. CGC-11-515895 (California Superior Court, County of San Francisco) ($10.4 million in monetary relief including a $5.4 million clawback of executive compensation and significant corporate governance reform); *Pace American Shareholder Litigation*, 94-92 TUC-RMB (securities fraud class action settlement resulting in a recovery of $3.75 million); *In re Bay Financial Securities Litigation*, Master File No. 89-2377-DPW, (D. Mass.) (J. Woodlock) (settlement of action based upon federal securities law claims resulting in class recovery in excess of $3.9 million); *Goldsmith v. Technology Solutions Company*, 92 C 4374 (N.D. Ill. 1992) (J. Manning) (recovery of $4.6 million as a result of action alleging false and misleading statements regarding revenue recognition).

In addition to numerous employment and derivative cases, Mr. Houston has litigated actions asserting breach of fiduciary duty in the context of mergers and acquisitions. Mr. Houston has been responsible for securing millions of dollars in additional compensation and structural benefits for shareholders of target companies: *In re Instinet Group, Inc. Shareholders Litigation*, C.A. No. 1289 (Delaware Court of Chancery); *Jasinover v. The Rouse Company*, Case No. 13-C-04-59594 (Maryland Circuit Court); *McLaughlin v. Household International, Inc.*, Case No. 02 CH 20683 (Illinois Circuit Court); *Sebesta v. The Quizno's Corporation*, Case No. 2001 CV 6281 (Colorado District Court); *Crandon Capital Partners v. Sanford M. Kimmel*, C.A. No. 14998 (Del. Ch.); and *Crandon Capital Partners v. Kimmel*, C.A. No. 14998 (Del. Ch. 1996) (J. Chandler) (settlement of an action on behalf of shareholders of Transnational Reinsurance Co. whereby acquiring company provided an additional $10.4 million in merger consideration).

**JASON L. KRAJCER** is a partner in the firm's Los Angeles office. He specializes in complex securities cases and has extensive experience in all phases of litigation (fact investigation, pre-trial motion practice, discovery, trial, appeal).

Prior to joining Glancy Prongay & Murray LLP, Mr. Krajcer was an Associate at Goodwin Procter LLP where he represented issuers, officers and directors in multi-hundred million and billion dollar securities cases. He began his legal career at Orrick, Herrington & Sutcliffe LLP, where he represented issuers, officers and directors in securities class actions, shareholder derivative actions, and matters before the U.S. Securities & Exchange Commission.

Mr. Krajcer is admitted to the State Bar of California, the Bar of the District of Columbia, the United States Supreme Court, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central and Southern Districts of California.

**SUSAN G. KUPFER** is the founding partner of the Firm's Berkeley office. Ms Kupfer joined the Firm in 2003. She is a native of New York City, and received her A.B. degree from Mount Holyoke College in 1969 and her Juris Doctor degree from Boston

University School of Law in 1973. She did graduate work at Harvard Law School and, in 1977, was named Assistant Dean and Director of Clinical Programs at Harvard, supervising and teaching in that program of legal practice and related academic components.

For much of her legal career, Ms. Kupfer has been a professor of law. Her areas of academic expertise are Civil Procedure, Federal Courts, Conflict of Laws, Constitutional Law, Legal Ethics, and Jurisprudence. She has taught at Harvard Law School, Hastings College of the Law, Boston University School of Law, Golden Gate University School of Law, and Northeastern University School of Law. From 1991 through 2002, she was a lecturer on law at the University of California, Berkeley, Boalt Hall, teaching Civil Procedure and Conflict of Laws. Her publications include articles on federal civil rights litigation, legal ethics, and jurisprudence. She has also taught various aspects of practical legal and ethical training, including trial advocacy, negotiation and legal ethics, to both law students and practicing attorneys.

Ms. Kupfer previously served as corporate counsel to The Architects Collaborative in Cambridge and San Francisco, and was the Executive Director of the Massachusetts Commission on Judicial Conduct. She returned to the practice of law in San Francisco with Morgenstein & Jubelirer and Berman DeValerio LLP before joining the Firm.

Ms. Kupfer's practice is concentrated in complex antitrust litigation. She currently serves, or has served, as Co-Lead Counsel in several multidistrict antitrust cases: *In re Photochromic Lens Antitrust Litig.* (MDL 2173, M.D. Fla. 2010); *In re Fresh and Process Potatoes Antitrust Litig.* (D. ID. 2011); *In re Korean Air Lines Antitrust Litig.* (MDL No. 1891, C.D. Cal. 2007); *In re Urethane Antitrust Litigation* (MDL 1616, D. Kan. 2004); *In re Western States Wholesale Natural Gas Litigation* (MDL 1566, D. Nev. 2005); and *Sullivan et al v. DB Investments et al* (D. N.J. 2004). She has been a member of the lead counsel teams that achieved significant settlements in: *In re Sorbates Antitrust Litigation* ($96.5 million settlement); *In re Pillar Point Partners Antitrust Litigation* ($50 million settlement); and *In re Critical Path Securities Litigation* ($17.5 million settlement).

Ms. Kupfer is a member of the bar of Massachusetts and California, and is admitted to practice before the United States District Courts for the Northern, Central, Eastern and Southern Districts of California, the District of Massachusetts, the Courts of Appeals for the First and Ninth Circuits, and the U.S. Supreme Court.

**CHARLES H. LINEHAN** is a partner in the firm's Los Angeles office. He graduated summa cum laude from the University of California, Los Angeles with a Bachelor of Arts degree in Philosophy and a minor in Mathematics. Mr. Linehan received his Juris Doctor degree from the UCLA School of Law, where he was a member of the UCLA Moot Court Honors Board. While attending law school, Mr. Linehan participated in the school's First Amendment Amicus Brief Clinic (now the Scott & Cyan Banister First Amendment Clinic) where he worked with nationally recognized scholars and civil rights organizations to draft amicus briefs on various Free Speech issues.

**GREGORY B. LINKH** works out of the New York office, where he litigates antitrust, securities, shareholder derivative, and consumer cases. Greg graduated from the State University of New York at Binghamton in 1996 and from the University of Michigan Law School in 1999. While in law school, Greg externed with United States District Judge Gerald E. Rosen of the Eastern District of Michigan. Greg was previously associated with the law firms Dewey Ballantine LLP, Pomerantz Haudek Block Grossman & Gross LLP, and Murray Frank LLP.

Previously, Greg had significant roles in *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation* (settled for $125 million); *In re Crompton Corp. Securities Litigation* (settled $11 million); *Lowry v. Andrx Corp.* (settled for $8 million); *In re Xybernaut Corp. Securities MDL Litigation* (settled for $6.3 million); and *In re EIS Int'l Inc. Securities Litigation* (settled for $3.8 million). Greg also represented the West Virginia Investment Management Board ("WVIMB") in *WVIMB v. Residential Accredited Loans, Inc., et al.*, relating to the WVIMB's investment in residential mortgage-backed securities.

Currently, Greg is litigating various antitrust and securities cases, including *In re Korean Ramen Antitrust Litigation*, *In re Automotive Parts Antitrust Litigation*, and *In re Horsehead Holding Corp. Securities Litigation*.

Greg is the co-author of Inherent Risk In Securities Cases In The Second Circuit, NEW YORK LAW JOURNAL (Aug. 26, 2004); and Staying Derivative Action Pursuant to PSLRA and SLUSA, NEW YORK LAW JOURNAL, P. 4, COL. 4 (Oct. 21, 2005).

**BRIAN MURRAY** is the managing partner of the Firm's New York Park Avenue office and the head of the Firm's Antitrust Practice Group. He received Bachelor of Arts and Master of Arts degrees from the University of Notre Dame in 1983 and 1986, respectively. He received a Juris Doctor degree, *cum laude,* from St. John's University School of Law in 1990. At St. John's, he was the Articles Editor of the ST. JOHN'S LAW REVIEW. Mr. Murray co-wrote: *Jurisdição Estrangeira Tem Papel Relevante Na De Fiesa De Investidores Brasileiros,* ESPAÇA JURÍDICO BOVESPA (August 2008); *The Proportionate Trading Model: Real Science or Junk Science?,* 52 CLEVELAND ST. L. REV. 391 (2004-05); *The Accident of Efficiency: Foreign Exchanges, American Depository Receipts, and Space Arbitrage,* 51 BUFFALO L. REV. 383 (2003); *You Shouldn't Be Required To Plead More Than You Have To Prove,* 53 BAYLOR L. REV. 783 (2001); *He Lies, You Die: Criminal Trials, Truth, Perjury, and Fairness,* 27 NEW ENGLAND J. ON CIVIL AND CRIMINAL CONFINEMENT 1 (2001); *Subject Matter Jurisdiction Under the Federal Securities Laws: The State of Affairs After Itoba,* 20 MARYLAND J. OF INT'L L. AND TRADE 235 (1996); *Determining Excessive Trading in Option Accounts: A Synthetic Valuation Approach,* 23 U. DAYTON L. REV. 316 (1997); *Loss Causation Pleading Standard,* NEW YORK LAW JOURNAL (Feb. 25, 2005); *The PSLRA 'Automatic Stay' of Discovery,* NEW YORK LAW JOURNAL (March 3, 2003); and *Inherent Risk In Securities Cases In The Second Circuit,* NEW YORK LAW JOURNAL (Aug. 26, 2004). He also authored *Protecting The Rights of International Clients in U.S. Securities Class Action Litigation,* INTERNATIONAL LITIGATION NEWS (Sept. 2007); Lifting the PSLRA "Automatic Stay" of Discovery, 80 N. DAK. L. REV. 405 (2004); *Aftermarket Purchaser Standing Under § 11 of the Securities Act of 1933,* 73

ST. JOHN'S L. REV.633 (1999); *Recent Rulings Allow Section 11 Suits By Aftermarket Securities Purchasers,* NEW YORK LAW JOURNAL (Sept. 24, 1998); and *Comment, Weissmann v. Freeman: The Second Circuit Errs in its Analysis of Derivative Copyrights by Joint Authors,* 63 ST. JOHN'S L. REV. 771 (1989).

Mr. Murray was on the trial team that prosecuted a securities fraud case under Section 10(b) of the Securities Exchange Act of 1934 against Microdyne Corporation in the Eastern District of Virginia and he was also on the trial team that presented a claim under Section 14 of the Securities Exchange Act of 1934 against Artek Systems Corporation and Dynatach Group which settled midway through the trial.

Mr. Murray's major cases include *In re Horsehead Holding Corp. Sec. Litig.*, No. 16-cv-292, 2018 WL 4838234 (D. Del. Oct. 4, 2018) (recommending denial of motion to dismiss securities fraud claims where company's generic cautionary statements failed to adequately warn of known problems); *In re Deutsche Bank Sec. Litig.*, --- F.R.D. ---, 2018 WL 4771525 (S.D.N.Y. Oct. 2, 2018) (granting class certification for Securities Act claims and rejecting defendants' argument that class representatives' trading profits made them atypical class members); *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017 (N.D. Cal. 2016) (denying motion to dismiss securities fraud claims where confidential witness statements sufficiently established scienter); *In re Eagle Bldg. Tech. Sec. Litig.,* 221 F.R.D. 582 (S.D. Fla. 2004), 319 F. Supp. 2d 1318 (S.D. Fla. 2004) (complaint against auditor sustained due to magnitude and nature of fraud; no allegations of a "tip-off" were necessary); *In re Turkcell Iletisim A.S. Sec. Litig.,* 209 F.R.D. 353 (S.D.N.Y. 2002) (defining standards by which investment advisors have standing to sue); *In re Turkcell Iletisim A.S. Sec. Litig.*, 202 F. Supp. 2d 8 (S.D.N.Y. 2001) (liability found for false statements in prospectus concerning churn rates); *Feiner v. SS&C Tech., Inc.,* 11 F. Supp. 2d 204 (D. Conn. 1998) (qualified independent underwriters held liable for pricing of offering); *Malone v. Microdyne Corp.*, 26 F.3d 471 (4th Cir. 1994) (reversal of directed verdict for defendants); and *Adair v. Bristol Tech. Systems, Inc.,* 179 F.R.D. 126 (S.D.N.Y. 1998) (aftermarket purchasers have standing under section 11 of the Securities Act of 1933). Mr. Murray also prevailed on an issue of first impression in the Superior Court of Massachusetts, in Cambridge Biotech Corp. v. Deloitte and Touche LLP, in which the court applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts. 6 Mass. L. Rptr. 367 (Mass. Super. Jan. 28, 1997). In addition, in *Adair v. Microfield Graphics, Inc.* (D. Or.), Mr. Murray settled the case for 47% of estimated damages. *In the Qiao Xing Universal Telephone* case, claimants received 120% of their recognized losses.

Among his current cases, Mr. Murray represents a class of investors in a securities litigation involving preferred shares of Deutsche Bank and is lead counsel in a securities class action against Horsehead Holdings, Inc. in the District of Delaware.

Mr. Murray served as a Trustee of the Incorporated Village of Garden City (2000-2002); Commissioner of Police for Garden City (2000-2001); Co-Chairman, Derivative Suits Subcommittee, American Bar Association Class Action and Derivative Suits Committee, (2007-2010); Member, Sports Law Committee, Association of the Bar for the City of New York, 1994-1997; Member, Litigation Committee, Association of the Bar for the City

868675.6    Page 15

of New York, 2003-2007; Member, New York State Bar Association Committee on Federal Constitution and Legislation, 2005-2008; Member, Federal Bar Council, Second Circuit Committee, 2007-present.

Mr. Murray has been a panelist at CLEs sponsored by the Federal Bar Council and the Institute for Law and Economic Policy, at the German-American Lawyers Association Annual Meeting in Frankfurt, Germany, and is a frequent lecturer before institutional investors in Europe and South America on the topic of class actions.

