**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADA<br><br>    Defendants | Case No. 3:20-CV-00691-D<br><br>**CLASS ACTION**<br><br>**HEARING SOUGHT ON AN EXPEDITED BASIS** |

**LEAD PLAINTIFF'S EMERGENCY MOTION FOR ENFORCEMENT OF**
**SETTLEMENT AGREEMENT**

Court-appointed lead plaintiff Insur Shamgunov ("Lead Plaintiff"), on behalf of himself and the proposed Settlement Class, respectfully submits this memorandum in support of his Motion to Enforce Settlement Agreement (the "Enforcement Motion").[1]

## I.    INTRODUCTION

Following drawn out and hotly contested litigation, Defendants[2] agreed to pay, or cause to be paid, $5,000,000 to settle class action claims alleging violations of the federal securities laws. Settlement Agreement, ¶1(tt) (the "Settlement Amount"). In return, they will receive a release and the Court stayed all proceedings.[3] Yet, despite avoiding the expense of continued litigation, and Lead Plaintiff's satisfaction of all conditions precedent to payment being met—including the Court having entered the Preliminary Approval Order on August 21, 2023 (ECF No. 94)—Defendants have still not paid the full amount owed under the Settlement Agreement.

Under ¶1(tt) of the Settlement Agreement, Defendants were required to *fully* fund the $5.0 million owed by September 22, 2023. *See* §II.C *infra*; Declaration of Joseph D. Cohen ("Cohen Decl."), ¶¶3-7. They did not. Rather, $4,013,754.73 was received into the Escrow Account on September 13, 2023; $490,000 was received one week late on ***September 29, 2023,*** following Lead Counsel's denial of two requests to defer payment; and ***$496,245.27 remains unpaid***.[4] Cohen

---

[1] Unless otherwise defined, all capitalized terms used herein have the same meanings as in the Stipulation and Agreement of Settlement dated July 27, 2023 ("the Stipulation" or "the Settlement Agreement"). ECF No. 91, Ex. 2 (Appendix pages 5 through 42).

[2] Defendants are: Exela Technologies, Inc. ("Exela" or the "Company"), and Ronald Cogburn ("Cogburn"), Parvinder Chadha ("Chadha") and James G. Reynolds ("Reynolds") (collectively, the "Individual Defendants"; and, together with Exela, the "Defendants"; and together with Lead Plaintiff, the "Parties").

[3] *See* ECF No. 87 (order staying proceedings, which was later extended upon the Court's preliminary approval Order (ECF No. 94 ¶20 (at pages 11-12)).

[4] All money received into the Escrow Account has been invested as provided for in the Settlement Agreement and is earning interest for the benefit of the Settlement Class. Settlement Agreement, ¶10; Cohen Decl., at n.3. Funds owed, but not received, are ***not*** earning interest, which is plainly

Decl., ¶¶8-19, 21-22.  The final approval hearing is scheduled for **December 7, 2023**, and Lead Plaintiff's motion in support thereof is due on **November 2, 2023**.  Defendants need to immediately fund the remaining portion of the Settlement Amount owed so that Lead Plaintiff may move forward with seeking final approval of the Settlement for the benefit of the Settlement Class.

## II.   OVERVIEW OF THE LITIGATION AND PROCEDURAL HISTORY

This is a putative class action against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and under Section 20(a) of the Exchange Act against the Individual Defendants.  *See* ECF No. 44.

### A.  Procedural History

General familiarity with the overall procedural posture of this case is presumed.  *See* ECF No. 90 ("Preliminary Approval Motion") at 2-4.  As relevant to this Enforcement Motion, after two separate private mediation sessions, the mediator proposed on June 1, 2023, that the Parties settle this Action for a $5.0 million cash payment to the Settlement Class, in return for a release of the Settlement Class's claims against Defendants.  On June 3, 2023, the Parties accepted this proposal, and, three days later, at the request of the Parties, the Court stayed the proceedings pending the approval proceedings.  ECF No. 87.

Following several weeks of negotiations, the Parties executed the Settlement Agreement on July 27, 2023.  ECF No. 91, Ex. 2.  On the same day that the Settlement Agreement was fully executed, Lead Plaintiff filed his motion for: (i) Preliminary Approval of Class Action Settlement; (ii) Certification of the Settlement Class; and (iii) Approval of Notice to the Settlement Class (collectively, the "Preliminary Approval Motion").  ECF No. 90.

