## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | |
| v. | Case No. 3:20-CV-00691-D |
| EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADA | **CLASS ACTION** |
| Defendants | |

**LEAD PLAINTIFF'S: (I) UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) MEMORANDUM OF LAW IN SUPPORT THEREOF**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION ................ 3

III.  THE SETTLEMENT WARRANTS FINAL APPROVAL .................................................. 3

      A.    Lead Plaintiff and His Counsel Have Adequately Represented the Settlement
            Class ................................................................................................ 6

      B.    The Settlement Stems From Arm's Length Negotiations Between Experienced
            Counsel and There is No Fraud or Collusion ........................................... 7

      C.    The Relief Provided for the Settlement Class is Adequate .................................... 8

            1.    The Settlement Amount Supports Approval ................................................. 9

            2.    The Cost, Risk, and Delay of Trial and Appeal Support Approval .......... 10

            3.    Other Factors Established by Rule 23(e)(2)(C) Support Approval .......... 13

      D.    All Settlement Class Members Are Treated Equitably ........................................ 15

      E.    The Remaining *Reed* Factors Warrant Final Approval ........................................ 16

            1.    The Stage of the Proceedings and the Amount of Discovery Completed
                  Support Approval .............................................................................. 16

            2.    The Probability of Plaintiff's Success on the Merits and The Range of
                  Possible Recovery .............................................................................. 17

            3.    The Opinions of Lead Counsel, Lead Plaintiff, and Absent Settlement
                  Class Members Support Approval ........................................................... 18

IV.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED ........................... 19

V.    THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS .................... 19

VI.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE .................................. 20

VII.  CONCLUSION ............................................................................................ 23

## TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ................................................................... 11

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ....................................... 5, 15

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) ................................................................... 6

*Buettgen v. Harless*,
2011 WL 1938130 (N.D. Tex. May 19, 2011) ......................................... 6

*Buettgen v. Harless*,
2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ................................. 12, 18

*Celeste Neely v. Intrusion Inc.*,
2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) .................................. 10, 12

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
2015 WL 965693 (W.D. La. Mar. 3, 2015) .............................. 11, 16, 22

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ..................................... 4, 10, 16, 17

*Dura Pharms., Inc., v. Broudo*,
544 U.S. 336 (2005) ................................................................................. 9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ............................ 8, 15, 17

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ................................................................. 18

*Harris v. U.S. Physical Therapy, Inc.*,
2012 WL 3277278 (D. Nev. July 18, 2012) ........................................... 22

*Hays v. Eaton Grp. Attorneys, LLC*,
2019 WL 427331 (M.D. La. Feb. 4, 2019) .................................... 7, 8, 10

*IBEW v. Int'l Game Tech., Inc.*,
2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................... 10

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................... 20

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................................. 11

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ................................................ 9

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ........................................... 15

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ......................................................................... 12

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ....................................................................... 20

*In re China Med. Corp. Sec. Litig.*,
  2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ................................................ 8

*In re Flag Telecom Holdings, Ltd. Securities Litig.*,
  574 F.3d 29 (2d Cir. 2009) ............................................................................. 9

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................ 20, 22

*In re Mut. Funds Inv. Litig.*,
  2010 WL 2342413 (D. Md. May 19, 2010) .................................................. 20

*In re OCA, Inc. Sec. & Derivative Litig.*,
  2009 WL 512081 (E.D. La. Mar. 2, 2009) .............................................. 11, 13

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ...................................................................... 6

*In re Schering-Plough Corp. Sec. Litig.*,
  2009 WL 5218066 (D.N.J. Dec. 31, 2009) .................................................. 22

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................................................ 22

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) .......................................................... 11

*Jones v. Singing River Health Servs. Found.,*
  865 F.3d 285 (5th Cir. 2017) ............................................................. 7

*Klein v. O'Neal, Inc.,*
  705 F. Supp. 2d 632 (N.D. Tex. 2010) .............................................. 4

*Lormand v. US Unwired, Inc.,*
  565 F.3d 228 (5th Cir. 2009) ............................................................. 12

*Maher v. Zapata Corp.,*
  714 F.2d 436 (5th Cir. 1983) ............................................................. 4

*Manchaca v. Chater,*
  927 F. Supp. 962 (E.D. Tex. 1996) .................................................... 17

*McDermid v. Inovio Pharms., Inc.,*
  2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ....................................... 22

*Morgan v. Public Storage,*
  301 F. Supp. 3d 1237 (S.D. Fla. 2016) .............................................. 8

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.,*
  315 F.R.D. 233- (E.D. Mich. 2016) ................................................... 14

*Newby v. Enron Corp.,*
  394 F.3d 296 (5th Cir. 2004) ............................................................. 4