**ROBERT V. PRONGAY** is a partner in the Firm's Los Angeles office where he focuses on the investigation, initiation, and prosecution of complex securities cases on behalf of institutional and individual investors.  Mr. Prongay's practice concentrates on actions to recover investment losses resulting from violations of the federal securities laws and various actions to vindicate shareholder rights in response to corporate and fiduciary misconduct.

Mr. Prongay has extensive experience litigating complex cases in state and federal courts nationwide.  Since joining the Firm, Mr. Prongay has successfully recovered millions of dollars for investors victimized by securities fraud and has negotiated the implementation of significant corporate governance reforms aimed at preventing the recurrence of corporate wrongdoing.

Mr. Prongay was recently recognized as one of thirty lawyers included in the Daily Journal's list of Top Plaintiffs Lawyers in California for 2017.  Several of Mr. Prongay's cases have received national and regional press coverage.  Mr. Prongay has been interviewed by journalists and writers for national and industry publications, ranging from *The Wall Street Journal* to the *Los Angeles Daily Journal*.  Mr. Prongay has appeared as a guest on Bloomberg Television where he was interviewed about the securities litigation stemming from the high-profile initial public offering of Facebook, Inc.

Mr. Prongay received his Bachelor of Arts degree in Economics from the University of Southern California and his Juris Doctor degree from Seton Hall University School of Law.  Mr. Prongay is also an alumnus of the Lawrenceville School.

**DANIELLA QUITT**, a partner in the firm's New York office, graduated from Fordham University School of Law in 1988, is a member of the Bar of the State of New York, and is also admitted to the United States District Courts for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second, Fifth, and Ninth Circuits, and the United States Supreme Court.

Ms. Quitt has extensive experience in successfully litigating complex class actions from inception to trial and has played a significant role in numerous actions wherein substantial benefits were conferred upon plaintiff shareholders, such as *In re Safety-Kleen Corp. Stockholders Litigation*, (D.S.C.) (settlement fund of $44.5 million); *In re Laidlaw Stockholders Litigation*, (D.S.C.) (settlement fund of $24 million); *In re UNUMProvident Corp. Securities Litigation*, (D. Me.) (settlement fund of $45 million); *In re Harnischfeger Industries* (E.D. Wisc.) (settlement fund of $10.1 million); *In re Oxford*

868675.6                              Page 16

*Health Plans, Inc. Derivative Litigation*, (S.D.N.Y.) (settlement benefit of $13.7 million and corporate therapeutics); *In re JWP Inc. Securities Litigation*, (S.D.N.Y.) (settlement fund of $37 million); *In re Home Shopping Network, Inc., Derivative Litigation*, (S.D. Fla.) (settlement benefit in excess of $20 million); *In re Graham-Field Health Products, Inc. Securities* Litigation, (S.D.N.Y.) (settlement fund of $5.65 million); *Benjamin v. Carusona*, (E.D.N.Y.) (prosecuted action on behalf of minority shareholders which resulted in a change of control from majority-controlled management at Gurney's Inn Resort & Spa Ltd.); *In re Rexel Shareholder Litigation*, (Sup. Ct. N.Y. County) (settlement benefit in excess of $38 million); and *Croyden Assoc. v. Tesoro Petroleum Corp., et al.*, (Del. Ch.) (settlement benefit of $19.2 million).

In connection with the settlement of *Alessi v. Beracha*, (Del. Ch.), a class action brought on behalf of the former minority shareholders of Earthgrains, Chancellor Chandler commented: "I give credit where credit is due, Ms. Quitt. You did a good job and got a good result, and you should be proud of it."

Ms. Quitt has focused her practice on shareholder rights, securities class actions, and ERISA class actions but also handles general commercial and consumer litigation. Ms. Quitt serves as a member of the S.D.N.Y. ADR Panel and has been consistently selected as a New York Metro Super Lawyer.

**JONATHAN M. ROTTER** leads the Firm's intellectual property litigation practice and has extensive experience in class action litigation, including in the fields of data privacy, digital content, securities, consumer protection, and antitrust. His cases often involve technical and scientific issues, and he excels at the critical skill of understanding and organizing complex subject matter in a way helpful to judges, juries, and ultimately, the firm's clients. Since joining the firm, he has played a key role in cases recovering over $100 million. He handles cases on contingency, partial contingency, and hourly bases, and works collaboratively with other lawyers and law firms across the country.

Before joining the firm, Mr. Rotter served for three years as the first Patent Pilot Program Law Clerk at the United States District Court for the Central District of California, both in Los Angeles and Orange County. There, he assisted the Honorable S. James Otero, Andrew J. Guilford, George H. Wu, John A. Kronstadt, and Beverly Reid O'Connell with hundreds of patent cases in every major field of technology, from complaint to post-trial motions, advised on case management strategy, and organized and provided judicial education. Mr. Rotter also served as a law clerk for the Honorable Milan D. Smith, Jr. on the United States Court of Appeals for the Ninth Circuit, working on the full range of matters handled by the Circuit.

Before his service to the courts, Mr. Rotter practiced at an international law firm, where he argued appeals at the Federal Circuit, Ninth Circuit, and California Court of Appeal, tried cases, argued motions, and managed all aspects of complex litigation. He also served as a volunteer criminal prosecutor for the Los Angeles City Attorney's Office.

Mr. Rotter graduated with honors from Harvard Law School in 2004. He served as an editor of the Harvard Journal of Law & Technology, was a Fellow in Law and Economics

at the John M. Olin Center for Law, Economics, and Business at Harvard Law School, and a Fellow in Justice, Welfare, and Economics at the Harvard University Weatherhead Center For International Affairs. He graduated with honors from the University of California, San Diego in 2000 with a B.S. in molecular biology and a B.A. in music.

Mr. Rotter serves on the Merit Selection Panel for Magistrate Judges in the Central District of California, and served on the Model Patent Jury Instructions and Model Patent Local Rules subcommittees of the American Intellectual Property Law Association. He has written extensively on intellectual property issues, and has been honored for his work with legal service organizations. He is admitted to practice in California and before the United States Courts of Appeals for the First, Second, Ninth and Federal Circuits, the United States District Courts for the Northern, Central, and Southern Districts of California, and the United States Patent & Trademark Office.

**KEVIN F. RUF** graduated from the University of California at Berkeley with a Bachelor of Arts in Economics and earned his Juris Doctor degree from the University of Michigan. He was an associate at the Los Angeles firm Manatt Phelps and Phillips from 1988 until 1992, where he specialized in commercial litigation. In 1993, he joined the firm Corbin & Fitzgerald (with future federal district court Judge Michael Fitzgerald) specializing in white collar criminal defense work.

Kevin joined the Glancy firm in 2001 and works on a diverse range of trial and appellate cases; he is also head of the firm's Labor practice. Kevin has successfully argued a number of important appeals, including in the 9th Circuit Court of Appeals. He has twice argued cases before the California Supreme Court – winning both.

In *Smith v. L'Oreal* (2006), after Kevin's winning arguments, the California Supreme Court established a fundamental right of all California workers to immediate payment of all earnings at the conclusion of their employment.

Kevin gave the winning oral argument in one of the most talked about and wide-reaching California Supreme Court cases of recent memory: *Lee v. Dynamex* (2018). The Dynamex decision altered 30 years of California law and established a new definition of employment that brings more workers within the protections of California's Labor Code. The California legislature was so impressed with the Dynamex result that promulgated AB5, a statute to formalize this new definition of employment and expand its reach.

Kevin won the prestigious California Lawyer of the Year (CLAY) award in 2019 for his work on the *Dynamex* case.

In 2021, Kevin was named by California's legal paper of record, the Daily Journal, as one of 18 California "Lawyers of the Decade."

Kevin has been named three times as one of the Daily Journal's "Top 75 Employment Lawyers."

Since 2014, Kevin has been an elected member of the Ojai Unified School District Board of Trustees. Kevin was also a Main Company Member of the world-famous Groundlings improv and sketch comedy troupe – where "everyone else got famous."

**BENJAMIN I. SACHS-MICHAELS**, a partner in the firm's New York office, graduated from Benjamin N. Cardozo School of Law in 2011. His practice focuses on shareholder derivative litigation and class actions on behalf of shareholders and consumers.

While in law school, Mr. Sachs-Michaels served as a judicial intern to Senior United States District Judge Thomas J. McAvoy in the United States District Court for the Northern District of New York and was a member of the Cardozo Journal of Conflict Resolution.

Mr. Sachs-Michaels is a member of the Bar of the State of New York. He is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit.

**CASEY E. SADLER** is a native of New York, New York. After graduating from the University of Southern California, Gould School of Law, Mr. Sadler joined the Firm in 2010. While attending law school, Mr. Sadler externed for the Enforcement Division of the Securities and Exchange Commission, spent a summer working for P.H. Parekh & Co. – one of the leading appellate law firms in New Delhi, India – and was a member of USC's Hale Moot Court Honors Program.

Mr. Sadler's practice focuses on securities and consumer litigation. A partner in the Firm's Los Angeles office, Mr. Sadler is admitted to the State Bar of California and the United States District Courts for the Northern, Southern, and Central Districts of California.

**EX KANO S. SAMS II** earned his Bachelor of Arts degree in Political Science from the University of California Los Angeles. Mr. Sams earned his Juris Doctor degree from the University of California Los Angeles School of Law, where he served as a member of the *UCLA Law Review*. After law school, Mr. Sams practiced class action civil rights litigation on behalf of plaintiffs. Subsequently, Mr. Sams was a partner at Coughlin Stoia Geller Rudman & Robbins LLP (currently Robbins Geller Rudman & Dowd LLP), where his practice focused on securities and consumer class actions on behalf of investors and consumers.

During his career, Mr. Sams has served as lead counsel in dozens of securities class actions and complex-litigation cases, and has worked on cases at all levels of the state and federal court systems throughout the United States. Mr. Sams was one of the counsel for respondents in *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 138 S. Ct. 1061 (2018), in which the United States Supreme Court ruled unanimously in favor of respondents, holding that: (1) the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") does not strip state courts of jurisdiction over class actions alleging violations of only the Securities Act of 1933; and (2) SLUSA does not empower defendants to

868675.6                                    Page 19

remove such actions from state to federal court. Mr. Sams also participated in a successful appeal before a Fifth Circuit panel that included former United States Supreme Court Justice Sandra Day O'Connor sitting by designation, in which the court unanimously vacated the lower court's denial of class certification, reversed the lower court's grant of summary judgment, and issued an important decision on the issue of loss causation in securities litigation: *Alaska Electrical Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009). The case settled for $55 million.

Mr. Sams has also obtained other significant results. Notable examples include: *Beezley v. Fenix Parts, Inc.*, No. 1:17-CV-7896, 2018 WL 3454490 (N.D. Ill. July 13, 2018) (denying motion to dismiss); *In re Flowers Foods, Inc. Sec. Litig.*, No. 7:16-CV-222 (WLS), 2018 WL 1558558 (M.D. Ga. Mar. 23, 2018) (largely denying motion to dismiss; case settled for $21 million); *In re King Digital Entm't plc S'holder Litig.*, No. CGC-15-544770 (San Francisco Superior Court) (case settled for $18.5 million); *In re Castlight Health, Inc. S'holder Litig.*, Lead Case No. CIV533203 (California Superior Court, County of San Mateo) (case settled for $9.5 million); *Wiley v. Envivio, Inc.*, Master File No. CIV517185 (California Superior Court, County of San Mateo) (case settled for $8.5 million); *In re CafePress Inc. S'holder Litig.*, Master File No. CIV522744 (California Superior Court, County of San Mateo) (case settled for $8 million); *Estate of Gardner v. Continental Casualty Co.*, No. 3:13-cv-1918 (JBA), 2016 WL 806823 (D. Conn. Mar. 1, 2016) (granting class certification); *Forbush v. Goodale*, No. 33538/2011, 2013 WL 582255 (N.Y. Sup. Feb. 4, 2013) (denying motions to dismiss); *Curry v. Hansen Med., Inc.*, No. C 09-5094 CW, 2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) (upholding complaint; case settled for $8.5 million); *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332 (E.D. Mich. 2012) (granting class certification); *Puskala v. Koss Corp.*, 799 F. Supp. 2d 941 (E.D. Wis. 2011) (upholding complaint); *Mishkin v. Zynex Inc.*, Civil Action No. 09-cv-00780-REB-KLM, 2011 WL 1158715 (D. Colo. Mar. 30, 2011) (denying motion to dismiss); and *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009) (granting class certification; case settled for $10 million).

Additionally, Mr. Sams has successfully represented consumers in class action litigation. Mr. Sams worked on nationwide litigation and a trial against major tobacco companies, and in statewide tobacco litigation that resulted in a $12.5 billion recovery for California cities and counties in a landmark settlement. He also was a principal attorney in a consumer class action against one of the largest banks in the country that resulted in a substantial recovery and a change in the company's business practices. Mr. Sams also participated in settlement negotiations on behalf of environmental organizations along with the United States Department of Justice and the Ohio Attorney General's Office that resulted in a consent decree requiring a company to perform remediation measures to address the effects of air and water pollution. Additionally, Mr. Sams has been an author or co-author of several articles in major legal publications, including "9th Circuit Decision Clarifies Securities Fraud Loss Causation Rule" published in the February 8, 2018 issue of the *Daily Journal*, and "Market Efficiency in the World of High-Frequency Trading" published in the December 26, 2017 issue of the *Daily Journal*.