---

detrimental to the Settlement Class.

On August 21, 2023, the Court entered the Preliminary Approval Order (ECF No. 94), which, *inter alia*, provided a schedule for giving notice of the Settlement to the Settlement Class, set a date for the final approval hearing and briefing related thereto, and stayed all proceedings other than "proceedings necessary to carry out or enforce the terms and conditions of the Stipulation." *Id*. ¶¶5, 7, 20, 26.  Since that time, Lead Counsel has worked with the Claims Administrator to give notice to the Settlement Class.  Among other things, the settlement website (https://www.ExelaSecuritiesLitigation.com/) has been established and gone live, the Summary Notice has been published in *Investor's Business Daily* and released via *PR Newswire*, and notice has been disseminated to approximately 1,272 potential Settlement Class Members, brokerage firms, banks, institutions, and other nominees.  Cohen Decl. ¶20.  Through the Notice program, the proposed Settlement Class has been advised of*, inter alia*, the $5 million Settlement Amount and the December 7, 2023 final approval hearing.

**B.  Exela's Recent Public Disclosures**

Meanwhile, outside the litigation, Exela has struggled to file its financial statements for months.  For instance, on August 10, 2023, Exela filed a Form 8-K with the SEC stating that:

> [T]he Company's previous independent registered public accounting firm ***declined to stand for re-appointment*** for 2023 and agreed to remain the Company's independent registered public accounting firm until completion of its review of the consolidated interim financial statements of the Company and subsidiaries as of and for the period ended March 31, 2023. The Company's audit committee is in the late stages of engaging a new independent registered public accounting firm (the "New Firm") to act as the Company's independent auditor. . .
>
> The Company does not currently anticipate that it will be able to file Form 10-Q on or before the fifth calendar day following the prescribed filing date as a result of the circumstances described above. The Company will seek to resolve these issues as soon as practicable and intends to issue an earnings release and host a related conference call with respect to the period ended June 30, 2023, on August 14, 2023.[5]  (Emphasis added.)

---

[5]https://www.sec.gov/Archives/edgar/data/1620179/000110465923089870/tm2323384d1_nt10q.htm.

On October 5, 2023, Exela filed a form 8-K with the SEC announcing the Company's CFO, Shrikant Sortur, resigned effective October 2, 2023.  To date for 2023, the Company has only filed its complete quarterly results for the *first* quarter of 2023.

### C.  Defendants' Breach of the Settlement Agreement

The Settlement Agreement required payment of the Settlement Amount *no later* than twenty days after the later of: (a) the date that the Court enters a Preliminary Approval Order; and (b) Lead Counsel provides wiring instructions to Exela's counsel.  ECF No. 91, Ex. 2 (Settlement Agreement ¶8).  The Stipulation further provides, in relevant part, that:

> In consideration of the settlement of the Released Plaintiff's Claims against Defendants and the other Defendants' Releasees, Defendants shall pay or cause to be paid the Settlement Amount into the Escrow Account no later than twenty (20) business days after the later of: (a) the date of entry by the Court of an order preliminarily approving this Settlement; or (b) Defendants' Counsel's receipt from Lead Counsel of the information necessary to effectuate a transfer of funds to the Escrow Account, including wiring instructions that include the bank name and ABA routing number, account name and number, and a signed W-9 reflecting a valid taxpayer identification number for the qualified settlement fund in which the Settlement Amount is to be deposited.

*Id*. ¶1(tt); Cohen Decl. ¶¶3-4.

The Court granted preliminary approval on August 21, 2023 (ECF No. 94), and Lead Counsel provided wiring instructions to defense counsel on August 25, 2023.  Cohen Decl ¶5, Ex. 1.  Thus, the *full* $5,000,000 Settlement Amount was due no later than September 22, 2023.  *Id*. Counsel for Defendants calculated the same date.  Cohen Decl. ¶7.

On September 13, 2023, the Escrow Agent received a wire in the amount of $4,013,754.73 from one of the insurance carriers.  *Id*. ¶8.  On September 14, 2023, counsel for Defendants sought a 28-day extension of the September 22, 2023 funding deadline to complete the balance of the funding.  *Id*. ¶¶7, 9, Ex. 2.  In a call held on September 14, 2023, between the Parties' counsel,

counsel for Defendants communicated to Lead Counsel that, in essence, Exela had other obligations that it wanted to pay first before funding the balance of the Settlement Amount. *Id*. ¶10. Defendants' position was unacceptable to Lead Plaintiff, and Defendants were advised of as much. *Id*. ¶¶13-15. Due in large part to Defendants' history of resisting payment of their obligations, including in particular Exela's refusal to pay the court judgment against it in the Appraisal Action (*see, e.g*., the Veil Piercing Action discussed §III.C. *infra*), Lead Plaintiff declined to grant Defendants' requested extension. *Id*. ¶12.