*Reed v. Gen. Motors Corp.,*
  703 F.2d 170 (5th Cir. 1983) ..................................................... *passim*

*Schwartz v. TCU Corp.,*
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................... 18, 19, 20

*Shen v. Exela Techs., Inc.,*
  2021 WL 2589584 (N.D. Tex. June 24, 2021) ............................... 9, 11

*Shen v. Exela Techs., Inc.,*
  2022 WL 198402 (N.D. Tex. Jan. 21, 2022) ................................. 9, 11

*SourceHOV Holdings, Inc. v. Manichaean Cap., LLC,*
  246 A.3d 139 (Del. 2021) ................................................................... 18

*Stott v. Capital Fin. Servs., Inc.,*
  277 F.R.D. 316 (N.D. Tex. 2011) ...................................................... 13

iv

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ................................................................................................ 17

<u>STATUTES</u>

15 U.S.C. §78u-4(a)(4) ............................................................................................................... 16

<u>RULES</u>

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

Pursuant to Fed. R. Civ. P. 23(e) and the Court's August 21, 2023 Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 94, the "Preliminary Approval Order"), Court-appointed Lead Plaintiff Insur Shamgunov ("Lead Plaintiff"), on behalf of himself and the Settlement Class, respectfully submits this unopposed motion and memorandum of law in support of final approval of the proposed Settlement and Plan of Allocation.[1]

## I.    INTRODUCTION

After nearly three and half years of hard-fought litigation, Lead Plaintiff and Defendants[2] have agreed to settle all claims in the Action in exchange for a non-reversionary, all cash payment of $5,000,000 (the "Settlement Amount") for the benefit of the Settlement Class. This is a very favorable result for the Settlement Class and represents a recovery of approximately 7.4%-13.1% of the ***potential maximum*** recoverable damages related to the pending claims. Indeed, the recovery is: (i) well above the 1.8% median recovery in securities class actions settled in 2022; and (ii) far higher than the 3.8-5.2% median recovery in securities cases with similar damages that settled between December 2011 and December 2022. *See* App., Ex. 5 (Janeen McIntosh, Svetlana Starykh, and Edward Flores, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review, at 18 (Fig. 19) (NERA Jan. 24, 2023) ("NERA

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated July 27, 2023. (ECF No. 91, Ex. 2) ("Stipulation") or the concurrently filed Declaration of Kara M. Wolke in Support of: (I) Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Wolke Declaration"). The Wolke Declaration is attached as Exhibit 1 to the Appendix in Support of: (I) Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses. The Appendix is cited herein as "App."

[2] Defendants are: Exela Technologies, Inc. ("Exela"), and Ronald Cogburn, Parvinder Chadha and James G. Reynolds (collectively, the "Individual Defendants"; and, together with Exela, the "Defendants"; and together with Lead Plaintiff, the "Parties").

Report") (median recovery in securities class actions in 2022 was approximately 1.8% of estimated damages); at 17, Fig. 18 (median recovery for securities class actions that settled between December 2011 and December 2022 was 3.8% for cases with estimated damages between $50-$99 million, and 5.2% for those with estimated damages of $20-$49 million)). For this reason, and as further discussed herein and in the Wolke Declaration, the Settlement is substantively fair.

The Settlement also is procedurally fair. By the time the Settlement was reached, Lead Plaintiff and his counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses. Prior to reaching the Settlement, Lead Counsel, *inter alia*:

- conducted an extensive investigation into Defendants' allegedly wrongful acts, which included working with a private investigator to locate and interview former Exela employees and consultation with experts in the fields of accounting, loss causation, and damages;

- drafted two comprehensive amended complaints based on their research and investigation;

- engaged in substantial briefing opposing Defendants' two motions to dismiss, each of which included oral argument;

- engaged in significant discovery, which included serving and responding to party discovery, taking the depositions of Exela's Chief Accounting Officer ("CAO") and Chief Executive Officer ("CEO"), defending Lead Plaintiff's deposition, and conducting targeted review and analysis of the 2.2 million pages of documents produced by Exela;

- filed a motion for class certification that included an expert report on market efficiency and defending the deposition of Lead Plaintiff's market efficiency expert; and

- exchanged mediation briefs containing detailed analyses of the strengths, risks, and potential issues in the litigation with Defendants, participated in an unsuccessful full-day mediation session with a well-respected mediator of complex cases—Jed Melnick, Esq. of JAMS—and engaged in months of further negotiations that culminated in a mediator's recommendation to resolve the Action for $5,000,000 in cash for the benefit of the Settlement Class. App., Ex. 1 at ¶8.

The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced neutral.

As discussed in greater detail below, Lead Plaintiff and his counsel believe that the proposed Settlement meets the standards for final approval and is in the best interests of the Settlement Class. Accordingly, Lead Plaintiff respectfully requests that the Court to grant the Settlement final approval.