**LEANNE HEINE SOLISH** is a partner in GPM's Los Angeles office. Her practice focuses on complex securities litigation.

Ms. Solish has extensive experience litigating complex cases in federal courts nationwide. Since joining GPM in 2012, Ms. Solish has helped secure several large class action settlements for injured investors, including: *The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank*, Case No. 10-4372--DWF/JJG (D. Minn.) ($62.5 million settlement on behalf of participants in Wells Fargo's securities lending program. The settlement was reached on the eve of trial and ranked among the largest recoveries achieved in a securities lending class action stemming from the 2008 financial crisis.); *Mild v. PPG Industries, Inc. et al.*, Case No. 2:18-cv-04231 (C.D. Cal.) ($25 million settlement); *In re Penn West Petroleum Ltd. Securities Litigation*, Case No. 1:14-cv-06046-JGK (S.D.N.Y.) ($19 million settlement for the U.S. shareholder class as part of a $39 million global settlement); *In re ITT Educational Services, Inc. Securities Litigation (Indiana)*, Case No. 1:14-cv-01599-TWP-DML ($12.5375 million settlement); *In re Doral Financial Corporation Securities Litigation*, Case No. 3:14-cv-01393-GAG (D.P.R.) ($7 million settlement); *Larson v. Insys Therapeutics Incorporated, et al.*, Lead Case No. 14-cv-01043-PHX-GMS (D. Ariz.) ($6.125 million settlement); *In re Unilife Corporation Securities Litigation*, Case No. 1:16-cv-03976-RA ($4.4 million settlement); and *In re K12 Inc. Securities Litigation*, Case No. 4:16-cv-04069-PJH (N.D. Cal.) ($3.5 million settlement).

*Super Lawyers Magazine* has selected Ms. Solish as a "Rising Star" in the area of Securities Litigation for the past four consecutive years, 2016 through 2019.

Ms. Solish graduated *summa cum laude* with a B.S.M. in Accounting and Finance from Tulane University, where she was a member of the Beta Alpha Psi honors accounting organization and was inducted into the Beta Gamma Sigma Business Honors Society. Ms. Solish subsequently earned her J.D. from the University of Texas School of Law.

Ms. Solish is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central, Northern, and Southern Districts of California. Ms. Solish is also a Registered Certified Public Accountant in Illinois.

**GARTH A. SPENCER**'s work focuses on securities litigation on behalf of investors, as well as whistleblower, consumer and antitrust matters for plaintiffs. He has substantially contributed to a number of GPM's successful cases, including *Robb v. Fitbit Inc.* (N.D. Cal.) ($33 million settlement). Mr. Spencer joined the firm's New York office in 2016, and transferred to Los Angeles in 2020. Prior to joining GPM, he worked in the tax group of a transactional law firm, and pursued tax whistleblower matters as a sole practitioner.

**DAVID J. STONE** has a broad background in complex commercial litigation, with particular focus on litigating corporate fiduciary claims, securities, and contract matters. Mr. Stone maintains a versatile practice in state and federal courts, representing clients in a wide-range of matters, including corporate derivative actions, securities class actions, litigating claims arising from master limited partnership "drop

down" transactions, litigating consumer class actions (including data breach claims) litigating complex debt instruments, fraudulent conveyance actions, and appeals. Mr. Stone also has developed a specialized practice in litigation on behalf of post-bankruptcy confirmation trusts, including investigating and prosecuting D&O claims and general commercial litigation. In addition, Mr. Stone counsels clients on general business matters, including contract negotiation and corporate organization.

Mr. Stone graduated from Boston University School of Law in 1994 and was the Law Review Editor. He earned his B.A. at Tufts University in 1988, graduating *cum laude*. Following law school, Mr. Stone served as a clerk to the Honorable Joseph Tauro, then Chief Judge of the U.S. District Court for the District of Massachusetts. Prior to joining GPM, Mr. Stone practiced at international law firms Cravath, Swaine & Moore LLP, Morrison & Foerster LLP, and Greenberg Traurig LLP.

Mr. Stone is a member of the bar in New York and California, and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Southern, and Central Districts of California, and the Court of Appeals for the Second and Third Circuits.

**KARA M. WOLKE** is a partner in the firm's Los Angeles office. Ms. Wolke specializes in complex litigation, including the prosecution of securities fraud, derivative, consumer, and wage and hour class actions. She also has extensive experience in appellate advocacy in both State and Federal Circuit Courts of Appeals.

With over fifteen years of experience in financial class action litigation, Ms. Wolke has helped to recover hundreds of millions of dollars for injured investors, consumers, and employees. Notable cases include: *Christine Asia Co. Ltd., et al. v. Jack Yun Ma, et al.*, Case No. 15-md-02631 (S.D.N.Y.) ($250 million securities class action settlement); *Farmington Hills Employees' Retirement System v. Wells Fargo Bank,* Case No. 10-4372 (D. Minn.) ($62.5 million settlement on behalf of participants in Wells Fargo's securities lending program. The settlement was reached on the eve of trial and ranked among the largest recoveries achieved in a securities lending class action stemming from the 2008 financial crisis.); *Schleicher, et al. v. Wendt, et al.* (Conseco), Case No. 02-cv-1332 (S.D. Ind.) ($41.5 million securities class action settlement); *Lapin v. Goldman Sachs,* Case No. 03-850 (S.D.N.Y.) ($29 million securities class action settlement); *In Re: Mannkind Corporation Securities Litigation*, Case No. 11-929 (C.D. Cal) (approximately $22 million settlement – $16 million in cash plus stock); *Jenson v. First Trust Corp.*, Case No. 05-3124 (C.D. Cal.) ($8.5 million settlement of action alleging breach of fiduciary duty and breach of contract against trust company on behalf of a class of elderly investors); and *Pappas v. Naked Juice Co.*, Case No. 11-08276 (C.D. Cal.) ($9 million settlement in consumer class action alleging misleading labeling of juice products as "All Natural").

Ms. Wolke has been named a Super Lawyers "Rising Star," and her work on behalf of investors has earned her recognition as a LawDragon Leading Plaintiff Financial Lawyer for 2019 and 2020.

With a background in intellectual property, Ms. Wolke was a part of the team of lawyers who successfully challenged the claim of copyright ownership to the song "*Happy Birthday to You*" on behalf of artists and filmmakers who had been forced to pay hefty licensing fees to publicly sing the world's most famous song. In the resolution of that action, the defendant music publishing company funded a settlement of $14 million and, significantly, agreed to relinquish the song to the public domain. Previously, Ms. Wolke penned an article regarding the failure of U.S. Copyright Law to provide an important public performance right in sound recordings, 7 Vand. J. Ent. L. & Prac. 411, which was nationally recognized and received an award by the American Bar Association and the Grammy® Foundation.

Committed to the provision of legal services to the poor, disadvantaged, and other vulnerable or disenfranchised individuals and groups, Ms. Wolke also oversees the Firm's *pro bono practice*. Ms. Wolke currently serves as a volunteer attorney for KIND (Kids In Need of Defense), representing unaccompanied immigrant and refugee children in custody and deportation proceedings, and helping them to secure legal permanent residency status in the U.S.

Ms. Wolke graduated *summa cum laude* with a Bachelor of Science in Economics from The Ohio State University in 2001. She subsequently earned her J.D. (with honors) from Ohio State, where she was active in Moot Court and received the Dean's Award for Excellence during each of her three years.

Ms. Wolke is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, as well as the United States District Courts for the Northern, Southern, and Central Districts of California. She lives with her husband and two sons in Los Angeles.

## OF COUNSEL

**PETER A. BINKOW** has prosecuted lawsuits on behalf of consumers and investors in state and federal courts throughout the United States. He served as Lead or Co-Lead Counsel in many class action cases, including: *In re Mercury Interactive Securities Litigation* ($117.5 million recovery); *The City of Farmington Hills Retirement System v Wells Fargo* ($62.5 million recovery); *Schleicher v Wendt* (Conseco Securities litigation - $41.5 million recovery); *Lapin v Goldman Sachs* ($29 million recovery); *In re Heritage Bond Litigation* ($28 million recovery); *In re National Techteam Securities Litigation* ($11 million recovery for investors); *In re Lason Inc. Securities Litigation* ($12.68 million recovery), *In re ESC Medical Systems, Ltd. Securities Litigation* ($17 million recovery); and many others. In *Schleicher v Wendt*, Mr. Binkow successfully argued the seminal Seventh Circuit case on class certification, in an opinion authored by Chief Judge Frank Easterbrook. He has argued and/or prepared appeals before the Ninth Circuit, Seventh Circuit, Sixth Circuit and Second Circuit Courts of Appeals.

Mr. Binkow joined the Firm in 1994. He was born on August 16, 1965 in Detroit, Michigan. Mr. Binkow obtained a Bachelor of Arts degree from the University of Michigan in 1988 and a Juris Doctor degree from the University of Southern California in 1994.

**MARK S. GREENSTONE** specializes in consumer, financial fraud and employment-related class actions. Possessing significant law and motion and trial experience, Mr. Greenstone has represented clients in multi-million dollar disputes in California state and federal courts, as well as the Court of Federal Claims in Washington, D.C.

Mr. Greenstone received his training as an associate at Sheppard, Mullin, Richter & Hampton LLP where he specialized in complex business litigation relating to investment management, government contracts and real estate. Upon leaving Sheppard Mullin, Mr. Greenstone founded an internet-based company offering retail items on multiple platforms nationwide. He thereafter returned to law bringing a combination of business and legal skills to his practice.

Mr. Greenstone graduated Order of the Coif from the UCLA School of Law. He also received his undergraduate degree in Political Science from UCLA, where he graduated Magna Cum Laude and was inducted into the Phi Beta Kappa honor society.

Mr. Greenstone is a member of the Consumer Attorneys Association of Los Angeles, the Santa Monica Bar Association and the Beverly Hills Bar Association. He is admitted to practice in state and federal courts throughout California.

**ROBERT I. HARWOOD**, Of Counsel to the firm, graduated from William and Mary Law School in 1971, and has specialized in securities law and securities litigation since beginning his career in 1972 at the Enforcement Division of the New York Stock Exchange.  Mr. Harwood was a founding member of Harwood Feffer LLP.  He has prosecuted numerous securities, class, derivative, and ERISA actions.  He is a member of the Trial Lawyers' Section of the New York State Bar Association and has served as a guest lecturer at trial advocacy programs sponsored by the Practicing Law Institute. In a statewide survey of his legal peers published by Super Lawyers Magazine, Mr. Harwood has been consistently selected as a "New York Metro Super Lawyer."  Super Lawyers are the top five percent of attorneys in New York, as chosen by their peers and through the independent research.  He is also a Member of the Board of Directors of the MFY Legal Services Inc., which provides free legal representation in civil matters to the poor and the mentally ill in New York City.  Since 1999, Mr. Harwood has also served as a Village Justice for the Village of Dobbs Ferry, New York.

Commenting on Mr. Harwood's abilities, in *In re Royal Dutch/Shell Transport ERISA Litigation*, (D.N.J.), Judge Bissell stated:

> the Court knows the attorneys in the firms involved in this matter and they are highly experienced and highly skilled in matters of this kind.  Moreover, in this case it showed.  Those efforts were vigorous, imaginative and prompt in reaching the settlement of this matter with a minimal amount of discovery….  So both skill and efficiency were brought to the table here by counsel, no doubt about that.

868675.6                              Page 24

Likewise, Judge Hurley stated in connection with *In re Olsten Corporation Securities Litigation*, No. 97 CV-5056 (E.D.N.Y. Aug. 31, 2001), wherein a settlement fund of $24.1 million was created: "The quality of representation here I think has been excellent." Mr. Harwood was lead attorney in *Meritt v. Eckerd*, No. 86 Civ. 1222 (E.D.N.Y. May 30, 1986), where then Chief Judge Weinstein observed that counsel conducted the litigation with "speed and skill" resulting in a settlement having a value "in the order of $20 Million Dollars." Mr. Harwood prosecuted the *Hoeniger v. Aylsworth* class action litigation in the United States District Court for the Western District of Texas (No. SA-86-CA-939), which resulted in a settlement fund of $18 million and received favorable comment in the August 14, 1989 edition of *The Wall Street Journal* ("*Prospector Fund Finds Golden Touch in Class Action Suit*" p. 18, col. 1). Mr. Harwood served as co-lead counsel in *In Re Interco Incorporated Shareholders Litigation*, Consolidated C.A. No. 10111 (Delaware Chancery Court) (May 25, 1990), resulting in a settlement of $18.5 million, where V.C. Berger found, "This is a case that has an extensive record that establishes it was very hard fought. There were intense efforts made by plaintiffs' attorneys and those efforts bore very significant fruit in the face of serious questions as to ultimate success on the merits."

Mr. Harwood served as lead counsel in *Morse v. McWhorter* (Columbia/HCA Healthcare Securities Litigation), (M.D. Tenn.), in which a settlement fund of $49.5 million was created for the benefit of the Class, as well as *In re Bank One Securities Litigation*, (N.D. Ill.), which resulted in the creation of a $45 million settlement fund. Mr. Harwood also served as co-lead counsel in *In re Safety-Kleen Corp. Stockholders Litigation*, (D.S.C.), which resulted in a settlement fund of $44.5 million; *In re Laidlaw Stockholders Litigation*, (D.S.C.), which resulted in a settlement fund of $24 million; *In re AIG ERISA Litigation*, (S.D.N.Y.), which resulted in a settlement fund of $24.2 million*; In re JWP Inc. Securities Litigation*, (S.D.N.Y.), which resulted in a $37 million settlement fund; *In re Oxford Health Plans, Inc. Derivative Litigation*, (S.D.N.Y.), which resulted in a settlement benefit of $13.7 million and corporate therapeutics; and *In re UNUMProvident Corp. Securities Litigation*, (D. Me.), which resulted in the creation of settlement fund of $45 million. Mr. Harwood has also been one of the lead attorneys in litigating claims in *In re FedEx Ground Package Inc. Employment Practices Litigation*, No. 3:05-MD-527 (MDL 1700), a multi-district litigation concerning employment classification of pickup and delivery drivers which resulted in a $242,000,000 settlement.