Defendants then sought a shorter extension, to the "first week of October", which Lead Plaintiff again declined to grant. *See id*. ¶¶10-12, 19 Exs.1-3. Thus, payment was still owed on September 22, 2023, as acknowledged by counsel for Defendants. *Id*. ¶7. Still, September 22— Defendants' deadline to fully fund the Settlement Amount—came and went and no payment was received. *See id*. ¶¶13-15.

Following an email exchange regarding the unpaid funds, on September 29, 2023, the Escrow Agent received a wire on behalf of the Company in the amount of $490,000. *Id*. ¶¶15-17. Thus, $496,245.27 of the $5.0 million Settlement Amount (approximately 10%) remains outstanding. *Id*. ¶17.

By email dated October 2, 2023, Lead Counsel made a written demand and advised Defendants' Counsel that failure to fund would result in an enforcement motion:

> Dear Peter,
>
> The escrow agent received a wire for the Exela Securities Litigation QSF on Friday. As indicated below, Defendants still need to pay, or cause to be paid, approximately $497,000. Please confirm by no later than 5:00 p.m., PDT, on Wednesday, October 4, that your clients will be making the payment by the end of the day Friday, October 6. If we do not have that assurance, and if payment is not made by then, we intend to move the Court to enforce the Stipulation.

Cohen Decl. ¶18.

For ten days, Defendants' Counsel did not respond. *Id*. ¶¶21-22, Ex.3.  Then, on October 12, 2023, Lead Counsel sought to meet and confer with Defendants pursuant to Local Rule 7.1, ahead of the instant Enforcement Motion.  In connection with those efforts, Defendants' Counsel represented that Exela "intends to pay"[6], but, when pressed by Lead Counsel if Defendants could provide a firm commitment to fund by October 16, 2023—which was just four days shy of the 28-day extension Defendants initially sought on September 14th, and was later than the "first week of October" that Defendants requested on September 18th—Defendants did not commit, nor even respond.  *See* Cohen Decl. ¶¶19, 21, 22, Ex. 3.

In light of, among other things, Defendants' ongoing failure to fund, the upcoming deadlines related to final approval, and the continuing loss of interest accruing to the Settlement Fund, Lead Plaintiff respectfully requests that the Court order Defendants, jointly and severally, to—within two business days of the Court deciding this Motion—fund, or cause to be funded, the outstanding $496,245.27.

## III.   THE SETTLEMENT SHOULD BE ENFORCED

### A.   The Settlement Agreement is Valid and Should Be Enforced

The Parties reached an agreement to settle, preliminarily approved by this Court, and the Court should enforce its terms.

"[A]n attorney of record is presumed to have authority to compromise and settle litigation of his client." *Chen v. Highland Cap. Mgmt., L.P.*, No. 3:10-CV-1039-D, 2012 WL 5935602, at *3 (N.D. Tex. Nov. 27, 2012) (Fitzwater, J) (quotation omitted).  "The attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts...."

---

[6] The full communication read, "Joe, Exela intends to pay the remainder, which we have instructed them to do.  We have made them aware of your proposed motion and take no position on it, other than to reiterate Exela's intent to pay." Cohen Decl. ¶21, Ex. 3.

*Williamson v. Bank of New York Mellon*, 947 F. Supp. 2d 704, 712 (N.D. Tex. 2013).  Here, the Settlement Agreement was signed by all counsel for the Parties.  Cohen Decl. ¶2; Settlement Agreement at pp. 36-37.  Paragraph 52 of the Settlement Agreement states that: "[a]ll counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms."  Thus, "[t]he evidence is undisputed that [Defendants], through [their] retained counsel, [ ] agreed to settle this lawsuit.  The record contains the signed settlement agreement."  *Parker v. Exeter Fin. Corp.*, No. 3:14-CV-4007-D, 2015 WL 4745075, at *2 (N.D. Tex. Aug. 11, 2015) (Fitzwater, J).  Defendants are bound to abide by the Settlement Agreement's terms.