Lead Plaintiff also moves for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Lead Plaintiff's consulting damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. No Settlement Class Member is favored over another under the proposed Plan; rather, all Settlement Class Members—including Lead Plaintiff—are treated in the same manner. *See* App., Ex. 1 at ¶¶66-74. The Plan of Allocation is, therefore, fair and reasonable and, as such, it too should be approved.

## II.    FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

The Wolke Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the factual background and procedural history of the Action, and the nature of the claims asserted (*id.*, at ¶¶12-34); the negotiations leading to the Settlement (*id.*, at ¶¶35-40); the risks and uncertainties of continued litigation (*id.*, at ¶¶42-53); and the terms of the Plan of Allocation of the Net Settlement Fund. *Id.* at ¶¶66-74.

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

In determining the propriety of granting final approval of a class action settlement, courts determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2);

3

*see also Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).[3]  The issue of whether a proposed settlement should be granted final approval is a matter within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of class action lawsuits.  *See, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").  "[C]ourts are to adhere to a strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources—absent evidence weighing against approval."  *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010).  Thus, "[w]here the court finds that counsel have adequately represented the interests of the class, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"  *Id.* at 649 (quoting *Cotton*, 559 F.2d at 1330); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) ("[T]he court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties.").  "In other words, in determining the fairness, reasonableness, and adequacy of a proposed settlement, neither the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute."  *Maher*, 714 F.2d at 455 n.31.

Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:
(i)    the costs, risks, and delay of trial and appeal;

---

[3] Unless otherwise noted, all internal citations and quotations are omitted, and emphasis is added.

      (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

      (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919); *see also Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (establishing Fifth Circuit factors used to evaluate the propriety of a class action settlement).[4]

Thus, the traditional Fifth Circuit factors (some of which overlap with Rule 23(e)(2)) are still relevant. *See, e.g.*, *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019) (considering "the criteria set forth in Fed. R. Civ. P. 23 (e)(2) as well as the Fifth Circuit's *Reed* factors"). As discussed below, application of each of the four factors specified in Rule 23(e)(2), and the relevant, non-duplicative *Reed* factors, demonstrates

---

[4] The *Reed* factors are: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed*, 703 F.2d at 172.

that the Settlement merits final approval.

**A.    Lead Plaintiff and His Counsel Have Adequately Represented the Settlement Class**

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Here, Lead Plaintiff and Plaintiff's Counsel have adequately represented the Settlement Class by zealously advocating on their behalf for over three and a half years. Lead Plaintiff produced documents, responded to written discovery (including interrogatories), underwent a deposition, and regularly consulted with Lead Counsel as to strategy and case developments. *See* App., Ex. 8 (Declaration of Dr. Insur Shamgunov), at ¶¶4-6; *see also Berger v. Compaq Computer Corp.,* 257 F.3d 475, 483 (5th Cir. 2001) (adequate class representatives in securities fraud actions are "informed and can demonstrate they are directing the litigation."); *Buettgen v. Harless*, 2011 WL 1938130, at *5 (N.D. Tex. May 19, 2011) (proposed class representatives adequate because they were informed of the progress of the case; were producing documents; and one of two proposed representatives had been deposed). Moreover, Lead Plaintiff's claims are typical of, and coextensive with, the claims of the Settlement Class, and he has no interests antagonistic thereto. Indeed, given Lead Plaintiff's substantial investment in Exela common stock and Settlement Class Period losses, his interest in obtaining the largest possible recovery is plainly aligned with that of the other Settlement Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest.").

Lead Plaintiff also retained counsel who are highly experienced in securities and class action litigation, with excellent track records. *See* App., Ex. 3-C (GPM firm resumé); App., Ex. 4-B (Kendall Law Group resumé). Plaintiff's Counsel have vigorously prosecuted Plaintiff's

claims by, *inter alia*: conducting an exhaustive investigation of Defendants and the alleged wrongdoing; working with accounting and economic experts regarding falsity, damages, and loss causation issues; drafting the 98-page FAC and 118-page SAC, which incorporated the information gathered during Plaintiff's Counsel's investigation; opposing two motions to dismiss; drafting and filing a motion for class certification supported by an expert report on the topic of market efficiency; conducting a targeted review and analysis of the approximately 321,431 documents (totaling over 2.24 million pages) produced by Defendants; drafting a mediation statement addressing Defendants' arguments; taking and defending depositions; engaging in settlement discussions before, during, and after the mediation session before an experienced meditator, including protracted negotiations regarding the terms of the proposed Settlement; drafting the initial versions of the Stipulation and exhibits; securing preliminary approval of the Settlement; and moving to enforce the Settlement. Lead Plaintiff and Plaintiff's Counsel have, therefore, adequately represented the Settlement Class. *See Hays v. Eaton Grp. Attorneys, LLC*, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) (representation adequate where proposed settlement was "negotiated by experienced, informed counsel . . .with substantial experience in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues").