**ERIKA SHAPIRO** has extensive experience in a broad range of litigation matters. Until 2019, Ms. Shapiro's work primarily focused on complex antitrust cases involving pharmaceutical companies, and through this work, she helped successfully defend pharmaceutical companies against antitrust and unfair competition allegations, with a particular concentration on the Hatch-Waxman Act, product hopping, and reverse payment settlement allegations. As of 2019, Ms. Shapiro has represented clients in a vast array of litigation, including commercial real estate matters, with a particular focus on the global COVID-19 pandemic's impact on commercial real estate, bankruptcy matters, commercial litigation involving breach of contract, tort, trademark infringement, and trusts and estates law with a focus on will contests. Ms. Shapiro has further managed multiple cases defending physicians and hospitals against allegations of malpractice.

Ms. Shapiro is committed to the academic community, and is the Founder and CEO of Study Songs, an app aimed at helping students study for the multistate bar exam through melodies contained in over 80 original songs and through pop-up definitions of over 1200 legal terms and concepts.

Ms. Shapiro's publications include: *Third Circuit Holds, "Give Peace a Chance": The De Beers Litigation and the Potential Power of Settlement*, Jack E. Pace, III, Erika L. Shapiro, 27-SPG Antitrust 48 (2013).

Ms. Shapiro graduated from Washington University in St. Louis with a Bachelor of Arts degree. She received her Juris Doctor degree from Georgetown University Law Center. She also earned a Master's degree in Economic Global Law from Sciences-Po Universite.

## SENIOR COUNSEL

**NATALIE S. PANG** is Senior Counsel in the firm's Los Angeles office. Ms. Pang has advocated on behalf of thousands of consumers during her career. Ms. Pang has extensive experience in case management and all facets of litigation: from a case's inception through the discovery process--including taking and defending depositions and preparing witnesses for depositions and trial--mediation and settlement negotiations, pretrial motion work, trial and post-trial motion work.

Prior to joining the firm, Ms. Pang lead the mass torts department of her last firm, where she managed the cases of over two thousand individual clients. There, Ms. Pang worked on a wide variety of complex state and federal matters which included cases involving pharmaceutical drugs, medical devices, auto defects, toxic torts, false advertising, and uninhabitable conditions. Ms. Pang was also trial counsel in the notable case, *Celestino Acosta et al. v. City of Long Beach et al.* (BC591412) which was brought on behalf of residents of a mobile home park built on a former trash dump and resulted in a $39.5 million verdict after an eleven-week jury trial in Los Angeles Superior Court.

Ms. Pang received her J.D. from Loyola Law School. While in law school, Ms. Pang received a Top 10 Brief Award as a Scott Moot Court competitor, was chosen to be a member of the Scott Moot Court Honor's Board, and competed as a member of the National Moot Court Team. Ms. Pang was also a Staffer and subsequently an Editor for Loyola's Entertainment Law Review as well as a Loyola Writing Tutor. During law school, Ms. Pang served as an extern for: the Hon. Rolf Treu (Los Angeles Superior Court), the Los Angeles City Attorney's Office, and the Federal Public Defender's Office. Ms. Pang obtained her undergraduate degree from the University of Southern California and worked in the healthcare industry prior to pursuing her career in law.

**PAVITHRA RAJESH** is Senior Counsel in the firm's Los Angeles office. She specializes in fact discovery, including pre-litigation investigation, and develops legal theories in securities, derivative, and privacy-related matters.

Ms. Rajesh has unique writing experience from her judicial externship for the Patent Pilot Program in the United States District Court for the Central District of California, where she worked closely with the Clerk and judges in the program on patent cases. Drawing from this experience, Ms. Rajesh is passionate about expanding the firm's Intellectual Property practice, and she engages with experts to understand complex technology in a wide range of patents, including network security and videogame electronics.

Ms. Rajesh graduated from University of California, Santa Barbara with a Bachelor of Science degree in Mathematics and a Bachelor of Arts degree in Psychology. She received her Juris Doctor degree from UCLA School of Law. While in law school, Ms. Rajesh was an Associate Editor for the UCLA Law Review.

**CHRISTOPHER M. THOMS** is Senior Discovery Counsel in Glancy, Prongay & Murray's Los Angeles office. His practice includes large-scale electronic discovery encompassing all stages of litigation, securities and anti-trust litigation. He manages attorneys in fact-finding for depositions, expert discovery, and trial preparation.

Prior to joining Glancy, Prongay & Murray, Christopher worked as a staff attorney at O'Melveny & Meyers LLP where he managed eDiscovery issues in complex class actions and multi-district litigations. Chris also worked as a contract attorney for various law firms in Los Angeles.

**MELISSA WRIGHT** is Senior Counsel in the firm's Los Angeles office. Ms. Wright specializes in complex litigation, including the prosecution of securities fraud and consumer class actions. She has particular expertise in all aspects of the discovery phase of litigation, including drafting and responding to discovery requests, negotiating protocols for the production of Electronically Stored Information (ESI) and all facets of ESI discovery, and assisting in deposition preparation. She has managed multiple document production and review projects, including the development of ESI search terms, overseeing numerous attorneys reviewing large document productions, drafting meet and confer correspondence and motions to compel where necessary, and coordinating the analysis of information procured during the discovery phase for utilization in substantive motions or settlement negotiations.

Ms. Wright received her J.D. from the UC Davis School of Law in 2012, where she was a board member of Tax Law Society and externed for the California Board of Equalization's Tax Appeals Assistance Program focusing on consumer use tax issues. Ms. Wright also graduated from NYU School of Law, where she received her LL.M. in Taxation in 2013.

## ASSOCIATES

**CHRIS DEL VALLE** is an experienced attorney who has been a valuable member of the Glancy Prongay & Murray LLP team since 2017. During his time at the firm, he has worked on a range of complex securities fraud cases, including In re Akorn, Inc.

Securities Litigation, Case No. 15-CV-01944, (N.D. Ill.); In re Yahoo! Inc. Securities Litigation, Case No. 17-CV-00373-LHK (N.D. Cal.); In re Endurance International Group Holdings, Case No. 1:15-cv-11775-GAO; In re LSB Industries, Inc. Securities Litigation, Case No. 1:15-cv-07614-RA-GWG; In re Alibaba Group Holding Limited Securities Litigation, Case No. 1:15-md-02631 (CM); In re Community Health Systems Inc, Case No.: 3:19-cv-00461.

One of Chris' most notable recent cases was Hartpence v. Kinetic Concepts, Inc., No. 19-55823 (9th Cir. 2022), alleging violations of the False Claims Act (FCA). Chris was part of the legal team that successfully represented a whistleblower in obtaining 9th Circuit reversal of the lower court's order granting summary judgment. This victory established Chris as a leading attorney in the field of FCA litigation.

With highly technical expertise in electronic discovery, Chris manages all facets of the firm's e-discovery needs, including crafting advanced search algorithms, predictive coding, and technology-assisted review. Chris also has a wealth of experience in deposition preparation, expert discovery, and preparing for summary judgment and trial.

Chris' experience prior to joining GPM includes trial and discovery preparation for complex corporate securities fraud litigation, patent prosecution, oral arguments, injunction hearings, trial work, mediations, drafting and negotiating contracts, depositions, and client intake.

He received a Bachelor of Arts degree from S.U.N.Y. Buffalo, majoring in English Literature/Journalism, and a Juris Doctor from California Western School of Law in San Diego. Chris is a proud native of Buffalo, New York, and a passionate fan of the Buffalo Bills, hosting a weekly podcast entitled The Bills Dudes. In addition to his legal work, Chris enjoys traveling, playing basketball, archery and is on a quest to locate the most flavorful tequila and mezcal ever produced in Mexico. With his experience in securities litigation and a strong educational background, Chris Del Valle is a valuable member of the GPM team.

**CHRISTOPHER FALLON** focuses on securities, consumer, and anti-trust litigation. Prior to joining the firm, Mr. Fallon was a contract attorney with O'Melveny & Myers LLP working on anti-trust and business litigation disputes. He is a Certified E-Discovery Specialist through the Association of Certified E-Discovery Specialists (ACEDS).

Mr. Fallon earned his J.D. and a Certificate in Dispute Resolution from Pepperdine Law School in 2004. While attending law school, Christopher worked at the Pepperdine Special Education Advocacy Clinic and interned with the Rhode Island Office of the Attorney General. Prior to attending law school, he graduated from Boston College with a Bachelor of Arts in Economics and a minor in Irish Studies, then served as Deputy Campaign Finance Director on a U.S. Senate campaign.

**HOLLY HEATH** specializes in managing all aspects of discovery and trial preparation in securities and consumer fraud class actions. Since joining the firm in 2017, Ms. Heath

has participated in cases that have led to over $100 million in recoveries for consumers and investors.

Ms. Heath started her career at a boutique business law firm in Century City that targeted trademark infringement. After that, Ms. Heath worked as a contract attorney for several New York firms including Gibson Dunn and Sullivan & Cromwell. Ms. Heath has handled various complex litigation matters such as patent infringement, anti-trust, and banking regulations.

While in law school, Ms. Heath advocated for children's rights at Children's Legal Services and served as a student attorney for Greater Boston Legal Services.

**THOMAS J. KENNEDY** works out of the New York office, where he focuses on securities, antitrust, mass torts, and consumer litigation. He received a Juris Doctor degree from St. John's University School of Law in 1995. At St. John's, he was a member of the ST. JOHN'S JOURNAL OF LEGAL COMMENTARY. Mr. Kennedy graduated from Miami University in 1992 with a Bachelor of Science degree in Accounting and has passed the CPA exam. Mr. Kennedy was previously associated with the law firm Murray Frank LLP.

**CHASE STERN** concentrates his practice on complex commercial litigation, with a particular emphasis on securities fraud and consumer protection class actions, as well as shareholder derivative matters. For nearly a decade, Mr. Stern's practice has been largely dedicated to representing individual and corporate entity plaintiffs in complex commercial and class action litigation in state and federal courts throughout the country. Mr. Stern's work and experience over the course of his career have proven instrumental in vindicating his clients' rights and helping recover tens of millions of dollars on their behalf. His work and experience have also led to his recent recognition as a Super Lawyers® Rising Star for 2022 – 2023.

Mr. Stern holds a B.S. in Finance and Entrepreneurship & Emerging Enterprises from Syracuse University and a J.D. from California Western School of Law, graduating from both institutions with honors.

**RAY D. SULENTIC** prosecutes complex class actions specializing in securities fraud, data privacy, and consumer fraud. Before law school, Mr. Sulentic worked on Wall Street for roughly a decade—on both the buy-side, and the sell-side. His experience includes working as a former Director of Investments for a private equity fund; a special situations analyst for a $10.0 billion multi-asset class hedge fund; and as a sell-side equity and commodity analyst for Bear Stearns & Co. Inc. While at Bear Stearns, Mr. Sulentic's investment analysis was featured in Barron's. Mr. Sulentic's relevant experience includes:

•       Represented lead plaintiffs in *In re Eros International PLC Securities Litigation*, Case No. 2:19-cv-14125-JMV-JSA (D.N.J.), a securities class action alleging violations of the Securities Exchange Act of 1934. The parties have reached an agreement to settle the case for $25 million, subject to court approval.

- Represented lead plaintiffs in *In re Tintri Securities Litigation*, Case No. 17-civ-04321, San Mateo Superior Court, a securities class action alleging violations of Securities Act of 1933. The parties have reached an agreement in principle to settle the case, subject to court approval.
- Represented lead plaintiffs in *Ivan Baron v. HyreCar Inc. et al,* 2:21-cv-06918-FWS-JC (C.D. Cal), a securities class action alleging violations of the Securities Exchange Act of 1934, which defeated Defendants' Motion to Dismiss and is in discovery.

Mr. Sulentic holds a B.S.M. in Finance from Tulane University; an M.B.A. with a concentration in Finance from Georgetown University; and a J.D. from the UCLA School of Law. The synergy of his finance and legal education and experience makes him well-suited for disputes related to complex accounting frauds, market manipulation matters, valuation disputes, and damages. Prior to joining GPM, Ray was an associate at DLA Piper in San Diego.

**ROBERT YAN** is an associate specializing in international cases involving foreign language documents and foreign clients. He has expertise in all aspects of pre-trial litigation, including document productions, deposition preparation, deposition outlines, witness preparation, compilation of privilege logs, and translation of documents into English. He has served as team lead for various document review projects, conducted QC on large document populations, and worked with lead counsel to meet production deadlines.

Robert is a native speaker of Mandarin Chinese and fluent in Japanese. Robert has volunteered his services in the Los Angeles area including at the Elder Law Clinic and monthly APABA Pro Bono Legal Help Clinic. In his free time, Robert likes to play tennis and dodgeball and watches Jeopardy every day with his wife.