"A District Court has the power to enforce summarily a settlement agreement reached in a case pending before it."  *Mid-South Towing Co. v. Har-Win, Inc*., 733 F.2d 386, 389 (5th Cir. 1984).  To enforce a settlement, "[a] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties."  *Harmon v. Journal Publ'g Co.,* 476 Fed. Appx. 756, 757 (5th Cir. 2012).  And in granting preliminary approval of the Settlement, this Court reserved jurisdiction to consider "all further applications arising out of or connected with the proposed Settlement."  ECF No. 94, ¶27.  Accordingly, the Court has the authority to enforce the Settlement Agreement, and Lead Plaintiff respectfully asks the Court to order Defendants to deposit the remaining balance of *$496,245.27* owed into the Settlement Escrow Account within two business days of its decision on this Enforcement Motion.

**B.  Absent Expeditious Enforcement, Lead Plaintiff And The Settlement Class May Be Materially Prejudiced**

Further delay of payment could meaningfully prejudice the Class.  In light of Exela's recent

public filings discussed above, coupled with its recent CFO resignation, Lead Plaintiff fears that any continued delay of payment by Defendants puts the Class at material risk of non-payment.

As of the last complete quarterly financials that Exela filed publicly, it had $9.9 million of unrestricted cash and total long-term debt of $953 million.[7]  During the quarter ended March 31, 2023, the Company reported a net loss of $47.5 million.  It does not take a forensic accountant to conclude that the Company is in a precarious financial state.  That Defendants sought a 28-day extension on the approximately $987,000 owed under the Settlement Agreement to pay other obligations, and then only paid less than half of the balance still due, further suggests that time is of the essence for the Settlement Class to collect from an apparently depleting pool of capital.[8]  Cohen Decl. ¶¶9-19.

Moreover, any financial challenges Exela may be currently experiencing do not justify Defendants' unilateral election to pay one creditor over the Settlement Class in violation of the binding Settlement Agreement.  If a bankruptcy were to occur, the Settlement Class would be severely prejudiced given its potential subordination in the capital structure to the massive amount of debt that Exela has.  Accordingly, further delay here could meaningfully impact the Settlement Class's chances for recovery.  And that risk should be shouldered entirely by Defendants because collectability risk was *already priced into* the Settlement Amount Lead Plaintiff authorized and accepted on behalf of the Settlement Class.  In other words, Defendants should not get the benefit of *both* a settlement discounted to reflect potential collectability risk *and* material delay on top of

---

[7]https://www.sec.gov/ix?doc=/Archives/edgar/data/1620179/000155837023009175/xela-20230331x10q.htm#BalanceSheets_155162

[8] Though to be clear, Lead Plaintiff is not aware of an imminent bankruptcy filing, nor is he making that assessment based on any non-public information that Exela disclosed during discovery. Rather, Lead Plaintiff draws this commonsense conclusion based on Exela's most recent publicly-filed financial results, coupled with its repeated requests for extension of payment here.

that.  Indeed, delay of that sort would have required a much higher settlement amount—particularly because Exela's recent public filings seem to strengthen the merits of Lead Plaintiff's underlying claims (*e.g.*, another CFO resignation, and the Company's auditor's refusal to "stand for re-appointment").  Accordingly, the Court should order the immediate payment of all outstanding amounts, even if such funds need to be advanced by the Individual Defendants.  *See Penton v. Am. Bankers Ins. Co. of Fla.*, 114 F. App'x 622, 626 (5th Cir. 2004) (holding parties to settlement agreement are presumptively jointly and severally liable absent specific language disclaiming joint and several liability).  Here, no such language exists.  Rather, the agreement was signed on behalf of all "Defendants", and Paragraph 51 states that the Settlement Agreement "will not be construed more strictly against one party than another." ECF 91, Ex. 2 at p.37 (Appendix page 38), ¶51.