## B. The Settlement Stems From Arm's Length Negotiations Between Experienced Counsel and There is No Fraud or Collusion

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Similarly, one of the *Reed* factors examines whether there was "fraud or collusion behind the settlement." *Reed*, 703 F.2d at 172. In conducting this analysis, courts recognize that "[t]he involvement of 'an experienced and well-known' mediator 'is also a strong indicator of procedural fairness.'" *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th

Cir. 2017); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (approving securities class action settlement that was "obtained through formal mediation before [an experienced mediator], which strongly suggests the settlement was not the result of improper dealings.").

As noted above, the proposed Settlement was achieved only after a mediation session followed by months of additional arm's length negotiations—overseen by a well-respected third-party mediator, Mr. Melnick.  As part of those discussions, Lead Counsel and Exela's Counsel prepared submissions concerning, among other things, their views of the Action's merits and damages on a class-wide basis.  The negotiations focused on heavily disputed issues, which were explored with substantial input from Mr. Melnick, and the Settlement is the result of a mediator's recommendation.  Thus, "[t]here is no evidence that fraud or collusion affected the settlement in any respect." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1248 (S.D. Fla. 2016); *see also In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive").

### C.    The Relief Provided for the Settlement Class is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court should consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).  This factor is satisfied where the settlement provides significant immediate relief for the class and where "a trial would be lengthy, burdensome, [] would consume tremendous time and resources of the Parties and the Court [and] any judgment would likely be appealed." *Hays*, 2019 WL 427331, at *10.

### 1.    The Settlement Amount Supports Approval

The $5,000,000 Settlement Amount is well-within the range of reasonableness under the circumstances to warrant final approval.  Lead Plaintiff's damages expert estimates that *if* Lead Plaintiff had *fully prevailed* on his Exchange Act claims at both summary judgment and after a jury trial, *if* the Court certified the same class period as the Settlement Class Period, and *if* the Court and jury accepted Lead Plaintiff's damages theory—*i.e.*, Lead Plaintiff's *best case scenario*—the total *maximum* damages would be approximately $68 million.    Thus, the $5,000,000 Settlement Amount represents approximately 7.4% of the total *maximum* damages *potentially* available in this Action.    However, if only the damages that pertained to Exela's revenue visibility statements (*i.e.*, the statements the Court ruled were actionable in *Shen v. Exela Techs., Inc.*, 2022 WL 198402 (N.D. Tex. Jan. 21, 2022) ("*Shen II*"))[5] were considered, the *maximum* recoverable damages would drop to $38.1 million.    Under such a scenario, a $5,000,000 recovery equates to 13.1% of total potential damages.    And, as discussed in section III.C.2 *infra*, even these reduced damages estimates were not without risk, as Defendants had very real disaggregation arguments that could have substantially reduced damages, if not eliminated them.    *Cf. In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict based on plaintiffs' expert's failure to disaggregate certain negative information).[6]

A recovery of 7.4-13.1% of maximum recoverable damages is well-within the range of

---

[5] As used herein, "*Shen I*" refers to *Shen v. Exela Techs., Inc.*, 2021 WL 2589584 (N.D. Tex. June 24, 2021).

[6] *See also In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) ("to establish loss causation, *Dura* requires plaintiffs to disaggregate those losses caused by changed economic circumstances, 'changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events,' from disclosures of the truth behind the alleged misstatements." quoting *Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 343 (2005)).

reasonableness. *Cf. Celeste Neely v. Intrusion Inc.*, 2022 WL 17736350, at *7 (E.D. Tex. Dec. 16, 2022) (approving $3.25 million settlement, noting "while the high end of the class's potential recovery was $42.7 million, the low end of the class's potential recovery was $0.00—with the balance of probabilities weighing in favor of recovery closer to the low end than to the high end."). It is also well above the 3.8% - 5.2% median percentage recovery of total damages in securities class actions settlements with similar potential damages. *See* App., Ex. 5 (NERA Report, at 17, Fig. 18 (median recovery for securities class actions that settled between December 2011 and December 2022 was 3.8% for cases with estimated damages between $50-$99 million, and 5.2% for those with estimated damages of $20-$49 million)); *see also IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities class action settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years").

Thus, the amount recovered by Lead Plaintiff supports final approval.