# EXHIBIT 5



**FIRM RESUME**

Kendall Law Group was founded by former federal judge Joe Kendall.  It is a boutique trial law firm exclusively representing plaintiffs.  Led by Judge Kendall, the firm brings value-added assistance to their clients in complex class action, securities, and business litigation matters. Since 2002, in class action cases, Joe Kendall has participated in obtaining over 1 billion dollars for clients.  He has served as lead, co-lead, or local counsel in numerous merger & acquisition, derivative, securities fraud, consumer and other class action cases in both state and federal courts, including: *Gazda v. Ryan et al.*, Case No. 3:04-cv-02113-K (N.D. Tex.); *Sunset Management LLC v. American Realty Investors, Inc et al.,* Case No. 3:04-cv-02162-K (N.D. Tex.); *NECA-IBEW Pension Fund v. The Neiman Marcus Group Inc et al.,* Case No. 3:05-cv-00898-L (N.D. Tex.); *Alaska U.F.C.W Pension Trust v. Kleisner et al.,* Case No. 3:05-cv-01323-B (N.D. Tex.); *Hulliung v. Bolen et al,* Case No. 3:06-cv-01083-N (N.D. Tex.); *Patrick Wheeler v. Frozen Food Express Industries, Inc et al.*, Case No. 3:13-cv-02823-P (N.D. Tex.); *Linda K. Blankman v. Bradley et al.,* Case No. 3:15-cv-00339-L (N.D. Tex.); *Bazini et al v. Bradley et al.*, Case No. 3:15-cv-00389-L (N.D. Tex.); *Berlin v. Regency Energy Partners LP et al.*, Case No. 3:15-cv-00519-L (N.D. Tex.); *Budde et al v. Global Power Equipment Group Inc et al.*, Case No. 3:15-cv-01679-M (N.D. Tex.); *Benouis v. Match Group Inc et al.,* Case No. 3:19-cv-02356-S (N.D. Tex.); *Harrison v. XTO Energy Inc et al.*, Case No. 4:09-cv-00768-Y (N.D. Tex.); *Atayi v. AZZ, Inc. et al.*, Case No. 4:19-cv-00928-A (N.D. Tex.);  *Erica P John Fund Inc et al. v. Halliburton Company et al,* Case No. 3:02-cv-01152-M (N.D. Tex.); *Schwartz, et al v. TXU Corp.,* Case No. 3:02-cv-02243-K (N.D. Tex.); *Rogers v. TXU Corp, et al.,* Case No. 3:02-cv-02586-K (N.D. Tex.); *Jorgensen, et al v. TXU Corp, et al.,* Case No. 3:02-cv-

1

02600-K (N.D. Tex.); *Taubenfeld v. Hotels.com, et al.,* Case No. 3:03-cv-00069-N (N.D. Tex.); *In re Michaels Stores, Inc. Securities Litigation*, Case No. 3:03-cv-00246-M (N.D. Tex.); *In re Carreker Corporation Securities Litigation,* Case No. 3:03-cv-00250-B (N.D. Tex.); *Sims v. Michaels Stores, Inc, et al.*, Case No. 3:03-cv-00278-M (N.D. Tex.); *Green v. Hotels.com, et al.,* Case No. 3:03-cv-00279-N (N.D. Tex.); *McKnight, et al v. TXU Corp., et al.,* Case No. 3:03-cv-00289-K (N.D. Tex.); *JIS Trading Group v. TXU Corp., et al.*, Case No. 3:03-cv-00290-K (N.D. Tex.); *Steele, et al v. Hotels.com, et al.,* Case No. 3:03-cv-00323-N (N.D. Tex.); *In re Blockbuster Inc. Securities Litigation,* Case No. 3:03-cv-00398-M (N.D. Tex.); *Massachusetts State Carpenters Pension Fund v. Fleming Companies Inc et al.,* Case No. 3:03-cv-00460-M (N.D. Tex.); *Heller v. Michaels Stores, Inc et al.*, Case No. 3:03-cv-00499-M (N.D. Tex.); *Futransky v. Michael Stores Inc et al.*, Case No. 3:03-cv-00511-M (N.D. Tex.); *AIG Annuity Insurance Company et al v. Ebbers et al.,* Case No. 3:03-cv-01566-L (N.D. Tex.); *Robbins v. Brick et al.,* Case No. 3:03-cv-01687-M (N.D. Tex.); *Imperial County v. Brick et al.,* Case No. 3:03-cv-01688-M (N.D. Tex.); *Ryan v. Flowserve Corporation et al.,* Case No. 3:03-cv-01769-B (N.D. Tex.); *TDH Partners LLP v. Ryland Group Inc et al.,* Case No. 3:04-cv-00073-B (N.D. Tex.); *Massachusetts Laborers Annuity Fund et al v. Odyssey Healthcare, Inc et al.,* Case No. 3:04- cv-00844-N(N.D. Tex.); *Caldarola v. Odyssey Healthcare, Inc et al.,* Case No. 3:04- cv-00988-N (N.D. Tex.); *In re UICI Securities Litigation,* Case No. 3:04-cv-01149-P (N.D. Tex.); *Fener v. Belo Corporation et al,* Case No. 3:04-cv-01836-D (N.D. Tex.); *In re SourceCorp Inc. Securities Litigation,* Case No. 3:04-cv-02351-N (N.D. Tex.); *Lentz v. Citadel Security Software Inc et al.,* Case No. 3:05-cv-00100-D (N.D. Tex.); *Holland v. Citadel Security Software Inc et al.*, Case No. 3:05-cv-00184-D (N.D. Tex.); *Pipefitters Local No. 636 Defined Benefit Plan v. Ryland Group, Inc. et al.,* Case No. 3:06-cv-00022-B (N.D. Tex.); *Laborers National Pension Fund v. AOL Time Warner Inc et al.,* Case No. 3:06-cv-00220-K (N.D.

2

Tex.); *Hansen v. Fradella et al.*, Case No. 3:06-cv-01096-N (N.D. Tex.); *In re Affiliated Computer Services Derivative Litigation,* Case No. 3:06-cv-01110-O (N.D. Tex.); *Galatoire v. Fradella et al.,* Case No. 3:06-cv-01205-N (N.D. Tex.); *In re Affiliated ComputerServices Derivative Litigation,* Case No. 3:06-cv-01212-M (N.D. Tex.); *Pipefitters Local No. 636 Defined Benefit Plan v. Zale Corporation et al.,* Case No. 3:06-cv-01470-N (N.D. Tex.); *Massachusetts Laborers Annuity Fund v. Michaels Stores Inc et al.,* Case No. 3:06-cv-01635-N (N.D. Tex.); *Beatrice et al v. Home Solutions of America, Inc et al.,* Case No. 3:06- cv-01665-N (N.D. Tex.); *City of Pontiac Police and Fire Retirement System v. Kartsotis et al.,* Case No. 3:06-cv-01672-F (N.D. Tex.); *Minich v. Kartsotis et al.,* Case No. 3:06-cv-01977-P (N.D. Tex.); *Crowell v. Mannatech Inc et al.,* Case No. 3:07-cv-00238-K (N.D. Tex.); *Vella v. Kartsotis et al.,* Case No. 3:07-cv-00955-F (N.D. Tex.); *Rines v. Heelys Inc et al.,* Case No. 3:07-cv-01468-K (N.D. Tex.); *Securities and ExchangeCommission v. Stanford International Bank Case No. Ltd et al.,* Case No. 3:09-cv-00298-N (N.D. Tex.); *Buettgen v. Harless et al.,* Case No. 3:09-cv-00791-K (N.D. Tex.); *Heffner v. Harless et al.,* Case No. 3:09-cv-00938-K (N.D. Tex.); *Goldberg v. Klein et al.*, Case No. 3:09-cv-01049-K (N.D. Tex.); *Bill Rains et al v Zale Corporation, et al.,* Case No. 3:09-cv-02133-B (N.D. Tex.); *Lawyer v. Zale Corporation et al.,* Case No. 3:09-cv-02218-B (N.D. Tex.); *Hopson v. MetroPCS Communications Inc et al.,* Case No. 3:09-cv-02392-G *Richardson v. SolarWinds Inc et al.*, Case No. 3:10-cv-02085-B (N.D. Tex.); *North Port Firefighters' Pension et al v. Temple-Inland Inc. et al.,* Case No. 3:11-cv-03119-B (N.D. Tex.); *Bauman v. Simmons et al.*, Case No. 3:11-cv-03607-M (N.D. Tex.); *Brady v. Kosmos Energy, Ltd. et al.*, Case No. 3:12-cv-00373-B (N.D. Tex.); *Mounger v. Kosmos Energy Ltd et al.,* Case No. 3:12-cv-02383-B (N.D. Tex.); *Hohenstein v. Behringer Harvard REIT I, Inc. et al.*, Case No. 3:12-cv-03772-G (N.D. Tex.); *Herrley v. Frozen Food Express Industries, Inc.*, Case No. 3:13-cv-03004-B (N.D. Tex.); *Wallis v. Frozen Food Express Industries Inc et al.,* Case No. 3:13-cv-03104-B (N.D.

3

Tex.); *Securities and Exchange Commission v. Arcturus Corporation et al.,* Case No. 3:13-cv-04861-K (N.D. Tex.); *Kumar v. Santander Consumer USA Holdings Inc. et al.,* Case No. 3:14-cv-03746-K (N.D. Tex.); *Panes v. Trinity Industries Inc et al.,* Case No. 3:15-cv-01316-N (N.D. Tex.); *Isolde v. Trinity Industries Inc et al.,* Case No. 3:15-cv-02093-K (N.D. Tex.); *Budde v. Global Power Equipment Inc et al.,* Case No. 3:15-cv-02120-M (N.D. Tex.); *Steck v. Santander Consumer USA Holdings Inc. et al.,* Case No. 3:15-cv-02129-K (N.D. Tex.); *Kenney v. Pier 1 Imports Inc. et al.,* Case No. 3:15-cv-02798-D (N.D. Tex.); *Town of Davie Police Pension Plan v. Pier 1 Imports Inc et al.,* Case No. 3:15-cv-03415-S (N.D. Tex.); *In re United Development Funding IV Securities Litigation,* Case No. 3:15-cv-04030-M (N.D. Tex.); *McCloskey et al v. Match Group Inc et al.,* Case No. 3:16-cv-00549-S (N.D. Tex.); *Securities and Exchange Commission v. Narayan et al.,* Case No. 3:16-cv-01417-M (N.D. Tex.); *Securities and Exchange Commission v. Faulkner et al.,* Case No. 3:16-cv-01735-D (N.D. Tex.); *Ramirez v. Exxon Mobil Corporation et al.,* Case No. 3:16-cv-03111-K (N.D. Tex.); *Ashraf v. Energy Transfer Partners LP et al.,* Case No. 3:17-cv-00118-B (N.D. Tex.); *Irving Firemen's Relief & Retirement System v. Signet Jewelers Limited et al.,* Case No. 3:17-cv-00875-D (N.D. Tex.); *Sciabacucchi v. State National Companies Inc. et al.,* Case No. 3:17-cv-02412-C (N.D. Tex.); *Block v. Interoil Corporation et al.,* Case No. 3:18-cv-00007-X (N.D. Tex.); *Iglesias v. Southcross Energy Partners, L.P. et al.,* Case No. 3:18-cv-00158-N (N.D. Tex.); *Franchi v. Southcross Energy Partners LP et al.,* Case No. 3:18-cv-00179-N  (N.D. Tex.); *Cunha v. La Quinta Holdings Inc et al.,* Case No. 3:18-cv-00540-S (N.D. Tex.); *Rosenblatt v. La Quinta Holdings, Inc. et al.,* Case No. 3:18-cv-00558-K (N.D. Tex.); *Robinson v. RSP Permian Inc. et al.,* Case No. 3:18-cv-01047-L (N.D. Tex.); *Rosenblatt v. RSP Permian Inc et al.,* Case No. 3:18-cv-01117-B (N.D. Tex.); *Franchi v. Nationstar Mortgage Holdings Inc et al.,* Case No. 3:18-cv-01170-B (N.D. Tex.); *Chun v. Fluor Corporation et al.,* Case No. 3:18-cv-01338-X (N.D. Tex.); *In re*

4

Page 149

*Forterra, Inc Securities Litigation,* Case No. 3:18-cv-01957-X (N.D. Tex.); *Peak et al v. Zion Oil & Gas Inc et al.,* Case No. 3:18-cv-02067-X (N.D. Tex.); *Brooks v. United Development Funding III et al.,* Case No. 3:18-cv-03097-X (N.D. Tex.); *Strahan v. Cambium Learning Group Inc et al.,* Case No. 3:18-cv-03123-K (N.D. Tex.); *Fox et al v. United Development Funding III et al.,* Case No. 3:19-cv-00274-M (N.D. Tex.); *Linenweber v. Southwest Airlines Co et al.,* Case No. 3:20-cv-00408-K (N.D. Tex.); *Union Asset Management Holding AG v. Fluor Corporation et al.,* Case No. 3:20-cv-00518-X (N.D. Tex.); *Shen v. Exela Technologies Inc et al.,* Case No. 3:20-cv-00691-D (N.D. Tex.); *Schulze v. Hallmark Financial Services Inc et al.,* Case No. 3:20-cv-01130-X (N.D. Tex.); *Torres v. Berry Corporation et al.,* Case No. 3:20-cv-03464-S (N.D. Tex.); *Securities and Exchange Commission v. Randall,* Case No. 3:21-cv-00979-N (N.D. Tex.); *Damore v. RadioShack Corporation et al.,* Case No. 4:07-cv-00179-A (N.D. Tex.); *Pappas et al v. Simpson et al.,* Case No. 4:10-cv-00094-Y (N.D. Tex.); *Ruedelstein v. U.S. Concrete, Inc. et al.,* Case No. 4:17-cv-00266-O (N.D. Tex.); *Mullins v. AZZ, Inc. et al.,* Case No. 4:18-cv-00025-Y (N.D. Tex.); *Fox et al v. United Development Funding III et al.,* Case No. 4:20-cv-00150-O (N.D. Tex.); *In Re Six Flags Entertainment Corporation Derivative Litigation,* Case No. 4:20-cv-00262-P (N.D. Tex.); *Martin et al v. Reid-Anderson et al.,* Case No. 4:20-cv-00311-P (N.D. Tex.); *Albayrak v. Reid-Anderson et al.,* Case No. 4:20-cv-00312-P (N.D. Tex.); *Genesee County Employees' Retirement System v. FirstCash Holdings Inc et al.,* Case No. 4:22-cv-00033-P (N.D. Tex.); *van der Gracht de Rommerswael v. Speese et al.,* Case No. 4:17-cv-00227-ALM-CMC (E.D. Tex.); *Alaska Electrical Pension Fund v. Brown et al.,* Case No. 6:04-cv-00464-LED (E.D. Tex.); *Wayne County Employees Retirement System v. Brown et al.,* Case No. 6:04-cv-00466-LED (E.D. Tex.); *Sippy v. Powell, et al.,* Case No. 2:03-cv-00222-TJW (E.D. Tex.); *Acaldo v. Pilgrim's Pride Corporation et al.,* Case No. 2:08-cv-00419-JRG (E.D. Tex.); *Howes v. Pilgrim's Pride Corporation et al.,* Case No. 2:08-cv-00443-JRG