### C.    Exela's Pattern and Practice of Flouting Court-Ordered Payments

Defendants breach of the Settlement Agreement appears to be willful—especially given Defendants' Counsel's representation to Lead Counsel that it has instructed Defendants to pay the remaining amount owed (see Cohen Decl., Ex. 3)—and Defendants have a pattern and practice of refusing to pay court ordered judgments.  *See* ECF No. 44 ¶¶11, 99, 139-141, 152 (discussing the Veil Piercing Action);  *Manichaean Cap., LLC v. SourceHOV Holdings, Inc.*, No. 20 CIV. 5679 (AKH), 2021 WL 276674, at *1 (S.D.N.Y. Jan. 27, 2021) ("Plaintiffs commenced this federal action in July 2020, against Defendant to recognize and enforce the Delaware Judgment, pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738"); *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 699-700 (Del. Ch. 2021) (the "Veil Piercing Action").

In the Veil Piercing Action, the Delaware Court of Chancery took the rare step of disregarding the corporate form in part because:

> Plaintiffs compellingly allege that fraud and injustice has resulted and will result from the diversion of funds from SourceHOV Holdings to Exela ***in an explicit attempt to avoid payment of the Appraisal Judgment***. As mentioned, Exela knew that SourceHOV Holdings would be required to pay a judgment of some amount, at the latest, when Plaintiffs sent their appraisal demand in September 2017. The extent of that exposure became all too clear as the appraisal petitioners developed evidence, including expert valuation evidence, that the fair value of SourceHOV Holdings was exponentially greater than the price paid in the Merger. This evidence was presented at trial in June 2019, summarized in post-trial oral arguments in October 2019, then relied upon in the Court's post-trial decision issued on January 30, 2020.

*Veil Piercing Action*, 251 A.3d at 709 (emphasis added).

The court then noted that "[o]nly in cases alleging ***egregious*** facts, coupled with the lack of real and substantial prejudice to third parties, should the court even consider utilizing the reverse veil-piercing doctrine." *Id.* at 714 (emphasis added). Still, despite the Delaware standard requiring "egregious facts", it still found against Exela in the Veil Piercing Action, a rarity under Delaware law. And that followed a finding by the Delaware Court of Chancery that Defendant Chadha was "simply not believable" and that "Chadha's trial testimony was not credible." 2020 WL 496606, *20 & n.320 (finding "Chadha was not credible"). *See* ECF No. 44 at ¶¶80-82. In sum, Defendants have a pattern and practice of refusing to pay valid legal obligations, and they seem to be at it again here. The Court should not allow this.

## IV.    CONCLUSION

For these reasons, Lead Plaintiff asks the Court to grant the Enforcement Motion and order Defendants, jointly and severally, to fund the remaining amount of ***$496,245.27*** owed under the Settlement Agreement within two business days. Lead Plaintiff further requests that the Court order that the Individual Defendants are subject to this Enforcement Motion even if Exela makes any bankruptcy filing which might have the effect of staying proceedings against it.[9]

---

[9] If Exela were to file for bankruptcy, any resulting stay should not properly apply *to the Individual*

DATED: October 12, 2023

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Raymond D. Sulentic*
Kara M. Wolke (*pro hac vice*)
kwolke@glancylaw.com
Joseph D. Cohen (*pro hac vice*)
jcohen@glancylaw.com
Raymond D. Sulentic (*pro hac vice*)
rsulentic@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

*Lead Counsel for Lead Plaintiff and the Proposed Settlement Class*

**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000

*Local Counsel for Lead Plaintiff and the Proposed Settlement Class*

---

Defendants. *See e.g., In re TXNB Internal Case*, 483 F.3d 292, 301 (5th Cir. 2007) ("Section 362(a) operates to stay only actions against bankruptcy petitioners and their property. Because Edge's claim for conversion against Duke lies against a non-debtor and does not implicate the property of the debtors, the bankruptcy court erred by staying it."); *Croyden Assoc. v. Alleco, Inc.,* 969 F.2d 675, 677 (8th Cir.1992) (refusing to extend automatic stay to nonbankrupt codefendants in suit to recover principal and interest on debentures), *cert. denied,* 507 U.S. 908 (1993); *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir.1991) (refusing to extend stay to nonbankrupt codefendant in conversion action).

11

## CERTIFICATE OF CONFERNCE

I hereby certify that on October 12, 2023, the Parties met and conferred via email concerning Lead Plaintiff's Enforcement Motion. Peter Stokes, counsel for Defendants stated that Defendants "take no position on [this Enforcement Motion], other than to reiterate Exela's intent to pay." *See* Cohen Decl. ¶¶21-22, Ex. 3.

*/s/ Raymond D. Sulentic*
Raymond D. Sulentic

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

*/s/ Raymond D. Sulentic*
Raymond D. Sulentic

13