### 2. The Cost, Risk, and Delay of Trial and Appeal Support Approval

In evaluating a settlement under Rule 23(e)(2)(C), courts also consider "the costs, risks, and delay of trial and appeal." Similarly, the second *Reed* factor instructs the Court to consider "the complexity, expense, and likely duration of the litigation." *Reed*, 703 F.2d at 172. "Even where the claims are not particularly complex, approval of settlement is favored where settling avoids the risks and burdens of potentially protracted litigation." *Hays*, 2019 WL 427331, at *10.

Here, the claims are complex and there is no question that continued litigation would have been costly, risky, and protracted. "It is common knowledge that class action suits have a well-deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. Moreover, courts

have repeatedly recognized that securities litigation "is a highly technical and specialized area of the law" and that claims brought under the federal securities laws are "extremely complex." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. CIV. 6:12-1609, 2015 WL 965693, at *7 (W.D. La. Mar. 3, 2015).  Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).  And, these challenges are especially acute in the Fifth Circuit.  *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009) ("Although counsel faces risks in litigating any securities class action post-PSLRA, counsel faces even more challenges in the Fifth Circuit.").  Given the "notorious complexity" of securities class actions, settlement is appropriate to "circumvent the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

The motion to dismiss process highlighted many of the risks of the Action, including the potential to recover nothing.  *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("[t]he court needs to look no further than its own order dismissing the . . . litigation to assess the risks involved.").  While the Court did allow the case to proceed, it only explicitly ruled in Lead Plaintiff's favor on one of his three theories of liability (*i.e.*, the revenue visibility claim).  *See Shen II*, 2022 WL 198402, at *9 ("the Court expresses no view about whether plaintiffs have rectified the deficiencies in their other theories, which the court rejected in *Shen I.*").  Thus, considerable uncertainty remained as to whether Lead Plaintiff could prevail on (at least) two-thirds of his case at summary judgment and trial.  *See Shen I*, 2021 WL 2589584 at *17 (holding that "at all times, Exela told the whole truth and nothing but about

11

how it was calculating EBITDA and adjusted EBITDA.").

Nor did the win on the revenue visibility theory guarantee a recovery. Lead Plaintiff would still have to prove that it was the disclosure of the alleged securities violations that caused him to suffer loss, as opposed to unrelated matters. *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 255 (5th Cir. 2009). This posed significant challenges because Lead Plaintiff would have to demonstrate that it was the revelation that Defendants *lacked visibility* into Exela's revenue that caused the drop in Exela's share price, not *the reduction in revenue guidance itself* (or any other bad news revealed at the time). *See Celeste Neely*, 2022 WL 17736350, at *6 (weighing towards settlement was the court's consideration that "it is likely that Intrusion would vigorously dispute the connection between its alleged wrongdoing and the drop in its stock price."). Such "disaggregation" issues are particularly potent here because many of the SAC's alleged corrective disclosures revealed news relevant to more than one of Lead Plaintiff's theories. *See* ECF No. 44, ¶¶339-340, 342-43. Defenses to loss causation and damages pose substantial risks to a plaintiff's potential recovery at trial because each side would have presented expert testimony on the issue. "One cannot predict which expert's testimony or methodology a jury would find reliable. If the jury agreed with Defendants, Plaintiffs would have had their damages significantly reduced or their claims fail as a matter of law." *Buettgen v. Harless,* 2013 WL 12303143, at *8 (N.D. Tex. Nov. 13, 2013); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Finally, given, among other the things, the extensive discovery necessary to prove the case, and the significant expert testimony that would have been needed to establish liability, loss causation and damages, there is no doubt that continued prosecution of the Action would have

been both time intensive and costly. *See In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at *11 (E.D. La. Mar. 2, 2009) (noting continued litigation, including through discovery, class certification, trial and appeals, "would consume substantial judicial and attorney time and resources, and avoiding such costs weighs in favor of settlement"). And even if all those risks were overcome—there is a collectability risk here evident from the docket: Defendants breached the Settlement Agreement by failing to timely fund the full Settlement Amount, and Lead Plaintiff had to move for an Emergency Motion to Enforce the Settlement. ECF No. 95. Only after that motion, and the Court ordering a response on shortened time (ECF No. 96), did Defendants fully fund the Settlement. *See* ECF Nos. 97-98. As explained in that motion, Exela recently saw its CFO resign, its auditor decline to stand for reappointment, has not published full financials since the first quarter of 2023, and its financial state appears precarious. ECF No. 97 at 3-4, 8. Needless to say, to the extent Exela was required to financially contribute to the resolution of the Action, this Settlement appears to have come just in the nick of time.

The above uncertainties pose a significant risk that continued litigation would have yielded a smaller recovery—or no recovery at all—several years from now. In contrast, the $5,000,000 Settlement provides a favorable, immediate recovery and eliminates all risk, delay, and expense of continued litigation. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("[s]ecurities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case").