5

Page 150

(E.D. Tex.); *Nemky v. Trinity Industries, Inc. et al.*, Case No. 2:15-cv-00732-JRG (E.D. Tex.); *Barry Family LP v. Electronic Data Sys, et al.*, Case No. 4:02-cv-00300-LED (E.D. Tex.); *Braun, et al v. Electronic Data Sys, et al.,* Case No. 4:02-cv-00304-LED (E.D. Tex.); *Harnik v. Electronic DataSys, et al.*, Case No. 4:02-cv-00308-LED (E.D. Tex.); *Bridgewater Partners v.Electronic Data Sys, et al.*, Case No. 4:02-cv-00310-LED (E.D. Tex.); *Vanderwarter v. Electronic Data Sys, et al.*, Case No. 4:02-cv-00314-LED (E.D. Tex.); *Thorne-Thomsen v. EDS, et al.*, Case No. 4:02-cv-00321-LED (E.D. Tex.); *Britt v. EDS, et al.*, Case No. 4:02-cv-00322-LED (E.D. Tex.); *Sved v. EDS, et al.*, Case No. 4:02-cv-00323-LED (E.D. Tex.); *Zia v. EDS, et al.,* Case No. 4:02-cv-00329-RAS-DDB (E.D. Tex.); *Kluemper v. EDS, et al.*, Case No. 4:02-cv-00331-LED (E.D. Tex.); *McLoughlin v. Electronic Data, et al.*, Case No. 4:02-cv-00335-LED (E.D. Tex.); *Stanton Pharmacy v. EDS, et al.,* Case No. 4:02-cv-00336-LED (E.D. Tex.); *Fink v. Electronic Data, et al.*, Case No. 4:02-cv-00365-LED (E.D. Tex.); *Angeloni v. Microtune Inc, et al.*, Case No. 4:03-cv-00056-RAS-DDB (E.D. Tex.); *Morris v. Microtune Inc, et al.*, Case No. 4:03-cv-00064-RAS-DDB (E.D. Tex.); *Yakuboff v. Microtune Inc, et al.*, Case No. 4:03-cv-00066-RAS-DDB (E.D. Tex.); *Clark v. Microtune Inc, et al.*, Case No. 4:03-cv-00082-RAS-DDB (E.D. Tex.); *Xu v. Microtune Inc, et al.*, Case No. 4:03-cv-00115-RAS-DDB (E.D. Tex.); *Aiken v. Microtune Inc, et al.*, Case No. 4:03-cv-00123-RAS-DDB (E.D. Tex.); *Fontana v. Microtune Inc, et al.*, Case No. 4:03-cv-00133-RAS-DDB (E.D. Tex.); *Pipefitters Local v. Microtune Inc, et al.*, Case No. 4:03-cv-00158-RAS-DDB (E.D. Tex.); *Wahl, et al v. Daisytek, et al.*, Case No. 4:03-cv-00212-PNB (E.D. Tex.); *Chambers v. Daisytek, et al.,* Case No. 4:03-cv-00250-PNB (E.D. Tex.); *Sippy v. Powell, et al.*, Case No. 4:03-cv-00328-PNB (E.D. Tex.); *Morris v. Fontaine, et al.*, Case No. 4:03-cv-00409-PNB (E.D. Tex.); *PLA LLC v. Advanced Neuromodulation Systems Inc et al.*, Case No. 4:05-cv-00078-RAS-DDB (E.D. Tex.); *RAI Investment Club v. Advanced Neuromodulation Systems Inc et al.*, Case No. 4:05-cv-00094-RAS-DDB (E.D. Tex.);

6

*Hall v. Rent-A-Center, Inc. et al.*, Case No. 4:16-cv-00978-ALM-CMC (E.D. Tex.); *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc. et al.*, Case No. 4:17-cv-00449-ALM (E.D. Tex.); *Witmer v. Dr. Pepper Snapple Group, Inc. et al.*, Case No. 4:18-cv-00209-ALM-KPJ (E.D. Tex.); *Celeste v. Intrusion Inc. et al.,* Case No. 4:21-cv-00307-SDJ (E.D. Tex.); *Gaynor v. Fleming Companies, et al.*, Case No. 5:02-cv-00178-TJW (E.D. Tex.); *Dolan v. Fleming Companies, et al.*, Case No. 5:02-cv-00190-TJW (E.D. Tex.); *Sved v. Fleming Companies, et al.*, Case No. 5:02-cv-00198-TJW (E.D. Tex.); *Edwards v. Fleming Companies, et al.,* Case No. 5:02-cv-00204-TJW (E.D. Tex.); *Patterson v. Fleming Companies, et al.*, Case No. 5:02-cv-00205-TJW (E.D. Tex.); *Feder v. Electronic Data Sys, et al.,* Case No. 5:02-cv-00207-DF (E.D. Tex.); *Huk v. Fleming Companies, et al.*, Case No. 5:02-cv-00208-TJW (E.D. Tex.); *Gordon v. Fleming Companies, et al.*, Case No. 5:02-cv-00212-TJW (E.D. Tex.); *Rudisill v. Fleming Companies, et al.*, Case No. 5:02-cv-00218-TJW (E.D. Tex.); *Eglinton v. Fleming Companies, et al.*, Case No. 5:02-cv-00222-TJW (E.D. Tex.); *Jackson Capital Mgt v. Fleming Companies, et al.*, Case No. 5:02-cv-00223-TJW (E.D. Tex.); *Horwitz, et al v. Electronic Data Sys, et al.*, Case No. 5:02-cv-00232-TJW (E.D. Tex.); *Miller v. Electronic Data Sys, et al.*, Case No. 5:02-cv-00233-DF (E.D. Tex.); *Thompson v. Electronic Data, et al.*, Case No. 5:02-cv-00248-DF-CMC (E.D. Tex.); *Massachusetts State v. Hansen, et al.*, Case No. 5:03-cv-00083-TJW (E.D. Tex.); *Massachusetts State v. Fleming Companies, et al.*, Case No. 5:03-cv-00204-TJW (E.D. Tex.); *Feder v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00110-LED (E.D. Tex.); *Horwitz, et al v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00111-LED (E.D. Tex.); *Miller v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00112-LED (E.D. Tex.); *Thompson v. Electronic Data, et al.*, Case No. 6:03-cv-00113-LED (E.D. Tex.); *Barry Family LP v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00114-LED (E.D. Tex.); *Braun, et al v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00115-LED (E.D. Tex.); *Harnik v. Electronic Data Sys, et al.,* Case No. 6:03-

7

cv-00116-LED (E.D. Tex.); *Bridgewater Partners v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00117-LED (E.D. Tex.); *Vanderwarter v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00118-LED (E.D. Tex.); *Thorne-Thomsen v. EDS, et al.*, Case No. 6:03-cv-00119-LED (E.D. Tex.); *Britt v. EDS, et al.*, Case No. 6:03-cv-00120-LED(E.D. Tex.); *Sved v. EDS, et al.*, Case No. 6:03-cv-00121-LED (E.D. Tex.); *Zia v. EDS, et al.*, Case No. 6:03-cv-00122-LED (E.D. Tex.); *Kluemper v. EDS, et al.*, Case No. 6:03-cv-00123-LED (E.D. Tex.); *McLoughlin v. Electronic Data, et al.*, Case No. 6:03-cv-00124-LED (E.D. Tex.); *Stanton Pharmacy v. EDS,et al.*, Case No. 6:03-cv-00125-LED (E.D. Tex.); *Fink v. Electronic Data, et al.*, Case No. 6:03-cv-00128-LED (E.D. Tex.); *Marcus v. J.C. Penney Company, Inc. et al.,* Case No. 6:13-cv-00736-RWS-KNM (E.D. Tex.); *Gilbert v. J.C. Penney Company, Inc. et al.*, Case No. 6:13-cv-00810-RWS-KNM (E.D. Tex.); *Johnson v. J.C. Penney Company, Inc. et al.*, Case No. 6:14-cv-00722-KNM (E.D. Tex.); *PFS Investments Inc et al v. De Leeuw et al.*, Case No. 6:16-cv-00429-MHS-JDL (E.D. Tex.); *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc. et al.*, Case No. 6:16-cv-01243-RWS(E.D. Tex.); *Kim v. Adeptus Health Inc. et al.*, Case No. 6:17-cv-00150-RWS (E.D. Tex.); *McKnight v. TXU Corp, et al.*, Case No. 9:02-cv-00274-JH (E.D. Tex.); *Trading Group v. TXU Corp, et al.*, Case No. 9:02-cv-00307-JH JIS (E.D. Tex.); *The Duck Pond CRT Ltd v. PAA Natural Gas Storage, L.P. et al.*, Case No. 4:13-cv-03170 (S.D. Tex.); *Rougier v. Applied Optoelectronics, Inc. et al.,* Case No. 4:17-cv-02399 (S.D. Tex.); *Heck v. Orion Group Holdings, Inc. et al.*, Case No. 4:19-cv-01337 (S.D. Tex.); *Hoffman v. RCI Hospitality Holdings, Inc. et al.*, Case No. 4:19-cv-01841 (S.D. Tex.); *Ludovissy et al v. Bellicum Pharmaceuticals, Inc. et al.*, Case No. 4:19-cv-02450 (S.D. Tex.); *Miller et al. v. Cadence Bancorporation et al.*, Case No. 4:19-cv-03492 (S.D. Tex.); *Miskella v. Christmann et al.*, Case No. 4:21-cv-01836 (S.D. Tex.); *Brodeen v. Christmann et al.,* Case No. 4:21-cv-02082 (S.D. Tex.); *Pirelli Armstrong, et al v. Hanover Compressor*, et al., Case No. 4:02-cv-00410 (S.D. Tex.);

8

*Lampkin, et al v. UBS Painewebber Inc, et al.*, Case No. 4:02-cv-00851 (S.D. Tex.); *Anderson v. Hanover Compressor, et al.,* Case No. 4:02-cv-02306 (S.D. Tex.); *Equitec-Cole Roesler v. McClanahan, et al.,* Case No. 4:02-cv-04048 (S.D. Tex.); *Securities & Exchange v. Rocky Mountain Energy, et al.,* Case No. 4:03-cv-01133 (S.D. Tex.); *Capstone Asset Management Company v. AOL Time Warner Inc et al.,* Case No. 4:06-cv-00306 (S.D. Tex.); *Brodsky v. Superior Offshore International, Inc et al.,* Case No. 4:08-cv-01297 (S.D. Tex.); *In Re: Repros Therapeutics, Inc. Securities Litigation*, Case No. 4:09-cv-02530 (S.D. Tex.); *Simpson et al v. Repros Therapeutics, Inc et al.*, Case No. 4:09-cv-03127 (S.D. Tex.); *In Re: BP plc Securities Litigation*, Case No. 4:10-md-02185 (S.D. Tex.); *Davis et al v. Duncan EnergyPartners L.P. et al.*, Case No. 4:11-cv-02486 (S.D. Tex.); *Matthews v. Rynd et al.*, Case No. 4:11-cv-02706 (S.D. Tex.); *Phillips v. Harvest Natural Resource et al.*, Case No. 4:13-cv-00801 (S.D. Tex.); *Myers v. Harvest Natural Resources, Inc. et al.,* Case No.  4:13-cv-01139 (S.D. Tex.); *Knoll v. Phillips et al.*, Case No. 4:13-cv-01528 (S.D. Tex.); *Wolfson v. PNGS GP LLC et al.*, Case No. 4:13-cv-03483 (S.D. Tex.); *Cady v. Key Energy Services, Inc. et al.*, Case No. 4:14-cv-02368 (S.D. Tex.); *Davidson v. Key Energy Service, Inc. et al.*, Case No. 4:14-cv-02403 (S.D. Tex.); *Ogden v. Cobalt International Energy, Inc. et al.*, Case No. 4:15-cv-00139 (S.D. Tex.); *John Hancock Capital Series et al v. BP, PLC et al.*, Case No. 4:15-cv-02704 (S.D. Tex.); *Ho v. Flotek Industries, Inc. et al.*, Case No. 4:15-cv-03327 (S.D. Tex.); *Walpole v. Flotek Industries, Inc. et al.*, Case No. 4:15-cv-03383 (S.D. Tex.); *Edgar v. Anadarko Petroleum Corporation et al.,* Case No. 4:17-cv-01372 (S.D. Tex.); *Stern v. Atwood Oceanics, Inc. et al.,* Case No. 4:17-cv-01942 (S.D. Tex.); *Composto v. Atwood Oceanics, Inc. et al.*, Case No. 4:17-cv-01968 (S.D. Tex.); *Carter v. Atwood Oceanics, Inc. et al.,* Case No. 4:17-cv-02013 (S.D. Tex.); *Scarantino v. Parkway, Inc. et al.*, Case No. 4:17-cv-02441 (S.D. Tex.); *Panella v. Tesco Corporation et al.*, Case No. 4:17-cv-02904 (S.D. Tex.); *The Vladimir Gusinsky Rev. Trust v. Tesco Corporation et al.*,