### 3.    Other Factors Established by Rule 23(e)(2)(C) Support Approval

Under Rule 23(e)(2)(C), courts should consider whether the relief provided is adequate in light of (1) "the effectiveness of any proposed method of distributing relief to the class, including

the method of processing class-member claims," (2) "the terms of any proposed award of attorneys' fees, including timing of payment," and (3) "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). All three factors support approval.

*First*, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. Here, Epiq Class Action & Claims Solutions, Inc. ("Epiq")—the Claims Administrator selected by Lead Counsel and appointed by the Court—will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or ask the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval.[7] *See* Preliminary Approval Order, ¶7 (appointing Epiq). The proposed manner of processing Claims is standard in securities class actions because it is effective and necessary insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8] *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 233-34, 245 (E.D. Mich. 2016) (approving settlement with similar distribution process), *aff'd*, No. 1601821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

*Second*, as disclosed in the Notice and Postcard Notice, Lead Counsel will apply for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate

---

[7] Epiq has substantial experience serving as the claims administrator in securities class action cases and was selected by Lead Counsel following an RFP process in which it was the low bidder. *See* ECF No. 91 at 164-171, Ex. 7 (Epiq's resumé).

[8] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* ECF No. 91 at 22 (Stipulation ¶13).

Plaintiff's Counsel for services rendered on behalf of the Settlement Class. A proposed attorneys' fees of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It also consistent with awards in similar complex class action cases. *See, e.g.*, *Woodforest*, 2019 WL 387409, at *4 ("The fee represents one-third of the . . . settlement fund, which is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Halliburton*, 2018 WL 1942227, at *12 ("The 33⅓% requested by Class Counsel is within the range of typical awards, and is not the highest fee awarded in securities class action cases."). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement cannot be terminated based on any ruling over attorneys' fees. *See* ECF No. 91 at 23 (Stipulation ¶16).

**Third**, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of the Company's common stock, request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and does not erode the fairness of the Settlement. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *5 (approving settlement with similar confidential agreement); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) ("opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest").

### D.    All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether settlement treats class members

equitably relative to one another.  Fed. R. Civ. P. 23(e)(2)(D).  Under the proposed Plan of Allocation,[9] each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund. Because the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class member, segment of the Settlement Class, or to Lead Plaintiff, this factor supports final approval of the proposed Settlement.  *See City of Omaha*, 2015 WL 965693, at *15 (approving plan of allocation where class members receive a *pro rata* share of the funds based on calculation of recognized losses).[10]

### E.    The Remaining *Reed* Factors Warrant Final Approval

#### 1.    The Stage of the Proceedings and the Amount of Discovery Completed Support Approval

The third *Reed* factor is "the stage of the proceedings and the amount of discovery completed."  *Reed*, 703 F.2d at 172.  Under this factor, the inquiry is whether the plaintiff has a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement.  *Cotton*, 559 F.2d at 1332.

As discussed above, Lead Counsel conducted a thorough investigation; consulted with experts in the fields of accounting, loss causation, and damages; drafted and filed two comprehensive amended complaints; briefed and argued two motions to dismiss; engaged in substantial discovery; filed a motion for class certification, including an expert report on market efficiency; and participated in a lengthy, hard-fought mediation process.  Thus, by the time

---

[9] The proposed Plan of Allocation is set forth at pages 10-14 of the Notice, which is Exhibit B to the Declaration of Susanna Webb Regarding: (A) Mailing of the Postcard Notice; (B) Mailing of the Notice and Proof of Claim Form; (C) Publication of the Summary Notice; (D) Call Center Services; (E) Settlement Website; and (F) Report on Requests for Exclusion and Objections ("Mailing Declaration").  *See* App., Ex. 2-B.

[10] Pursuant to the PSLRA, Lead Plaintiff may separately seek reimbursement of costs (including lost wages) incurred as a result of his representation of the Settlement Class.  *See* 15 U.S.C. §78u-4(a)(4).

settlement discussions proved fruitful, Lead Plaintiff and his counsel had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).[11]

### 2. The Probability of Plaintiff's Success on the Merits and The Range of Possible Recovery

"A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172. Courts also consider the range of possible recovery in the action. *Id*. "In ascertaining whether a settlement falls within the range of possible approval, courts will compare the settlement amount to the relief the class could expect to recover at trial, *i.e.*, the strength of the plaintiff's case." *Halliburton*, 2018 WL 1942227, at *5. Courts, however, are admonished against trying cases in evaluating the propriety of a settlement because "the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172. Indeed, "the trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained." *Cotton*, 559 F.2d at 1330.