9

Case No. 4:17-cv-02918 (S.D. Tex.); *Scarantino v. Calpine Corporation et al.*, Case No. 4:17-cv-03256 (S.D. Tex.); *Paskowitz v. Dynegy Inc. et al.*, Case No. 4:18-cv-00027 (S.D. Tex.); *McIntyre v. Chicago Bridge & Iron Company N.V. et al.*, Case No. 4:18-cv-00273 (S.D. Tex.); *The George Leon Family Trust v. Chicago Bridge & Iron Company N.V. et al.*, Case No. 4:18-cv-00314 (S.D. Tex.); *Witmer v. Layne Christensen Company et al.*, Case No. 4:18-cv-01051 (S.D. Tex.); *Paik v. Fair et al.*, Case No. 4:18-cv-02513 (S.D. Tex.); *Edwards v. McDermott International, Inc. et al.*, Case No. 4:18-cv-04330 (S.D. Tex.);*Vladimir Gusinsky Rev. Trust v. Rowan Companies PLC et al.*, Case No. 4:18-cv-04341 (S.D. Tex.); *Van 'T Hoofd v. Nobilis Health Corp. et al.*, Case No. 4:18-cv-04727 (S.D. Tex.); *Manopla v. Lexicon Pharmaceuticals, Inc. et al.,* Case No. 4:19-cv-00301 (S.D. Tex.); *Kokareva v. Bristow Group Inc. et al.*, Case No. 4:19-cv-00509 (S.D. Tex.); *Assad v. Penn Virginia Corporation et al.,* Case No. 4:19-cv-00656 (S.D. Tex.); *In Re: Anadarko Petroleum Corporation Securities Litigation*, Case No. 4:20-cv-00576 (S.D. Tex.); *Griggs v. Crown Castle International Corp. et al.,* Case No. 4:20-cv-00843 (S.D. Tex.); *Alexander et al v. Conn's Inc. et al.*, Case No. 4:20-cv-01705 (S.D. Tex.); *Ahnefeldt et al v. Dickson et al.,* Case No. 4:20-cv-02539 (S.D. Tex.); *Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation et al.*, Case No. 4:21-cv-02045 (S.D. Tex.); *Coggins v. Camber Energy, Inc. et al.*, Case No. 4:21-cv-03574 (S.D. Tex.); *Justin Pierce and Hillary Kay, Derivatively on Behalf of AT&T Inc. v. Randall L. Stephenson, et al.*, Cause No. DC-14-13645, (193rd District Court, Dallas County, Texas); *Jacob Hulsebus, et al. v. Belo Corp., et al.*, Cause No. DC-13-06601, (68th District Court, Dallas County, Texas); *Ron Phillips and Scott Moorehead, Derivatively on Behalf of CLST Holdings, Inc., v. Timothy S. Durham, et al.*, Cause No. DC-10-07655 (134th District Court, Dallas County, Texas); *Regan Held, et al., v. C. Kelly Hall, et al.*, Cause No. CC-11-05258-D, (County Court No. 4, Dallas County, Texas); *David Flecker, Individually and on Behalf of All Others Similarly Situated and Derivatively*

10

Page 155

*on Behalf of Pioneer Southwest Energy Partners L.P.*, Cause No. DC-13-05371-G (134th District Court, Dallas County, Texas); *In re U.S. Home Systems, Inc. Shareholder Litigation*, Cause No. CC-12-04962-B (County Court No. 2, Dallas County, Texas); *Terry Neff, Derivatively on Behalf of Weatherford International Ltd., et al., v. Nicholas F. Brady, et al.*, Cause No. 2010-40764 (270th District Court, Harris County, Texas); *In re Burlington Northern Santa Fe Corporation Shareholder Class Action Litigation,* Cause No. 348-241465-09,  (348th District Court, Tarrant County, Texas) *Dillingham v. Schmitz,* Cause No. 2005C119934 (288th District Court, Bexar County, Texas); *Holowach v. Gilliland, et al.*, Cause No. 017-221963-07 (17th District Court, Tarrant County, Texas); *Levy Investments v. Donald Steen, et al.,* Cause No. DC-07-00208 (101st District Court Dallas County, Texas); *In re Petco Animal Supplies, Inc., Shareholder Litigation,* Case No. GIC 869399 (Superior Court, San Diego, California); *Frank Capovilla v. Lone Star Technologies, Inc., et al.,* Cause No. DC-07-002979 (14th District Court, Dallas County, Texas); *Louis Dudas v. Encore Medical Corporation, et al.,* Cause No. D-1-GN-002495 (345th District Court, Travis County, Texas); *Waggoner v. Ryan, et al,* Cause No. CC-05-13893 (County Court at Law No. 2, Dallas County, Texas); *Evans v. Paulson, et al.,* Cause No. 05-01818-JMR-FLN (D. Minn.); In *re Accuray, Inc. Shareholder Derivative* Litigation, Case No. C 09 05580 CW (N.D. Cal.); *In re Microtune, Inc. Litigation,* Cause No. 219-03729-2010 (219th District Court, Collin County, Texas); *Edward Ferguson v. Louis Raspino*, *et al.*, Cause No. 2010-23805 (281st District Court, Harris County, Texas); *In re Duncan Energy Partners L.P. Shareholder Litigation*, Cause No. 2011-13981 (269th District Court, Harris County, Texas); and many others.

11

**JOE KENDALL**

Former United States District Judge Joe Kendall is the owner of Kendall Law Group. Mr. Kendall served on the federal bench in the Northern District of Texas from 1992-2002, appointed by President George Herbert Walker Bush. He was unanimously confirmed by the U.S. Senate. At the time of his appointment, he was the youngest U.S. District Judge in the country. He also served as state district judge of the 195th Judicial District Court in Dallas from 1987-1992. In his judicial career, he has presided over approximately 500 jury trials and disposed of over 11,000 cases. Mr. Kendall has a B.B.A. from the Cox School of Business at Southern Methodist University and a law degree from Baylor University. Mr. Kendall served as a Commissioner on the United States Sentencing Commission from 1999 through 2002, appointed by President Bill Clinton.

Since leaving the bench for economic reasons and returning to trial work, Mr. Kendall has had tremendous success at the prosecution of patent and class action litigation either as lead, co-lead or local counsel.

While on the federal bench, Mr. Kendall handled class actions of various types and presided over numerous civil jury trials, including complex litigation, securities, antitrust, qui tam, medical malpractice, products liability, and patent infringement cases. He presided over a multi-district litigation case, and also environmental and CERCLA cases. He is the author of more than 250 judicial opinions published in the federal reporters or legal research databases. In his career as a lawyer, Mr. Kendall has personally tried more than 100 jury trials to judgment.

Additionally, Mr. Kendall taught new federal judges for the Federal Judicial Center in Washington, D.C. and has taught docket management techniques to experienced federal judges throughout the country. He is a former board member of the Federal Judges Association and was editor of *In Camera*, the newsletter of the Federal Judges Association.

12

# EXHIBIT 6

**NERA**
ECONOMIC CONSULTING

24 January 2023



# Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review

Federal Filings Declined for the Fourth Consecutive Year

Average and Median Settlement Values Increased by More than 50% Compared to 2021

By Janeen McIntosh, Svetlana Starykh, and Edward Flores

**Insight in Economics™**

## NERA-Defined Investor Losses

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[11]

A statistical review reveals that settlement values and NERA-Defined Investor Losses are highly correlated, although the relationship is not linear. The ratio is higher for cases with lower NERA-Defined Investor Losses than for cases with higher Investor Losses (see Figure 18). Since 2013, annual median Investor Losses have ranged from a high of $972 million to a low of $358 million. For cases settled in 2022, the median Investor Losses were $972 million, which is 33% higher than the 2021 value and the highest recorded value during the 2013–2022 period. Between 2020 and 2022, the median ratio of settlement amount to Investor Losses has been stable at 1.8% (see Figure 19).

Figure 18. **Median Settlement Value as a Percentage of NERA-Defined Investor Losses**
By Investor Losses
Cases Filed and Settled December 2011–December 2022



Page 160

## Notes

1   This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Vlad Lee and other researchers in NERA's Securities and Finance Practice for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to federal case filings and resolutions.

2   In this study we introduced a new category of "special" cases, crypto cases, which consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

3   NERA tracks securities class actions that have been filed in federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports.

4   Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and thus the total number of allegations exceeds the total number of filings.

5   It is important to note that due to the small number of cases in some of these categories, the findings summarized here may be driven by one or two cases.

6   ESG securities class action cases filed in federal courts are included in NERA's database and the analyses in this report. For this update, no analyses have been prepared on this development area specifically.

7   Report updated on 7 February 2023. Analyses for the "SPACs" group were updated to incorporate "blank check" company-related cases and cases that were not originally classified as SPACs prior to publishing.

8   Here "dismissed" is used as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an ultimately unsuccessful motion for class certification.

9   While annual average settlement values can be a helpful statistic, these values may be affected by one or a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these very high outlier settlement amounts. To understand what more typical cases look like, we analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these outlier settlement amounts. For the analysis of settlement values, we limit our data to non-merger-objection and non–crypto unregistered securities cases with settlements of more than $0 to the class.

10   For our analysis, NERA includes settlements that have had the first settlement-approval hearing. This means we do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. As a result, although we include the Valeant partial settlement in Table 2 due to its sizable amount, this case is not included in any of our resolution or settlement statistics.

11   NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock based on one or more corrective disclosures moving the stock price to its alleged true value. As a result, we have not calculated this metric for cases such as merger objections.

Page 161

## About NERA

NERA Economic Consulting (**www.nera.com**) is a global firm of experts dedicated to applying economic, finance, and quantitative principles to complex business and legal challenges. For more than six decades, we have been creating strategies, studies, reports, expert testimony, and policy recommendations for government authorities and the world's leading law firms and corporations. We bring academic rigor, objectivity, and real-world industry experience to issues arising from competition, regulation, public policy, strategy, finance, and litigation.

NERA's clients value our ability to apply and communicate state-of-the-art approaches clearly and convincingly, our commitment to deliver unbiased findings, and our reputation for quality and independence. Our clients rely on the integrity and skills of our unparalleled team of economists and other experts backed by the resources and reliability of one of the world's largest economic consultancies. Continuing our legacy as the first international economic consultancy, NERA serves clients from major cities across North America, Europe, and Asia Pacific.

## Contacts
For further information, please contact:



**Janeen McIntosh**
Senior Consultant
New York City: +1 212 345 1375
janeen.mcintosh@nera.com



**Svetlana Starykh**
Senior Consultant
White Plains, NY: +1 914 448 4123
svetlana.starykh@nera.com

*The opinions expressed herein do not necessarily represent the views of NERA Economic Consulting or any other NERA consultant.*



**Edward Flores**
Senior Consultant
New York City: +1 212 345 2955
edward.flores@nera.com



To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.





Visit **www.nera.com** to learn more about our practice areas and global offices.

© Copyright 2023
National Economic Research
Associates, Inc.

All rights reserved.
Printed in the USA.

# EXHIBIT 7

# Epiq Class Action and Claims Solutions CV

# 2022

10300 SW Allen Blvd, Beaverton, OR 97005
www.epiqglobal.com



**Epiq is a leading class action settlement administrator delivering best-in-class people, technology and service for class action administration matters anywhere in the world—regardless of size or complexity.**

**History:**

Epiq has been administering settlements since 1993, including settlements of class actions, mass tort litigations, Securities and Exchange Commission enforcement actions, Federal Trade Commission disgorgement actions, insurance disputes, bankruptcies, and other major litigation. Epiq has administered thousands of settlements, including some of the largest and most complex cases ever settled.

Epiq's class action case administration services include coordination of all notice requirements, design of direct-mail notices, establishment and implementation of notice fulfillment services, coordination with the United States Postal Service ("USPS"), electronic noticing, notice website development and maintenance, dedicated phone lines with recorded information and/or live operators, receipt and processing of opt-outs, claims database management, claim adjudication (paper and electronic), funds management, and award calculations and distribution services (both traditional checks and electronic payments). Epiq works with the settling parties, the Court, and the Class Members in a neutral facilitation role to implement administration services based on the negotiated terms of a settlement.

Through Hilsoft Notifications, our global provider of legal noticing services, we provide superior notice plan design, implementation, oversight, and communications for class action, mass tort, and bankruptcy proceedings. Hilsoft Notifications has been retained by defendants and/or plaintiffs on more than 300 cases, including more than 30 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world.

Epiq also has a Mass Tort division, which offers claimant communication support, medical record retrieval and review, plaintiff fact sheet fulfillment, settlement document fulfillment, lien resolution and fund administration and payments.

**Strategically located:**

- 11 dedicated offices providing project management and operational support including, New York City, New York; Beaverton, Oregon; Dublin, Ohio; Seattle, Washington; Tampa, Florida; Phoenix, Arizona; Tallahassee, Florida, London UK, Memphis TN and Ottawa and Waterloo, Ontario.

- 3 state-of-the-art full-service mail, print, and contact centers in Beaverton, Oregon, Memphis, TN and Dublin, Ohio.

- 2,670 contact center seats across all locations.

2



**Epiq has been retained on some of the highest profile cases in history:**

*In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* This $6B+ settlement is one of the largest antitrust class action settlements of all time. Epiq received roughly 80 billion rows of data with 163 types of data columns in 180 distinct files. The aggregated data set is over 110 terabytes and is hosted in a PCI-compliant environment. Over a five-month period this data was used to generate 21 million settlement notice mailings. This settlement is currently on appeal and therefore the claims process has not yet begun. However, in order to efficiently handle the anticipated claim volume, we implemented a pre-registration process that allows merchants to provide information to expedite the claims process prior to claim filing.