As noted in § III.C.2, *supra*, in every complex case of this kind, plaintiffs face formidable obstacles to recovery at trial—both on liability and damages. And while Lead Plaintiff believes he would have succeeded, and that his allegations would be supported by the evidence, he also recognizes that he faced significant hurdles to proving liability and damages at trial. *See id*. "If

---

[11] Although not the case here, even in cases where "very little formal discovery was conducted" and where "there is no voluminous record in the case," the Fifth Circuit has declared that "the lack of such does not compel the conclusion that insufficient discovery was conducted." *Id.*; *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (affirming approval of securities class action settlement where there had been no "formal discovery" but "class counsel had conducted informal discovery by hiring private investigators and experts," the settlement compared favorable to similar settlements, and the parties were "well informed about the merits of their respective positions").

litigation were to proceed, the issues would be hotly disputed by the parties.  Litigation relating to such fact-intensive and difficult-to-prove claims would thus be extraordinarily complicated and time consuming, and require expert testimony." *Schwartz v. TCU Corp.*, 2005 WL 3148350, at *18 (N.D. Tex. Nov. 8, 2005).  Consequently, "[t]here was a very real risk that Plaintiffs would not have convinced a jury that the alleged misrepresentations and omissions were materially false or misleading when made or that damages related to them." *Buettgen v. Harless*, 2013 WL 12303143, at *8 (N.D. Tex. Nov. 13, 2013).

Even if Plaintiff could establish liability at trial, and prove damages, he "still could expect a vigorous appeal by Defendants and an accompanying delay in the receipt of any relief," *Schwartz*, 2005 WL 3148350, at *19.  The prospect of appeal here is not speculative as Defendants appealed unfavorable rulings they faced in the Delaware Appraisal Action.  *See SourceHOV Holdings, Inc. v. Manichaean Cap., LLC*, 246 A.3d 139 (Del. 2021) (affirming Delaware Court of Chancery ruling against SourceHOV Holdings, Inc.).  But unlike the Appraisal Action, there is no guarantee that Lead Plaintiff here would necessarily prevail at the trial court, or on any appeal.  *See*, *e.g.*, *Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities class action against Bernard Ebbers and WorldCom that resulted in a $685 million write-off of accounts receivable and a criminal conviction).

### 3.    The Opinions of Lead Counsel, Lead Plaintiff, and Absent Settlement Class Members Support Approval

Finally, courts consider "the opinions of the class counsel, class representatives, and absent class members" in determining the propriety of a settlement.  *Reed*, 703 F.2d at 172. "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Class Counsel is experienced in class-action litigation, courts typically defer to the

judgment of experienced trial counsel who has evaluated the strength of his case." *Schwartz*, 2005 WL 3148350, at *21.

Here, Plaintiff's Counsel have considerable experience in complex class action and securities litigation, are well-informed of the strengths and weakness of the case, and believe the Settlement merits approval. *See* App., Ex. 3-C (GPM firm resumé); App., Ex. 4-B (Kendall Law Group resumé). The Court-appointed Lead Plaintiff also supports the proposed Settlement. *See* App., Ex. 8 at ¶¶6-7. Accordingly, this factor favors final approval.

For all the foregoing reasons, the proposed Settlement falls within the range of what could be found to be fair, reasonable, and adequate and warrants this Court's final approval.

## IV.     THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court's August 21, 2023 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 94, ¶¶1-3. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Lead Plaintiff's Preliminary Approval Brief (*see* ECF No. 90, at pp. 22-24), Lead Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## V.     THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

The Court approved the proposed notice program in the Preliminary Approval Order, and Lead Counsel executed it. App., Ex. 2 (Mailing Declaration), at ¶¶2-10, 15-17. As of October 26, 2023, either a copy of the Postcard Notice or the Notice and Claim Form was timely mailed, or a link to Notice and Claim Form was emailed, to an aggregate of 1,876 potential Settlement Class Members and brokerage firms, banks, institutions, and other third-party nominees. *See Id*. at ¶9.

On October 2, 2023, the Court-approved Summary Notice was published in *Investors'*

*Business Daily* and over the *PR Newswire*. *Id*. at ¶10 and Ex. 2-C. The published Summary

Notice clearly and concisely provided information concerning the Settlement and the means to

obtain a copy of the Notice. *See Id*., Ex. 2-C. Finally, Epiq posted the Notice, Claim Form, and

other relevant documents online at the Settlement Website, www.ExelaSecuritiesLitigation.com,

and provided a toll-free telephone number for Settlement Class Members to call with any

questions concerning the Settlement. *See Id*., at ¶¶11-17. Courts routinely find that comparable

notice programs meet the requirements of due process and Rule 23. *See In re Advanced Battery*

*Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) ("The use of a combination of a

mailed post card directing class members to a more detailed online notice has been approved by

courts."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at \*6-7 (D. Md. May 19, 2010)

(approving combination of postcard notice, summary notice, and detailed notice available online

as "the best notice practical").

## VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In the Preliminary Approval Order, the Court preliminarily approved the Plan of

Allocation contained in the Notice and Lead Plaintiff now requests final approval. Assessment

of a plan of allocation under Rule 23 is governed by the same standards of review applicable to

approval of the settlement as a whole—the plan must be "fair, adequate and reasonable." *In re*

*Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). "When formulated by

competent and experienced counsel, a plan for allocation of net settlement proceeds need have

only a reasonable, rational basis*." In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).

Here, the proposed Plan of Allocation is set forth in the Notice posted on the Settlement

Website. *See* App., Ex 2 (Mailing Declaration), at ¶16 and Ex. B at ¶¶59-76. Lead Counsel

developed the Plan of Allocation in consultation with Plaintiff's damages consultant with the

objective of equitably distributing the Net Settlement Fund among those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. The computations under the Plan of Allocation are a method to weigh the Claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund. App. Ex. 1 (Wolke Decl.), at ¶¶67-73.

Under the Plan of Allocation, a Claimant's Recognized Claim is calculated based on the estimated alleged artificial inflation in the price of Exela common stock during the Settlement Class Period, as determined by Lead Plaintiff's consulting damages expert. Lead Plaintiff's consulting damages expert reviewed publicly available information regarding Exela and performed statistical analyses of the price movements of Exela common stock relative to the price performance of market and peer indices during the Settlement Class Period. From this data, she calculated the alleged artificial inflation by isolating the losses in Exela common stock that resulted from the alleged violations of the federal securities laws, eliminating losses attributable to market factors, industry factors, or Company-specific factors unrelated to the alleged violations of law. The amount of artificial inflation in Exela common stock on each day of the Settlement Class Period is set forth in Table 1 in the Notice. *See* App., Ex. 2-B (Notice), at p. 11.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase or other acquisition of Exela common stock during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided. The calculation of Recognized Loss Amounts will depend upon several factors, including when each Authorized Claimant purchased and/or sold Exela common stock, the transactions prices, and requires that the Exela common stock be held over an alleged corrective disclosure date in order for an

Authorized Claimant to have a Recognized Claim.  In general, the Recognized Loss Amount will be the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, or the difference between the actual purchase price and sale price, whichever is less.  The Recognized Loss Amount also incorporates the "90-day look back" provision of the PSLRA.  *See Id*., at ¶63.  The sum of a Claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  *See Id*., at ¶¶68, 74.

Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as result of the conduct alleged in the Action and should be approved by the Court.  *See In re Schering-Plough Corp. Sec. Litig*., 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009) (approving plan of allocation in part because "it was fashioned by experienced class counsel"); *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 3277278, at *7 (D. Nev. July 18, 2012) ("Based on counsels' knowledge of the specific facts of this action, experience in settlements such as this, and opinion that the settlement [is fair, reasonable, and adequate," this factor weighs in favor of granting approval of the settlement.).  Moreover, to date, no Settlement Class Members have objected to the Plan of Allocation, further supporting approval of the Plan of Allocation.[12]  The Court should, therefore, approve the Plan of Allocation.  *See, e.g., City of Omaha*, 2015 WL 965693, at *15 (approving plan of allocation where "[u]nder the Plan, each Class Member will receive his or her *pro rata* share of the funds based on the calculation of recognized losses."); *McDermid v. Inovio Pharms., Inc.*, 2023 WL 227355, at *9 (E.D. Pa. Jan. 18, 2023) (approving

---

[12] *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *14 (S.D.N.Y. Nov. 7, 2007).

substantially similar plan of allocation).

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (a) approve the proposed Settlement as fair, reasonable, and adequate; (b) approve the Plan of Allocation as fair, reasonable and adequate; and (c) finally certify the Settlement Class.  Proposed orders will be submitted with Lead Plaintiff's reply papers, after the deadlines for objections and seeking exclusion have passed.

DATED: November 2, 2023                      **GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Kara M. Wolke*
Kara M. Wolke (*pro hac vice*)
kwolke@glancylaw.com
Joseph D. Cohen (*pro hac vice*)
jcohen@glancylaw.com
Raymond D. Sulentic (*pro hac vice*)
rsulentic@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

*Lead Counsel for Lead Plaintiff and the Proposed Settlement Class*

**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000

*Local Counsel for Lead Plaintiff and the Proposed Settlement Class*

## <u>CERTIFICATE OF CONFERENCE</u>

On October 31, 2023, the Parties met and conferred concerning the finalization of the

Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation.


*/s/ Kara M. Wolke*
Kara M. Wolke

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 2nd day of November, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Kara M. Wolke*
Kara M. Wolke (admitted *pro hac vice*)