*In re: Oil Spill by the Rig "Deepwater Horizon"* Prior to settlement, Epiq acted as a shared database manager for the litigation, collecting data from plaintiffs' counsel, defense counsel, the Gulf Coast Claims Facility, and the court to create an aggregated system of record to manage all plaintiff data. Responsibilities included data intake and processing of all new forms filed on PACER and LexisNexis File & ServeXpress, loading partially complete data lists, identifying exceptions and mismatches and resolving missing data, duplicates and incorrect information for the parties. Epiq's legal noticing division, Hilsoft Notifications, was then appointed as the notice administrator for both the $7.8 billion economic damages and medical benefits settlements. Across a condensed six week period, Hilsoft ran notices nationally and locally in more than 2,000 print publications. Approximately 10,000 television and radio spots aired across 26 media markets stretching from Houston to Miami. In addition to English, notices appeared in Spanish and Vietnamese. It is estimated that more than 95% of all adults living in the Gulf Area and more than 83% of all adults in the United States had an opportunity to see the notice. In total, the notice effort was one of the largest ever undertaken in a class action settlement.

*In re: Takata Airbag Products Liability Litigation* Massive individual notice mailing to over 59 million class members with Toyota, Mazda, Subaru, BMW, Honda, Nissan and Ford vehicles, as part of $1.49 billion in multiple settlements regarding Takata airbags. Comprehensive nationwide media accompanied each phase, comprised of radio ads, consumer magazine ads and extensive online notice.

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Product Liability Litigation (Bosch Settlement)* Comprehensive notice program within the Volkswagen Emissions Litigation that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email. A targeted internet campaign further enhanced the notice effort.

*Hale v. State Farm Mutual Automobile Insurance Company* For a $250 million settlement with approximately 4.7 million class members, Epiq designed and implemented a Notice Program with individual notice via postcard or email to approximately 1.43 million class members and a robust publication program, which combined, reached approximately 80% of all U.S. Adults Aged 35+ approximately 2.4 times each.

*Oppenheimer Rochester Group Funds Securities Litigation* In these securities cases, which combine six separate settlements, Epiq reviewed and processed over 10 million trade transactions, consolidated data and mailed more than 450,000 pre-populated records of claimant transactions ("ROFTS") to alleviate the burden on the majority of class members to research and file claims, and mailed over 180,000 additional Claim Forms

3



and notices. We created complex software code to calculate the recognized losses across 19 different types of securities.

*In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation ('Vioxx')* Epiq is currently administering this $1.062 billion settlement involving damages from securities trades going as far back as 1999. Epiq mailed almost 2 million notices, received more than 400,000 claims and processed millions of lines of securities transaction data, determined losses using complex algorithms relating to multiple securities for injured investors.

*Hooker v SiriusXM Radio Inc.*   This $35 million settlement for alleged TCPA violations involves approximately 12 million class members. Class members could register for three months of free service or file a claim for cash payment. Epiq's class member outreach included both mailing approximately 8 million postcards and a total of 50 million emails to class members for noticing and reminder purposes. The claims administration process involved working with the defendant to validate claims data using the defendant's internal database.

*The Shane Group, Inc. v Blue Cross Blue Shield of Michigan* Epiq is the claims administrator for this 3 million class member insurance anti-trust settlement. Epiq utilized its proprietary Third-Party Payor (TPP) database to notice insurance companies and other third party payors in addition to the individual class members provided by the defendant. The claims process was complex and involved sensitive HIPAA protected data that had to be housed in a custom secure environment. The settlement was appealed and as a result the parties are currently finalizing alterations to the settlement to address the concerns of the appellant.

*In re Checking Account Overdraft Litigation* Epiq has implemented more In re: Checking Account Overdraft MDL NO. 2036 overdraft class action settlements than any other administrator and is currently providing settlement services to five of the six largest U.S. banks. Our ability to securely intake and normalize complex data from a multitude of sources proves a natural fit for banks and other financial services firms.

*Mortgage Servicing Regulatory Settlement Summary*  Epiq is currently handling a number of remediation and distribution programs involving various financial institutions pursuant to private settlements and consent orders with the OCC, DOJ, FRB and CFPB. Examples of these engagements include:

• A borrower identification and distribution program to support a $35 million Department of Justice (DOJ) and Consumer Financial Protection Bureau (CFPB) settlement with a financial institution related to mortgage loans made to African-American and Hispanic borrowers.

• A payment distribution program to support an expedited payment agreement between the Office of the Comptroller of the Currency (OCC) and a financial institution, which resolves an Independent Foreclosure Review of the financial institution's foreclosure practices.

• A notification, claims and distribution program to support a Federal Reserve settlement with a financial institution related to mortgage loans originated at more than 800 branch offices.

• A notification, claims and distribution program to support a $320 million Home Affordable Modification Program (HAMP) settlement between the DOJ and a financial institution.



## Experience in major projects by dollar value (values have been rounded)

| | | | | | |
|---|---|---|---|---|---|
| **$44.5B** | Lehman Brothers Holding Inc | **$1.9B** | 1983 Marine Barrack's Bombings | **$480M** | Wells Fargo Securities Litigation |
| **$11B** | Deepwater Horizon Economic Settlement | **$1.3B** | Hispanic Women and Farmers | **$473M** | Schering Securities Litigation |
| **$8.5B** | BNY Mellon Countrywide RMBS | **$1B** | In re Merck & Co Inc. Securities Derivative & ERISA Litigation | **$389M** | Royal Dutch Shell |
| **$6.15B** | WorldCom Securities | **$860M** | Johnson & Johnson Acuvue | **$384M** | Wells Fargo CPI |
| **$5.5B** | In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation | **$853M** | Air Cargo Antitrust | **$328M** | In re Volkswagen "Clean Diesel" (Bosch Settlement) |
| **$4.6B** | Indian Residential Schools Settlement | **$850M** | Marsh & McLennan | **$325M** | Precision v. PWT ('Freight Forwarders') |
| **$4.5B** | Bank of America Auction Rate Securities | **$845M** | In re Urethane Antitrust | **$320M** | SunTrust HAMP |
| **$4.5B** | JP Morgan Chase RMBS | **$834M** | Tremont Securities | **$299M** | Takata Ford |
| **$3.4B** | Indian Trust | **$800M** | Engle Trust Fund | **$231M** | US Embassy Bombings |
| **$3.2B** | Tyco Securities | **$758M** | In re Hyundai and Kia Engine Litigation | **$228M** | Hall v Bank of America |
| **$3.05B** | VisaCheck/Mastermoney Antitrust | **$750M** | Washington Public Power Supply Systems | **$219M** | Genworth Securities Litigation |
| **$3B** | Petrobras Securities Litigation | **$750M** | Bristol Myers Securities | **$215M** | Merck Securities Litigation |
| **$2.6B** | Morgan Stanley RMBS | **$730M** | United States v. Pokerstars | **$212M** | Wells Fargo Financial Consent Order |
| **$2.43B** | Bank of America Corp. Securities Derivative & ERISA | **$590M** | Klein, et al. v. Bain Capital Partners LLC, et al. | **$210M** | In re Wilmington Trust Securities Litigation |
| **$2.1B** | The Hepatitis C Tainted Blood Transfusion Settlements | **$520M** | Jessica S. Cook v. Santee Cooper et al | **$210M** | Salix Securities Litigation |
| **$2B** | In re Foreign Exchange Benchmark Rates Antitrust Litigation | **$504M** | ISDAfix Antitrust Settlement | **$200M** | In re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation |
| **$1.2B** | Black Farmers Discrimination Litigation | **$504M** | Bank of NY Mellon Forex | **$200M** | In re New England Compounding Pharmacy Inc. Products Liability Litigation |
| **$1.10B** | Royal Ahold Securities | **$480M** | Gary Hefler, et al. v. Wells Fargo & Co. et al. | **$200M** | NECC Victims Compensation Program |



## By notices disseminated (values have been rounded)

| | | | | | |
|---|---|---|---|---|---|
| 116,000,000 | Ticketmaster.com | 11,000,000 | Premera Data Breach Settlement | 4,600,000 | 1-800-Flowers Retail |
| 57,000,000 | Classmates.com | 9,000,000 | Pelayo v. Mexico Money Transfer | 4,500,000 | Progressive Group Auto Insurance |
| 55,000,000 | Hooker v Sirius XM Radio | 9,000,000 | Farrell v Bank of America | 4,300,000 | Chimeno-Buzzi v Hollister |
| 53,000,000 | Takata Settlement | 9,000,000 | Precision v PWT | 4,100,000 | Amex Merchant Settlement |
| 32,000,000 | Justice Stores-McGladrey | 8,400,000 | Air Passenger Settlement | 4,000,000 | WorldCom Securities |
| 26,000,000 | VisaCheck/MasterMoney Antitrust | 8,300,000 | Takata Ford | 3,900,000 | Scharfstein v BP WCP |
| 25,000,000 | IPO Securities | 8,300,000 | Marolda v Symantec | 3,800,000 | Clark v TransUnion |
| 22,000,000 | McKnight v Uber | 8,300,000 | Bank of America TCPA | 3,700,000 | Fifth Third Overdraft Settlement |
| 21,000,000 | Interchange | 8,000,000 | Meckstroth v Toyota Motor | 3,700,000 | Tennille v Western Union |
| 20,500,000 | Nwabueza v. AT&T | 7,600,000 | Vergara v. Uber TCPA Settlement | 3,600,000 | Bodnar v BofA |
| 20,000,000 | Webloyalty.com, Inc. | 7,600,000 | MFS Sub-Track Mutual Fund | 3,500,000 | Pfizer Securities Litigation |
| 19,000,000 | Interchange | 7,100,000 | TD Bank Debit Card Overdraft | 3,500,000 | IDE - UCLA Health |
| 18,000,000 | Western Union Money Transfer | 7,000,000 | Community Hlth Sys DB | 3,500,000 | Bosch Settlement |
| 16,000,000 | Khoday v. Symantec | 7,000,000 | Time Warner Entertainment Company | 3,500,000 | Wells Fargo CPI Class Action |
| 15,140,000 | Experian Information Solutions, Inc. | 7,000,000 | AT&T Wireless | 3,500,000 | Michael Kors Administration |
| 15,000,000 | Farag v Kiip | 7,000,000 | Equifax Consumer Services, Inc. | 3,400,000 | Lucero v SolarCity TCPA Settlement |
| 15,000,000 | Browning v. Yahoo! | 6,400,000 | UCLA Health Data Breach Settlement | 3,300,000 | Snyder v Ocwen Loan Servicing |
| 15,000,000 | JP Morgan TCPA | 6,400,000 | Angies List | 3,200,000 | Hale v. State Farm |
| 14,000,000 | Living Social | 5,700,000 | Moore v Verizon | 3,000,000 | McKinney-Drobnis v Massage Envy |
| 14,000,000 | Sallie Mae | 5,000,000 | Mohan v. Dell | 3,000,000 | Amgen Securities Litigation |
| 13,000,000 | Expedia Hotel Taxes and Fees | 5,000,000 | Moneygram – Mexico Money Transfer | | |

6



## By claims processed (values have been rounded)

| | | | | | |
|---|---|---|---|---|---|
| 4,300,000 | Lease Oil Antitrust | 670,000 | Citigroup Inc. Securities | 298,000 | Snyder v Ocwen Loan Servicing |
| 2,100,000 | Strong Sub-Track Mutual Fund | 618,000 | TransUnion | 275,000 | TD Bank Debit Card Overdraft |
| 1,960,000 | Wolf v. Red Bull | 607,000 | Justice Stores-McGladrey | 268,000 | Merck Securities Litigation |
| 1,200,000 | Baby Products Antitrust | 601,000 | Dell Fair Fund | 264,000 | Carnegie v HR Block |
| 1,051,000 | Takata Settlement | 600,000 | Global Crossing Securities | 256,000 | Mohan v. Dell |
| 1,000,000 | AMEX Financial Advisors Securities | 521,000 | Expedia Hotel Taxes and Fees | 250,000 | Hill v State Street |
| 995,000 | Daniels v. Allstate | 520,000 | SEC v AIG | 240,000 | Toronto-Dominion Securities Litigation Settlement |
| 980,000 | WorldCom Securities | 500,000 | Nortel Networks (I & II) Securities | 236,000 | Bank of America TCPA |
| 950,000 | Gulf Coast Claims Facility | 438,000 | General Motors Securities Litigation | 231,000 | Apple Securities Litigation |
| 880,000 | Premera Data Breach Settlement | 425,000 | Amgen Securities Litigation | 227,000 | Purex Settlement |
| 815,000 | Progressive Fair Credit Reporting Act | 414,000 | Merck Vioxx Securities Litigation | 206,000 | Trombley v National City |
| 815,000 | VisaCheck/MasterMoney Antitrust | 396,000 | Zepeda v. PayPal | 196,000 | Marchese v Cablevision |
| 760,000 | Oppenheimer Funds Securities | 394,000 | Moore v Verizon | 195,000 | Toyota Securities Litigation |
| 724,000 | Wells Fargo Securities | 389,000 | Reynolds v Hartford | 194,000 | SEC v Raytheon |
| 719,000 | Bank of America Corp. Securities Derivative & ERISA | 357,000 | BNYM Forex Securities Litigation | 182,000 | Ridgely v FEMA |
| 700,000 | Lucent Technologies, Inc. Securities | 325,000 | Hooker v Sirius XM Radio | 179,000 | Royal Dutch Shell |
| 698,000 | Classmates.com | 324,000 | Air Passenger Settlement | 178,000 | Angies List |
| 685,000 | Deloris Kline v. Progressive Corporation | 313,000 | Cerbo v Ford of Englewood, Inc. | 148,000 | UCLA Health Data Breach Settlement |
| 672,000 | Oppenheimer Rochester Fund Securities Litigation | 303,000 | Wright et al v Nationstar Mort | 144,000 | Tennille v Western Union |

7

