**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:20-cv-00691-D |
| Plaintiffs, | |
| v. | |
| EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA | |
| Defendants. | |

**APPENDIX IN SUPPORT OF: (I) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND <u>REIMBURSEMENT OF LITIGATION EXPENSES</u>**

Lead Plaintiff Insur Shamgunov ("Lead Plaintiff") submits, pursuant to Rule 7.1(i) of the Local Rules for the Northern District of Texas, this Appendix in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

DATED: November 2, 2023          **GLANCY PRONGAY & MURRAY LLP**


By:    */s/ Kara M. Wolke*
Kara M. Wolke (admitted *pro hac vice*)
Joseph D. Cohen (admitted *pro hac vice*)
Raymond D. Sulentic (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: kwolke@glancylaw.com
        jcohen@glancylaw.com
        rsulentic@glancylaw.com

*Lead Counsel for Lead Plaintiff Insur Shamgunov and the Proposed Settlement Class*

**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone: (214) 744-3000
Email: jkendall@kendalllawgroup.com

*Local Counsel for Lead Plaintiff Insur Shamgunov and the Proposed Settlement Class*

1

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of November, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Kara M. Wolke
Kara M. Wolke (admitted *pro hac vice*)

**INDEX TO APPENDIX**

| Exhibit | Document | Page No. |
|---|---|---|
| 1 | Declaration of Kara M. Wolke in Support of: (I) Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses | 1-39 |
| 2 | Declaration of Susanna Webb Concerning: (A) Mailing of the Postcard Notice; (B) Mailing of the Notice and Proof of Claim Form; (C) Publication of the Summary Notice; (D) Call Center Services; (E) Settlement Website; and (F) Report on Requests for Exclusion and Objections | 40-84 |
| 3 | Declaration of Kara M. Wolke, Esq. in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of Glancy Prongay & Murray LLP | 85-125 |
| 4 | Declaration of Joe Kendall, Esq. in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of the Kendall Law Group, PLLC | 126-143 |
| 5 | Excerpts from Janeen McIntosh, Svetlana Starykh, and Edward Flores *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) | 144-150 |
| 6 | Select Fifth Circuit Cases Awarding Attorneys' Fee of 33% or Above | 151-152 |
| 7 | Table of Peer Law Firm Billing Rates | 153-167 |
| 8 | Declaration of Lead Plaintiff Insur Shamgunov in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses | 168-173 |
| 9 | *In re: RCI Hospitality Holdings, Inc. Sec. Litig.*, No. 19-cv-01841, ECF No. 81 (S.D. Tex. Aug 12, 2022) | 174-179 |

3

| 10 | *KB Partners I, LP v. Pain Therapeutics, Inc.*, No. 1:11-cv-01034-SS, ECF No. 273 (W.D. Tex. Dec. 16, 2016) | 180-182 |
|----|----|----|
| 11 | *Zacharia v. Straight Path Communications, Inc.*, No. 2:15-cv-08051-JMV-MF, ECF No. 90 (D.N.J. Sept. 7, 2018) | 183-188 |
| 12 | *In re Virgin Mobile USA IPO Litig.*, No. 07-cv-5619 (SDW), ECF No. 146 (D.N.J. Dec. 8, 2010) | 189-197 |

# EXHIBIT 1

1

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA<br><br>Defendants. | Case No. 3:20-CV-00691-D<br><br>**CLASS ACTION** |

**DECLARATION OF KARA M. WOLKE IN SUPPORT OF: (I) LEAD PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

2

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 2

II.     PROSECUTION OF THE ACTION .................................................................. 6

        A.      Commencement Of The Action And Appointment Of Lead Plaintiffs And Lead
                Counsel ................................................................................................ 6

        B.      The Comprehensive Pre-Filing Investigation And The Preparation Of The
                FAC .................................................................................................... 6

        C.      Defendants' Motions To Dismiss, Lead Plaintiffs' Responses Thereto, And Lead
                Plaintiffs' Notice of Supplemental Authority ........................................... 7

        D.      Fact Discovery .................................................................................... 10

        E.      Preparation for Class Certification ........................................................ 11

        F.      Mediation Efforts, Settlement Negotiations, and the Settlement's Preliminary
                Approval ............................................................................................. 11

III.    THE RISKS OF CONTINUED LITIGATION ................................................ 13

        A.      Risks Faced In Obtaining And Maintaining Class Action Status .................. 13

        B.      Risks To Proving Liability ..................................................................... 14

        C.      Risks to Proving Damages ..................................................................... 16

        D.      Other Risks, Including Trial And Appeals ............................................... 17

        E.      The Settlement Is Reasonable In Light Of Potential Recovery In The Action..... 18

IV.     PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL
        ORDER REQUIRING THE NOTICE PROGRAM............................................ 18

V.      ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT .......................... 21

VI.     LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT
        OF LITIGATION EXPENSES ....................................................................... 25

        A.      The Fee Application ............................................................................. 25

                1.      The Outcome Achieved is the Result of the Significant Time and Labor
                        that Plaintiff's Counsel Devoted to the Action ............................ 26

                2.      The Significant Risks Borne by Plaintiff's Counsel ...................... 28

3.      The Experience And Expertise Of Plaintiff's Counsel And The Standing And Caliber of Defendants' Counsel.......................................................... 29

4.      Public Policy Interests, Including The Need To Ensure The Availability Of Experienced Counsel In High-Risk Contingent Securities Cases ....... 30

5.      The Reaction Of The Settlement Class Support Lead Counsel's Fee Request................................................................................................... 30

B.      Reimbursement Of The Requested Litigation Expenses Is Fair And Reasonable 31

VII.    CONCLUSION.............................................................................................. 34

**TABLE OF EXHIBITS TO APPENDIX**

| <u>Exhibit</u> | <u>Document</u> | <u>Page No. In Appendix</u> |
|---|---|---|
| 1 | Declaration of Kara M. Wolke in Support of: (I) Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses | 1-39 |
| 2 | Declaration of Susanna Webb Concerning: (A) Mailing of the Postcard Notice; (B) Mailing of the Notice and Proof of Claim Form; (C) Publication of the Summary Notice; (D) Call Center Services; (E) Settlement Website; and (F) Report on Requests for Exclusion and Objections | 40-84 |
| 3 | Declaration of Kara M. Wolke, Esq. in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of Glancy Prongay & Murray LLP | 85-125 |
| 4 | Declaration of Joe Kendall, Esq. in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of the Kendall Law Group, PLLC | 126-143 |
| 5 | Excerpts from Janeen McIntosh, Svetlana Starykh, and Edward Flores *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) | 144-150 |
| 6 | Select Fifth Circuit Cases Awarding Attorneys' Fee of 33% or Above | 151-152 |
| 7 | Table of Peer Law Firm Billing Rates | 153-167 |
| 8 | Declaration of Lead Plaintiff Insur Shamgunov in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses | 168-173 |
| 9 | *In re: RCI Hospitality Holdings, Inc. Sec. Litig.*, No. 19-cv-01841, ECF No. 81 (S.D. Tex. Aug 12, 2022) | 174-179 |
| 10 | *KB Partners I, LP v. Pain Therapeutics, Inc.*, No. 1:11-cv-01034-SS, ECF No. 273 (W.D. Tex. Dec. 16, 2016) | 180-182 |
| 11 | *Zacharia v. Straight Path Communications, Inc.*, No. 2:15-cv-08051-JMV-MF, ECF No. 90 (D.N.J. Sept. 7, 2018) | 183-188 |
| 12 | *In re Virgin Mobile USA IPO Litig.*, No. 07-cv-5619 (SDW), ECF No. 146 (D.N.J. Dec. 8, 2010) | 189-197 |

I, Kara M. Wolke, declare the following pursuant to 28 U.S.C. §1746:

1.      I am an attorney duly licensed to practice law before all of the courts of the State of California and I am admitted *pro hac vice* in this action.  I am a partner in the law firm of Glancy Prongay & Murray LLP ("GPM"), Lead Counsel for Lead Plaintiff Insur Shamgunov ("Lead Plaintiff") in the above-entitled action (the "Action").[1]  The Kendall Law Group, PLLC ("Kendall Law Group") served as Court-appointed Local Counsel.  GPM and Kendall Law Group are referred to collectively herein as "Plaintiff's Counsel."  I am familiar with the proceedings in this litigation, and I have personal knowledge of the matters set forth herein based upon supervising and participating in the Action.

2.      I respectfully submit this declaration, together with the attached exhibits, in support of Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation and the concurrently-filed memorandum in support thereof ("Final Approval Motion").  As set forth in the Final Approval Motion, Plaintiffs seek final approval of the $5,000,000 Settlement for the benefit of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.

3.      I also respectfully submit this declaration in support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and the concurrently-filed memorandum in support thereof ("Attorneys' Fee Motion").[2]  As set forth in the Attorneys' Fee Motion, Lead Counsel seeks an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund (which, by definition, includes interest accrued thereon), and reimbursement of Litigation Expenses in the total amount of $385,978.11 which includes Plaintiff's Counsel's out-

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Stipulation and Agreement of Settlement, dated July 27, 2023 (the "Stipulation").  ECF No. 91.

[2] Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses is made on behalf of Plaintiff's Counsel.

1

of-pocket litigation costs of $360,978.11, and $25,000 to the Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for his costs, including for time spent, incurred in connection with his representation of the Settlement Class.

4.  The Court preliminarily approved the proposed Settlement by Order dated August 21, 2023 (the "Preliminary Approval Order"), and thereby directed notice of the Settlement to be disseminated to the Settlement Class. *See* ECF No. 94. Pursuant to the Preliminary Approval Order, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Court-approved Claims Administrator, implemented a comprehensive notice program under the direction of Lead Counsel, whereby notice was given to potential Settlement Class Members by mail and by publication. The details of the notice program are set forth in the Declaration of Susanna Webb Concerning: (A) Mailing of the Postcard Notice; (B) Mailing of the Notice and Proof of Claim Form; (C) Publication of the Summary Notice; (D) Call Center Services; (E) Settlement Website; and (E) Report on Requests for Exclusion and Objections ("Webb Decl."), a true and correct copy of which is attached to the Appendix in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Appendix" or "App.") as Exhibit 2.

5.  In total, notice of the Settlement has been disseminated to 1,876 potential Settlement Class Members, and thus far, no requests for exclusion have been received and no objections have been filed with the Court. *See* Webb Decl., ¶¶9, 18.

I.    **INTRODUCTION**

6.  This is a securities class action pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder and

2

7

Section 20(a) of the Exchange Act.  By Order dated June 12, 2020, the Court appointed Insur

Shamgunov and Elena Shamgunova to serve as Lead Plaintiffs.[3]  ECF No. 11.  Lead Plaintiffs

asserted claims against defendant Exela Technologies, Inc. ("Exela" or the "Company") and

defendants Ronald Cogburn, James G. Reynolds, and Par Chadha (collectively, "Individual

Defendants,"; together with Exela, "Defendants"; and together with Exela and Lead Plaintiff(s),

the "Parties").

      7.     The Settlement now before the Court provides for the resolution of all claims in

the Action in exchange for a cash payment of $5,000,000 (the "Settlement Amount") for the

benefit of the Settlement Class.  As detailed herein, Lead Plaintiff and Lead Counsel submit that

the proposed Settlement represents a fair and adequate result for the Settlement Class

considering the case's procedural posture as well as the significant risks remaining in the Action.

      8.     As explained in greater detail herein, this Settlement was reached only after

comprehensive inquiry into the merits of the claims alleged and the likely damages that could be

recovered by the Settlement Class.  Plaintiffs' Counsel's vigorous efforts involved, *inter alia*:

- moving for the appointment of Lead Plaintiffs and Lead and Liaison Counsel pursuant to the PSLRA;

- conducting an extensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) Exela's U.S. Securities and Exchange Commission ("SEC") filings, (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles related to Exela, (iii) investor call transcripts, and (iv) other litigation and publicly available material concerning Exela; (b) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, locating and interviewing former employees and other sources of potentially relevant information; and (c) consultation with experts

---

[3] On December 20, 2022, Elena Shamgunova voluntarily dismissed her claim. ECF Nos. 69-70. Following her voluntary dismissal, only one lead plaintiff represented the proposed class. Therefore, for clarity, hereinafter two defined terms are used depending on the timeframe: (1) "Lead Plaintiffs," which shall mean both Insur Shamgunov and Elena Shamgunova; and (2) "Lead Plaintiff," which shall mean only Insur Shamgunov.

3

8

in the fields of accounting, loss causation, and damages;

- utilizing the comprehensive investigation and additional research to draft and file the the 98-page (371-paragraph) Amended Class Action Complaint (the "FAC"), which asserted violations of the Exchange Act;

- researching, drafting, and filing an opposition to Defendants' motion to dismiss the FAC, and engaging in in-person oral argument on the motion, after which the Court granted Defendants' motion. *See Shen v. Exela Techs., Inc.*, 2021 WL 2589584 (N.D. Tex. June 24, 2021) ("*Shen I*");

- conducting additional investigation and analysis, and then filing the 118-page (394-paragraph) Second Amended Complaint ("Complaint" or "SAC");

- researching, drafting, and filing an opposition to Defendants' motion to dismiss the SAC, and engaging in virtual oral argument on the motion, after which the Court denied Defendants' motion to dismiss in its entirety. *See Shen v. Exela Techs., Inc.*, 2022 WL 198402 (N.D. Tex. Jan. 21, 2022) ("*Shen II*");

- engaging in substantial discovery, which entailed, *inter alia*: (a) exchanging initial disclosures; (b) negotiating a protective order and ESI protocol, both of which were subsequently entered by the Court; (c) serving and responding to document requests and interrogatories; (d) identifying and issuing subpoenas to relevant third parties; (e) deposing Exela's Chief Accounting Officer ("CAO") and Chief Executive Officer ("CEO"); (f) defending Lead Plaintiff's deposition; and (g) conducting a targeted review and analysis of the 2.24 million pages of documents produced by Exela;

- engaging in an unsuccessful mediation process overseen by a highly experienced third-party mediator, Jed Melnick, Esq., of JAMS, which involved an exchange of written submissions concerning the facts of the case, liability and damages, and a full-day virtual mediation session;

- filing a motion for class certification, which included, *inter alia*, an expert report by Dr. Adam Werner on the efficiency of the market for Exela's common stock;

- defending Dr. Werner at his deposition;

- engaging in months of follow-up negotiations with Mr. Melnick and Defendants' Counsel following the unsuccessful mediation that ultimately resulted in a mediator's recommendation to the settle the Action for $5.0 million;

- working with a consulting damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly;

- preparing the initial draft, and negotiating the terms, of the Stipulation (including the exhibits thereto) and the Supplemental Agreement;

4

9

- drafting the preliminary approval motion and supporting papers;
- working with the Court appointed Claims Administrator to provide notice to the Settlement Class;
- drafting and filing the Emergency Motion to Enforce Settlement; and
- drafting the final approval motion and supporting papers.

9.     Based on the foregoing efforts, Lead Plaintiff and Plaintiff's Counsel are well informed of the strengths and weaknesses of the claims and defenses in the Action, and believe the Settlement represents a favorable outcome for the Settlement Class and is in the best interests of its members.  For all the reasons set forth herein and in the accompanying memoranda and declarations, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is "fair, reasonable, and adequate" in all respects, and that the Court should grant final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

10.     In addition to seeking final approval of the Settlement, Lead Plaintiff seeks approval of the proposed Plan of Allocation as fair and reasonable.  As discussed in further detail below, Plaintiff's Counsel developed the Plan of Allocation with the assistance of Lead Plaintiff's consulting damages expert.  The Plan of Allocation provides for the distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment by the Court on a *pro rata* basis.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

11.     Finally, Lead Counsel, on behalf of Plaintiff's Counsel, seeks approval of the request for attorneys' fees and reimbursement of Litigation Expenses as set forth in the Attorneys' Fee Motion.  As discussed in detail in the Attorneys' Fee Motion, the requested 33⅓% fee is within the range of percentage awards granted by courts in this Circuit in comparable securities class actions.  Additionally, the fairness and reasonableness of the request

10

is confirmed by a lodestar cross-check, and warranted in light of the extent and quality of the work performed and the substantial result achieved.  Likewise, the requested out-of-pocket litigation costs of $360,978.11, and the requested reimbursement of costs pursuant to the PSLRA, including lost wages and time, in the amount of $25,000 to Lead Plaintiff, are also fair and reasonable.  Accordingly, for the reasons set forth in the Attorneys' Fee Motion and for the additional reasons set forth herein, Lead Counsel respectfully submits that the request for attorneys' fees and reimbursement of Litigation Expenses be approved.

## II.   PROSECUTION OF THE ACTION

### A.   Commencement Of The Action And Appointment Of Lead Plaintiffs And Lead Counsel

12.   On March 23, 2020, a class action complaint was filed in the United States District Court for the Northern District of Texas ("the Court"), styled *Bo Shen v. Exela Technologies Inc. et al.*, Case No. 3:20-cv-00691-D.

13.   By Order dated June 12, 2020, the Court appointed Insur Shamgunov and Elena Shamgunova Lead Plaintiffs; and approved Lead Plaintiffs' selection of GPM as Lead Counsel and the Kendall Law Group as Local Counsel for the putative class.  ECF No. 11.

### B.   The Comprehensive Pre-Filing Investigation And The Preparation Of The FAC

14.   In preparation for filing the FAC, Lead Counsel conducted an extensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) Exela's filings with the U.S. Securities and Exchange Commission ("SEC"), (ii) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles concerning Exela, (iii) Exela's investor call transcripts, (iv) press releases published by and regarding Exela, and (v) court filings, and other publicly available material related to Exela and other relevant third parties; (b) retaining and working with

6

11

a private investigator to locate and interview former Exela employees; (c) researching the accounting rules applicable to Earnings Before Interest Taxes Depreciation and Amortization ("EBITDA") and Adjusted EBITDA pertaining to addbacks; (d) consulting and working with an accounting experts to analyze Exela's Settlement Class Period financial results ; and (e) working with a damages and loss causation expert to analyze Exela's stock price movements and estimated classwide damages.

### C. Defendants' Motions To Dismiss, Lead Plaintiffs' Responses Thereto, And Lead Plaintiffs' Notice of Supplemental Authority

15. On August 11, 2020, Lead Plaintiffs filed and served the FAC, asserting claims against all Defendants under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. ECF No. 26. Among other things, the FAC alleged that Defendants made materially false and misleading statements and/or omissions about: (a) Exela's revenue visibility; (b) its operating performance as measured by its Adjusted EBITDA; and (c) the Company's undisclosed liability with respect to unrelated litigation that was then ongoing in the Delaware Court of Chancery ("Appraisal Action").[4] According to the FAC, the alleged misrepresentations and omissions proximately caused class member losses when the truth was revealed over a series of partial corrective disclosures throughout the class period.

16. On October 12, 2020, Defendants filed and served a motion to dismiss the FAC. ECF No. 28. Among other things, Defendants argued that Lead Plaintiffs failed to plead a strong inference of scienter related to Defendants' disclosures of their liabilities relating to the Appraisal Action. Defendants also challenge the merit of Lead Plaintiff's argument that Exela's

---

[4] *See Manichaean Cap., LLC et al. v. SourceHOV Holdings, Inc. et al.*, 2020 WL 496606, (Del. Ch. Jan. 30, 2020).

calculations of Adjusted EBITDA was misleading to investors.  Additionally, Defendants challenged Lead Plaintiffs' claims related to Exela's financial projections and revenue visibility and argued that Lead Plaintiffs did not adequately plead a false or misleading statement or scienter.  Defendants argued that an inadvertent error in disclosure does not amount to scienter and refuted Plaintiffs' allegations that Exela's restatement was a result of fraud.

17.     On December 11, 2020, Lead Plaintiffs opposed Defendants' motion to dismiss, including a request for judicial notice.  ECF Nos. 32-34.  Lead Plaintiffs argued that the FAC adequately alleged that Defendants made misleading statements or omissions in violation of Section 10(b) of the Exchange Act by omitting their known litigation liability related to the Appraisal Action, and misrepresenting the Company's financial projections, revenue visibility, and Adjusted EBITDA calculations.  Lead Plaintiffs further asserted that the well-pleaded facts in the FAC raised a strong inference of scienter as to each Individual Defendant.

18.     On January 21, 2021, Defendants filed and served their reply papers in support of their motion to dismiss.  ECF No. 39.

19.     On May 20, 2021, the Court heard in-person oral arguments by the Parties.  ECF No. 42.

20.     On June 24, 2021, the Court granted Defendants' motion to dismiss with leave to amend.  ECF No. 43; *Shen I*, 2021 WL 2589584.

21.     On August 5, 2021, following further investigation and analysis, Lead Plaintiffs filed and served the SAC.  ECF No. 44.  Among other things, Lead Plaintiffs provided additional allegations relating to applicable accounting rules relevant to their allegations that Defendants misrepresented Exela's revenue visibility, as well as additional information relating to alleged insider stock sales by the Individual Defendants.

22.     On September 3, 2021, Defendants moved to dismiss the SAC.  ECF No. 49. Among other things, Defendants argued that Lead Plaintiffs, again, failed to plead a false statement and a strong inference of scienter related to Defendants' disclosures of: (a) their liabilities within the Appraisal Action; (b) Exela's revenue visibility, margins, and guidance, and (c) Exela's calculations of Adjusted EBITDA.  Defendants also challenged Lead Plaintiffs' claims that Exela's governance deficiencies, and their "alter ego" relationship with SourceHOV, led to misstatements. And finally, Defendants argued that Lead Plaintiffs' new stock sale allegations did not support any inference to scienter.

23.     Lead Plaintiffs filed their opposition to Defendants' motion to dismiss the SAC on October 13, 2021.  ECF No. 52.  Lead Plaintiffs asserted again that the well-pleaded facts in the Complaint raised a strong inference of scienter by Defendants: (a)  Defendants' failure to record the Appraisal Action liability estimates made available to them during the class period violated not only GAAP, but Exela's own stated policies, and Defendants falsely claimed to have been unable to estimate the Appraisal Action liability when they had, in fact already estimated it; (b) Defendants' claimed adherence to accounting rule ASC 606 on revenue recognition showed that they had to have known about the impact and extent of Exela's variable postage expenses on the Company's revenue, which Lead Plaintiffs alleged rendered Defendants' revenue visibility claims misleading; and (c) insider stock sales in suspicious amounts and at suspicious times and Exela's weak internal controls.

24.     On October 28, 2021, Defendants filed their reply to Lead Plaintiffs' opposition to Defendants' motion to dismiss the SAC, further arguing that the SAC failed to state a claim. ECF No. 55.

25.     On January 19, 2022, the Court heard virtual oral arguments by the Parties on

9

14

Defendants' motion to dismiss the SAC.  ECF No. 58.  On January 21, 2022, the Court issued its Memorandum Opinion and Order denying Defendants' motion to dismiss the SAC.  ECF No. 59; *Shen II,* 2022 WL 198402.

26.    Defendants answered the SAC on February 11, 2022.  ECF No. 61.

**D.    Fact Discovery**

27.    From February 2022 to June 2023, the Parties engaged in fact discovery. Plaintiffs researched and drafted their initial disclosures, which the Parties exchanged on March 14, 2022.  After exchanging initial disclosure, the Parties negotiated a Protective Order, which the Court entered on  March 7, 2022, and an ESI Protocol, which the Court entered on April 27, 2022.  ECF Nos. 65 and 67.

28.    Lead Plaintiffs then propounded comprehensive Requests for Production of Documents on Defendants on March 8, 2022.  Lead Plaintiffs analyzed Defendants' responses and objections to their Requests for Production of Documents, in preparation for addressing and resolving any disputes relating to the scope of Defendants' responses.  Lead Plaintiffs also conducted research relating to third parties likely to have relevant documents.  Lead Plaintiffs then served seven (7) subpoenas for production of documents on the identified third parties.

29.    Following entry of the ESI Protocol, Lead Plaintiffs drafted proposed search terms for the collection and production of ESI.  Defendants began producing ESI documents in June 2022.  Over the course of the approximately year and a half discovery period, Lead Counsel conducted targeted review and analysis of the more than 2.24 million pages of documents produced by Defendants and third parties.

30.    On May 25, 2023, Lead Counsel deposed Exela's CAO, Gaurav Agrawal. On June 1, 2023, Lead Counsel deposed Ronald Cogburn, CEO.  Seven (7) additional depositions of

10

15

current and former Exela executives were scheduled for the following weeks, but the Parties reached their agreement in principle to settle before these depositions were taken.

### E.    Preparation for Class Certification

31.    On April 14, 2023, Lead Plaintiff filed his motion for class certification and sought appointment of Insur Shamgunov as the class representative. ECF No. 81. In conjunction therewith, Lead Plaintiff worked closely with Dr. Adam Werner, an economic expert, who drafted a report on market efficiency for Exela securities submitted in conjunction with Lead Plaintiff's motion.

32.    On May 12, 2023, Defendants deposed Dr. Shamgunov.

33.    On May 16, 2023, Defendants deposed Lead Plaintiff's class certification expert Dr. Werner.

34.    The Parties reached an agreement to settle prior to Defendants filing an opposition to Lead Plaintiff's motion for class certification.

### F.    Mediation Efforts, Settlement Negotiations, and the Settlement's Preliminary Approval

35.    While the Parties were engaged in fact discovery, they agreed to explore the possibility of settlement and selected Jed Melnick, Esq. of JAMS to serve as the mediator. Mr. Melnick is an experienced mediator of complex actions.

36.    In advance of the mediation session, Lead Counsel dedicated substantial efforts to preparing a persuasive, evidence-based mediation statement setting forth the facts relevant to the underlying alleged misrepresentations and omission, and analyzing applicable facts and law with respect to both liability and damages. The Parties then exchanged mediation statements, and each Party provided their statement to the Mr. Melnick.

11

16

37.    On September 8, 2022, Lead Counsel and Defendant's Counsel participated in a full-day virtual mediation session with Mr. Melnick.  During the mediation session, the Parties engaged in full and frank discussions concerning the merits of this Action, including, for example, estimated damages and the evidence that had been developed in support of Lead Plaintiff's claims.  This negotiation process enabled the Parties to meaningfully assess the relative strengths and weaknesses of their respective claims and defenses.  This session, however, did not end in an agreement to settle.  Accordingly, the Parties carried on with additional fact discovery through the end of 2022 and into the first six months of 2023, as well as briefing class certification in April to May 2023.

38.    In April 2023, around the time that Lead Plaintiff filed his motion for class certification and the Parties began scheduling fact depositions, the Parties revisited settlement negotiations and re-engaged the assistance of Mr. Melnick.  After additional prolonged negotiations with Mr. Melnick's assistance, the Parties still were unable to reach an agreement to settle.

39.    Ultimately, on June 1, 2023, Mr. Melnick made a mediator's proposal that the Parties settle the matter for $5,000,000 in a non-reversionary cash payment.

40.    On June 3, 2023, the Parties accepted the mediator's proposal, agreeing to settle the Action for $5,000,000, subject to the execution of a customary long-form stipulation and agreement of settlement and related papers.  On June 5, 2023, the Parties informed the Court of the proposed Settlement and asked the Court to suspend all case deadlines while they negotiated and executed a long-form Settlement agreement and exhibits.  ECF No. 86.  Lead Plaintiff filed his Unopposed Motion for Preliminary Approval of the Settlement on July 27, 2023.  ECF No. 90.

41.     On August 21, 2023, the Court issued the Preliminary Approval Order.  ECF No. 94.

## III.   THE RISKS OF CONTINUED LITIGATION

42.     The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a non-reversionary cash payment of $5,000,000.  As explained more fully below, there were significant risks that the Settlement Class might recover substantially less than the Settlement Amount—or nothing at all—if the case were to proceed through additional litigation to a jury trial, followed by the inevitable appeals.

### A.     Risks Faced In Obtaining And Maintaining Class Action Status

43.     Defendants' opposition to class certification was due to be filed on June 2, 2023, and had the Action not settled, Defendants surely would have argued against class certification. While Lead Counsel researched and analyzed class certification and are confident that the Court would have certified the proposed class, plaintiffs bear the burden of proof on class certification, and Defendants would have undoubtedly raised arguments challenging the propriety of class certification.  Among other things, Defendants could have challenged market efficiency, arguing that Plaintiffs failed to satisfy their burden to invoke the presumption of reliance by establishing, with evidence, that Exela's securities traded in an efficient market during the class period. Assuming Plaintiffs succeeded in establishing market efficiency and invoking the presumption of reliance, Defendants would have likely argued that price impact is lacking, and the presumption is rebutted, because factors unrelated to the alleged fraud caused Exela's stock price to increase on alleged false statements dates and to drop on the alleged loss causation dates.  Finally, Defendants also likely would have argued that the proposed class period ends too late because

13

the last corrective disclosure relating to the only false statements specifically sustained in this case—*i.e.*, the revenue visibility statements—occurred on November 13, 2019.

44.    Moreover, even if Lead Plaintiffs successfully obtained class certification, Defendants could have sought permission from the Fifth Circuit to appeal any class certification order under Federal Rule of Civil Procedure 23(f), further delaying or precluding any potential recovery.  Certification of the Settlement Class Period (*i.e.*, March 16, 2018 and March 16, 2020, inclusive) was, by no means, a forgone conclusion.

45.    Additionally, a ruling by the United States Supreme Court has made obtaining class certification for Plaintiffs more difficult and could potentially provide additional challenges should the litigation against Defendants proceed.  In *Goldman Sachs Grp. v. AR Teacher Ret.*, 141 S.Ct. 1951 (June 21, 2021), the Supreme Court held, in part, that when defendants are seeking to rebut the presumption of reliance established under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), as modified by *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), courts may consider the generic nature of an alleged misrepresentation as evidence of lack of price impact.  Accordingly, courts are directed to consider "all evidence relevant to price impact" at the class certification stage, including the extent to which a corrective disclosure relates to a "generic" false statement.  *Goldman Sachs Grp.*, 141 S. Ct. at 1961.

B.    **Risks To Proving Liability**

46.    In addition to the hurdle of obtaining and maintaining class action status, Lead Plaintiff and Lead Counsel faced numerous additional risks at summary judgment and trial, including establishing Defendants' liability.  Defendants forcefully argued in their motions to dismiss—and undoubtedly would have continued to argue at summary judgment and/or trial—that Lead Plaintiff could not establish the required elements of their Exchange Act claims.

14

47.    For instance, Defendants strenuously argued, and would continue to argue, among other things, that: (a) Exela's relationship with SourceHOV is not proof of governance deficiencies and did not lead to misstatements; (b) Exela's calculations of Adjusted EBITDA did not mislead investors; (c) Lead Plaintiff could not show Defendants' knowledge of falsity regarding Exela's revenue visibility, margins, and guidance disclosures; and (d) Defendants did not knowingly or recklessly misrepresent Exela's liability in connection with the Appraisal Action.

48.    While Lead Plaintiff sufficiently alleged and believed they were building a strong circumstantial case, there was no guarantee that documents and deposition testimony obtained during fact discovery would be sufficient to withstand Defendants' motion for summary judgment on any of Lead Plaintiff's three theories of liability, let alone on all three. Additionally, if Lead Plaintiff advanced past summary judgment and proceeded to trial, substantial uncertainty remains as to how a trier of fact would view each side's narrative of the events at issue.

49.    For example, Lead Plaintiff's entire case was dismissed in response to Defendants' first motion to dismiss. ECF No. 43. While Lead Plaintiff believed he remedied all previously-identified pleading deficiencies in the SAC, the Court only specifically sustained Lead Plaintiff's allegations relating to Defendants' statements about Exela's revenue visibility, and specifically declined to comment on the other categories of false statements. The Court stated:

> Because the court holds that plaintiffs have pleaded a plausible Exchange Act and Rule 10b-5 claim based on the theory of 90% revenue visibility, it does not reach, and expresses no view about, whether plaintiffs have rectified the deficiencies in their other theories, which the court rejected in *Shen I*. Nor, of course, does the court suggest a view about whether plaintiffs can or cannot prevail at the summary judgment stage or at trial.

ECF No. 59 at 21.

### C.      Risks to Proving Damages

50.      Even if Lead Plaintiff was successful in establishing liability, he would still face substantial risks in establishing damages on a classwide basis.  For example, Defendants would certainly have disputed damages by claiming that there was no causal connection between Exela's allegedly misleading disclosures and drops in the Company's stock price, and even if there were such a connection, the damages suffered by the putative class were a mere fraction of the amount sought by Lead Plaintiff.

51.      More specifically, damages in this case were particularly complex as they rested on a series of seven (7) partial corrective disclosures causing ten (10) price drops.  *See* SAC ¶¶326-345.  The first five (5) alleged corrective disclosures related only to Lead Plaintiff's alleged theory of misrepresentations of Exela's adjusted EBITDA figures.  If Lead Plaintiff were unable to prevail on the merits of their adjusted EBITDA claims, these alleged price drops would be excluded from damages.  In addition, a number of the alleged price drops were associated with corrective disclosures that revealed multiple pieces of news, which would, in turn, likely implicate complicated issues of price disaggregation.  For example, the alleged corrective disclosures on August 9, 2019 and November 13, 2019 allegedly revealed corrective information relating to both adjusted EBITDA and Defendants' revenue visibility statements.  Defendants likely would have argued that  the reduction in adjusted EBITDA was a far likelier cause of the stock price declines than the decline in pass-through postage revenue, such that if Lead Plaintiff were unable to prevail on his adjusted EBITDA claims, he would have to disaggregate the impact of that news from any resulting damages.  This is a particularly prescient concern here, as Lead Plaintiff's ***total alleged damages*** associated with the price drops following the revenue-

16

related disclosures (*i.e.*, the only alleged theory of Exchange Act violations specifically sustained by the Court) are approximately $38.1 million, and this amount does not account for disaggregation of other valuation-relevant information contained in the disclosures. In other words, if Lead Plaintiff were unable to prevail in proving liability and damages associated with **each** of his three theories of fraud, potential recoverable damages risked being substantially lower.

### D.     Other Risks, Including Trial And Appeals

52.     Lead Plaintiff would have had to prevail at several stages of litigation, each of which would have presented significant risks in complex class actions such as this one. Lead Counsel knows from experience that despite the most vigorous and competent efforts, success in complex litigation such as this case is never assured. For instance, GPM lost a six-week antitrust jury trial in the Northern District of California after five years of litigation, which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs. *See In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal.). Put another way, complex litigation is uncertain, and success in cases like this one is never guaranteed.

53.     Even if Lead Plaintiff succeeded in proving all elements of his case at trial and obtained a jury verdict, Defendants would almost certainly have appealed. An appeal not only would have renewed risks faced by Lead Plaintiff—as Defendants would have reasserted their arguments summarized above—but also would have resulted in significant additional delay and increased litigation costs. Given these significant litigation risks, Lead Plaintiff and his counsel believe the Settlement represents a fair result for the Settlement Class.

E.    **The Settlement Is Reasonable In Light Of Potential Recovery In The Action**

54.    In addition to the attendant risks of litigation discussed above, the Settlement is also fair and reasonable in light of the potential recovery of available damages.  If Lead Plaintiff had fully prevailed in each of his claims at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Lead Plaintiff's damages theory—*i.e.*, Lead Plaintiff's best-case scenario—estimated total *maximum* damages are approximately $68 million.  However, if only the damages that pertained to Defendants' revenue visibility statements (*i.e.*, the only statements that the Court specifically found to be actionable in *Shen II*) are considered, the maximum damages potentially available would decrease to $38.1 million, and this figure does not account for disaggregation of non-fraud-related news.  Under these scenarios, the Settlement represents a recovery of 7.4% to 13.1% of the Settlement Class's *maximum* estimated damages, without accounting for likely disaggregation arguments.  Such a recovery is *well above* the 3.8% - 5.2% median percentage recovery of total damages in securities class actions settlements with similar potential damages. *See* App., Ex. 5 (Janeen McIntosh, Svetlana Starykh, and Edward Flores *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023), at 17, Fig. 18 (median recovery for securities class actions that settled between December 2011 and December 2022 was 3.8% for cases with estimated damages between $50-$99 million, and 5.2% for those with estimated damages of $20-$49 million)).

IV.    **PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING THE NOTICE PROGRAM**

55.    The Preliminary Approval Order directed that the postcard notice highlighting key information regarding the proposed Settlement (the "Postcard Notice") be disseminated to the

18

Settlement Class.[5]  ECF No. 94.  The Preliminary Approval Order also set a deadline of November 16, 2023 (21 calendar days prior to the final fairness hearing) for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, and/or the Attorneys' Fee Motion or to request exclusion from the Settlement Class, and set a final fairness hearing date of December 7, 2023 (the "Settlement Hearing").

56.    Pursuant to the Preliminary Approval Order, Lead Counsel instructed Epiq, the Court-approved Claims Administrator, to begin disseminating copies of the Postcard Notice and publish the Summary Notice.  Contemporaneously with the mailing of the Postcard Notice, Lead Counsel instructed Epiq to post downloadable copies of the Notice of  (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and Proof of Claim and Release Form (the "Claim Form"; and together with the Notice, the "Notice Packet") online at www.ExelaSecuritiesLitigation.com (the "Settlement Website").[6]  Upon request, Epiq mailed copies of the Notice and/or Claim Form to Settlement Class Members and will continue to do so until the deadline to submit a Claim Form has passed.

57.    The Postcard Notice directed Settlement Class Members to the Settlement Website to obtain additional information on the Settlement, including how to file a claim and access to downloadable versions of the Notice and Claim Form.  The Notice contains, among other things, a description of the Action; the definition of the Settlement Class; a summary of the terms of the Settlement and the proposed Plan of Allocation; and a description of a Settlement Class Member's right to participate in the Settlement, object to the Settlement, the Plan of Allocation and/or the Attorneys' Fee Motion, or to exclude themselves from the Settlement

---

[5] A copy of the Postcard Notice is attached as Exhibit A to the Webb Decl.

[6] Copies of the Notice and Claim Form are attached as Exhibit B to the Webb Decl.

24

Class.  The Notice also informs Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund, and for reimbursement of Litigation Expenses in an amount not to exceed $430,000 which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff related to his representation of the Settlement Class.

58.     On August 27, 2023, Epiq received the names and addresses of potential Settlement Class Members from Exela's transfer agent, as required by ¶7(a) of the Preliminary Approval Order.  The data received resulted in 254 mailing records (the "Record Holder List"). On September 26, 2023, Epiq disseminated copies of the Postcard Notice to each of the 254 potential Settlement Class Members on the Record Holder List by first-class mail.  *See* Webb Decl., ¶5.

59.     In addition, Epiq maintains a proprietary database with names and addresses of the largest and most common banks, brokers, and other nominees ("Broker Mailing Database"). At the time of the initial mailing, Epiq's Broker Mailing Database contained 1,018 mailing records. *Id.* at ¶4.  On September 26, 2023, Epiq caused the Notice Packet to be sent by first class mail to the 1,018 addresses whose mailing records were contained in the Broker Mailing Database.  *Id.* at ¶6.

60.     Through October 30, 2023, Epiq received an additional 381 names and addresses of potential Settlement Class Members from individuals or brokerage firms, banks, institutions, and other nominees.  Epiq also received requests from brokers and other nominee holders for 222 Postcard Notices to be forwarded by the nominees to their customers.  *Id.* at ¶8.

61.     Additionally, Epiq provided a link to the Notice and Claim Form to one (1) nominee who requested a link.  *Id.* at ¶8.

20

25

62.     In sum, as of October 30, 2023, notice of the Settlement has been disseminated to 1,876 potential Settlement Class Members and nominees.  *Id.* at ¶9.

63.     On October 2, 2023, in accordance with the Preliminary Approval Order, Epiq caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*.  *Id.* at ¶10; App., Ex. 2-C (copies of publication confirmations).

64.     Lead Counsel also caused Epiq to establish the Settlement Website, which became operational on or about September 26, 2023, and maintained a toll-free telephone number to provide Settlement Class Members with information concerning the Settlement, submit a claim online, download copies of the Notice and Claim Form, as well as copies of the Stipulation, Preliminary Approval Order, and the SAC.  As of October 30,2023, Epiq has received a total of 15 calls to the toll-free number, all promptly responded to, and there have been 312 unique visitors to the Settlement Website. Webb Decl. at ¶¶11-17.

65.     The deadline for Settlement Class Members to object to the Settlement, Plan of Allocation, and/or to the Attorneys' Fee Motion or to request exclusion from the Settlement Class is November 16, 2023.  To date, no requests for exclusion have been received.  *Id.* at ¶18. Epiq will file a supplemental affidavit after the November 16, 2023, deadline addressing whether any requests for exclusion have been received.  In addition, to date, no objections to the Settlement or the Plan of Allocation have been entered on this Court's docket or have otherwise been received by Plaintiff's Counsel.  Lead Counsel will file reply papers by November 30, 2023, that will address any objections that may be received.

## V.     ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT

66.     Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Settlement Class Members who want to participate in the distribution of the Net Settlement Fund

(*i.e.*, the $5 million Settlement Amount, plus interest earned thereon less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court (which may include reimbursement to Lead Plaintiff for costs and expenses incurred in representing the Settlement Class); and (iv) any attorneys' fees awarded by the Court) must submit a valid Claim Form with all required information postmarked no later than January 24, 2024. *See* App., Ex. 2-B (Notice at p. 3, and ¶48). As set forth in the Notice, the Net Settlement Fund will be distributed among Settlement Class Members according to the plan of allocation approved by the Court.

67. The proposed Plan of Allocation is detailed in the Notice. *See* App., Ex. 2-B (Notice at pp. 10-12). The Notice is posted online at the Settlement Website, is downloadable, and upon request, will be mailed to any potential Settlement Class Member. The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund to those Settlement Class Members who suffered economic losses as a proximate result of the alleged violations of the Exchange Act, as opposed to losses caused by market, industry, Company-specific factors or factors unrelated to the alleged violations of law, and takes into consideration when each Authorized Claimant purchased and/or sold Exela securities. *See* App., Ex. 2-B (Notice at ¶59).

68. As described in the Notice, calculations under the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial or estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. Instead, the calculations under the Plan of Allocation are a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund. App., Ex. 2-B (Notice at ¶60).

69. The Plan of Allocation is based on an out-of-pocket theory of damages consistent

22

27

with Section 10(b) of the Exchange Act and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability and damages asserted in the Action.  More specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiff's allegation that the price of Exela common stock was artificially inflated during Settlement Class Period due to Defendants' alleged materially false and misleading statements and omissions. The Plan of Allocation is based on the premise that the decreases in the price of Exela common stock following the alleged corrective disclosures, *i.e.*, the price drops on  November 9, 2018, March 19, 2019, March 20, 2019, May 10, 2019, May 22, 2019, May 23, 2019, August 9, 2019, November 13, 2019, March 17, 2020 and March 18, 2020, may be used to measure the alleged artificial inflation in the price of Exela common stock prior to these disclosures.  App., Ex. 2-B (Notice at ¶61).

70.    Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its, *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  App., Ex. 2-B (Notice at ¶74).

71.    An individual Claimant's recovery under the Plan of Allocation will depend on several factors, including the number of valid claims filed by other Claimants and how many shares of Exela common stock the Claimant purchased, acquired, or sold during the Settlement Class Period and when that Claimant bought, acquired, or sold the shares.  If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Exela stock during the Settlement Class Period, or if the Claimant purchased shares during the Settlement Class Period, but did not hold any of those shares through at least one of the alleged corrective disclosures, the

23

Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the revelation of the alleged fraud. Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members who submit valid claims.

72.    If the prorated payment to be distributed to any Authorized Claimant is less than $10.00, no distribution will be made to that Authorized Claimant. App., Ex. 2-B (Notice at ¶74). Any prorated amounts of less than $10.00 will be included in the pool distributed to those Authorized Claimants whose prorated payments are $10.00 or greater. In Lead Counsel's experience, processing and sending a check for less than $10.00 is cost-prohibitive.[7]

73.    In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Exela common stock that were attributable to the conduct alleged in the SAC. Accordingly, Lead Counsel respectfully submits that the Plan of Allocation is fair and reasonable and should be approved by the Court.

74.    As noted above, as of October 30, 2023, a total of 1,876 copies of the Postcard Notice or Notice Packet have been sent to potential Settlement Class Members and nominees. *See* Webb Decl. at ¶8. To date, no objections to the proposed Plan of Allocation have been received or filed on the Court's docket.

---

[7] If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will be conducted as long as they are cost effective. App., Ex. 2-B (Notice at ¶75). At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court.

## VI.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

75.    In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel are applying for a fee award of 33⅓% of the Settlement Fund (or $1,666,666, plus interest earned at the same rate as the Settlement Fund).    Lead Counsel also request reimbursement of Litigation Expenses in the amount of $385,978.11, which includes $360,978.11 in out-of-pocket expenses that Lead Counsel incurred in connection with the prosecution of the Action, and  $25,000 to the Lead Plaintiff  for his costs, including for time spent, incurred in connection with his representation of the Settlement Class.[8]    The total Litigation Expenses amount of $385,978.11   is well below the maximum expense amount of $430,000 set forth in the Notice.  The legal authorities supporting a 33⅓% fee award are set forth in the accompanying Attorneys' Fee Motion, which is being filed contemporaneously herewith. The primary factual bases for the requested fee and reimbursement of Litigation Expenses are summarized below.

### A.    The Fee Application

76.    Lead Counsel are applying for a percentage-of-the-common-fund fee award to compensate Plaintiff's Counsel for the services they rendered on behalf of the Settlement Class. As set forth in the accompanying Attorneys' Fee Motion, the percentage method is the best method for determining a fair attorneys' fee award, because unlike the lodestar method, it aligns the lawyers' interest with that of the Settlement Class in achieving the maximum recovery.  The lawyers are motivated to achieve maximum recovery in the shortest amount of time required under the circumstances.  This paradigm minimizes unnecessary drain on the Court's resources.

---

[8] The Kendall Law Group is not seeking reimbursement of expenses.

25

Notably, the percentage-of-the-fund method has been recognized as appropriate by the Supreme Court and the Fifth Circuit for cases of this nature.

77.    Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submit that the requested fee award is fair and reasonable and should be approved.  As discussed in the Attorneys' Fee Motion, a 33⅓% fee award is well within the range of percentages awarded in securities class actions with comparable settlements in this Circuit.

### 1.    The Outcome Achieved is the Result of the Significant Time and Labor that Plaintiff's Counsel Devoted to the Action

78.    Attached to the Appendix as Exhibits 3 and 4 are declarations from Plaintiff's Counsel in support of an award of attorneys' fees and reimbursement of Litigation Expenses. Included within each supporting declaration is a schedule summarizing the hours and lodestar of each firm from the inception of the case through October 30, 2023, and a firm resume.[9]  GPM's declaration also includes a summary of expenses by category.  The following is a chart of lodestar amounts for Plaintiff's Counsel:

| LAW FIRM: | LODESTAR |
|---|---|
| Glancy Prongay & Murray LLP | $4,033,796.00 |
| Kendall Law Group, PLLC | $23,800.00 |
| TOTAL LODESTAR | $4,057,596.00 |

79.    The hourly rates for the attorneys and professional support staff are similar to the rates that have been accepted by other Courts in the Fifth Circuit in the context of a lodestar cross-check in other securities litigation.  Additionally, the rates billed by Plaintiff's Counsel attorneys (ranging from $850-1,100 per hour for partners, $550-700 per hour for associates, and

---

[9] Time expended in preparing the application for fees and reimbursement of Litigation Expenses has not been included.

$410-425 for staff attorneys) are comparable to peer plaintiff and defense firms litigating matters of similar magnitude. *See* App., Ex. 7 (table of peer law firm billing rates).

80.     As set forth above and in detail in Exhibits 3 and 4 to the Appendix, Plaintiff's Counsel have collectively expended a total of 6,637.45 hours in the investigation and prosecution of the Action through and including October 30, 2023.   The resulting total lodestar is $4,057,596.00.   The requested fee amount of 33⅓% of the Settlement Fund equals $1,666,666 (plus interest earned at the same rate as the Settlement Fund), and therefore represents a fractional multiplier of 0.42 of Plaintiff's Counsel's lodestar.   A fractional multiplier of 0.42 is a strong indication of the reasonableness of the requested fee.

81.     Moreover, if the Court grants final approval, the multiplier will continue decline as Plaintiff's Counsel work towards effectuating the Settlement.   Among other things, Plaintiff's Counsel will continue working with the Claims Administrator to resolve issues with Settlement Class Member claims, will respond to shareholder inquiries, will draft and file a motion for distribution, and will oversee the distribution process.   No additional compensation will be sought for this work.

82.     As detailed above, throughout this case, Lead Counsel devoted substantial time to the prosecution of the Action.   Lead Counsel maintained control of, and monitored the work performed by, lawyers and other personnel on this case.   I personally devoted substantial time to this case and oversaw and/or was personally involved in drafting or reviewing and editing all pleadings, court filings, various discovery-related materials, meditation statements, and other correspondence prepared on behalf of Lead Plaintiff(s), communicating with Lead Plaintiff(s) on a regular basis, engaging with Defendants' counsel on a variety of matters, and was intimately involved in settlement negotiations.   Other experienced attorneys were involved with drafting,

27

32

reviewing and/or editing pleadings, court filings, various discovery-related materials, and the mediation submissions, communicated with Lead Plaintiff(s), the mediation process, negotiating the terms of the Stipulation, and other matters. More junior attorneys, staff attorneys and paralegals also worked on matters appropriate to their skill and experience level. Throughout the litigation, Lead Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this litigation.

83.    I respectfully submit that given the time and labor invested in this case by Plaintiff's Counsel, the requested fee is reasonable under either a percentage-of-the-fund or lodestar analysis and should be approved.

### 2.    The Significant Risks Borne by Plaintiff's Counsel

84.    This prosecution was undertaken by Plaintiff's Counsel on an entirely contingent-fee basis. From the outset, this Action was an especially difficult and highly uncertain securities case. There was no guarantee that Plaintiff's Counsel would ever be compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Plaintiff's Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, that funds were available to compensate attorneys and staff, and that the considerable litigation costs required by a case like this one were covered. With an average lag time of many years for complex cases like this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Plaintiff's Counsel received no compensation during the course of the Action and Lead Counsel incurred $360,978.11 in out-of-pocket litigation-related expenses in prosecuting the Action.

85.   Additionally, Lead Plaintiff and Plaintiff's Counsel developed and then alleged the Exchange Act claims without information gained through subpoena power and hindered by the PSLRA's automatic discovery stay.

86.   Moreover, despite the most vigorous and competent of efforts, success in contingent-fee litigation like this one is never assured.  Plaintiff's Counsel know from experience that the commencement of a class action does not guarantee a settlement.  *See supra*, ¶52.  On the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels.

87.   Plaintiff's Counsel's extensive efforts in the face of substantial risks and uncertainties have resulted in a significant recovery for the benefit of the Settlement Class.  In circumstances such as these, and in consideration of the hard work and the result achieved, I respectfully submit that the requested fee is reasonable and should be approved.

> **3.   The Experience And Expertise Of Plaintiff's Counsel And The Standing And Caliber of Defendants' Counsel**

88.   As demonstrated by the firm resumes, attached to the Appendix as Exhibits 3-C and 4-B, Plaintiff's Counsel are highly experienced and skilled laws firms that focus their practices on securities class action litigation.  Indeed, Plaintiff's Counsel have substantial experience in litigating securities fraud class actions and have negotiated scores of other class settlements, which have been approved by courts throughout the country.  Plaintiff's Counsel enjoy well-deserved reputations for skill and success in the prosecution and favorable resolution of securities class actions and other complex civil matters.  I believe Plaintiff's Counsel's experience added valuable leverage in the settlement negotiations.

89.     Additionally, the quality of the work performed by Plaintiff's Counsel in obtaining the Settlement should also be evaluated in light of the quality of the opposition.  Here, Defendants are represented by Norton Rose Fulbright LLP (US), a prestigious and well-respected defense firm that vigorously and ably defended the Action.  In the face of this experienced and formidable opposition, Lead Counsel were able to develop a case that was sufficiently strong to nonetheless persuade Defendants to settle the case on terms that were highly favorable to the Settlement Class.

### 4.     Public Policy Interests, Including The Need To Ensure The Availability Of Experienced Counsel In High-Risk Contingent Securities Cases

90.     Courts consistently recognize that it is in the public interest to have experienced and able counsel to enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies.  As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private investors, particularly large investors, take an active role in protecting the interests of shareholders.  If this important public policy is to be carried out, courts should award fees that adequately compensate plaintiff's counsel, taking into account the risks undertaken in prosecuting a particular securities class action.  Relatedly, it is long-recognized public policy that settlement is to be encouraged, including the resolution of fee applications that fairly and adequately compensate the counsel who bear the risks and dedicate the time, financial investment, and expertise necessary to achieve those settlements

### 5.     The Reaction Of The Settlement Class Support Lead Counsel's Fee Request

91.     As noted above, notice has been provided to 1,876 potential Settlement Class Members or their nominees informing them that Lead Counsel would apply for an award of

30

35

attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund.  Webb Decl. ¶9; App., Ex. 2-A (Postcard Notice); App., Ex. 2-B (Notice).  In addition, the Court-approved Summary Notice has been published in *Investor's Business Weekly* and transmitted over the *PR Newswire*. Webb Decl. at ¶10; App., Ex. 2-C (confirmation of Summary Notice publication).  To date, no objections to the maximum potential attorneys' fees request set forth in the Postcard Notice or Notice have been received or entered on this Court's docket.  Any objections received after the date of this filing will be addressed in Lead Counsel's reply papers to be filed by November 30, 2023.

**B.     Reimbursement Of The Requested Litigation Expenses Is Fair And Reasonable**

92.     Lead Counsel seeks a total of $385,978.11 in Litigation Expenses to be paid from the Settlement Fund.  This amount includes: $360,978.11 in out-of-pocket expenses reasonably and necessarily incurred by Lead Counsel in connection with commencing, litigating, and settling the claims asserted in the Action; as well as  $25,000 to Dr. Insur Shamgunov, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), for time spent prosecuting the Action on behalf of the Settlement Class.

93.     Lead Counsel is seeking reimbursement of a total of $360,978.11 in out-of-pocket costs and expenses.  The following is a breakdown by category of all expenses incurred by Lead Counsel:

| CATEGORY OF EXPENSE | AMOUNT PAID |
| --- | --- |
| COURIER AND SPECIAL POSTAGE | 340.18 |
| COURT FILING FEES | 847.50 |
| DOCUMENT MANAGEMENT | 63,169.28 |
| EXPERTS - ACCOUNTING | 64,991.25 |
| EXPERTS - ECONOMICS (LOSS CAUSATION/DAMAGES/PLAN OF ALLOCATION) | 24,537.00 |
| EXPERTS - ECONOMICS (MARKET EFFICIENCY/CLASS CERT) | 113,259.00 |

31

| | |
|---|---|
| INVESTIGATIONS | 26,631.70 |
| MEDIATORS | 19,531.38 |
| ONLINE RESEARCH | 34,176.01 |
| SERVICE OF PROCESS | 2,405.96 |
| TRANSCRIPTS | 8,507.20 |
| TRAVEL AIRFARE | 1,281.56 |
| TRAVEL HOTEL | 1,026.29 |
| TRAVEL MEALS | 273.80 |
| **Grand Total** | **360,978.11** |

94.     The Postcard Notice and long-form Notice informed potential Settlement Class Members that Lead Counsel would be seeking reimbursement of Litigation Expenses in an amount not to exceed $430,000.  The total amount requested by Lead Counsel and Lead Plaintiff, $385,978.11, falls well below the $430,000 that Settlement Class Members were advised could be sought.  To date, no objections have been raised as to the maximum amount of expenses set forth in the Postcard Notice and Notice.  If any objection to the request for reimbursement of Litigation Expenses is made after the date of this filing, Lead Counsel will address it in its reply papers.

95.     From the beginning of the case, Plaintiff's Counsel were aware that they might not recover their out-of-pocket expenses.  Plaintiff's Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of funds advanced to prosecute this Action.  Accordingly, Plaintiff's Counsel were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

96.     The largest component of expenses, $202,787.25, or approximately 56.18% of the total expenses, was expended on the retention of experts in the fields of accounting, damages and loss causation, and market efficiency.  These experts were consulted at different points throughout the litigation, including on matters related to the preparation of the FAC and SAC, a

report on market efficiency in support of Lead Plaintiff's motion for class certification, on matters relating to the negotiation of the Settlement, and on preparation of the proposed Plan of Allocation.

97.     Additionally, Lead Counsel paid $19,531.38 in mediation fees to Mr. Melnick for the services Mr. Melnick provided in connection with the mediation and subsequent negotiations of the Settlement, which is approximately 5.4% of the total expenses incurred.

98.     The other litigation expenses for which Lead Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These litigation expenses included, among other things, court fees, service of process costs, the cost of a document review database, postage and delivery expenses, private investigator expenses, and the cost of on-line legal research.

99.     Finally, as stated above, Lead Plaintiff, Dr. Insur Shamgunov seeks reimbursement, pursuant to the PSLRA, for his reasonable costs (including lost wages) directly incurred in connection with his representation of the Settlement Class, in the amount of $25,000. Dr. Shamgunov worked closely with Lead Counsel throughout the pendency of this Action in connection with his service as Lead Plaintiff.  Dr. Shamgunov conservatively estimates that in his capacity as a Lead Plaintiff he dedicated 73 hours to the prosecution of this Action by, among other things: (a) producing his trading records to Lead Counsel; (b) moving to be appointed as one of the lead plaintiffs in this Action; (c) regularly communicating with GPM attorneys regarding the posture and progress of the case; (d) reviewing all significant pleadings and briefs filed in the Action; (e) reviewing the Court's orders and discussing them with Lead Counsel; (f) providing documents, and written responses and objections to Defendants' requests for the production of documents; (g) responding to interrogatories; (h) preparing for deposition and

being deposed; (i) moving for class certification; (j) consulting with GPM attorneys regarding the settlement negotiations; and (k) evaluating and approving the proposed Settlement. A true and correct copy of Dr. Shamgunov's Declaration attesting to these facts is attached to the Appendix as Exhibit 8.

100.    To date, no objections to the Litigation Expenses have been filed on the Court's docket. In my opinion, the Litigation Expenses incurred by Lead Counsel and Lead Plaintiff were reasonable and necessary to represent the Settlement Class and achieve the Settlement. Accordingly, I respectfully submit that the Litigation Expenses should be reimbursed in full from the Settlement Fund.

## VII.    CONCLUSION

101.    In view of the significant recovery for the Settlement Class and the substantial risks of this Action, as described herein and in the accompanying Final Approval Motion, I respectfully submit that the Settlement should be approved as fair, reasonable, and adequate and the proposed Plan of Allocation should be approved as fair and reasonable. I further submit that the requested fee in the amount of 33⅓% of the Settlement Fund should be approved as fair and reasonable, and the request for reimbursement of $385,978.11 in Litigation Expenses, including PSLRA reimbursement in the amount of $25,000 to Lead Plaintiff Dr. Insur Shamgunov, should also be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this 2nd day of November, 2023, at Los Angeles, California.

*s/ Kara M. Wolke*
_____
KARA M. WOLKE

34

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADA<br><br>Defendants | Case No. 3:20-CV-00691-D<br><br>**CLASS ACTION** |

**DECLARATION OF SUSANNA WEBB REGARDING: (A) MAILING OF THE POSTCARD NOTICE; (B) MAILING OF THE NOTICE AND PROOF OF CLAIM FORM; (C) PUBLICATION OF THE SUMMARY NOTICE; (D) CALL CENTER SERVICES; (E) SETTLEMENT WEBSITE; AND (F) REPORT ON REQUESTS FOR EXCLUSION AND OBJECTIONS**

41

I, Susanna Webb, declare and state as follows:

1.      I am a Project Manager employed by Epiq Class Action & Claims Solutions, Inc. ("Epiq").  Pursuant to the Court's August 21, 2023, Order Preliminary Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), Epiq was authorized to act as the Claims Administrator in connection with the Settlement of the above-captioned action (the "Action").[1] ECF No. 94, ¶7.  The following statements are based on my personal knowledge and information provided by other Epiq employees working under my supervision, and if called on to do so, I could and would testify competently hereto.

## DISSEMINATION OF NOTICE

2.      In accordance with ¶7(b) of the Preliminary Approval Order, as described below, Epiq mailed the Postcard Notice to potential Settlement Class Members via the United States Postal Service.  A copy of the Postcard Notice is attached as Exhibit A.

3.      On August 27, 2023, Epiq received the names and addresses of potential Settlement Class Members from Exela's transfer agent, as required by ¶7(a) of the Preliminary Approval Order.  The data received resulted in 254 mailing records (the "Record Holder List").

4.      Additionally, as in most securities class actions of this nature, the vast majority of potential Settlement Class Members are expected to be beneficial purchasers whose securities are held in "street name" – *i.e.*, the securities are purchased by brokerage firms, banks, institutions, and other third-party nominees (collectively, "Nominees") in the name of the respective Nominees, on behalf of the beneficial purchasers.  Epiq maintains a proprietary database with the names and

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated July 27, 2023 (ECF No. 91-2 (p. 4-41)) (the "Stipulation").

addresses of the largest and most common Nominees (the "Broker Mailing Database").  At the time of the initial mailing, Epiq's Broker Mailing Database contained 1,018 mailing records.

5.      On September 26, 2023, Epiq caused the Postcard Notice to be mailed via first class U.S. mail, postage pre-paid, to the 254 mailing records on the Record Holder List.

6.      On September 26, 2023, Epiq also mailed via first class U.S. mail, postage pre-paid, the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim Form (the "Claim Form"; and together with the Notice, the "Notice Packet") to the 1,018 mailing records on the Broker Mailing Database.  A copy of the Notice Packet is attached as Exhibit B.

7.      The Notice (at ¶91) directed those who purchased or otherwise acquired publicly traded Exela common stock between March 16, 2018 and March 16, 2020, inclusive, for the beneficial interest of persons or organizations other than themselves to either: (a) within seven (7) calendar days of receipt of the Postcard Notice, request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; (b) request from the Claims Administrator a link to the Notice and Claim Form and, within seven (7) calendar days of receipt of the link, email the link to all such beneficial owners for whom valid email addresses are available; or (c) within seven (7) calendar days of receipt of the Postcard Notice, provide a list of the names and addresses of all such beneficial owners to *Exela Tech. Securities Litigation*, c/o Epiq Class Action & Claims Solutions, Inc., P.O. Box 2147, Portland, OR 97208-2147.

3

43

8.      Through October 30, 2023, Epiq has mailed an additional 381 Postcard Notices to potential Settlement Class Members whose names and addresses were provided to Epiq by individuals or Nominees requesting that Postcard Notices be mailed to such persons.  Epiq has mailed another 222 Postcard Notices to Nominees who requested Postcard Notices to forward to their customers.  Each of the requests was responded to in a timely manner, and Epiq will continue to timely respond to any additional requests received.  Moreover, Epiq has provided a link to the Notice and Claim Form to one (1) Nominee who requested a link.

9.      As of October 30, 2023: (a) a total of 857 Postcard Notices have been disseminated to potential Settlement Class Members and their Nominees by first class U.S. mail; (b) 1,018 Notice Packets have been mailed to Nominees; and (c) one link to the Notice and Claim Form was provided to a Nominee.  Accordingly, as of October 30, 2023, notice has been disseminated to 1,876 potential Settlement Class Members and Nominees.

## PUBLICATION OF THE SUMMARY NOTICE

10.     In accordance with ¶7(d) of the Preliminary Approval Order, on October 2, 2023, Epiq caused the Summary Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Summary Notice") to be published in *Investor's Business Weekly* and transmitted once over the *PR Newswire*.  Attached as Exhibit C is a Confirmation of Publication attesting to the publication of the Summary Notice in *Investor's Business Weekly* and an image of the web page article attesting to the transmittal of the Summary Notice over *PR Newswire*.

## CALL CENTER SERVICES

4

44

11.    Epiq reserved a toll-free telephone number for the Settlement, (888) 306-3146, which was set forth in the Postcard Notice, Notice, Claim Form, Summary Notice, and on the website dedicated to this Settlement, www.ExelaSecuritiesLitigation.com (the "Settlement Website").

12.    The toll-free telephone number connects callers with an Interactive Voice Recording ("IVR").  The IVR provides potential Settlement Class Members and others who call the toll-free telephone number access to additional information that has been pre-recorded.  The toll-free telephone line with pre-recorded information is available 24 hours-a-day, 7 days-a-week.  Specifically, the pre-recorded message provides callers with a brief summary of the Settlement and the option to select one of several more detailed recorded messages addressing frequently asked questions.  The IVR also allows callers to request a copy of the Notice Packet, or the caller may opt to speak live with a trained operator.  Callers are able to speak to a live operator regarding the status of the Settlement and/or obtain answers to questions they may have, Monday through Friday from 9:00 a.m. to 9:00 p.m. Eastern Time (excluding official holidays).

13.    Epiq made the IVR available on or about September 26, 2023, the same date Epiq began mailing the Notice Packets and Postcard Notices.

14.    As of October 30, 2023, Epiq has received a total of 15 calls to the toll-free number dedicated to the Settlement, including 3 that were handled by a live operator.  Epiq has promptly responded to each telephone inquiry and will continue to address potential Settlement Class Members' inquiries.

<strong><u>THE SETTLEMENT WEBSITE</u></strong>

15.    In accordance with ¶7(c) of the Preliminary Approval Order, Epiq, in coordination with Lead Counsel, designed, implemented, and currently maintains the Settlement Website

5

45

dedicated to the Action.  The address for the Settlement Website is set forth in the Notice, Postcard Notice, Claim Form, and Summary Notice.

16.     The Settlement Website became operational on or about September 26, 2023, and is accessible 24 hours-a-day, 7 days-a-week.  Among other things, the Settlement Website provides information regarding the proposed Settlement, including the exclusion, objection, and claim-filing deadlines and the date and time of the Court's Settlement Hearing, as well as instructions on how to attend the Settlement Hearing via teleconference.  The Settlement Website also includes a link to an online claim filing module through which Settlement Class Members can submit their claims. In addition, copies of the Notice, Claim Form, Settlement Agreement, Preliminary Approval Order, and other documents related to the Action are posted on the Settlement Website and are available for download.  Epiq will continue operating, maintaining and, as appropriate, updating the Settlement Website until the conclusion of this administration.

17.     As of October 30, 2023, there have been 312 unique visitors to the Settlement Website and 1,148 pageviews.

### REQUESTS FOR EXCLUSION AND OBJECTIONS

18.     Pursuant to paragraph 13 of the Preliminary Approval Order, Settlement Class Members who wish to be excluded from the Settlement Class are required to mail their written request for exclusion to Epiq so that the request is received by November 16, 2023.[2]  This deadline has not yet passed.  As of the date of this Declaration, Epiq has not received any requests for

---

[2] Information related to requesting exclusion, including the exclusion deadline, was set forth in the Notice and on the Settlement Website.  The exclusion deadline was set forth in the Postcard Notice and Summary Notice, both of which directed Settlement Class Members to the Notice for more information on requesting exclusion or objecting.

exclusion.  Epiq will submit a supplemental declaration after the November 16, 2023, deadline addressing any requests for exclusion.

19.     Pursuant to the paragraph 17 of the Preliminary Approval Order, objections are to be filed with the Court and mailed to counsel.  Epiq has not received any misdirected objections.

I declare under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.  Executed on October 30, 2023, at Louisville, Kentucky.

_Susanna Webb_

_____

Susanna Webb

7

47

# EXHIBIT A

In re Exela Tech. Securities Litigation
c/o [Copy] Class Action Document Solutions, Inc.
PO Box 2147
Portland, OR 97208-2147

**BARCODE NO-PRINT ZONE**

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO. 2882

*COURT-ORDERED LEGAL NOTICE*

**Important Notice about a Securities Class Action Settlement.**

**You may be entitled to a CASH payment. This Notice may affect your legal rights. Please read it carefully.**

*Bo Shen v. Exela Technologies, Inc., et al.*
Case No. 3:20-cv-00691-D

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

# Barcode No-Print Zone

There has been a proposed Settlement of claims against Exela Technologies, Inc. ("Exela") and certain executives and directors of Exela (collectively, the "Defendants"). The Settlement would resolve a lawsuit in which the Plaintiff alleges that Defendants disseminated materially false and misleading information to the investing public about Exela's financial condition, in violation of the federal securities laws. Defendants deny any wrongdoing. You received this Postcard Notice because you or someone in your family may have purchased or otherwise acquired Exela common stock between March 16, 2018 and March 16, 2020, inclusive, and been damaged thereby.

Defendants have agreed to pay a Settlement Amount of $5,000,000. The Settlement provides that the Settlement Fund, after deduction of any Court-approved attorneys' fees and expenses, notice and administration costs, and taxes, is to be divided among all Settlement Class Members who submit a valid Claim Form, in exchange for the settlement of this case and the Releases by Settlement Class Members of claims related to this case. **For all details of the Settlement, read the Stipulation and full Notice, available at www.ExelaSecuritiesLitigation.com.**

Your share of the Settlement proceeds will depend on the number of valid Claims submitted, and the number, size and timing of your transactions in Exela common stock. If every eligible Settlement Class Member submits a valid Claim Form, the average recovery will be $0.09 per eligible share before expenses and other Court-ordered deductions. Your award will be determined *pro rata* based on the number of claims submitted. This is further explained in the detailed Notice found on the Settlement website.

**To qualify for payment, you must submit a Claim Form**. The Claim Form can be found on the website www.ExelaSecuritiesLitigation.com or will be mailed to you upon request to the Claims Administrator (888-306-3146). **Claim Forms must be postmarked by <u>January 24, 2024</u>**. If you do not want to be legally bound by the Settlement, you must exclude yourself by November 16, 2023, or you will not be able to sue the Defendants about the legal claims in this case. If you exclude yourself, you cannot get money from this Settlement. If you want to object to the Settlement, you may file an objection by November 16, 2023. The detailed Notice explains how to submit a Claim Form, exclude yourself or object.

The Court will hold a hearing in this case on December 7, 2023 to consider whether to approve the Settlement and a request by the lawyers representing the Settlement Class for up to 33⅓% of the Settlement Fund in attorneys' fees, plus actual expenses up to $430,000 for litigating the case and negotiating the Settlement, and reimbursement of Plaintiffs' costs and expenses related to their representation of the Settlement Class in an amount not to exceed $25,000. You may attend the hearing and ask to be heard by the Court, but you do not have to. For more information, call toll-free (888-306-3146) or visit the website www.ExelaSecuritiesLitigation.com and read the detailed Notice.

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated, <br><br>      Plaintiffs, <br><br>      v. <br><br> EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA <br><br>      Defendants. | Case No. 3:20-cv-00691-D |

**NOTICE OF (I) PENDENCY OF CLASS ACTION, CERTIFICATION OF SETTLEMENT CLASS, AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:** Please be advised that your rights may be affected by the above-captioned securities class action (the "Action") pending in the United States District Court for the Northern District of Texas (the "Court"), if, during the period between March 16, 2018 and March 16, 2020, inclusive (the "Settlement Class Period"), you purchased or otherwise acquired the publicly-traded common stock of Exela Technologies, Inc. ("Exela" or the "Company") and were damaged thereby (the "Settlement Class").[1]

**NOTICE OF SETTLEMENT:** Please also be advised that the Court-appointed lead plaintiff, Insur Shamgunov ("Lead Plaintiff"), on behalf of himself and the Settlement Class (as defined in ¶28 below), has reached a proposed settlement of the Action for $5,000,000 in cash that, if approved, will resolve all claims in the Action (the "Settlement").

**PLEASE READ THIS NOTICE CAREFULLY. This Notice explains important rights you may have, including the possible receipt of cash from the Settlement. If you are a member of the Settlement Class, your legal rights will be affected whether or not you act.**

**If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact Exela, any other Defendants in the Action, or their counsel. All questions should be directed to Lead Counsel or the Claims Administrator (*see* ¶ 92 below).**

1.   **Description of the Action and the Settlement Class:** This Notice relates to a proposed Settlement of claims in a pending securities class action brought by investors alleging, among other things, that defendants Exela, and Ronald Cogburn, Parvinder Chadha and James G. Reynolds (collectively, the "Individual Defendants"; and, together with Exela, the "Defendants") violated the federal securities laws by making false and misleading statements regarding Exela. A more detailed description of the Action is set forth in paragraphs 11-27 below. The proposed Settlement, if approved by the Court, will settle claims of the Settlement Class, as defined in paragraph 28 below.

2.   **Statement of the Settlement Class's Recovery:** Subject to Court approval, Lead Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle the Action in exchange for a settlement payment of $5,000,000 in cash (the "Settlement Amount") to be deposited into an escrow account. The Net Settlement Fund (*i.e.*, the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (a) any Taxes, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court, and (d) any attorneys' fees awarded by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class. The proposed plan of allocation (the "Plan of Allocation") is set forth on pages 10-14 below.

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 27, 2023 (the "Stipulation"), which is available at www.ExelaSecuritiesLitigation.com.

3.    **Estimate of Average Amount of Recovery Per Share:** Based on Lead Plaintiffs' damages, expert's estimates of the number of shares of Exela common stock purchased during the Settlement Class Period that may have been affected by the conduct at issue in the Action, and assuming that all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses and costs as described herein) per eligible share is $0.09. Settlement Class Members should note, however, that the foregoing average recovery per share is only an estimate. Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, the number of shares of Exela common stock they purchased, when and at what prices they purchased/acquired or sold their Exela common stock, and the total number of valid Claim Forms submitted. Distributions to Settlement Class Members will be made based on the Plan of Allocation set forth herein (*see* pages 10-14 below) or such other plan of allocation as may be ordered by the Court.

4.    **Average Amount of Damages Per Share:** The Parties do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiffs were to prevail in the Action. Among other things, Defendants do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by any members of the Settlement Class as a result of their conduct.

5.    **Attorneys' Fees and Expenses Sought:** Plaintiffs' Counsel, which have been prosecuting the Action on a wholly contingent basis since its inception in 2020, have not received any payment of attorneys' fees for their representation of the Settlement Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action. Court-appointed Lead Counsel, Glancy Prongay & Murray LLP, will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 33⅓% of the Settlement Fund. In addition, Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution and resolution of the claims against the Defendants, in an amount not to exceed $430,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class. Any fees and expenses awarded by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses. Estimates of the average cost per affected share of Exela common stock, if the Court approves Lead Counsel's fee and expense application, is $0.036 per eligible security.

6.    **Identification of Attorneys' Representatives:** Lead Plaintiffs and the Settlement Class are represented by Kara M. Wolke, Esq. of Glancy Prongay & Murray LLP, 1925 Century Park East, Suite 2100, Los Angeles, CA 90067, (888) 773-9224, settlements@glancylaw.com.

7.    **Reasons for the Settlement:** Lead Plaintiff's principal reason for entering into the Settlement is the substantial immediate cash benefit for the Settlement Class without the risk or the delays inherent in further litigation. Moreover, the substantial cash benefit provided under the Settlement must be considered against the significant risk that a smaller recovery – or indeed no recovery at all – might be achieved after contested motions, a trial of the Action and the likely appeals that would follow a trial. This process could be expected to last several years. Defendants, who deny all allegations of wrongdoing or liability whatsoever, are entering into the Settlement solely to eliminate the uncertainty, burden and expense of further protracted litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM POSTMARKED NO LATER THAN JANUARY 24, 2024.** | This is the only way to be eligible to receive a payment from the Settlement Fund. If you are a Settlement Class Member and you remain in the Settlement Class, you will be bound by the Settlement as approved by the Court and you will give up any Released Plaintiff's Claims (defined in ¶42 below) that you have against Defendants and the other Defendants' Releasees (defined in ¶43 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN NOVEMBER 16, 2023.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund. This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or the other Defendants' Releasees concerning the Released Plaintiff's Claims. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN NOVEMBER 16, 2023.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like them. You cannot object to the Settlement, the Plan of Allocation or the fee and expense request unless you are a Settlement Class Member and do not exclude yourself from the Settlement Class. |
| **GO TO A HEARING ON DECEMBER 7, 2023 AT 10:00 A.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN NOVEMBER 16, 2023.** | Filing a written objection and notice of intention to appear by November 16, 2023 allows you to speak in Court, at the discretion of the Court, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses. If you submit a written objection, you may (but you do not have to) attend the hearing and, at the discretion of the Court, speak to the Court about your objection. |
| **DO NOTHING.** | If you are a member of the Settlement Class and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement Fund. You will, however, remain a member of the Settlement Class, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |

## WHAT THIS NOTICE CONTAINS

Why Did I Get The Postcard Notice? ...........................................................................................................Page 4

What Is This Case About? ..............................................................................................................................Page 4

How Do I Know If I Am Affected By The Settlement? Who Is Included
    In The Settlement Class?...........................................................................................................................Page 5

What Are Lead Plaintiffs' Reasons For The Settlement?...............................................................................Page 6

What Might Happen If There Were No Settlement? .....................................................................................Page 7

How Are Settlement Class Members Affected By The Action And
    The Settlement?.........................................................................................................................................Page 7

How Do I Participate In The Settlement? What Do I Need To Do?.............................................................Page 9

How Much Will My Payment Be? ................................................................................................................Page 9

What Payment Are The Attorneys For The Settlement Class Seeking?
    How Will The Lawyers Be Paid?..............................................................................................................Page 14

What If I Do Not Want To Be A Member Of The Settlement Class?
    How Do I Exclude Myself?.......................................................................................................................Page 14

When And Where Will The Court Decide Whether To Approve The Settlement?
    Do I Have To Come To The Hearing? May I Speak At The Hearing If I
    Don't Like The Settlement?......................................................................................................................Page 15

What If I Bought Shares On Someone Else's Behalf? ..................................................................................Page 16

Can I See The Court File? Whom Should I Contact If I Have Questions? .................................................Page 16

## WHY DID I GET THE POSTCARD NOTICE?

8. The Court directed that the Postcard Notice be mailed to you because you or someone in your family or an investment account for which you serve as a custodian may have purchased or otherwise acquired publicly traded Exela common stock during the Settlement Class Period. The Court also directed that this Notice be posted online at www.ExelaSecuritiesLitigation.com and mailed to you upon request to the Claims Administrator. The Court has directed us to disseminate these notices because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement. Additionally, you have the right to understand how this class action lawsuit may generally affect your legal rights. If the Court approves the Settlement, and the Plan of Allocation (or some other plan of allocation), the claims administrator selected by Lead Plaintiff and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

9. The purpose of this Notice is to inform you of the existence of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so. It is also being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation and the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing"). *See* paragraphs 83-84 below for details about the Settlement Hearing, including the date and location of the hearing.

10. The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement and a plan of allocation, then payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing. Please be patient, as this process can take some time to complete.

## WHAT IS THIS CASE ABOUT?

11. This litigation stems from alleged violations of the federal securities laws. The alleged violations arise out of various statements the Defendants made which Lead Plaintiff alleged were false and/or misleading. These alleged false statements concerned three broad issues related to Exela's financial statements and financial performance: (1) whether the Defendants overstated the visibility that Exela management claimed to have into Exela's revenue; (2) whether the exclusion of various costs that Exela added back to its Adjusted EBITDA figures was misleading; and (3) whether and to what extent Exela had the ability to estimate its potential liability with respect to unrelated litigation that was then ongoing in the Delaware Court of Chancery (the "Appraisal Action").

12. The procedural history of this Action follows below.

13. On March 23, 2020, a class action complaint was filed in the United States District Court for the Northern District of Texas ("the Court"), styled *Bo Shen v. Exela Technologies Inc. et al.*, 3:20-cv-00691-D. The March 23, 2020, complaint alleged, in substance, that the Defendants made certain false statements about an undisclosed liability on Exela's financial statements that stemmed from the Appraisal Action.

14. Following the filing of the March 23, 2020 complaint, on May 22, 2020, Insur Shamgunov and Elena Shamgunova (collectively, "Lead Plaintiffs") filed a motion with the Court asking to be appointed lead plaintiffs, which the Court granted. The Court also approved their selection of Glancy Prongay & Murray LLP to serve as Lead Counsel for the putative class.

15. Following appointment as Lead Plaintiffs and Lead Counsel, Lead Counsel conducted an in-depth investigation into Exela and, on August 11, 2020, filed a 98-page Amended Complaint (the "Amended Complaint").

16. Unlike the initial complaint, which alleged just one theory of liability, the Amended Complaint alleged three theories of liability. *First*, Lead Plaintiffs alleged that even though Exela represented that it had 90% visibility into its revenue, in truth it did not — because at least 20% of Exela's revenue came from pass-through postage revenue, which the Company later admitted was unpredictable. *Second*, Lead Plaintiffs alleged that Exela improperly excluded certain costs from its Adjusted EBITDA, a measure of operating earnings, which misleadingly made Exela appear more profitable than it really was. *Third*, Lead Plaintiffs alleged that Exela failed to disclose a known liability that it had the ability to estimate related to the Appraisal Action.

17. According to the Amended Complaint, the alleged misrepresentations and omissions proximately caused class member losses when the truth was revealed over a series of partial corrective disclosures throughout the class period.

18. In response to the filing of the Amended Complaint, the Defendants asked the Court to dismiss Lead Plaintiffs' case in a motion to dismiss, which was filed on October 12, 2020. Lead Plaintiffs opposed the Defendants' motion to dismiss, and Defendants filed reply papers. On May 20, 2021, United States District Court Judge Sydney Fitzwater heard in-person oral arguments by the Parties.

19. Approximately one month later, the Judge Fitzwater granted the Defendants' motion to dismiss in a written opinion styled *Bo Shen v. Exela Techs., Inc.*, No. 3:20-CV-0691-D, 2021 WL 2589584, (N.D. Tex. June 24, 2021) ("*Shen I*"). Even though the Court granted the Defendants' motion to dismiss, it still gave Lead Plaintiffs an opportunity to amend their complaint to address perceived shortcomings that the Court identified in its *Shen I* opinion.

20. In response to the *Shen I* opinion and the Court's dismissal, Lead Plaintiffs continued their investigation and sought to address the perceived pleading deficiencies identified by *Shen I*. To that end, Lead Plaintiffs filed their 118-page Second Amended Complaint, or "SAC", on August 5, 2021.

21. While Lead Plaintiffs felt the SAC addressed the issues raised by the Court in *Shen I*, the Defendants filed another motion to dismiss on September 3, 2021, which Lead Plaintiffs again opposed. On January 19, 2022, the Court heard argument by counsel for the Parties on the Defendants' motion to dismiss the SAC. Two days later, the Court issued a ruling denying the Defendants' second motion to dismiss in a written order styled *Shen v. Exela Techs., Inc.*, No. 3:20-CV-0691-D, 2022 WL 198402 (N.D. Tex. Jan. 21, 2022) ("*Shen II*"). Following the denial of the Defendants' motion to dismiss the SAC, the case entered discovery, and soon after, Exela began turning over hundreds of thousands of documents—totaling more than 2.2 million pages by the time their document production was complete.

22. Following several months of discovery, on September 8, 2022, the Parties held a virtual mediation session that was overseen by a well-respected mediator of complex class actions, Jed Melnick, Esq. of JAMS. No agreement was reached during the mediation, and discovery continued, as did negotiations facilitated by Mr. Melnick over a potential settlement.

23. As the case progressed, one of the two Lead Plaintiffs, Elena Shamgunova, dismissed her case, leaving just one Lead Plaintiff, Insur Shamgunov. On April 14, 2023, Lead Plaintiff moved for class certification and sought appointment of Insur Shamgunov as the class representative.

24. During the course of discovery, the Parties continued to work towards a settlement with the assistance of Mr. Melnick. These negotiations culminated in a recommendation by Mr. Melnick that the Parties settle the Action for a $5.0 million cash payment to the Settlement Class in return for a release of the Settlement Class's claims against the Defendants. On June 3, 2023, the Parties accepted Mr. Melnick's recommendation.

25. Based on the investigation, litigation and mediation of the case and Lead Plaintiff's direct oversight of the prosecution of this matter and with the advice of his counsel, Lead Plaintiff has agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering, among other things: (a) the substantial financial benefit that Lead Plaintiff and the other members of the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

26. Defendants are entering into the Stipulation solely to eliminate the uncertainty, burden and expense of further protracted litigation. Each of the Defendants denies any fault, liability, or wrongdoing.

27. On August 21, 2023, the Court preliminarily approved the Settlement, authorized the Postcard Notice to be mailed to potential Settlement Class Members and this Notice to be posted online and mailed to potential Settlement Class Members upon request, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

### HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? WHO IS INCLUDED IN THE SETTLEMENT CLASS?

28. If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded. The Settlement Class consists of:

> all persons and entities who or which purchased or otherwise acquired publicly traded Exela common stock between March 16, 2018 and March 16, 2020, inclusive (the "Settlement Class Period"), and were damaged thereby.[2]

---

[2] During the Settlement Class Period, Exela common stock was listed and traded on the Nasdaq Stock Market, under the ticker symbol "XELA." After the Settlement Class Period, Exela common stock underwent three reverse stock splits (a 1-for-3 reverse split on January 26, 2021; a 1-for-20 reverse split on July 26, 2022; and a 1-for-200 reverse split on May 15, 2023). Herein, Exela common stock prices are *not* adjusted for any reverse stock splits.

Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) (i) Defendants; (ii) the legal representatives, heirs, successors, assigns, and Immediate Family members of the Individual Defendants; (iii) the parents, subsidiaries, assigns, successors, predecessors and affiliates of Exela; (iv) any person who served as an Officer and/or director of Exela during the Settlement Class Period; (v) any entity in which any of the foregoing (i)-(iv) excluded persons have or had a majority ownership interest during the Settlement Class Period; (c) any trust of which any Individual Defendants is the grantor or settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Family; and (d) Defendants' liability insurance carriers. Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in this Notice. *See* "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself?," on page 14 below.

**PLEASE NOTE: RECEIPT OF THE POSTCARD NOTICE DOES NOT MEAN THAT YOU ARE A SETTLEMENT CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.**

> **If you are a Settlement Class Member and you wish to be eligible to participate in the distribution of proceeds from the Settlement, you are required to submit the Claim Form that is available online at www.ExelaSecuritiesLitigation.com or which can be mailed to you upon request to the Claims Administrator, and the required supporting documentation as set forth therein, postmarked no later than January 24, 2024.**

## WHAT ARE LEAD PLAINTIFF'S REASONS FOR THE SETTLEMENT?

29.  Lead Plaintiff and Lead Counsel believe that the claims asserted against the Defendants have merit. They recognize, however, many offsetting factors such as the expense and length of the continued proceedings necessary to pursue their claims against the Defendants through trial and appeals, as well as the very substantial risks they would face in establishing liability and damages. For instance, as discussed above, Lead Plaintiffs alleged three areas about which Exela allegedly made false and/or misleading statements: Exela's revenue; its earnings (Adjusted EBITDA); and its balance sheet (the Appraisal Action liability). In 2021, when the Court initially dismissed Plaintiffs' case in *Shen I*, it found all three theories lacking in varying ways. Indeed, in *Shen I*, with respect to Lead Plaintiffs' Adjusted EBITDA theory, the Court held "at all times, Exela told the whole truth and nothing but about how it was calculating EBITDA and adjusted EBITDA."  Lead Plaintiffs disagreed with the Court's holding in *Shen I*, and further felt that Lead Plaintiffs' Second Amended Complaint addressed any prior pleading defects that may have existed, there would still be significant uncertainty as to whether the Court would even permit Lead Plaintiff's Adjusted EBITDA theory to continue beyond the Defendants' anticipated motion for summary judgment.

30.  Also, while the Court initially dismissed all three of Plaintiffs' theories in *Shen I,* in 2022, when the Court denied the Defendants' second motion for dismissal in *Shen II*, the Court only explicitly ruled for Plaintiffs on one of their three theories—the theory that related to Exela's revenue visibility. In other words, while the Court denied the Defendants' motion to dismiss in *Shen II*, it did not address whether Lead Plaintiffs adequately stated a claim apart from their revenue visibility theory. Thus, it is certainly possible that the Court harbored skepticism about two of Lead Plaintiff's three theories, including its Adjusted EBITDA theory—even after the Court's denial of the Defendants' motion to dismiss in *Shen II.*

31.  More broadly, for Lead Plaintiff to prevail on summary judgment, he would have to *prove* five elements of his case, while the Defendants need only prove one for Lead Plaintiff and the class to lose. Those five elements are: (1) falsity (*i.e.*, that the Defendants made false statements); (2) materiality (that the Defendants made false statements about a *material* fact); (3) scienter (that there was a strong, or cogent inference that the Defendants made such materially false statements on purpose, or recklessly); (4) loss causation (that the Defendants' materially false statements proximately caused the later decline in Exela's stock price, not something else—like a weakening business overall); and (5) damages.

32.  Each element had its respective risks. For instance, as discussed above, it is unclear whether the Court would ultimately find Lead Plaintiff's Adjusted EBITDA theory viable on falsity grounds. Moreover, in *Shen I*, the Court held that "[e]ven if plaintiffs had plausibly alleged that Exela's Adjusted EBITDA figures were false or misleading, the court would still grant defendants' motion to dismiss plaintiffs' claim based on Exela's Adjusted EBITDA figures because plaintiffs have not plausibly pleaded a strong inference of scienter."  Therefore, even if Lead Plaintiff could adequately prove falsity as to Exela's Adjusted EBITDA statements, he would still face a significant challenge in proving scienter.

33.  Even if the hurdles to establishing liability were overcome—*i.e.*, proving falsity, materiality, scienter, and loss causation, the amount of damages that could be attributed to the allegedly false statements would be hotly contested because other disclosures concerning Exela's financials were made at the time of the alleged disclosure of the alleged fraud. For instance, Lead Plaintiff would have to prove that it was the revelation that the Defendants lacked visibility into Exela's revenue, and not the reduction in revenue guidance itself (or any other bad news revealed at the time), that caused Exela's shares to fall. Such "disaggregation" issues were particularly potent here because many of the corrective disclosures that Lead Plaintiffs alleged revealed news that was relevant to more than one of their theories.

34.  Simply put, if the litigation were to continue, Lead Plaintiff would need to prevail on multiple elements, and at several stages—motions for class certification, summary judgment, and trial—in order to recovery anything. And if he prevailed at all those stages, he would likely face appeals—just as an appeal followed when Exela confronted unfavorable court rulings in the Appraisal Action. Thus, there were very significant risks attendant to the continued prosecution of the Action, and even if Lead Plaintiff prevailed, it would be several years in the future.

35.  In light of these risks and other considerations, the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class. Lead Plaintiff and Lead Counsel believe that the Settlement provides a substantial benefit to the Settlement Class, namely $5,000,000 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Action would produce a smaller, or no recovery after class certification, summary judgment, trial and appeals, possibly years in the future.

36.  The Defendants have denied the claims asserted against them in the Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever. The Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation. Accordingly, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

37.  If there were no Settlement and Lead Plaintiff failed to establish any essential legal or factual element of their claims against Defendants, neither Lead Plaintiff nor the other members of the Settlement Class would recover anything from Defendants. Also, if Defendants managed to prove any of their defenses, either at summary judgment, at trial or on appeal, the Settlement Class could recover substantially less than that provided by the Settlement, or perhaps nothing at all.

## HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED
## BY THE ACTION AND THE SETTLEMENT?

38.  As a Settlement Class Member, you are represented by Lead Plaintiff and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense. You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her appearance on the attorneys listed in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," on page 15 below.

39.  If you are a Settlement Class Member and do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section entitled, "What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself?," on page 14 below.

40.  If you are a Settlement Class Member and you wish to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," below.

41.  If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court. If the Settlement is approved, the Court will enter a judgment (the "Judgment"). The Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Plaintiff's Claims (as defined in ¶42 below) on behalf of the respective Settlement Class Member in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released,

resolved, relinquished, waived and discharged each and every Released Plaintiff's Claim against the Defendants and the other Defendants' Releasees (as defined in ¶43 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiff's Claims against any of the Defendants' Releasees.

42. "Released Plaintiff's Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the Complaint; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase or acquisition of publicly traded Exela common stock during the Settlement Class Period. Released Plaintiff's Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any shareholder derivative claims asserted in *Ezzat v. Cogburn, et al.*, Case No. 2022-2021 (Del. Chancery Ct.); *Moser v. Cogburn, et al.*, Case No. 3:20-cv-3691 (N.D. Tex.); and *McKenna v. Cogburn, et al.*, Case No. 3:20-cv-3691-1800 (N.D. Tex.); and (iii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

43. "Defendants' Releasees" means Defendants and their current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, insurers, and attorneys, in their capacities as such.

44. "Unknown Claims" means any Released Plaintiff's Claims which Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant or any other Defendants' Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly waive, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed to have waived, and by operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff and the Defendants acknowledge, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

45. The Judgment will also provide that, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Defendants' Claims (as defined in ¶46 below) on behalf of the Defendants in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against Lead Plaintiff and the other Plaintiff's Releasees (as defined in ¶47 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff's Releasees. This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

46. "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against the Defendants. Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement or any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

47. "Plaintiff's Releasees" means Lead Plaintiff, all other plaintiffs in the Action, their respective attorneys, and all other Settlement Class Members, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

## HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

48. To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Settlement Class and you must timely complete and return the Claim Form with adequate supporting documentation **postmarked no later than January 24, 2024**. A Claim Form is available on the website maintained by the Claims Administrator for the Settlement, www.ExelaSecuritiesLitigation.com, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-888-306-3146. Please retain all records of your ownership of and transactions in Exela common stock, as they may be needed to document your Claim. If you request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

## HOW MUCH WILL MY PAYMENT BE?

49. At this time, it is not possible to make any determination as to how much any individual Settlement Class Member may receive from the Settlement.

50. Pursuant to the Settlement, Defendants have agreed to pay or caused to be paid five million dollars ($5,000,000) in cash. The Settlement Amount will be deposited into an escrow account. The Settlement Amount plus any interest earned thereon is referred to as the "Settlement Fund."  If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state and/or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed to Settlement Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

51. The Net Settlement Fund will not be distributed unless and until the Court has approved the Settlement and a plan of allocation, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

52. Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalf are entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final. Defendants shall not have any liability, obligation or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund or the plan of allocation.

53. Approval of the Settlement is independent from approval of a plan of allocation. Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

54. Unless the Court otherwise orders, any Settlement Class Member who fails to submit a Claim Form postmarked on or before January 24, 2024 shall be fully and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a Settlement Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given. This means that each Settlement Class Member releases the Released Plaintiff's Claims (as defined in ¶42 above) against the Defendants' Releasees (as defined in ¶43 above) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiff's Claims against any of the Defendants' Releasees whether or not such Settlement Class Member submits a Claim Form.

55. Participants in and beneficiaries of a plan covered by ERISA ("ERISA Plan") should NOT include any information relating to their transactions in Exela common stock held through the ERISA Plan in any Claim Form that they may submit in this Action. They should include ONLY those shares that they purchased or acquired outside the ERISA Plan. Claims based on any ERISA Plan's purchases or acquisitions of Exela common stock during the Settlement Class Period may be made by the plan's trustees. If any of the Defendants or any of the other persons or entities excluded from the Settlement Class are participants in the ERISA Plan, such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from the Settlement by the ERISA Plan.

56. The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

57. Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim Form.

AJ2219 v.03

60

58. Only Settlement Class Members, *i.e.*, persons and entities who purchased or otherwise acquired Exela publicly traded common stock during the Settlement Class Period and were damaged as a result of such purchases or acquisitions will be eligible to share in the distribution of the Net Settlement Fund. Persons and entities that are excluded from the Settlement Class by definition or that exclude themselves from the Settlement Class pursuant to request will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms. Publicly traded Exela common stock is the only security included in the Settlement.

## PROPOSED PLAN OF ALLOCATION

59. The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial. Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

60. The Plan of Allocation generally measures the amount of loss that a Settlement Class Member can claim for purposes of making *pro rata* allocations of the cash in the Net Settlement Fund to Authorized Claimants. The Plan of Allocation is not a formal damage analysis. Recognized Loss Amounts are based primarily on the price declines observed over the period which Lead Plaintiffs allege corrective information was entering the market place. In this case, Lead Plaintiffs allege that Defendants made false statements and omitted material facts between March 16, 2018 and March 16, 2020, inclusive, which had the effect of artificially inflating the price of Exela common stock. The estimated alleged artificial inflation in the price of Exela common stock during the Settlement Class Period is reflected in Table 1 below. The computation of the estimated alleged artificial inflation in the price of Exela common stock during the Settlement Class Period is based on certain misrepresentations alleged by Lead Plaintiffs and the price change in the stock, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Lead Plaintiffs.

61. In order to have recoverable damages, disclosure of the alleged misrepresentations must be the cause of the decline in the price of the Exela common stock. In this matter, Lead Plaintiffs allege that corrective disclosures removed the artificial inflation from the price of Exela common stock on the following dates: November 9, 2018; March 19, 2019; March 20, 2019; May 10, 2019; May 22, 2019; May 23, 2019; August 9, 2019; November 13, 2019; March 17, 2020; and March 18, 2020 (the "Corrective Disclosure Dates").[3] Accordingly, in order to have a Recognized Loss Amount, Exela common stock must have been purchased or acquired during the Settlement Class Period and held through at least one of these Corrective Disclosure Dates.

62. To the extent a Claimant does not satisfy the conditions set forth in the preceding paragraph, his, her or its Recognized Loss Amount for those transactions will be zero.

---

[3] An alleged corrective disclosure also occurred on May 16, 2020. However, after netting out market and industry effects, there was no decline in the price of Exela common stock that day.

| Table 1 | | |
| --- | --- | --- |
| **Artificial Inflation in Exela Common Stock\*** | | |
| **From** | **To** | **Per-Share Price Inflation** |
| March 16, 2018 | November 8, 2018 | $3.79 |
| November 9, 2018 | March 18, 2019 | $2.99 |
| March 19, 2019 | March 19, 2019 | $2.78 |
| March 20, 2019 | May 9, 2019 | $2.54 |
| May 10, 2019 | May 21, 2019 | $2.39 |
| May 22, 2019[4] | May 22, 2019 | $1.86 |
| May 23, 2019 | August 8, 2019 | $1.42 |
| August 9, 2019 | November 12, 2019 | $0.29 |
| November 13, 2019 | March 16, 2020 | $0.04 |
| March 17, 2020 | March 17, 2020 | $0.02 |
| March 18, 2020 | Thereafter | $0.00 |

\* For each day during the Settlement Class Period, the per-share price inflation in Exela common stock shall be limited to that day's closing price of the stock.

63. The "90-day look back" provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA") is incorporated into the calculation of the Recognized Loss Amount for Exela common stock. The limitations on the calculation of the Recognized Loss Amount imposed by the PSLRA are applied such that losses on Exela common stock purchased during the Settlement Class Period and held as of the close of the 90-day period subsequent to the Settlement Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for such stock and its average price during the 90-Day Lookback Period. The Recognized Loss Amount on Exela common stock purchased during the Settlement Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for such stock and its rolling average price during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

64. In the calculations below, all purchase and sale prices shall exclude any fees, taxes and commissions. If a Recognized Loss Amount is calculated to be a negative number, that Recognized Loss Amount shall be set to zero. Any transactions in Exela common stock executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

65. Based on the formula set forth below, a "Recognized Loss Amount" shall be calculated for each purchase or acquisition of Exela common stock during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided.

I. For each share purchased or otherwise acquired between March 16, 2018 and March 16, 2020, inclusive:

    a. that was subsequently sold prior to November 9, 2018, the Recognized Loss Amount is $0.00.

    b. that was subsequently sold during the period November 9, 2018 through March 16, 2020, inclusive, the Recognized Loss Amount is *the lesser of*:

        i. the amount of per-share price inflation on the date of purchase as appears in Table 1 above *minus* the amount of per-share price inflation on the date of sale as appears in Table 1 above; or

        ii. the purchase price *minus* the sale price.

---

[4] The alleged corrective disclosure on May 22, 2019 occurred late in the trading day. Thus, in order to avoid potentially understating the Recognized Loss Amount for Claimants who transacted in Exela common stock on May 22, 2019, purchases of Exela common stock that day shall be assumed to have occurred at the pre-disclosure price inflation amount (*i.e.*, $2.39 per share). Sales of Exela common stock that day shall be assumed to have occurred at the post-disclosure price inflation amount (*i.e.*, $1.86 per share).

AJ22111 v.03

11

62

    c.   that was subsequently sold on March 17, 2020, the Recognized Loss Amount is *the least of*:

        i.   the amount of per-share price inflation on the date of purchase as appears in Table 1 above *minus* the amount of per-share price inflation on the date of sale as appears in Table 1 above; or

        ii.  the purchase price *minus* the sale price; or

        iii. the purchase price *minus* the "90-Day Lookback Value" on March 17, 2020, which is $0.17.

    d.   that was subsequently sold during the period March 18, 2020 through June 12, 2020, inclusive, the Recognized Loss Amount is *the least of*:

        i.   the amount of per-share price inflation on the date of purchase as appears in Table 1; or

        ii.  the purchase price *minus* the sale price; or

        iii. the purchase price *minus* the "90-Day Lookback Value" on the date of sale as appears in Table 2 below.

    e.   that was still held as of the close of trading on June 12, 2020, the Recognized Loss Amount is *the lesser of*:

        i.   the amount of per-share price inflation on the date of purchase as appears in Table 1; or

        ii.  the purchase price *minus* the average closing price for Exela common stock during the 90-Day Lookback Period, which is $0.27.

II.  For each share purchased or otherwise acquired on or after March 17, 2020, the Recognized Loss Amount is $0.00.

| Table 2 | | | | | |
|---|---|---|---|---|---|
| Sale/ Disposition Date | 90-Day Lookback Value | Sale/ Disposition Date | 90-Day Lookback Value | Sale/ Disposition Date | 90-Day Lookback Value |
| 3/17/2020 | $0.17 | 4/16/2020 | $0.18 | 5/15/2020 | $0.22 |
| 3/18/2020 | $0.16 | 4/17/2020 | $0.18 | 5/18/2020 | $0.22 |
| 3/19/2020 | $0.16 | 4/20/2020 | $0.18 | 5/19/2020 | $0.22 |
| 3/20/2020 | $0.17 | 4/21/2020 | $0.18 | 5/20/2020 | $0.22 |
| 3/23/2020 | $0.17 | 4/22/2020 | $0.18 | 5/21/2020 | $0.23 |
| 3/24/2020 | $0.17 | 4/23/2020 | $0.18 | 5/22/2020 | $0.23 |
| 3/25/2020 | $0.17 | 4/24/2020 | $0.18 | 5/26/2020 | $0.23 |
| 3/26/2020 | $0.18 | 4/27/2020 | $0.18 | 5/27/2020 | $0.23 |
| 3/27/2020 | $0.18 | 4/28/2020 | $0.18 | 5/28/2020 | $0.24 |
| 3/30/2020 | $0.18 | 4/29/2020 | $0.19 | 5/29/2020 | $0.24 |
| 3/31/2020 | $0.18 | 4/30/2020 | $0.19 | 6/1/2020 | $0.24 |
| 4/1/2020 | $0.18 | 5/1/2020 | $0.19 | 6/2/2020 | $0.24 |
| 4/2/2020 | $0.18 | 5/4/2020 | $0.20 | 6/3/2020 | $0.24 |
| 4/3/2020 | $0.18 | 5/5/2020 | $0.20 | 6/4/2020 | $0.25 |
| 4/6/2020 | $0.17 | 5/6/2020 | $0.20 | 6/5/2020 | $0.25 |
| 4/7/2020 | $0.17 | 5/7/2020 | $0.20 | 6/8/2020 | $0.25 |
| 4/8/2020 | $0.17 | 5/8/2020 | $0.21 | 6/9/2020 | $0.26 |
| 4/9/2020 | $0.17 | 5/11/2020 | $0.21 | 6/10/2020 | $0.27 |
| 4/13/2020 | $0.17 | 5/12/2020 | $0.21 | 6/11/2020 | $0.27 |
| 4/14/2020 | $0.17 | 5/13/2020 | $0.22 | 6/12/2020 | $0.27 |
| 4/15/2020 | $0.17 | 5/14/2020 | $0.22 | N/A | N/A |

## ADDITIONAL PROVISIONS

66. The Net Settlement Fund will be allocated among all Authorized Claimants whose Distribution Amount (defined in paragraph 74 below) is $10.00 or greater.

67. **FIFO Matching:** If a Settlement Class Member has more than one purchase/acquisition or sale of Exela common stock, all purchases/acquisitions and sales shall be matched on a First In, First Out ("FIFO") basis. Settlement Class Period sales will be matched first against any holdings at the beginning of the Settlement Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Settlement Class Period.

68. **Calculation of Claimant's "Recognized Claim":** A Claimant's "Recognized Claim" under the Plan of Allocation shall be the sum of his, her, or its Recognized Loss Amounts for all shares of the Exela common stock.

69. **"Purchase/Sale" Dates:** Purchases or acquisitions and sales of Exela common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance, or operation of law of Exela common stock during the Settlement Class Period shall not be deemed a purchase, acquisition, or sale of Exela common stock for the calculation of an Authorized Claimant's Recognized Loss Amount, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of any Exela common stock unless (i) the donor or decedent purchased or otherwise acquired such Exela common stock during the Settlement Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Exela common stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

70. **Short Sales:** The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Exela common stock. The date of a "short sale" is deemed to be the date of sale of Exela common stock. Under the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero. In the event that a Claimant has an opening short position in Exela common stock, the earliest Settlement Class Period purchases or acquisitions shall be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.

71. **Common Stock Purchased/Sold Through the Exercise of Options:** Option contracts are not securities eligible to participate in the Settlement. With respect to Exela common stock purchased or sold through the exercise of an option, the purchase/sale date of the stock is the exercise date of the option and the purchase/sale price of the stock is the excise (strike) price of the option. Any Recognized Loss Amount arising from purchases of Exela common stock acquired during the Settlement Class Period through the exercise of an option on Exela common stock shall be computed as provided for other purchases of Exela common stock in the Plan of Allocation.

72. **Market Gains and Losses:** To the extent a Claimant had a market gain with respect to his, her, or its overall transactions in Exela common stock during the Settlement Class Period, the value of the Claimant's Recognized Claim shall be zero. To the extent that a Claimant suffered an overall market loss with respect to his, her, or its overall transactions in Exela common stock during the Settlement Class Period, but that market loss was less than the total Recognized Claim calculated above, then the Claimant's Recognized Claim shall be limited to the amount of the actual market loss.

73. For purposes of determining whether a Claimant had a market gain with respect to his, her, or its overall transactions in Exela common stock during the Settlement Class Period or suffered a market loss, the Claims Administrator shall determine the difference between (i) the Total Purchase Amount[5] and (ii) the sum of the Total Sales Proceeds[6] and the Holding Value.[7] If the Claimant's Total Purchase Amount _minus_ the sum of the Total Sales Proceeds and the Holding Value is a positive number, that number will be the Claimant's market loss on such securities; if the number is a negative number or zero, that number will be the Claimant's market gain on such securities.

---

[5] The "Total Purchase Amount" is the total amount the Claimant paid (excluding commissions and other charges) for all Exela common stock purchased or acquired during the Settlement Class Period.

[6] The Claims Administrator shall match any sales of Exela common stock during the Settlement Class Period, first against the Claimant's opening position in Exela common stock (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received (excluding commissions and other charges) for the remaining sales of Exela common stock sold during the Settlement Class Period shall be the "Total Sales Proceeds."

[7] The Claims Administrator shall ascribe a "Holding Value" to shares of Exela common stock purchased or acquired during the Settlement Class Period and still held as of the close of trading on March 16, 2020, which shall be $0.15 (_i.e._, the closing price of the stock on the last Corrective Disclosure Date, March 18, 2020). The total calculated holding values for all Exela common stock shall be the Claimant's "Total Holding Value."

74. **Determination of Distribution Amount:** The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. If any Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to such Authorized Claimant. Any Distribution Amounts of less than $10.00 will be included in the pool distributed to those Settlement Class Members whose Distribution Amounts are $10.00 or greater.

75. After the initial distribution of the Net Settlement Fund, the Claims Administrator shall make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the fund nine (9) months after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so, the Claims Administrator shall conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution. Additional re-distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court.

76. Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, shall be conclusive against all Authorized Claimants. No person shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, Lead Plaintiffs' damages expert, Defendants, Defendants' Counsel, or any of the other Releasees, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court. Lead Plaintiffs, Defendants and their respective counsel, and all other Defendants' Releasees, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

The Plan of Allocation set forth herein is the plan that is being proposed to the Court for its approval by Lead Plaintiffs after consultation with their damages expert. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Settlement Class. Any Orders regarding any modification of the Plan of Allocation will be posted on the settlement website, www.ExelaSecuritiesLitigation.com.

## WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING? HOW WILL THE LAWYERS BE PAID?

77. Plaintiffs' Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Settlement Class, nor have Plaintiffs' Counsel been reimbursed for their out-of-pocket expenses. Before final approval of the Settlement, Lead Counsel will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 33⅓% of the Settlement Fund. At the same time, Lead Counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $430,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class in an amount not to exceed $25,000. The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses. Such sums as may be approved by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses.

## WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS? HOW DO I EXCLUDE MYSELF?

78. Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Settlement Class, addressed to *Exela Tech. Securities Litigation*, EXCLUSIONS, c/o Epiq Class Action & Claims Solutions, Inc., P.O. Box 2147, Portland, OR 97208-2147. The exclusion request must be ***received*** no later than November 16, 2023. You will not be able to exclude yourself from the Settlement Class after that date. Each Request

for Exclusion must: (a) state the name, address and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *Bo Shen v. Exela Technologies Inc. et al.*, Case No. 3:20-cv-00691-D"; (c) state the number of shares of publicly traded Exela common stock that the person or entity requesting exclusion purchased/acquired and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale; and (d) be signed by the person or entity requesting exclusion or an authorized representative. A Request for Exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

79. If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiff's Claim against any of the Defendants' Releasees.

80. If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Fund.

81. Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Lead Plaintiff and Defendants.

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?  DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

82. **Settlement Class Members do not need to attend the Settlement Hearing. The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not attend the hearing. You can participate in the Settlement without attending the Settlement Hearing.**

83. The Settlement Hearing will be held on December 7, 2023 at 10:00 a.m., before the Honorable Sidney A. Fitzwater at the United States District Court for the Northern District of Texas, United States Courthouse, Courtroom 1351, 1100 Commerce Street, Dallas, Texas 75242-1003. The Court reserves the right to approve the Settlement, the Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and/or any other matter related to the Settlement at or after the Settlement Hearing without further notice to the members of the Settlement Class.

84. Any Settlement Class Member who or which does not request exclusion may object to the Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. Objections must be in writing. You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the Southern District of Texas at the address set forth below on or before November 16, 2023. You must also serve the papers on Lead Counsel and on Defendants' Counsel at the addresses set forth below so that the papers are ***received on or before November 16, 2023.***

| <u>Clerk's Office</u> | <u>Lead Counsel</u> | <u>Defendants' Counsel</u> |
|---|---|---|
| United States District Court | **Glancy Prongay & Murray LLP** | **Norton Rose Fulbright US LLP** |
| Northern District of Texas | Kara M. Wolke, Esq. | Peter A. Stokes, Esq. |
| Clerk of the Court | 1925 Century Park East | 98 San Jacinto Blvd. |
| United States Courthouse | Suite 2100 | Suite 1100 |
| 1100 Commerce Street | Los Angeles, CA 90067 | Austin, TX 78701-4255 |
| Room 1452 | | |
| Dallas, Texas 75242 | | |

85. Any objection: (a) must state the name, address and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of publicly traded Exela common stock that the objecting

Settlement Class Member purchased/acquired and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale. You may not object to the Settlement, the Plan of Allocation or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

86.  You may file a written objection without having to appear at the Settlement Hearing. You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

87.  If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you timely file and serve a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth above so that it is *received* **on or before November 16, 2023.** Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. Such persons may be heard orally at the discretion of the Court.

88.  You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing. However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth in ¶84 above so that the notice is *received* **on or November 16, 2023.**

89.  The Settlement Hearing may be adjourned by the Court without further written notice to the Settlement Class. If you intend to attend the Settlement Hearing, you should confirm the date and time with Lead Counsel.

90.  **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

91.  If you purchased or otherwise acquired publicly traded Exela common stock between March 16, 2018 and March 16, 2020, inclusive, for the beneficial interest of persons or organizations other than yourself, you must either: (a) within seven (7) calendar days of receipt of the Postcard Notice, request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; (b) request from the Claims Administrator a link to the Notice and Claim Form and, within seven (7) calendar days of receipt of the link, email the link to all such beneficial owners for whom valid email addresses are available; or (c) within seven (7) calendar days of receipt of the Postcard Notice, provide a list of the names and addresses of all such beneficial owners to *Exela Tech. Securities Litigation*, c/o Epiq Class Action & Claims Solutions, Inc., P.O. Box 2147, Portland, OR 97208-2147. If you choose the third option, the Claims Administrator will send a copy of the Postcard Notice to the beneficial owners. Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred up to a maximum of $0.05 per name and address provided to the Claims Administrator; up to $0.05 per Postcard Notice actually mailed, plus postage at the rate used by Claims Administrator; or up to $0.05 per link to the Notice and Claim Form transmitted by email, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. Copies of this Notice and the Claim Form may be obtained from the website maintained by the Claims Administrator, www.ExelaSecuritiesLitigation.com, or by calling the Claims Administrator toll-free at 1-888-306-3146.

## CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

92.  This Notice contains only a summary of the terms of the proposed Settlement. For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the Northern District of Texas, United States Courthouse, 1100 Commerce Street, Dallas, Texas 75242. Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.ExelaSecuritiesLitigation.com.

AJ22116 v.03

67

All inquiries concerning this Notice and the Claim Form should be directed to the Claims Administrator or Lead Counsel at:

| *Exela Tech. Securities Litigation* | and/or | Kara M. Wolke, Esq. |
|---|---|---|
| c/o Epiq Class Action & Claims Solutions,Inc. | | Glancy Prongay & Murray LLP |
| P.O. Box 2147 | | 1925 Century Park East, Suite 2100 |
| Portland, OR 97208-2147 | | Los Angeles, CA 90067 |
| 1-888-306-3146 | | (310) 201-9150 |
| www.ExelaSecuritiesLitigation.com | | settlements@glancylaw.com |

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS OR THEIR COUNSEL REGARDING THIS NOTICE.**

Dated: August 28, 2023

By Order of the Court
United States District Court
Southern District of Texas

AJ22117 v.03

17

68

*Exela Tech. Securities Litigation*
*c/o* **Epiq Class Action & Claims Solutions, Inc.**
**P.O. Box 2147**
**Portland, OR 97208-2147**
**Toll Free Number: (888) 306-3146**
**Settlement Website: www.ExelaSecuritiesLitigation.com**
**Email: info@ExelaSecuritiesLitigation.com**

# <u>PROOF OF CLAIM AND RELEASE FORM</u>

To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must be a Settlement Class Member and complete and sign this Proof of Claim and Release Form ("Claim Form") and submit it online at www.ExelaSecuritiesLitigation.com or mail it by First-Class Mail to the above address, **submitted online or postmarked no later than January 24, 2024.**

Failure to submit your Claim Form by the date specified will subject your claim to rejection and may preclude you from being eligible to recover any money in connection with the Settlement.

**Do not mail or deliver your Claim Form to the Court, the settling parties or their counsel. Submit your Claim Form only to the Claims Administrator at the address set forth above.**

| <u>TABLE OF CONTENTS</u> | **PAGE #** |
|---|---|
| **PART I – CLAIMANT INFORMATION**................................................................................................ 2 |
| **PART II – GENERAL INSTRUCTIONS**..........................................................................................3–5 |
| **PART III – SCHEDULE OF TRANSACTIONS IN EXELA COMMON STOCK**.................................................................................. 6 |
| **PART IV – RELEASE OF CLAIMS AND SIGNATURE** ...............................................................7–8 |

## PART I - CLAIMANT INFORMATION

(Please read General Instructions below before completing this page.)

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above.

Beneficial Owner's First Name        MI        Beneficial Owner's Last Name

Co-Beneficial Owner's First Name        MI        Co-Beneficial Owner's Last Name

Entity Name (if Beneficial Owner is not an individual)

Representative or Custodian Name (if different from Beneficial Owner[s] listed above)

Address 1 (street name and number)

Address 2 (apartment, unit or box number)

City        State        ZIP Code

Country

Last four digits of Social Security Number or Taxpayer Identification Number

Telephone Number (Day)        Telephone Number (Evening)

Email address (Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim)

Account Number (where securities were traded[1])

Claimant Account Type (check appropriate box)

☐ Individual (includes joint owner accounts)    ☐ IRA/401K        ☐ Estate

☐ Joint        ☐ Pension Plan        ☐ Trust

☐ Corporation        ☐ Other _____ (please specify)

---

[1] If the account number is unknown, you may leave blank. If the same legal entity traded through more than one account you may write "multiple." Please see paragraph 12 of the General Instructions for more information on when to file separate Claim Forms for multiple accounts, i.e., when you are filing on behalf of distinct legal entities.

02-CA40067203
AJ2222 v.04

2

70

## PART II - GENERAL INSTRUCTIONS

1.    It is important that you completely read and understand the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") that accompanies this Claim Form, including the Plan of Allocation of the Net Settlement Fund set forth in the Notice. The Notice describes the proposed Settlement, how Settlement Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court. The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form. By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the releases described therein and provided for herein.

2.    This Claim Form is directed to all persons and entities who or which purchased or otherwise acquired publicly traded Exela Technologies, Inc. ("Exela") common stock ("Exela Stock") between March 16, 2018 and March 16, 2020, inclusive (the "Settlement Class Period"), and were damaged thereby (the "Settlement Class"). All persons and entities that are members of the Settlement Class are referred to as "Settlement Class Members."

3.    Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) (i) Defendants; (ii) the legal representatives, heirs, successors, assigns, and Immediate Family members of the Individual Defendants; (iii) the parents, subsidiaries, assigns, successors, predecessors and affiliates of Exela; (iv) any person who served as an Officer and/or director of Exela during the Settlement Class Period; (v) any entity in which any of the foregoing (i)-(iv) excluded persons have or had a majority ownership interest during the Settlement Class Period; (c) any trust of which any Individual Defendants is the grantor or settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Family; and (d) Defendants' liability insurance carriers. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

4.    If you are not a Settlement Class Member do not submit a Claim Form. YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A SETTLEMENT CLASS MEMBER. THUS, IF YOU ARE EXCLUDED FROM THE CLASS (AS SET FORTH IN PARAGRAPH 3 ABOVE), ANY CLAIM FORM THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

5.    If you are a Settlement Class Member, you will be bound by the terms of any judgments or orders entered in the Action WHETHER OR NOT YOU SUBMIT A CLAIM FORM, unless you submit a request for exclusion from the Settlement Class. Thus, if you are a Class Member, the Judgment will release, and you will be barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal or administrative forum, asserting each and every Released Plaintiffs' Claims (including Unknown Claims) against Defendants' Releasees.

6.    You are eligible to participate in the distribution of the Net Settlement Fund only if you are a member of the Settlement Class and if you complete and return this form as specified below. If you fail to submit a timely, properly addressed, and completed Claim Form with the required documentation, your claim may be rejected and you may be precluded from receiving any distribution from the Net Settlement Fund.

7.    Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlement. The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation approved by the Court.

8.    Use the Schedule of Transactions in Part III of this Claim Form to supply all required details of your transaction(s) (including free transfers) in and holdings of the applicable Exela Stock. On the Schedule of Transactions, please provide all of the requested information with respect to your holdings, purchases, acquisitions and sales of the applicable Exela Stock, whether such transactions resulted in a profit or a loss. Failure to report all transaction and holding information during the requested time periods may result in the rejection of your claim.

9.    Please note: Only Exela Stock purchased/acquired during the Settlement Class Period (*i.e.*, from March 16, 2018 and March 16, 2020, inclusive) are eligible under the Settlement. However, because the PSLRA provides for a "90-day look-back period" (described in the Plan of Allocation set forth in the Notice), you must provide documentation related to your purchases and sales of Exela Stock during the period from March 16, 2020 through and including June 12, 2020, (*i.e.*, the 90-Day Lookback Period) in order for the Claims Administrator to calculate your Recognized Loss Amount under the Plan of Allocation and process your claim.

10.  You are required to submit genuine and sufficient documentation for all of your transactions and holdings of the applicable Exela Stock set forth in the Schedule of Transactions in Part III of this Claim Form. Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement. The Parties and the Claims Administrator do not independently have information about your investments in Exela Stock. IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OR EQUIVALENT CONTEMPORANEOUS DOCUMENTS FROM YOUR BROKER. FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM. DO NOT SEND ORIGINAL DOCUMENTS. **Please keep a copy of all documents that you send to the Claims Administrator. Also, please do not highlight any portion of the Claim Form or any supporting documents.**

11.  Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions through an account that is in the name of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made through an account in the individual's name). Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity on one Claim Form, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

12.  All joint beneficial owners must sign this Claim Form. If you purchased or otherwise acquired Exela Stock during the Settlement Class Period and held the securities in your name, you are the beneficial owner as well as the record owner and you must sign this Claim Form to participate in the Settlement. If, however, you purchased or otherwise acquired Exela Stock during the Settlement Class Period and the securities were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these securities, but the third party is the record owner. The beneficial owner, not the record owner, must sign this Claim Form.

13.  Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

   (a)  expressly state the capacity in which they are acting;

   (b)  identify the name, account number, Social Security Number (or taxpayer identification number), address and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the Exela Stock; and

   (c)  furnish herewith evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting. (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade stock in another person's accounts.)

14.  By submitting a signed Claim Form, you will be swearing that you:

   (a)  own(ed) the Exela Stock you have listed in the Claim Form; or

   (b)  are expressly authorized to act on behalf of the owner thereof.

15.  By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America. The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

16.  If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after the completion of all claims processing. This could take substantial time. Please be patient.

17.  PLEASE NOTE: As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her or its pro rata share of the Net Settlement Fund. If the prorated payment to any Authorized Claimant, however, calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, *Exela Tech. Securities Litigation*, c/o Epiq Class Action & Claims Solutions, Inc. at P.O. Box 2147, Portland, OR 97208-2147; or by email at info@ExelaSecuritiesLitigation.com; or by toll-free phone at (888) 306-3146; or you may download the documents from the Settlement website, www.ExelaSecuritiesLitigation.com.

18.   NOTICE REGARDING ELECTRONIC FILES: Certain Claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. To obtain the mandatory electronic filing requirements and file layout, you may visit the Settlement website at www.ExelaSecuritiesLitigation.com or you may email the Claims Administrator's electronic filing department at info@ExelaSecuritiesLitigation.com. Any file not in accordance with the required electronic filing format will be subject to rejection. No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email to that effect after processing your file with your claim numbers and respective account information. Do not assume that your file has been received or processed until you receive this email. If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at info@ExelaSecuritiesLitigation.com to inquire about your file and confirm it was received and acceptable.

19.   NOTICE REGARDING ONLINE FILING: Claimants who are not Representative Filers may submit their claims online using the electronic version of the Claim Form hosted at www.ExelaSecuritiesLitigation.com. If you are not acting as a Representative Filer, you do not need to contact the Claims Administrator prior to filing; you will receive an automated e-mail confirming receipt once your Claim Form has been submitted. If you are unsure if you should submit your claim as a Representative Filer, please contact the Claims Administrator at info@ExelaSecuritiesLitigation.com or (888) 306-3146. If you are not a Representative Filer, but your claim contains a large number of transactions, the Claims Administrator may request that you also submit an electronic spreadsheet showing your transactions to accompany your Claim Form.

## IMPORTANT: PLEASE NOTE

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD. THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL WITHIN 60 DAYS. IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, PLEASE CALL THE CLAIMS ADMINISTRATOR TOLL FREE AT (888) 306-3146.**

## PART III - SCHEDULE OF TRANSACTIONS IN EXELA COMMON STOCK

Complete this Part III if and only if you purchased/acquired Exela Stock during the period from March 16, 2018 through and including March 16, 2020. Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 10, above. Do not include information in this section regarding securities other than Exela Stock purchased.

**1. BEGINNING HOLDINGS** – State the total number of shares of Exela Stock held as of the open of trading on March 16, 2018. (Must be documented.) If none, write "zero" or "0."

**2. PURCHASES/ACQUISITIONS DURING THE SETTLEMENT CLASS PERIOD THROUGH JUNE 12, 2020** – Separately list each and every purchase/acquisition (including free receipts) of Exela Stock from after the opening of trading on March 16, 2018, through and including the close of trading on June 12, 2020. (Must be documented.)

| Date of Purchase/ Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/ Acquired | Purchase/Acquisition Price Per Share | Total Purchase/Acquisition Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| __ – __ – __ | | $ ____ . __ | $ ____ . __ |
| __ – __ – __ | | $ ____ . __ | $ ____ . __ |
| __ – __ – __ | | $ ____ . __ | $ ____ . __ |
| __ – __ – __ | | $ ____ . __ | $ ____ . __ |

**3. SALES DURING THE SETTLEMENT CLASS PERIOD THROUGH JUNE 12, 2020** – Separately list each and every sale/disposition (including free deliveries) of Exela Stock from after the opening of trading on March 16, 2018, through and including the close of trading on June 12, 2020. (Must be documented.)

**IF NONE, CHECK HERE** ☐

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| __ – __ – __ | | $ ____ . __ | $ ____ . __ |
| __ – __ – __ | | $ ____ . __ | $ ____ . __ |
| __ – __ – __ | | $ ____ . __ | $ ____ . __ |
| __ – __ – __ | | $ ____ . __ | $ ____ . __ |

**4. ENDING HOLDINGS** – State the total number of shares of Exela Stock held as of the close of trading on June 12, 2020. (Must be documented.) If none, write "zero" or "0."

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX.** ☐

**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL NOT BE REVIEWED.**

### *PART IV - RELEASE OF CLAIMS AND SIGNATURE*

### *YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW AND SIGN ON PAGE 8 OF THIS CLAIM FORM.*

I (we) hereby acknowledge that as of the Effective Date of the Settlement, pursuant to the terms set forth in the Stipulation, I (we), on behalf of myself (ourselves) and my (our) successors and assigns, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever waived, released, discharged, and dismissed each and every Released Plaintiffs' Claim (as defined in the Stipulation and in the Notice) against Defendants' Releasees (as defined in the Stipulation and in the Notice) and shall forever be barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal or administrative forum asserting any or all of the Released Plaintiffs' Claims against any Defendants' Releasee.

### CERTIFICATION

By signing and submitting this Claim Form, the Claimant(s) or the person(s) who represent(s) the Claimant(s) certifies (certify), as follows:

1.    that I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2.    that the Claimant(s) is a (are) Settlement Class Member(s), as defined in the Notice and in paragraph 2 on page 3 of this Claim Form, and is (are) not excluded from the Settlement Class by definition or pursuant to request as set forth in the Notice and in paragraph 3 on page 3 of this Claim Form;

3.    that I (we) own(ed) the Exela Stock identified in the Claim Form and have not assigned the claim against the Defendants' Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

4.    that the Claimant(s) has (have) not submitted any other claim covering the same purchases/acquisitions of Exela Stock and knows (know) of no other person having done so on the Claimant's (Claimants') behalf;

5.    that the Claimant(s) submit(s) to the jurisdiction of the Court with respect to Claimant's (Claimants') claim and for purposes of enforcing the releases set forth herein;

6.    that I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator or the Court may require;

7.    that the Claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the Court's summary disposition of the determination of the validity or amount of the claim made by this Claim Form;

8.    that I (we) acknowledge that the Claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

9.    that the Claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the Claimant(s) is (are) exempt from backup withholding or (b) the Claimant(s) has (have) not been notified by the IRS that he/she/it is subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the Claimant(s) that he/she/it is no longer subject to backup withholding. **If the IRS has notified the Claimant(s) that he, she or it is subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

Date: ☐☐ – ☐☐ – ☐☐☐☐
      MM    DD     YYYY

Signature of Claimant

Print Name

Date: ☐☐ – ☐☐ – ☐☐☐☐
      MM    DD     YYYY

Signature of joint Claimant, if any

Print Name

*If the Claimant is other than an individual, or is not the person completing this form, the following also must be provided:*

Date: ☐☐ – ☐☐ – ☐☐☐☐
      MM    DD     YYYY

Signature of person signing on behalf of Claimant

Print Name

CAPACITY OF PERSON SIGNING ON BEHALF OF CLAIMANT, IF OTHER THAN AN INDIVIDUAL, *E.G.*, EXECUTOR, PRESIDENT, TRUSTEE, CUSTODIAN, *ETC*. (MUST PROVIDE EVIDENCE OF AUTHORITY TO ACT ON BEHALF OF CLAIMANT – SEE PARAGRAPH 13 ON PAGE 4 OF THIS CLAIM FORM.)

**REMINDER CHECKLIST:**

1. Please sign the above release and certification. If this Claim Form is being made on behalf of joint Claimants, then both must sign.

2. Remember to attach only **copies** of acceptable supporting documentation as these documents will not be returned to you.

3. Please do not highlight any portion of the Claim Form or any supporting documents.

4. Do not send original security certificates or documentation. These items cannot be returned to you by the Claims Administrator.

5. Keep copies of the completed Claim Form and documentation for your own records.

6. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days. Your claim is not deemed filed until you receive an acknowledgement postcard. **If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll free at (888) 306-3146.**

7. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, please send the Claims Administrator written notification of your new address. If you change your name, please inform the Claims Administrator.

8. If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the address below, by email at info@ExelaSecuritiesLitigation.com, or toll-free at (888) 306-3146, or visit www.ExelaSecuritiesLitigation.com. Please DO NOT call Exela or any of the other Defendants or their counsel with questions regarding your claim.

THIS CLAIM FORM MUST BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN JANUARY 24, 2024**, ADDRESSED AS FOLLOWS:

*Exela Tech. Securities Litigation*
c/o Epiq Class Action & Claims Solutions, Inc.
P.O. Box 2147
Portland, OR 97208-2147

YOU MAY ALSO SUBMIT ONLINE AT WWW.EXELASECURITIESLITIGATION.COM **ON OR BEFORE JANUARY 24, 2024.**

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before January 24, 2024 is indicated on the envelope and it is mailed First-Class, and addressed in accordance with the above instructions. In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms. Please be patient and notify the Claims Administrator of any change of address.



# EXHIBIT C

# CONFIRMATION OF PUBLICATION

**IN THE MATTER OF:** *Exela Securities Settlement*

I, Kathleen Komraus, hereby certify that

(a) I am the Media & Design Manager at Epiq Class Action & Claims Solutions, a noticing administrator, and;

(b) The Notice of which the annexed is a copy was published in the following publications on the following dates:

*10.2.2023 – Investor's Business Weekly*
*10.2.2023 – PR Newswire*

**X** *Kathleen Komraus*
　　　　**(Signature)**

Media & Design Manager
　　　　**(Title)**

79

# MUTUAL FUND PERFORMANCE

*[Mutual fund performance tables spanning multiple columns, listing fund families and individual funds with columns: 36 Mo Performance Rating | Fund | YTD % Chg | 12Wk % Chg | 5 Yr After Tax Rtn | Net Asset Value | NAV Chg. Fund family sections include: JHIITFunLgCpCorFd, John Hancock, John Hancock Funds A, JPMorgan A Class, JPMorgan I Class, JPMorgan L Class, JPMorgan R Class, Kinetics Funds, Laudus Funds, Lazard Instl, Legg Mason I, LCM Funds, Longleaf Partners, Loomis Sayles Fds, Lord Abbett A, Lord Abbett B, Lord Abbett C, Lord Abbett I, –M-N-O–, MainStay Fds A, MainStay Fds I, Mairs&Power, Mass Mutual, MassMutual Select, Matthews Asian Funds, Metropolitan West, MFS Funds A, MFS Funds I, Mondrian, Morgan Stanley Inst, MorganStanleyPathway, Muhlenkmp, Munder Funds, Munder Funds CI A, Nationwide Fds R6, Nationwide Funds, Natixis Funds, Neuberger Berman Fds, Neuberger Berman Inv, Neuberger Berman Tr, New Covenant Funds, Nicholas Group, Northern Funds, Nuveen Funds A, Nuveen Funds I, Oakmark Funds Invest, Oberweis Funds, Old Westbury Fds, Olstein, Optimum Funds Inst, Osterweis Strat Income, –P-Q-R–, PACE Funds CI P, PIMCO Funds Instl, Parnassus Fds, Pear Tree, Perm Port Funds, PGIM Funds A, PGIM Jenn Funds A, PGIM Quant Funds A, PIMCO Funds A, PIMCO Funds IZ, PIMCO Funds I2, Pioneer Funds A, Pioneer Funds Y, Principal Funds A, Principal Funds Inst, ProFunds Inv Class, Prospector Funds, Putnam Funds Class A, Putnam Funds Class Y, RBB Fund, Royce Funds, Russell Funds S, Rydex Dynamic Fds, Rydex Investor Class, –S-T-U–, Schwab Funds, Segall Bryant & Hamill, SEI Inst F, SEI Inst Intl F, SEI Tax Exempt F, Selected Funds, Shelton Funds, Sit Funds, SmeadFds, Spirit of America, SSgA Funds, State Street Institu, TCW Funds, Third Avenue, Thivent Funds A, Thivent Funds S, Thompson IM Fds,Inc, Thornburg Fds, TIAACREF Inst, TIAACREF Retail, Tocqueville Funds, Torray Fund, Tortoise Capital, Touchstone Family Fd, Touchstone Funds Gro, Touchstone Funds Strategic, Transamerica A, Trust for Professional Manager, Tweedy Browne Fds, Ultimus, UM Funds, USAA Aggressive Gr, USAA Group, USAA International, USAA IntmTerm Bd, USAA ShortTerm Bd, Value Line Funds, VanEck Funds, Vanguard Funds Adm, Vanguard Funds Ins, Vanguard Funds InsP, Vanguard Funds Inv, Victory Funds, Victory:Estab Val, Victory:Global En Tran, Victory:Integ SMCV, Victory:Integrity SCV, Victory:RS Global, Victory:RS Partners, Victory:l:Mkt Neu I, Virtus Equity Trust, VirtusFunds, Virtus Equity Trust, VirtusFunds, VirtusFunds CI I, Vivaldi Merger, Voya Fds, Wasatch, WCM, WCM Focus Funds, Weitz Funds, Western Asset, Williamsburg Invst T, Wm Blair Funds, –V-W-X–]*

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

In re UNDER ARMOUR SECURITIES LITIGATION    )    Civil No. RDB-17-388
                                            )
This Document Relates To:                   )    CLASS ACTION
    ALL ACTIONS.                            )
                                            )

**TO: ALL PERSONS AND ENTITIES WHO, BETWEEN SEPTEMBER 16, 2015 AND NOVEMBER 1, 2019, INCLUSIVE, PURCHASED OR OTHERWISE ACQUIRED CLASS A OR CLASS C COMMON STOCK OF UNDER ARMOUR, INC. (THE "CLASS").**

Currently pending in the United States District Court for the District of Maryland (the "Court"), is a class action brought against Under Armour, Inc. ("Under Armour" or the "Company"), and Kevin A. Plank (collectively, "Defendants") to recover damages for all persons and entities who purchased or otherwise acquired Under Armour Class A or Class C common stock between September 16, 2015 and November 1, 2019, inclusive (the "Class Period"). The lawsuit is captioned *In re Under Armour Securities Litigation*, No. RDB-17-388. This Summary Notice is not an admission by Defendants or an expression by the Court of any opinion on the likelihood of recovery by the Class or on the merits of any defense asserted by Defendants. This action has not been settled and continues to be litigated.

Lead Plaintiffs have been certified by the Court to represent the following Class:

**ALL PERSONS AND ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED CLASS A AND CLASS C COMMON STOCK OF UNDER ARMOUR, INC. ("UNDER ARMOUR") BETWEEN SEPTEMBER 16, 2015 AND NOVEMBER 1, 2019, INCLUSIVE ("CLASS PERIOD"). EXCLUDED FROM THE CLASS ARE DEFENDANTS, PRESENT OR FORMER EXECUTIVE OFFICERS AND DIRECTORS OF UNDER ARMOUR AND THEIR IMMEDIATE FAMILY MEMBERS (AS DEFINED IN 17 C.F.R. §229.404, INSTRUCTIONS (1)(A)(III) AND (1)(B)(II)).**

On September 28, 2023, a Postcard Notice of Pendency of Class Action (the "Postcard Notice") was mailed or emailed to persons and entities who purchased or otherwise acquired Under Armour Class A or Class C common stock during the Class Period, as reflected on the books and records of the Company and its transfer agent. The Postcard Notice contains important information regarding the rights of Class Members, including the right to seek exclusion from the Class and the legal implications and deadline for doing so. If you believe you are a member of the Class as defined above, and you have not received a copy of the Postcard Notice by mail, you are urged to request a copy free of charge by mailing your request to:

*Under Armour Securities Litigation*
c/o Gilardi & Co. LLC
P.O. Box 301135
Los Angeles, CA 90030-1135

You may also download a copy of the Postcard Notice at:

www.UnderArmourSecuritiesLitigation.com

**IF YOU ARE A CLASS MEMBER AND DO NOT EXCLUDE YOURSELF FROM THE CLASS, YOU WILL BE BOUND BY ALL ORDERS AND ANY JUDGMENT IN THE ACTION. TO EXCLUDE YOURSELF FROM THE CLASS, YOU MUST SUBMIT A WRITTEN REQUEST FOR EXCLUSION POSTMARKED ON OR BEFORE NOVEMBER 27, 2023. NO ACTION IS REQUIRED AT THIS TIME TO REMAIN A MEMBER OF THE CLASS.**

If you have any questions, please contact the Notice Administrator at *Under Armour Securities Litigation*, c/o Gilardi & Co. LLC, P.O. Box 301135, Los Angeles, CA 90030-1135 or www.UnderArmourSecuritiesLitigation.com.

**PLEASE DO NOT CONTACT DEFENDANTS, THE COURT OR THE CLERK'S OFFICE REGARDING EXPLANATION OF THIS NOTICE.**

Dated: August 24, 2023

BY ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

BO SHEN, Individually and on Behalf of All Others Similarly Situated,
                                            Case No. 3:20-cv-00691-D
    Plaintiffs,
    v.

EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA,

    Defendants.

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TO: All persons and entities who, during the period between March 16, 2018 and March 16, 2020, inclusive, purchased or otherwise acquired the publicly traded common stock of Exela Technologies, Inc. ("Exela"), and were damaged thereby (the "Settlement Class"):[1]**

**PLEASE READ THIS NOTICE CAREFULLY, YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of Texas, that the above-captioned litigation (the "Action") has been certified as a class action on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that the Lead Plaintiff in the Action has reached a proposed settlement of the Action for $5,000,000 in cash (the "Settlement"), that, if approved, will resolve all claims in the Action.

A hearing will be held on December 7, 2023 at 10:00 a.m., before the Honorable Sidney A. Fitzwater at the United States District Court for the Northern District of Texas, United States Courthouse, Courtroom 1351, 1100 Commerce Street, Dallas, Texas 75242-1003, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the Releases specified and described in the Stipulation (and in the Notice) should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund.** The Notice and Proof of Claim and Release Form ("Claim Form"), can be downloaded from the website maintained by the Claims Administrator, www.ExelaSecuritiesLitigation.com. You may also obtain copies of the Notice and Claim Form by contacting the Claims Administrator at *Exela Tech. Securities Litigation*, c/o Epiq Class Action & Claims Solutions, Inc., P.O. Box 2147, Portland, OR 97208-2147, 1-888-306-3146.

If you are a member of the Settlement Class, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form *postmarked* no later than **January 24, 2024**. If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is *received* no later than **November 16, 2023**, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Lead Counsel and Defendants' Counsel such that they are *received* no later than **November 16, 2023**, in accordance with the instructions set forth in the Notice.

**Please do not contact the Court, the Clerk's office, Exela, or its counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel or the Claims Administrator.**

Inquiries, other than requests for the Notice and Claim Form, should be made to Lead Counsel:

GLANCY PRONGAY & MURRAY LLP
Kara M. Wolke, Esq.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150
info@glancylaw.com

Requests for the Notice and Claim Form should be made to:

*Exela Tech. Securities Litigation*
c/o Epiq Class Action & Claims Solutions, Inc.
P.O. Box 2147
Portland, OR 97208-2147
888-306-3146
www.ExelaSecuritiesLitigation.com

By Order of the Court

[1] All capitalized terms used in this Summary Notice that are not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 27, 2023 (the "Stipulation"), which is available at www.ExelaSecuritiesLitigation.com.

©2023 Investor's Business Daily, LLC. All rights reserved.

# Glancy Prongay & Murray LLP Announces Pendency of Class Action and Proposed Settlement Involving Purchasers of Exela Technologies, Inc. Common Stock

---

NEWS PROVIDED BY
**Glancy Prongay & Murray LLP →**
02 Oct, 2023, 08:00 ET

---

DALLAS, Oct. 2, 2023 /PRNewswire/ --

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF TEXAS**

**DALLAS DIVISION**

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v<br><br>EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PARCHADHA<br><br>Defendants | Case No. 3:20-cv-00691-D |

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND
PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING;
AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES**

81

**TO: All persons and entities who, during the period between March 16, 2018 and March 16, 2020, inclusive, purchased or otherwise acquired the publicly traded common stock of Exela Technologies, Inc. ("Exela"), and were damaged thereby (the "Settlement Class"):[1]**

**PLEASE READ THIS NOTICE CAREFULLY, YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of Texas, that the above-captioned litigation (the "Action") has been certified as a class action on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that the Lead Plaintiff in the Action has reached a proposed settlement of the Action for $5,000,000 in cash (the "Settlement"), that, if approved, will resolve all claims in the Action.

A hearing will be held on December 7, 2023 at 10:00 a.m., before the Honorable Sidney A. Fitzwater at the United States District Court for the Northern District of Texas, United States Courthouse, Courtroom 1351, 1100 Commerce Street, Dallas, Texas 75242-1003, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the Releases specified and described in the Stipulation (and in the Notice) should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund.** The Notice and Proof of Claim and Release Form ("Claim Form"), can be downloaded from the website maintained by the Claims Administrator, www.ExelaSecuritiesLitigation.com. You may also obtain copies of the Notice and Claim Form by contacting the Claims Administrator at Exela Tech. Securities Litigation, c/o Epiq Class Action & Claims Solutions, Inc., P.O. Box 2147, Portland, OR 97208-2147, 1-888-306-3146.

82

If you are a member of the Settlement Class, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form postmarked no later than **January 24, 2024**. If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is *received* no later than **November 16, 2023**, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

 Any objections to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Lead Counsel and Defendants' Counsel such that they are *received* no later than **November 16, 2023**, in accordance with the instructions set forth in the Notice.

**Please do not contact the Court, the Clerk's office, Exela, or its counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel or the Claims Administrator.**

Inquiries, other than requests for the Notice and Claim Form, should be made to Lead Counsel:

GLANCY PRONGAY & MURRAY LLP

Kara M. Wolke, Esq.

1925 Century Park East, Suite 2100

Los Angeles, CA 90067

(310) 201-9150

info@glancylaw.com

Requests for the Notice and Claim Form should be made to:

c/o Epiq Class Action & Claims Solutions, Inc.

P.O. Box 2147

Portland, OR 97208-2147

888-306-3146

www.ExelaSecuritiesLitigation.com


By Order of the Court

---

[1] All capitalized terms used in this Summary Notice that are not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 27, 2023 (the "Stipulation"), which is available at www.ExelaSecuritiesLitigation.com.

URL: www.ExelaSecuritiesLitigation.com

SOURCE Glancy Prongay & Murray LLP



# PRN Top Stories Newsletters

## Sign up to get PRN's top stories and curated news delivered to your inbox weekly!

Enter Your Email

Select Country            Submit

By signing up you agree to receive content from us.
Our newsletters contain tracking pixels to help us deliver unique content based on each subscriber's engagement and interests. For more information on how we will use your data to ensure we send you relevant content please visit our PRN Consumer Newsletter Privacy Notice. You can withdraw your consent at any time in the footer of every email you'll receive.

84

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA <br><br> Defendants. | Case No. 3:20-cv-00691-D |

**DECLARATION OF KARA M. WOLKE, ESQ. IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES FILED ON BEHALF OF GLANCY PRONGAY & MURRAY LLP**

86

I, Kara M. Wolke, declare as follows:

1.        I am a partner at the law firm Glancy Prongay & Murray LLP ("GPM").[1]  GPM is the Court-appointed Lead Counsel in the above-captioned action (the "Action").  *See* ECF No. 11.  I submit this declaration in support of Lead Counsel's application for an award of attorneys' fees in connection with services rendered in the Action, as well as for reimbursement of litigation expenses incurred in connection with the Action.  I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2.        GPM, as Lead Counsel, was involved in all aspects of the Action and its settlement, as set forth in the Declaration of Kara M. Wolke in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

3.        The schedule attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by attorneys and professional support staff of my firm who, from inception of the Action through and including October 30, 2023,  billed fifteen or more hours to the Action, and the lodestar calculation for those individuals based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in their final year of employment by my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm.

4.        I am the partner who oversaw or conducted the day-to-day activities in the Action and I reviewed these daily time records in connection with the preparation of this declaration.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated July 27, 2023.  ECF No. 91, Ex. 2.

1

The purpose of this review was to confirm both the accuracy of the records as well as the necessity for, and reasonableness of, the time committed to the litigation.  As a result of this review, I made reductions to certain of my firm's time entries such that the time included in Exhibit A reflects that exercise of billing judgment.  Based on this review and the adjustments made, I believe that the time of the GPM attorneys and staff reflected in Exhibit A was reasonable and necessary for the effective and efficient prosecution and resolution of the Action. No time expended on the application for fees and reimbursement of expenses has been included.

5.    The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are consistent with the rates approved by courts in other securities or shareholder litigation when conducting a lodestar cross-check.

6.    The total number of hours reflected in Exhibit A is 6,609.45 hours.  The total lodestar reflected in Exhibit A is $4,033,796.00, consisting of $3,962,638.50 for attorneys' time and $71,157.50 for professional support staff time.

7.    My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8.    As detailed in Exhibit B, my firm is seeking reimbursement of a total of $360,978.11 in expenses incurred in connection with the prosecution of this Action.

9.    The litigation expenses incurred in the Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.  The expenses reflected in Exhibit B are the expenses actually incurred by my firm.

2

88

10.     Attached hereto as Exhibit C is a brief biography of GPM, including the attorneys who were involved in the Action.

I declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.  Executed on October 31, 2023, in Los Angeles, California.


_____
Kara M. Wolke


3

89

# EXHIBIT A

**EXHIBIT A**

*Shen v. Exela Technologies, Inc., et al.,*
**Case No. 3:20-cv-00691-D**

**Glancy Prongay & Murray LLP**

**LODESTAR REPORT**
**FROM INCEPTION THROUGH OCTOBER 30, 2023**

| TIMEKEEPER/CASE | STATUS | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **ATTORNEYS:** | | | | |
| Robert Prongay | Partner | 168.50 | 900.00 | 151,650.00 |
| Joseph Cohen | Partner | 66.75 | 1,100.00 | 73,425.00 |
| Kara Wolke | Partner | 461.90 | 900.00 | 415,710.00 |
| Raymond Sulentic | Senior Associate | 1,258.80 | 645.00 | 811,926.00 |
| Christopher Thoms | Senior Associate | 52.70 | 675.00 | 35,572.50 |
| Christopher Fallon | Associate | 1,185.90 | 700.00 | 830,130.00 |
| Christopher Del Valle | Associate | 756.10 | 550.00 | 415,855.00 |
| Holly A. Heath | Associate | 456.30 | 550.00 | 250,965.00 |
| Robert Yan | Associate | 1,096.50 | 550.00 | 603,075.00 |
| Diarra Porter | Staff Attorney | 533.00 | 425.00 | 226,525.00 |
| Fernanda D. Galbes | Staff Attorney | 360.50 | 410.00 | 147,805.00 |
| **TOTAL ATTORNEY** | **TOTAL** | **6,396.95** | | **$3,962,638.50** |
| **PROFESSIONAL STAFF:** | | | | |
| Harry Kharadjian | Senior Paralegal | 64.50 | 325.00 | 20,962.50 |
| Paul Harrigan | Senior Paralegal | 64.20 | 325.00 | 20,865.00 |
| John D. Belanger | Research Analyst | 46.60 | 350.00 | 16,310.00 |
| Michaela Ligman | Research Analyst | 37.20 | 350.00 | 13,020.00 |
| **TOTAL PROFESSIONAL STAFF** | **TOTAL** | **212.50** | | **$71,157.50** |
| **TOTAL LODESTAR** | **TOTAL** | **6,609.45** | | **$4,033,796.00** |

4

91

# EXHIBIT B

**EXHIBIT B**

*Shen v. Exela Technologies, Inc., et al.,*
**Case No. 3:20-cv-00691-D**

**Glancy Prongay & Murray LLP**

**EXPENSE REPORT**

**FROM INCEPTION THROUGH OCTOBER 30, 2023**

| CATEGORY OF EXPENSE | AMOUNT PAID |
|---|---|
| COURIER AND SPECIAL POSTAGE | 340.18 |
| COURT FILING FEES | 847.50 |
| DOCUMENT MANAGEMENT | 63,169.28 |
| EXPERTS - ACCOUNTING | 64,991.25 |
| EXPERTS - ECONOMICS (LOSS CAUSATION/DAMAGES/PLAN OF ALLOCATION) | 24,537.00 |
| EXPERTS - ECONOMICS (MARKET EFFICIENCY/CLASS CERT) | 113,259.00 |
| INVESTIGATIONS | 26,631.70 |
| MEDIATORS | 19,531.38 |
| ONLINE RESEARCH | 34,176.01 |
| SERVICE OF PROCESS | 2,405.96 |
| TRANSCRIPTS | 8,507.20 |
| TRAVEL AIRFARE | 1,281.56 |
| TRAVEL HOTEL | 1,026.29 |
| TRAVEL MEALS | 273.80 |
| **Grand Total** | **360,978.11** |

5

93

# EXHIBIT C

**EXHIBIT C**

**Glancy Prongay & Murray LLP**

**FIRM RESUME**

6



1925 Century Park East, Suite 2100
Los Angeles, CA 90067
T: 310.201.9150

## FIRM RESUME

**Glancy Prongay & Murray LLP** (the "Firm") has represented investors, consumers and employees for over 25 years. Based in Los Angeles, with offices in New York City and Berkeley, the Firm has successfully prosecuted class action cases and complex litigation in federal and state courts throughout the country.  As Lead Counsel, Co-Lead Counsel, or as a member of Plaintiffs' Counsel Executive Committees, the Firm's attorneys have recovered billions of dollars for parties wronged by corporate fraud, antitrust violations and malfeasance. Indeed, the Institutional Shareholder Services unit of RiskMetrics Group has recognized the Firm as one of the top plaintiffs' law firms in the United States in its Securities Class Action Services report for every year since the inception of the report in 2003.  The Firm's efforts have been publicized in major newspapers such as the *Wall Street Journal*, the *New York Times*, and the *Los Angeles Times*.

Glancy Prongay & Murray's commitment to high quality and excellent personalized services has boosted its national reputation, and we are now recognized as one of the premier plaintiffs' firms in the country. The Firm works tenaciously on behalf of clients to produce significant results and generate lasting corporate reform.

The Firm's integrity and success originate from our attorneys, who are among the brightest and most experienced in the field. Our distinguished litigators have an unparalleled track record of investigating and prosecuting corporate wrongdoing. The Firm is respected for both the zealous advocacy with which we represent our clients' interests as well as the highly-professional and ethical manner by which we achieve results. We are ideally positioned to pursue securities, antitrust, consumer, and derivative litigation on behalf of our clients. The Firm's outstanding accomplishments are the direct result of the exceptional talents of our attorneys and employees.

## SECURITIES CLASS ACTION SETTLEMENTS

Appointed as Lead or Co-Lead Counsel by judges throughout the United States, Glancy Prongay & Murray has achieved significant recoveries for class members in numerous securities class actions, including:

*In re Mercury Interactive Corporation Securities Litigation*, USDC Northern District of California, Case No. 05-3395-JF, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $117 million.

*In re Real Estate Associates Limited Partnership Litigation*, USDC Central District of California, Case No. 98-7035-DDP, in which the Firm served as local counsel and plaintiffs achieved a $184 million jury verdict after a complex six week trial in Los Angeles, California and later settled the case for $83 million.

868675.6                                            Page 1

*In Re Yahoo! Inc. Securities Litigation*, USDC Northern District of California, Case No. 5:17-cv-00373-LHK, in which the Firm served as Co-Lead Counsel and achieved an $80 million settlement.

*The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank, N.A.*, USDC District of Minnesota, Case No. 10-cv-04372-DWF/JJG, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at $62.5 million.

*Shah v. Zimmer Biomet Holdings, Inc.*, USDC Northern District of Indiana, Case No. 3:16-cv-815-PPS-MGG, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $50 million.

*Schleicher v. Wendt*, (Conseco Securities Litigation), USDC Southern District of Indiana, Case No. 02-1332-SEB, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of over $41 million.

*Robb v. Fitbit, Inc.*, USDC Northern District of California, Case No. 3:16-cv-00151, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $33 million.

*Yaldo v. Airtouch Communications*, State of Michigan, Wayne County, Case No. 99-909694-CP, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $32 million for defrauded consumers.

*Lapin v. Goldman Sachs*, USDC Southern District of New York, Case No. 03-0850-KJD, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $29 million.

*In re Heritage Bond Litigation*, USDC Central District of California, Case No. 02-ML-1475-DT, where as Co-Lead Counsel, the Firm recovered in excess of $28 million for defrauded investors and continues to pursue additional defendants.

*In re Livent, Inc. Noteholders Litigation*, USDC Southern District of New York, Case No. 99 Civ 9425-VM, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of over $27 million.

*Mild v. PPG Industries, Inc.*, USDC Central District of California, Case No. 18-cv-04231, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $25 million.

*Davis v. Yelp, Inc.*, USDC Northern District of California, Case No. 18-cv-0400, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $22.5 million.

*In re ECI Telecom Ltd. Securities Litigation*, USDC Eastern District of Virginia, Case No. 01-913-A, in which the Firm served as sole Lead Counsel and recovered almost $22 million for defrauded ECI investors.

*In re Sesen Bio, Inc. Securities Litigation*, USDC Southern District of New York, Case No. 21-cv-07025, a securities fraud class action, in which the Firm served as Lead Counsel for the Class and achieved a settlement of $21 million.

*Senn v. Sealed Air Corporation*, USDC New Jersey, Case No. 03-cv-4372-DMC, a securities fraud class action, in which the Firm acted as Co-Lead Counsel for the Class and achieved a settlement of $20 million.

*In re Gilat Satellite Networks, Ltd. Securities Litigation*, USDC Eastern District of New York, Case No. 02-1510-CPS, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $20 million.

*In re Lumenis, Ltd. Securities Litigation*, USDC Southern District of New York, Case No.02-CV-1989-DAB, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $20 million.

*Wilson v. LSB Industries, Inc.*, USDC Southern District of New York, Case No. 15-cv-07614, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $18.45 million.

*In re Infonet Services Corporation Securities Litigation*, USDC Central District of California, Case No. CV 01-10456-NM, in which as Co-Lead Counsel, the Firm achieved a settlement of $18 million.

*Pierrelouis v. Gogo Inc.*, USDC Northern District of Illinois, Case No. 18-cv-04473, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $17.3 million.

*In re ESC Medical Systems, Ltd. Securities Litigation*, USDC Southern District of New York, Case No. 98 Civ. 7530-NRB, a securities fraud class action in which the Firm served as sole Lead Counsel for the Class and achieved a settlement valued in excess of $17 million.

*Macovski v. Groupon, Inc.*, USDC Northern District of Illinois, Case No. 20-cv-02581, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $13.5 million.

*In re Musicmaker.com Securities Litigation*, USDC Central District of California, Case No. 00-02018-CAS, a securities fraud class action in which the Firm was sole Lead Counsel for the Class and recovered in excess of $13 million.

*In re Lason, Inc. Securities Litigation*, USDC Eastern District of Michigan, Case No. 99 76079-AJT, in which the Firm was Co-Lead Counsel and recovered almost $13 million for defrauded Lason stockholders.

*In re Inso Corp. Securities Litigation*, USDC District of Massachusetts, Case No. 99 10193-WGY, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $12 million.

*In re National TechTeam Securities Litigation*, USDC Eastern District of Michigan, Case No. 97-74587-AC, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $11 million.

*Taft v. Ackermans (KPNQwest Securities Litigation)*, USDC Southern District of New York, Case No. 02-CV-07951-PKL, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement worth $11 million.

*Derr v. RA Medical Systems, Inc.*, USDC Southern District of California, Case No. 19-cv-01079, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $10 million.

*Jenson v. First Trust Corporation*, USDC Central District of California, Case No. 05-cv-3124-ABC, in which the Firm was appointed sole lead counsel and achieved an $8.5 million settlement in a very difficult case involving a trustee's potential liability for losses incurred by investors in a Ponzi scheme.  Kevin Ruf of the Firm also successfully defended in the 9th Circuit Court of Appeals the trial court's granting of class certification in this case.

## ANTITRUST PRACTICE GROUP AND ACHIEVEMENTS

Glancy Prongay & Murray's Antitrust Practice Group focuses on representing individuals and entities that have been victimized by unlawful monopolization, price-fixing, market allocation, and other anti-competitive conduct. The Firm has prosecuted significant antitrust cases and has helped individuals and businesses recover billions of dollars. Prosecuting civil antitrust cases under federal and state laws throughout the country, the Firm's Antitrust Practice Group represents consumers, businesses, and Health and Welfare Funds and seeks injunctive relief and damages for violations of antitrust and commodities laws. The Firm has served, or is currently serving, as Lead Counsel, Co-Lead Counsel or Class Counsel in a substantial number of antitrust class actions, including:

*In re Nasdaq Market-Makers Antitrust Litigation*, USDC Southern District of New York, Case No. 94 C 3996-RWS, MDL Docket No. 1023, a landmark antitrust lawsuit in which the Firm filed the first complaint against all of the major NASDAQ market makers and served on Plaintiffs' Counsel's Executive Committee in a case that recovered $900 million for investors.

*Sullivan v. DB Investments*, USDC District of New Jersey, Case No. No. 04-cv-2819, where the Firm served as Co-Lead Settlement Counsel in an antitrust case against DeBeers relate to the pricing of diamonds that settled for $295 million.

*In re Korean Air Lines Antitrust Litig.*, USDC Central District of California, Master File No. CV 07-05107 SJO(AGRx), MDL No. 07-0189, where the Firm served as Co-Lead Counsel in a case related to fixing of prices for airline tickets to Korea that settled for $86 million.

*In re Urethane Chemical Antitrust Litig.*, USDC District of Kansas, Case No. MDL 1616, where the Firm served as Co-Lead counsel in an antitrust price fixing case that settled $33 million.

*In re Western States Wholesale Natural Gas Litig.*, USDC District of Nevada, Case No. MDL 1566, where the Firm served as Class Counsel in an antitrust price fixing case that settled $25 million.

*In re Aggrenox Antitrust Litig.,* USDC District of Connecticut, Case No. 14-cv-2516, where the Firm played a major role in achieving a settlement of $54,000,000.

*In re Solodyn Antitrust Litig.,* USDC District of Massachusetts, Case No. MDL 2503, where the Firm played a major role in achieving a settlement of $43,000,000.

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*, USDC Eastern District of Pennsylvania, Case No. 16-md-2427, where the Firm is representing a major Health and Welfare Fund in a case against a number of generic drug manufacturers for price fixing generic drugs.

*In re Actos End Payor Antitrust Litig.*, USDC Southern District of New York, Case No. 13-cv-9244, where the Firm is serving on Plaintiffs' Executive Committee.

*In re Heating Control Panel Direct Purchaser* Action, USDC Eastern District of Michigan, Case No. 12-md-02311, representing a recreational vehicle manufacturer in a price-fixing class action involving direct purchasers of heating control panels.

*In re Instrument Panel Clusters Direct Purchaser Action,* USDC Eastern District of Michigan, Case No. 12-md-02311, representing a recreational vehicle manufacturer in a price-fixing class action involving direct purchasers of instrument panel clusters.

In addition, the Firm is currently involved in the prosecution of many market manipulation cases relating to violations of antitrust and commodities laws, including *Sullivan v. Barclays PLC* (manipulation of Euribor rate), *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, *In re LIBOR-Based Financial Instruments Antitrust Litig.*, *In re Gold Futures & Options Trading Litig.*, *In re Platinum & Palladium Antitrust Litig.*, *Sonterra Cap. Master Fund v. Credit Suisse Group AG* (Swiss Libor rate manipulation), *Twin City Iron Pension Fund v. Bank of Nova Scotia* (manipulation of treasury securities), and *Ploss v. Kraft Foods Group* (manipulation of wheat prices).

New York   |   Los Angeles   |   Berkeley
**www.glancylaw.com**

Glancy Prongay & Murray has been responsible for obtaining favorable appellate opinions which have broken new ground in the class action or securities fields, or which have promoted shareholder rights in prosecuting these actions.  The Firm successfully argued the appeals in a number of cases:

In *Smith v. L'Oreal*, 39 Cal.4th 77 (2006), Firm partner Kevin Ruf established ground-breaking law when the California Supreme Court agreed with the Firm's position that waiting penalties under the California Labor Code are available to *any* employee after termination of employment, regardless of the reason for that termination.

## OTHER NOTABLE ACHIEVEMENTS

Spearheaded by Firm attorney Kevin Ruf, the Firm served as Co-Lead Counsel for a class of drivers misclassified as independent contractors in the landmark case Lee v. Dynamex, Case No. BC332016 (Super. Ct. of Cal), which made new law for workers' rights in the California Supreme Court. The *Dynamex* decision altered 30 years of California law and established a new definition of employment that brings more workers within the protections of California's Labor Code. The California legislature, in response to the *Dynamex* decision, promulgated AB5, a statute that codifies the law of the *Dynamex* case and expands its reach.

Headed by Firm attorney Kara Wolke, the Firm served as additional plaintiffs' counsel in *Christine Asia Co. Ltd., et al. v. Jack Yun Ma et al. ("Alibaba")*, 1:15-md-02631 (SDNY), a securities class action on behalf of investors alleging violations of the Securities Exchange Act of 1934 in connection with Alibaba's historic $25 billion IPO, the then-largest IPO in history. After hard-fought litigation, including a successful appeal to the Second Circuit and obtaining class certification, the case settled for $250 million.

Other notable Firm cases include: *Silber v. Mabon I*, 957 F.2d 697 (9th Cir. 1992) and *Silber v. Mabon II*, 18 F.3d 1449 (9th Cir. 1994), which are the leading decisions in the Ninth Circuit regarding the rights of opt-outs in class action settlements. In *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000), the Firm won a seminal victory for investors before the Second Circuit Court of Appeals, which adopted a more favorable pleading standard for investors in reversing the District Court's dismissal of the investors' complaint.  After this successful appeal, the Firm then recovered millions of dollars for defrauded investors of the GT Interactive Corporation.  The Firm also argued *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), *as amended*, 320 F.3d 905 (9th Cir. 2003), and favorably obtained the substantial reversal of a lower court's dismissal of a cutting edge, complex class action initiated to seek redress for a group of employees whose stock options were improperly forfeited by a giant corporation in the course of its sale of the subsidiary at which they worked.

The Firm also has been involved in the representation of individual investors in court proceedings throughout the United States and in arbitrations before the American Arbitration Association, National Association of Securities Dealers, New York Stock Exchange, and Pacific Stock Exchange.  Mr. Glancy has successfully represented litigants in proceedings against such major securities firms and insurance companies as

A.G. Edwards & Sons, Bear Stearns, Merrill Lynch & Co., Morgan Stanley, PaineWebber, Prudential, and Shearson Lehman Brothers.

One of the Firm's unique skills is the use of "group litigation" - the representation of groups of individuals who have been collectively victimized or defrauded by large institutions. This type of litigation brought on behalf of individuals who have been similarly damaged often provides an efficient and effective economic remedy that frequently has advantages over the class action or individual action devices. The Firm has successfully achieved results for groups of individuals in cases against major corporations such as Metropolitan Life Insurance Company, and Occidental Petroleum Corporation.

Glancy Prongay & Murray LLP currently consists of the following attorneys:

## PARTNERS

**LEE ALBERT**, a partner, was admitted to the bars of the Commonwealth of Pennsylvania, the State of New Jersey, and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey in 1986. He received his B.S. and M.S. degrees from Temple University and Arcadia University in 1975 and 1980, respectively, and received his J.D. degree from Widener University School of Law in 1986. Upon graduation from law school, Mr. Albert spent several years working as a civil litigator in Philadelphia, PA. Mr. Albert has extensive litigation and appellate practice experience having argued before the Supreme and Superior Courts of Pennsylvania and has over fifteen years of trial experience in both jury and non-jury cases and arbitrations. Mr. Albert has represented a national health care provider at trial obtaining injunctive relief in federal court to enforce a five-year contract not to compete on behalf of a national health care provider and injunctive relief on behalf of an undergraduate university.

Currently, Mr. Albert represents clients in all types of complex litigation including matters concerning violations of federal and state antitrust and securities laws, mass tort/product liability and unfair and deceptive trade practices. Some of Mr. Albert's current major cases include *In Re Automotive Wire Harness Systems Antitrust Litigation* (E.D. Mich*.); In Re Heater Control Panels Antitrust Litigation* (E.D. Mich.); *Kleen Products, et al. v. Packaging Corp. of America* (N.D. Ill.); *and In re Class 8 Transmission Indirect Purchaser Antitrust Litigation* (D. Del.). Previously, Mr. Albert had a significant role in *Marine Products Antitrust Litigation* (C.D. Cal.); *Baby Products Antitrust Litigation* (E.D. Pa.); *In re ATM Fee Litigation* (N.D. Cal.); *In re Canadian Car Antitrust Litigation* (D. Me.); *In re Broadcom Securities Litigation* (C.D. Cal.); and has worked on *In re Avandia Marketing, Sales Practices and Products Liability Litigation* (E.D. Pa.); *In re Ortho Evra Birth Control Patch Litigation* (N.J. Super. Ct.); *In re AOL Time Warner, Inc. Securities Litigation* (S.D.N.Y.); *In re WorldCom, Inc. Securities Litigation* (S.D.N.Y.); and *In re Microsoft Corporation Massachusetts Consumer Protection Litigation* (Mass. Super. Ct.).

**BRIAN D. BROOKS** joined the New York office of Glancy Prongay & Murray LLP in 2019, specializing in antitrust, consumer, and securities litigation. His current cases include *In re Zetia Antitrust Litigation*, No. 18-md-2836 (E.D. Va.); *Staley, et al. v. Gilead Sciences,*

*Inc., et al.,* No. 3:19-cv-02573-EMC (N.D. Cal.); and *In re: Seroquel XR (Extended Release Quetiapine Fumarate) Litigation*, No. 1:19-cv-08296-CM (S.D.N.Y.).

Prior to joining the firm, Mr. Brooks was an associate at Murray, Frank & Sailer, LLP in New York, where his practice was focused on antitrust, consumer, and securities matters, and later a partner at Smith, Segura & Raphael, LLP, in New York and Louisiana. During his tenure at Smith Segura & Raphael, LLP, Mr. Brooks represented direct purchasers in numerous antitrust matters, including *In re: Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation*, No. 2:13-md-02445 (E.D. Pa.), *In re: Niaspan Antitrust Litigation*, No. 2:13-md-02460 (E.D. Pa.), and *In re: Novartis & Par Antitrust Litigation (Exforge)*, No. 18-cv-4361 (S.D.N.Y.), and was an active member of the trial team for the class in *In re: Nexium (Esomeprazole) Antitrust Litigation*, No. 12-md-2409 (D. Mass.), the first post-*Actavis* reverse-payment case to be tried to verdict. He was also an active member of the litigation teams in the *King Drug Company of Florence, Inc. et al. v. Cephalon, Inc., et al. (Provigil)*, No. 2:06-cv-1797 (E.D. Pa.); *In re: Prograf Antitrust Litigation*, No. 1:11-md-2242 (D. Mass.) and *In re: Miralax* antitrust matters, which collectively settled for more than $600 million, and a member of the litigation teams in *In re: Relafen Antitrust Litigation*, No. 01-cv-12239 (D. Mass.); *In re: Buspirone Antitrust Litigaiton*, MDL Dkt. No. 1410 (S.D.N.Y.); *In re: Remeron Antitrust Litigation,* No. 02-2007 (D.N.J.); *In re: Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317 (S.D. Fla.); and *In re K-Dur Antitrust Litigation*, No. 10-cv-1652 (D.N.J.).

Mr. Brooks received his B.A. from Northwestern State University of Louisiana in 1998 and his J.D. from Washington and Lee School of Law in 2002, where he was a staff writer for the Environmental Law Digest and clerked for the Alderson Legal Assistance Program, handling legal matters for inmates of the Federal Detention Center in Alderson, West Virginia. He is admitted to practice in all state courts in New York and Louisiana, as well as the United States District Courts for the Southern and Eastern Districts of New York and the Eastern and Western Districts of Louisiana.

**JOSEPH D. COHEN** has extensive complex civil litigation experience, and currently oversees the firm's settlement department, negotiating, documenting and obtaining court approval of the firm's securities, merger and derivative settlements.

Prior to joining the firm, Mr. Cohen successfully prosecuted numerous securities fraud, consumer fraud, antitrust and constitutional law cases in federal and state courts throughout the country.  Cases in which Mr. Cohen took a lead role include: *Jordan v. California Dep't of Motor Vehicles*, 100 Cal. App. 4th 431 (2002) (complex action in which the California Court of Appeal held that California's Non-Resident Vehicle $300 Smog Impact Fee violated the Commerce Clause of the United States Constitution, paving the way for the creation of a $665 million fund and full refunds, with interest, to 1.7 million motorists); *In re Geodyne Res., Inc. Sec. Litig.* (Harris Cty. Tex.) (settlement of securities fraud class action, including related litigation, totaling over $200 million); *In re Cmty. Psychiatric Centers Sec. Litig.* (C.D. Cal.) (settlement of $55.5 million was obtained from the company and its auditors, Ernst & Young, LLP); *In re McLeodUSA Inc., Sec. Litig.* (N.D. Iowa) ($30 million settlement); *In re Arakis Energy Corp. Sec. Litig.* (E.D.N.Y.) ($24 million settlement); *In re Metris Cos., Inc., Sec. Litig.* (D. Minn.) ($7.5 million settlement);

*In re Landry's Seafood Rest., Inc. Sec. Litig.* (S.D. Tex.) ($6 million settlement); and *Freedman v. Maspeth Fed. Loan and Savings Ass'n*, (E.D.N.Y) (favorable resolution of issue of first impression under RESPA resulting in full recovery of improperly assessed late fees).

Mr. Cohen was also a member of the teams that obtained substantial recoveries in the following cases: *In re: Foreign Exchange Benchmark Rates Antitrust Litig.* (S.D.N.Y.) (partial settlements of approximately $2 billion); *In re Washington Mutual Mortgage-Backed Sec. Litig.* (W.D. Wash.) (settlement of $26 million); *Mylan Pharm., Inc. v. Warner Chilcott Public Ltd. Co.* (E.D. Pa.) ($8 million recovery in antitrust action on behalf of class of indirect purchasers of the prescription drug Doryx); *City of Omaha Police and Fire Ret. Sys. v. LHC Group, Inc.* (W.D. La.) (securities class action settlement of $7.85 million); and *In re Pacific Biosciences of Cal., Inc. Sec. Litig.* (Cal. Super. Ct.) ($7.6 million recovery).

In addition, Mr. Cohen was previously the head of the settlement department at Bernstein Litowitz Berger & Grossmann LLP.   While at BLB&G, Mr. Cohen had primary responsibility for overseeing the team working on the following settlements, among others: *In Re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.* (D.N.J.) ($1.062 billion securities class action settlement); *New York State Teachers' Ret. Sys. v. General Motors Co.* (E.D. Mich.) ($300 million securities class action settlement); *In re JPMorgan Chase & Co. Sec. Litig.* (S.D.N.Y.) ($150 million settlement); *Dep't of the Treasury of the State of New Jersey and its Division of Inv. v. Cliffs Natural Res. Inc., et al.* (N.D. Ohio) ($84 million securities class action settlement); *In re Penn West Petroleum Ltd. Sec. Litig.* (S.D.N.Y.) ($19.76 million settlement); and *In re BioScrip, Inc. Sec. Litig.* ($10.9 million settlement).

**LIONEL Z. GLANCY**, a graduate of University of Michigan Law School, is the founding partner of the Firm.  After serving as a law clerk for United States District Judge Howard McKibben, he began his career as an associate at a New York law firm concentrating in securities litigation.  Thereafter, he started a boutique law firm specializing in securities litigation, and other complex litigation, from the Plaintiff's perspective.  Mr. Glancy has established a distinguished career in the field of securities litigation over the last thirty years, having appeared and been appointed lead counsel on behalf of aggrieved investors in securities class action cases throughout the country.  He has appeared and argued before dozens of district courts and a number of appellate courts.  His efforts have resulted in the recovery of hundreds of millions of dollars in settlement proceeds for huge classes of shareholders.  Well known in securities law, he has lectured on its developments and practice, including having lectured before Continuing Legal Education seminars and law schools.

Mr. Glancy was born in Windsor, Canada, on April 4, 1962.  Mr. Glancy earned his undergraduate degree in political science in 1984 and his Juris Doctor degree in 1986, both from the University of Michigan.  He was admitted to practice in California in 1988, and in Nevada and before the U.S. Court of Appeals, Ninth Circuit, in 1989.

**MARC L. GODINO** has extensive experience successfully litigating complex, class action lawsuits as a plaintiffs' lawyer. Since joining the firm in 2005, Mr. Godino has played a primary role in cases resulting in settlements of more than $100 million. He has prosecuted securities, derivative, merger & acquisition, and consumer cases throughout the country in both state and federal court, as well as represented defrauded investors at FINRA arbitrations. Mr. Godino manages the Firm's consumer class action department.

While a senior associate with Stull Stull & Brody, Mr. Godino was one of the two primary attorneys involved in *Small v. Fritz Co.*, 30 Cal. 4th 167 (April 7, 2003), in which the California Supreme Court created new law in the State of California for shareholders that held shares in detrimental reliance on false statements made by corporate officers. The decision was widely covered by national media including *The National Law Journal*, the *Los Angeles Times*, the *New York Times*, and the *New York Law Journal*, among others, and was heralded as a significant victory for shareholders.

Mr. Godino's successes with Glancy Prongay & Murray LLP include: *Good Morning To You Productions Corp., et al., v. Warner/Chappell Music, Inc., et al.*, Case No. 13-04460 (C.D. Cal.) (In this highly publicized case that attracted world-wide attention, Plaintiffs prevailed on their claim that the song "Happy Birthday" should be in the public domain and achieved a $14,000,000 settlement to class members who paid a licensing fee for the song); *Ord v. First National Bank of Pennsylvania,* Case No. 12-766 (W. D. Pa.) ($3,000,000 settlement plus injunctive relief); *Pappas v. Naked Juice Co. of Glendora, Inc.,* Case No. 11-08276 (C.D. Cal.) ($9,000,000 settlement plus injunctive relief);*Astiana v. Kashi Company,* Case No. 11-1967 (S.D. Cal.) ($5,000,000 settlement); *In re Magma Design Automation, Inc. Securities Litigation*, Case No. 05-2394 (N.D. Cal.) ($13,500,000 settlement); *In re Hovnanian Enterprises, Inc. Securities Litigation*, Case No. 08-cv-0099 (D.N.J.) ($4,000,000 settlement); *In re Skilled Healthcare Group, Inc. Securities Litigation*, Case No. 09-5416 (C.D. Cal.) ($3,000,000 settlement); *Kelly v. Phiten USA, Inc.*, Case No. 11-67 (S.D. Iowa) ($3,200,000 settlement plus injunctive relief); (*Shin et al., v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (after defeating a motion to dismiss, the case settled on very favorable terms for class members including free replacement of cracked wheels); *Payday Advance Plus, Inc. v. MIVA, Inc.*, Case No. 06-1923 (S.D.N.Y.) ($3,936,812 settlement); *Esslinger, et al. v. HSBC Bank Nevada, N.A.*, Case No. 10-03213 (E.D. Pa.) ($23,500,000 settlement); *In re Discover Payment Protection Plan Marketing and Sales Practices Litigation*, Case No. 10-06994 ($10,500,000 settlement ); *In Re: Bank of America Credit Protection Marketing and Sales Practices Litigation,* Case No. 11-md-02269 (N.D. Cal.) ($20,000,000 settlement).

Mr. Godino was also the principal attorney in the following published decisions: *In re Zappos.com, Inc., Customer Data Sec. Breach Litigation*, 714 Fed Appx. 761 (9th Cir. 2018) (reversing order dismissing class action complaint); *Small et al., v. University Medical Center of Southern Nevada, et al.*, 2017 WL 3461364 (D. Nev. Aug. 10, 2017) (denying motion to dismiss); *Sciortino v. Pepsico, Inc.*, 108 F.Supp. 3d 780 (N.D. Cal.. June 5, 2015) (motion to dismiss denied); *Peterson v. CJ America, Inc.*, 2015 WL 11582832 (S.D. Cal. May 15, 2015) (motion to dismiss denied); *Lilly v. Jamba Juice Company*, 2014 WL 4652283 (N. D. Cal. Sep 18, 2014) (class certification granted in part); *Kramer v. Toyota Motor Corp.,* 705 F. 3d 1122 (9th Cir. 2013) (affirming denial of

Defendant's motion to compel arbitration); *Sateriale, et al. v. R.J. Reynolds Tobacco Co.*, 697 F. 3d 777 (9th Cir. 2012) (reversing order dismissing class action complaint); *Shin v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (motion to dismiss denied); *In re 2TheMart.com Securities Litigation*, 114 F. Supp. 2d 955 (C.D. Cal. 2002) (motion to dismiss denied); *In re Irvine Sensors Securities Litigation*, 2003 U.S. Dist. LEXIS 18397 (C.D. Cal. 2003) (motion to dismiss denied).

The following represent just a few of the cases Mr. Godino is currently litigating in a leadership position: *Small v. University Medical Center of Southern Nevada*, Case No. 13-00298 (D. Nev.); *Courtright, et al., v. O'Reilly Automotive Stores, Inc., et al.*, Case No. 14-334 (W.D. Mo); *Keskinen v. Edgewell Personal Care Co., et al.*, Case No. 17-07721 (C.D. CA); *Ryan v. Rodan & Fields, LLC*, Case No. 18-02505 (N.D. Cal)

**MATTHEW M. HOUSTON**, a partner in the firm's New York office, graduated from Boston University School of Law in 1988.  Mr. Houston is an active member of the Bar of the State of New York and an inactive member of the bar for the Commonwealth of Massachusetts.  Mr. Houston is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the District of Massachusetts, and the Second, Seventh, Ninth, and Eleventh Circuit Court of Appeals of the United States.  Mr. Houston repeatedly has been selected as a New York Metro Super Lawyer.

Mr. Houston has substantial courtroom experience involving complex actions in federal and state courts throughout the country.  Mr. Houston was co-lead trial counsel in one the few ERISA class action cases taken to trial asserting breach of fiduciary duty claims against plan fiduciaries, *Brieger et al. v. Tellabs, Inc.*, No. 06-CV-01882 (N.D. Ill.), and has successfully prosecuted many ERISA actions, including *In re Royal Ahold N.V. Securities and ERISA Litigation*, Civil Action No. 1:03-md-01539.  Mr. Houston has been one of the principal attorneys litigating claims in multi-district litigation concerning employment classification of pickup and delivery drivers and primarily responsible for prosecuting ERISA class claims resulting in a $242,000,000 settlement; *In re FedEx Ground Package Inc. Employment Practices Litigation*, No. 3:05-MD-527 (MDL 1700).  Mr. Houston recently presented argument before the Eleventh Circuit Court of Appeals on behalf of a class of Florida pickup and delivery drivers obtaining a reversal of the lower court's grant of summary judgment.  Mr. Houston represented the interests of Nevada and Arkansas drivers employed by FedEx Ground obtaining significant recoveries on their behalf.  Mr. Houston also served as lead counsel in multi-district class litigation seeking to modify insurance claims handling practices; *In re UnumProvident Corp. ERISA Benefits Denial Actions*, No. 1:03-cv-1000 (MDL 1552).

Mr. Houston has played a principal role in numerous derivative and class actions wherein substantial benefits were conferred upon plaintiffs: *In re: Groupon Derivative Litigation*, No. 12-cv-5300 (N.D. Ill. 2012) (settlement of consolidated derivative action resulting in sweeping corporate governance reform estimated at $159 million)  *Bangari v. Lesnik, et al.*, No. 11 CH 41973 (Illinois Circuit Court, County of Cook) (settlement of claim resulting in payment of $20 million to Career Education Corporation and implementation of extensive corporate governance reform); *In re Diamond Foods, Inc. Shareholder Litigation*, No. CGC-11-515895 (California Superior Court, County of San Francisco)

($10.4 million in monetary relief including a $5.4 million clawback of executive compensation and significant corporate governance reform); *Pace American Shareholder Litigation*, 94-92 TUC-RMB (securities fraud class action settlement resulting in a recovery of $3.75 million); *In re Bay Financial Securities Litigation*, Master File No. 89-2377-DPW, (D. Mass.) (J. Woodlock) (settlement of action based upon federal securities law claims resulting in class recovery in excess of $3.9 million); *Goldsmith v. Technology Solutions Company*, 92 C 4374 (N.D. Ill. 1992) (J. Manning) (recovery of $4.6 million as a result of action alleging false and misleading statements regarding revenue recognition).

In addition to numerous employment and derivative cases, Mr. Houston has litigated actions asserting breach of fiduciary duty in the context of mergers and acquisitions.  Mr. Houston has been responsible for securing millions of dollars in additional compensation and structural benefits for shareholders of target companies: *In re Instinet Group, Inc. Shareholders Litigation*, C.A. No. 1289 (Delaware Court of Chancery); *Jasinover v. The Rouse Company*, Case No. 13-C-04-59594 (Maryland Circuit Court); *McLaughlin v. Household International, Inc.*, Case No. 02 CH 20683 (Illinois Circuit Court); *Sebesta v. The Quizno's Corporation*, Case No. 2001 CV 6281 (Colorado District Court); *Crandon Capital Partners v. Sanford M. Kimmel*, C.A. No. 14998 (Del. Ch.); and *Crandon Capital Partners v. Kimmel*, C.A. No. 14998 (Del. Ch. 1996) (J. Chandler) (settlement of an action on behalf of shareholders of Transnational Reinsurance Co. whereby acquiring company provided an additional $10.4 million in merger consideration).

**JASON L. KRAJCER** is a partner in the firm's Los Angeles office.  He specializes in complex securities cases and has extensive experience in all phases of litigation (fact investigation, pre-trial motion practice, discovery, trial, appeal).

Prior to joining Glancy Prongay & Murray LLP, Mr. Krajcer was an Associate at Goodwin Procter LLP where he represented issuers, officers and directors in multi-hundred million and billion dollar securities cases.  He began his legal career at Orrick, Herrington & Sutcliffe LLP, where he represented issuers, officers and directors in securities class actions, shareholder derivative actions, and matters before the U.S. Securities & Exchange Commission.

Mr. Krajcer is admitted to the State Bar of California, the Bar of the District of Columbia, the United States Supreme Court, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central and Southern Districts of California.

**SUSAN G. KUPFER** is the founding partner of the Firm's Berkeley office. Ms Kupfer joined the Firm in 2003.  She is a native of New York City, and received her A.B. degree from Mount Holyoke College in 1969 and her Juris Doctor degree from Boston University School of Law in 1973.  She did graduate work at Harvard Law School and, in 1977, was named Assistant Dean and Director of Clinical Programs at Harvard, supervising and teaching in that program of legal practice and related academic components.

For much of her legal career, Ms. Kupfer has been a professor of law.  Her areas of academic expertise are Civil Procedure, Federal Courts, Conflict of Laws, Constitutional

Law, Legal Ethics, and Jurisprudence. She has taught at Harvard Law School, Hastings College of the Law, Boston University School of Law, Golden Gate University School of Law, and Northeastern University School of Law.  From 1991 through 2002, she was a lecturer on law at the University of California, Berkeley, Boalt Hall, teaching Civil Procedure and Conflict of Laws.  Her publications include articles on federal civil rights litigation, legal ethics, and jurisprudence.  She has also taught various aspects of practical legal and ethical training, including trial advocacy, negotiation and legal ethics, to both law students and practicing attorneys.

Ms. Kupfer previously served as corporate counsel to The Architects Collaborative in Cambridge and San Francisco, and was the Executive Director of the Massachusetts Commission on Judicial Conduct.  She returned to the practice of law in San Francisco with Morgenstein & Jubelirer and Berman DeValerio LLP before joining the Firm.

Ms. Kupfer's practice is concentrated in complex antitrust litigation.  She currently serves, or has served, as Co-Lead Counsel in several multidistrict antitrust cases: *In re Photochromic Lens Antitrust Litig.* (MDL 2173, M.D. Fla. 2010); *In re Fresh and Process Potatoes Antitrust Litig.* (D. ID. 2011); *In re Korean Air Lines Antitrust Litig.* (MDL No. 1891, C.D. Cal. 2007); *In re Urethane Antitrust Litigation* (MDL 1616, D. Kan. 2004); *In re Western States Wholesale Natural Gas Litigation* (MDL 1566, D. Nev. 2005); and *Sullivan et al v. DB Investments et al* (D. N.J. 2004).  She has been a member of the lead counsel teams that achieved significant settlements in: *In re Sorbates Antitrust Litigation* ($96.5 million settlement); *In re Pillar Point Partners Antitrust Litigation* ($50 million settlement); and *In re Critical Path Securities Litigation* ($17.5 million settlement).

Ms. Kupfer is a member of the bar of Massachusetts and California, and is admitted to practice before the United States District Courts for the Northern, Central, Eastern and Southern Districts of California, the District of Massachusetts, the Courts of Appeals for the First and Ninth Circuits, and the U.S. Supreme Court.

**CHARLES H. LINEHAN** is a partner in the firm's Los Angeles office.  He graduated summa cum laude from the University of California, Los Angeles with a Bachelor of Arts degree in Philosophy and a minor in Mathematics.  Mr. Linehan received his Juris Doctor degree from the UCLA School of Law, where he was a member of the UCLA Moot Court Honors Board.  While attending law school, Mr. Linehan participated in the school's First Amendment Amicus Brief Clinic (now the Scott & Cyan Banister First Amendment Clinic) where he worked with nationally recognized scholars and civil rights organizations to draft amicus briefs on various Free Speech issues.

**GREGORY B. LINKH** works out of the New York office, where he litigates antitrust, securities, shareholder derivative, and consumer cases. Greg graduated from the State University of New York at Binghamton in 1996 and from the University of Michigan Law School in 1999. While in law school, Greg externed with United States District Judge Gerald E. Rosen of the Eastern District of Michigan. Greg was previously associated with the law firms Dewey Ballantine LLP, Pomerantz Haudek Block Grossman & Gross LLP, and Murray Frank LLP.

Previously, Greg had significant roles in *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation* (settled for $125 million); *In re Crompton Corp. Securities Litigation* (settled $11 million); *Lowry v. Andrx Corp.* (settled for $8 million); *In re Xybernaut Corp. Securities MDL Litigation* (settled for $6.3 million); and *In re EIS Int'l Inc. Securities Litigation* (settled for $3.8 million). Greg also represented the West Virginia Investment Management Board ("WVIMB") in *WVIMB v. Residential Accredited Loans, Inc., et al.*, relating to the WVIMB's investment in residential mortgage-backed securities.

Currently, Greg is litigating various antitrust and securities cases, including *In re Korean Ramen Antitrust Litigation*, *In re Automotive Parts Antitrust Litigation*, and *In re Horsehead Holding Corp. Securities Litigation*.

Greg is the co-author of Inherent Risk In Securities Cases In The Second Circuit, NEW YORK LAW JOURNAL (Aug. 26, 2004); and Staying Derivative Action Pursuant to PSLRA and SLUSA, NEW YORK LAW JOURNAL, P. 4, COL. 4 (Oct. 21, 2005).

**BRIAN MURRAY** is the managing partner of the Firm's New York Park Avenue office and the head of the Firm's Antitrust Practice Group. He received Bachelor of Arts and Master of Arts degrees from the University of Notre Dame in 1983 and 1986, respectively. He received a Juris Doctor degree, *cum laude,* from St. John's University School of Law in 1990. At St. John's, he was the Articles Editor of the ST. JOHN'S LAW REVIEW. Mr. Murray co-wrote: *Jurisdição Estrangeira Tem Papel Relevante Na De Fiesa De Investidores Brasileiros,* ESPAÇA JURÍDICO BOVESPA (August 2008); *The Proportionate Trading Model: Real Science or Junk Science?,* 52 CLEVELAND ST. L. REV. 391 (2004-05); *The Accident of Efficiency: Foreign Exchanges, American Depository Receipts, and Space Arbitrage,* 51 BUFFALO L. REV. 383 (2003); *You Shouldn't Be Required To Plead More Than You Have To Prove,* 53 BAYLOR L. REV. 783 (2001); *He Lies, You Die: Criminal Trials, Truth, Perjury, and Fairness,* 27 NEW ENGLAND J. ON CIVIL AND CRIMINAL CONFINEMENT 1 (2001); *Subject Matter Jurisdiction Under the Federal Securities Laws: The State of Affairs After Itoba,* 20 MARYLAND J. OF INT'L L. AND TRADE 235 (1996); *Determining Excessive Trading in Option Accounts: A Synthetic Valuation Approach,* 23 U. DAYTON L. REV. 316 (1997); *Loss Causation Pleading Standard,* NEW YORK LAW JOURNAL (Feb. 25, 2005); *The PSLRA 'Automatic Stay' of Discovery,* NEW YORK LAW JOURNAL (March 3, 2003); and *Inherent Risk In Securities Cases In The Second Circuit,* NEW YORK LAW JOURNAL (Aug. 26, 2004). He also authored *Protecting The Rights of International Clients in U.S. Securities Class Action Litigation,* INTERNATIONAL LITIGATION NEWS (Sept. 2007); Lifting the PSLRA "Automatic Stay" of Discovery, 80 N. DAK. L. REV. 405 (2004); *Aftermarket Purchaser Standing Under § 11 of the Securities Act of 1933,* 73 ST. JOHN'S L. REV.633 (1999); *Recent Rulings Allow Section 11 Suits By Aftermarket Securities Purchasers,* NEW YORK LAW JOURNAL (Sept. 24, 1998); and *Comment, Weissmann v. Freeman: The Second Circuit Errs in its Analysis of Derivative Copy-rights by Joint Authors,* 63 ST. JOHN'S L. REV. 771 (1989).

Mr. Murray was on the trial team that prosecuted a securities fraud case under Section 10(b) of the Securities Exchange Act of 1934 against Microdyne Corporation in the Eastern District of Virginia and he was also on the trial team that presented a claim under

Section 14 of the Securities Exchange Act of 1934 against Artek Systems Corporation and Dynatach Group which settled midway through the trial.

Mr. Murray's major cases include *In re Horsehead Holding Corp. Sec. Litig.*, No. 16-cv-292, 2018 WL 4838234 (D. Del. Oct. 4, 2018) (recommending denial of motion to dismiss securities fraud claims where company's generic cautionary statements failed to adequately warn of known problems); *In re Deutsche Bank Sec. Litig.*, --- F.R.D. ---, 2018 WL 4771525 (S.D.N.Y. Oct. 2, 2018) (granting class certification for Securities Act claims and rejecting defendants' argument that class representatives' trading profits made them atypical class members); *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017 (N.D. Cal. 2016) (denying motion to dismiss securities fraud claims where confidential witness statements sufficiently established scienter); *In re Eagle Bldg. Tech. Sec. Litig.,* 221 F.R.D. 582 (S.D. Fla. 2004), 319 F. Supp. 2d 1318 (S.D. Fla. 2004) (complaint against auditor sustained due to magnitude and nature of fraud; no allegations of a "tip-off" were necessary); *In re Turkcell Iletisim A.S. Sec. Litig.,* 209 F.R.D. 353 (S.D.N.Y. 2002) (defining standards by which investment advisors have standing to sue); *In re Turkcell Iletisim A.S. Sec. Litig.*, 202 F. Supp. 2d 8 (S.D.N.Y. 2001) (liability found for false statements in prospectus concerning churn rates); *Feiner v. SS&C Tech., Inc.,* 11 F. Supp. 2d 204 (D. Conn. 1998) (qualified independent underwriters held liable for pricing of offering); *Malone v. Microdyne Corp.*, 26 F.3d 471 (4th Cir. 1994) (reversal of directed verdict for defendants); and *Adair v. Bristol Tech. Systems, Inc.,* 179 F.R.D. 126 (S.D.N.Y. 1998) (aftermarket purchasers have standing under section 11 of the Securities Act of 1933). Mr. Murray also prevailed on an issue of first impression in the Superior Court of Massachusetts, in Cambridge Biotech Corp. v. Deloitte and Touche LLP, in which the court applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts. 6 Mass. L. Rptr. 367 (Mass. Super. Jan. 28, 1997). In addition, in *Adair v. Microfield Graphics, Inc.* (D. Or.), Mr. Murray settled the case for 47% of estimated damages. *In the Qiao Xing Universal Telephone* case, claimants received 120% of their recognized losses.

Among his current cases, Mr. Murray represents a class of investors in a securities litigation involving preferred shares of Deutsche Bank and is lead counsel in a securities class action against Horsehead Holdings, Inc. in the District of Delaware.

Mr. Murray served as a Trustee of the Incorporated Village of Garden City (2000-2002); Commissioner of Police for Garden City (2000-2001); Co-Chairman, Derivative Suits Subcommittee, American Bar Association Class Action and Derivative Suits Committee, (2007-2010); Member, Sports Law Committee, Association of the Bar for the City of New York, 1994-1997; Member, Litigation Committee, Association of the Bar for the City of New York, 2003-2007; Member, New York State Bar Association Committee on Federal Constitution and Legislation, 2005-2008; Member, Federal Bar Council, Second Circuit Committee, 2007-present.

Mr. Murray has been a panelist at CLEs sponsored by the Federal Bar Council and the Institute for Law and Economic Policy, at the German-American Lawyers Association Annual Meeting in Frankfurt, Germany, and is a frequent lecturer before institutional investors in Europe and South America on the topic of class actions.

**ROBERT V. PRONGAY** is a partner in the Firm's Los Angeles office where he focuses on the investigation, initiation, and prosecution of complex securities cases on behalf of institutional and individual investors. Mr. Prongay's practice concentrates on actions to recover investment losses resulting from violations of the federal securities laws and various actions to vindicate shareholder rights in response to corporate and fiduciary misconduct.

Mr. Prongay has extensive experience litigating complex cases in state and federal courts nationwide. Since joining the Firm, Mr. Prongay has successfully recovered millions of dollars for investors victimized by securities fraud and has negotiated the implementation of significant corporate governance reforms aimed at preventing the recurrence of corporate wrongdoing.

Mr. Prongay was recently recognized as one of thirty lawyers included in the Daily Journal's list of Top Plaintiffs Lawyers in California for 2017. Several of Mr. Prongay's cases have received national and regional press coverage. Mr. Prongay has been interviewed by journalists and writers for national and industry publications, ranging from *The Wall Street Journal* to the *Los Angeles Daily Journal*. Mr. Prongay has appeared as a guest on Bloomberg Television where he was interviewed about the securities litigation stemming from the high-profile initial public offering of Facebook, Inc.

Mr. Prongay received his Bachelor of Arts degree in Economics from the University of Southern California and his Juris Doctor degree from Seton Hall University School of Law. Mr. Prongay is also an alumnus of the Lawrenceville School.

**DANIELLA QUITT**, a partner in the firm's New York office, graduated from Fordham University School of Law in 1988, is a member of the Bar of the State of New York, and is also admitted to the United States District Courts for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second, Fifth, and Ninth Circuits, and the United States Supreme Court.

Ms. Quitt has extensive experience in successfully litigating complex class actions from inception to trial and has played a significant role in numerous actions wherein substantial benefits were conferred upon plaintiff shareholders, such as *In re Safety-Kleen Corp. Stockholders Litigation*, (D.S.C.) (settlement fund of $44.5 million); *In re Laidlaw Stockholders Litigation*, (D.S.C.) (settlement fund of $24 million); *In re UNUMProvident Corp. Securities Litigation*, (D. Me.) (settlement fund of $45 million); *In re Harnischfeger Industries* (E.D. Wisc.) (settlement fund of $10.1 million); *In re Oxford Health Plans, Inc. Derivative Litigation*, (S.D.N.Y.) (settlement benefit of $13.7 million and corporate therapeutics); *In re JWP Inc. Securities Litigation*, (S.D.N.Y.) (settlement fund of $37 million); *In re Home Shopping Network, Inc., Derivative Litigation*, (S.D. Fla.) (settlement benefit in excess of $20 million); *In re Graham-Field Health Products, Inc. Securities* Litigation, (S.D.N.Y.) (settlement fund of $5.65 million); *Benjamin v. Carusona*, (E.D.N.Y.) (prosecuted action on behalf of minority shareholders which resulted in a change of control from majority-controlled management at Gurney's Inn Resort & Spa Ltd.); *In re Rexel Shareholder Litigation*, (Sup. Ct. N.Y. County) (settlement benefit in excess of $38

million); and *Croyden Assoc. v. Tesoro Petroleum Corp., et al.*, (Del. Ch.) (settlement benefit of $19.2 million).

In connection with the settlement of *Alessi v. Beracha*, (Del. Ch.), a class action brought on behalf of the former minority shareholders of Earthgrains, Chancellor Chandler commented: "I give credit where credit is due, Ms. Quitt. You did a good job and got a good result, and you should be proud of it."

Ms. Quitt has focused her practice on shareholder rights, securities class actions, and ERISA class actions but also handles general commercial and consumer litigation. Ms. Quitt serves as a member of the S.D.N.Y. ADR Panel and has been consistently selected as a New York Metro Super Lawyer.

**JONATHAN M. ROTTER** leads the Firm's intellectual property litigation practice and has extensive experience in class action litigation, including in the fields of data privacy, digital content, securities, consumer protection, and antitrust. His cases often involve technical and scientific issues, and he excels at the critical skill of understanding and organizing complex subject matter in a way helpful to judges, juries, and ultimately, the firm's clients. Since joining the firm, he has played a key role in cases recovering over $100 million. He handles cases on contingency, partial contingency, and hourly bases, and works collaboratively with other lawyers and law firms across the country.

Before joining the firm, Mr. Rotter served for three years as the first Patent Pilot Program Law Clerk at the United States District Court for the Central District of California, both in Los Angeles and Orange County. There, he assisted the Honorable S. James Otero, Andrew J. Guilford, George H. Wu, John A. Kronstadt, and Beverly Reid O'Connell with hundreds of patent cases in every major field of technology, from complaint to post-trial motions, advised on case management strategy, and organized and provided judicial education. Mr. Rotter also served as a law clerk for the Honorable Milan D. Smith, Jr. on the United States Court of Appeals for the Ninth Circuit, working on the full range of matters handled by the Circuit.

Before his service to the courts, Mr. Rotter practiced at an international law firm, where he argued appeals at the Federal Circuit, Ninth Circuit, and California Court of Appeal, tried cases, argued motions, and managed all aspects of complex litigation. He also served as a volunteer criminal prosecutor for the Los Angeles City Attorney's Office.

Mr. Rotter graduated with honors from Harvard Law School in 2004. He served as an editor of the Harvard Journal of Law & Technology, was a Fellow in Law and Economics at the John M. Olin Center for Law, Economics, and Business at Harvard Law School, and a Fellow in Justice, Welfare, and Economics at the Harvard University Weatherhead Center For International Affairs. He graduated with honors from the University of California, San Diego in 2000 with a B.S. in molecular biology and a B.A. in music.

Mr. Rotter serves on the Merit Selection Panel for Magistrate Judges in the Central District of California, and served on the Model Patent Jury Instructions and Model Patent Local Rules subcommittees of the American Intellectual Property Law Association. He has

written extensively on intellectual property issues, and has been honored for his work with legal service organizations.  He is admitted to practice in California and before the United States Courts of Appeals for the First, Second, Ninth and Federal Circuits, the United States District Courts for the Northern, Central, and Southern Districts of California, and the United States Patent & Trademark Office.

**KEVIN F. RUF** graduated from the University of California at Berkeley with a Bachelor of Arts in Economics and earned his Juris Doctor degree from the University of Michigan. He was an associate at the Los Angeles firm Manatt Phelps and Phillips from 1988 until 1992, where he specialized in commercial litigation. In 1993, he joined the firm Corbin & Fitzgerald (with future federal district court Judge Michael Fitzgerald) specializing in white collar criminal defense work.

Kevin joined the Glancy firm in 2001 and works on a diverse range of trial and appellate cases; he is also head of the firm's Labor practice. Kevin has successfully argued a number of important appeals, including in the 9th Circuit Court of Appeals. He has twice argued cases before the California Supreme Court – winning both.

In *Smith v. L'Oreal* (2006), after Kevin's winning arguments, the California Supreme Court established a fundamental right of all California workers to immediate payment of all earnings at the conclusion of their employment.

Kevin gave the winning oral argument in one of the most talked about and wide-reaching California Supreme Court cases of recent memory: *Lee v. Dynamex* (2018). The Dynamex decision altered 30 years of California law and established a new definition of employment that brings more workers within the protections of California's Labor Code. The California legislature was so impressed with the Dynamex result that promulgated AB5, a statute to formalize this new definition of employment and expand its reach.

Kevin won the prestigious California Lawyer of the Year (CLAY) award in 2019 for his work on the *Dynamex* case.

In 2021, Kevin was named by California's legal paper of record, the Daily Journal, as one of 18 California  "Lawyers of the Decade."

Kevin has been named three times as one of the Daily Journal's "Top 75 Employment Lawyers."

Since 2014, Kevin has been an elected member of the Ojai Unified School District Board of Trustees. Kevin was also a Main Company Member of the world-famous Groundlings improv and sketch comedy troupe – where "everyone else got famous."

**BENJAMIN I. SACHS-MICHAELS**, a partner in the firm's New York office, graduated from Benjamin N. Cardozo School of Law in 2011. His practice focuses on shareholder derivative litigation and class actions on behalf of shareholders and consumers.

While in law school, Mr. Sachs-Michaels served as a judicial intern to Senior United States District Judge Thomas J. McAvoy in the United States District Court for the Northern District of New York and was a member of the Cardozo Journal of Conflict Resolution.

Mr. Sachs-Michaels is a member of the Bar of the State of New York. He is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit.

**CASEY E. SADLER** is a native of New York, New York.  After graduating from the University of Southern California, Gould School of Law, Mr. Sadler joined the Firm in 2010.  While attending law school, Mr. Sadler externed for the Enforcement Division of the Securities and Exchange Commission, spent a summer working for P.H. Parekh & Co. – one of the leading appellate law firms in New Delhi, India – and was a member of USC's Hale Moot Court Honors Program.

Mr. Sadler's practice focuses on securities and consumer litigation. A partner in the Firm's Los Angeles office, Mr. Sadler is admitted to the State Bar of California and the United States District Courts for the Northern, Southern, and Central Districts of California.

**EX KANO S. SAMS II** earned his Bachelor of Arts degree in Political Science from the University of California Los Angeles. Mr. Sams earned his Juris Doctor degree from the University of California Los Angeles School of Law, where he served as a member of the *UCLA Law Review*. After law school, Mr. Sams practiced class action civil rights litigation on behalf of plaintiffs. Subsequently, Mr. Sams was a partner at Coughlin Stoia Geller Rudman & Robbins LLP (currently Robbins Geller Rudman & Dowd LLP), where his practice focused on securities and consumer class actions on behalf of investors and consumers.

During his career, Mr. Sams has served as lead counsel in dozens of securities class actions and complex-litigation cases, and has worked on cases at all levels of the state and federal court systems throughout the United States. Mr. Sams was one of the counsel for respondents in *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 138 S. Ct. 1061 (2018), in which the United States Supreme Court ruled unanimously in favor of respondents, holding that: (1) the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") does not strip state courts of jurisdiction over class actions alleging violations of only the Securities Act of 1933; and (2) SLUSA does not empower defendants to remove such actions from state to federal court. Mr. Sams also participated in a successful appeal before a Fifth Circuit panel that included former United States Supreme Court Justice Sandra Day O'Connor sitting by designation, in which the court unanimously vacated the lower court's denial of class certification, reversed the lower court's grant of summary judgment, and issued an important decision on the issue of loss causation in securities litigation: *Alaska Electrical Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009). The case settled for $55 million.

Mr. Sams has also obtained other significant results. Notable examples include: *Beezley v. Fenix Parts, Inc.*, No. 1:17-CV-7896, 2018 WL 3454490 (N.D. Ill. July 13, 2018) (denying motion to dismiss); *In re Flowers Foods, Inc. Sec. Litig.*, No. 7:16-CV-222 (WLS),

2018 WL 1558558 (M.D. Ga. Mar. 23, 2018) (largely denying motion to dismiss; case settled for $21 million); *In re King Digital Entm't plc S'holder Litig.*, No. CGC-15-544770 (San Francisco Superior Court) (case settled for $18.5 million); *In re Castlight Health, Inc. S'holder Litig.*, Lead Case No. CIV533203 (California Superior Court, County of San Mateo) (case settled for $9.5 million); *Wiley v. Envivio, Inc.*, Master File No. CIV517185 (California Superior Court, County of San Mateo) (case settled for $8.5 million); *In re CafePress Inc. S'holder Litig.*, Master File No. CIV522744 (California Superior Court, County of San Mateo) (case settled for $8 million); *Estate of Gardner v. Continental Casualty Co.*, No. 3:13-cv-1918 (JBA), 2016 WL 806823 (D. Conn. Mar. 1, 2016) (granting class certification); *Forbush v. Goodale*, No. 33538/2011, 2013 WL 582255 (N.Y. Sup. Feb. 4, 2013) (denying motions to dismiss); *Curry v. Hansen Med., Inc.*, No. C 09-5094 CW, 2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) (upholding complaint; case settled for $8.5 million); *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332 (E.D. Mich. 2012) (granting class certification); *Puskala v. Koss Corp.*, 799 F. Supp. 2d 941 (E.D. Wis. 2011) (upholding complaint); *Mishkin v. Zynex Inc.*, Civil Action No. 09-cv-00780-REB-KLM, 2011 WL 1158715 (D. Colo. Mar. 30, 2011) (denying motion to dismiss); and *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009) (granting class certification; case settled for $10 million).

Additionally, Mr. Sams has successfully represented consumers in class action litigation. Mr. Sams worked on nationwide litigation and a trial against major tobacco companies, and in statewide tobacco litigation that resulted in a $12.5 billion recovery for California cities and counties in a landmark settlement. He also was a principal attorney in a consumer class action against one of the largest banks in the country that resulted in a substantial recovery and a change in the company's business practices. Mr. Sams also participated in settlement negotiations on behalf of environmental organizations along with the United States Department of Justice and the Ohio Attorney General's Office that resulted in a consent decree requiring a company to perform remediation measures to address the effects of air and water pollution. Additionally, Mr. Sams has been an author or co-author of several articles in major legal publications, including "9th Circuit Decision Clarifies Securities Fraud Loss Causation Rule" published in the February 8, 2018 issue of the *Daily Journal*, and "Market Efficiency in the World of High-Frequency Trading" published in the December 26, 2017 issue of the *Daily Journal*.

**LEANNE HEINE SOLISH** is a partner in GPM's Los Angeles office.  Her practice focuses on complex securities litigation.

Ms. Solish has extensive experience litigating complex cases in federal courts nationwide. Since joining GPM in 2012, Ms. Solish has helped secure several large class action settlements for injured investors, including: *The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank*, Case No. 10-4372--DWF/JJG (D. Minn.) ($62.5 million settlement on behalf of participants in Wells Fargo's securities lending program. The settlement was reached on the eve of trial and ranked among the largest recoveries achieved in a securities lending class action stemming from the 2008 financial crisis.); *Mild v. PPG Industries, Inc. et al.*, Case No. 2:18-cv-04231 (C.D. Cal.) ($25 million settlement); *In re Penn West Petroleum Ltd. Securities Litigation*, Case No. 1:14-cv-06046-JGK (S.D.N.Y.) ($19 million settlement for the U.S. shareholder class as part of a

$39 million global settlement); *In re ITT Educational Services, Inc. Securities Litigation (Indiana)*, Case No. 1:14-cv-01599-TWP-DML ($12.5375 million settlement); *In re Doral Financial Corporation Securities Litigation*, Case No. 3:14-cv-01393-GAG (D.P.R.) ($7 million settlement); *Larson v. Insys Therapeutics Incorporated, et al.*, Lead Case No. 14-cv-01043-PHX-GMS (D. Ariz.) ($6.125 million settlement); *In re Unilife Corporation Securities Litigation*, Case No. 1:16-cv-03976-RA ($4.4 million settlement); and *In re K12 Inc. Securities Litigation*, Case No. 4:16-cv-04069-PJH (N.D. Cal.) ($3.5 million settlement).

*Super Lawyers Magazine* has selected Ms. Solish as a "Rising Star" in the area of Securities Litigation for the past four consecutive years, 2016 through 2019.

Ms. Solish graduated *summa cum laude* with a B.S.M. in Accounting and Finance from Tulane University, where she was a member of the Beta Alpha Psi honors accounting organization and was inducted into the Beta Gamma Sigma Business Honors Society. Ms. Solish subsequently earned her J.D. from the University of Texas School of Law.

Ms. Solish is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central, Northern, and Southern Districts of California. Ms. Solish is also a Registered Certified Public Accountant in Illinois.

**GARTH A. SPENCER**'s work focuses on securities litigation on behalf of investors, as well as whistleblower, consumer and antitrust matters for plaintiffs. He has substantially contributed to a number of GPM's successful cases, including *Robb v. Fitbit Inc.* (N.D. Cal.) ($33 million settlement). Mr. Spencer joined the firm's New York office in 2016, and transferred to Los Angeles in 2020. Prior to joining GPM, he worked in the tax group of a transactional law firm, and pursued tax whistleblower matters as a sole practitioner.

**DAVID J. STONE** has a broad background in complex commercial litigation, with particular focus on litigating corporate fiduciary claims, securities, and contract matters. Mr. Stone maintains a versatile practice in state and federal courts, representing clients in a wide-range of matters, including corporate derivative actions, securities class actions, litigating claims arising from master limited partnership "drop down" transactions, litigating consumer class actions (including data breach claims) litigating complex debt instruments, fraudulent conveyance actions, and appeals. Mr. Stone also has developed a specialized practice in litigation on behalf of post-bankruptcy confirmation trusts, including investigating and prosecuting D&O claims and general commercial litigation. In addition, Mr. Stone counsels clients on general business matters, including contract negotiation and corporate organization.

Mr. Stone graduated from Boston University School of Law in 1994 and was the Law Review Editor. He earned his B.A. at Tufts University in 1988, graduating *cum laude*. Following law school, Mr. Stone served as a clerk to the Honorable Joseph Tauro, then Chief Judge of the U.S. District Court for the District of Massachusetts. Prior to joining GPM, Mr. Stone practiced at international law firms Cravath, Swaine & Moore LLP, Morrison & Foerster LLP, and Greenberg Traurig LLP.

Mr. Stone is a member of the bar in New York and California, and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Southern, and Central Districts of California, and the Court of Appeals for the Second and Third Circuits.

**KARA M. WOLKE** is a partner in the firm's Los Angeles office. Ms. Wolke specializes in complex litigation, including the prosecution of securities fraud, derivative, consumer, and wage and hour class actions. She also has extensive experience in appellate advocacy in both State and Federal Circuit Courts of Appeals.

With over fifteen years of experience in financial class action litigation, Ms. Wolke has helped to recover hundreds of millions of dollars for injured investors, consumers, and employees. Notable cases include: *Christine Asia Co. Ltd., et al. v. Jack Yun Ma, et al.*, Case No. 15-md-02631 (S.D.N.Y.) ($250 million securities class action settlement); *Farmington Hills Employees' Retirement System v. Wells Fargo Bank,* Case No. 10-4372 (D. Minn.) ($62.5 million settlement on behalf of participants in Wells Fargo's securities lending program. The settlement was reached on the eve of trial and ranked among the largest recoveries achieved in a securities lending class action stemming from the 2008 financial crisis.); *Schleicher, et al. v. Wendt, et al.* (Conseco), Case No. 02-cv-1332 (S.D. Ind.) ($41.5 million securities class action settlement); *Lapin v. Goldman Sachs,* Case No. 03-850 (S.D.N.Y.) ($29 million securities class action settlement); *In Re: Mannkind Corporation Securities Litigation*, Case No. 11-929 (C.D. Cal) (approximately $22 million settlement – $16 million in cash plus stock); *Jenson v. First Trust Corp*., Case No. 05-3124 (C.D. Cal.) ($8.5 million settlement of action alleging breach of fiduciary duty and breach of contract against trust company on behalf of a class of elderly investors); and *Pappas v. Naked Juice Co.*, Case No. 11-08276 (C.D. Cal.) ($9 million settlement in consumer class action alleging misleading labeling of juice products as "All Natural").

Ms. Wolke has been named a Super Lawyers "Rising Star," and her work on behalf of investors has earned her recognition as a LawDragon Leading Plaintiff Financial Lawyer for 2019 and 2020.

With a background in intellectual property, Ms. Wolke was a part of the team of lawyers who successfully challenged the claim of copyright ownership to the song "*Happy Birthday to You*" on behalf of artists and filmmakers who had been forced to pay hefty licensing fees to publicly sing the world's most famous song. In the resolution of that action, the defendant music publishing company funded a settlement of $14 million and, significantly, agreed to relinquish the song to the public domain. Previously, Ms. Wolke penned an article regarding the failure of U.S. Copyright Law to provide an important public performance right in sound recordings, 7 Vand. J. Ent. L. & Prac. 411, which was nationally recognized and received an award by the American Bar Association and the Grammy® Foundation.

Committed to the provision of legal services to the poor, disadvantaged, and other vulnerable or disenfranchised individuals and groups, Ms. Wolke also oversees the Firm's *pro bono practice*. Ms. Wolke currently serves as a volunteer attorney for KIND (Kids In Need of Defense), representing unaccompanied immigrant and refugee children in

868675.6

Page 22

custody and deportation proceedings, and helping them to secure legal permanent residency status in the U.S.

Ms. Wolke graduated *summa cum laude* with a Bachelor of Science in Economics from The Ohio State University in 2001. She subsequently earned her J.D. (with honors) from Ohio State, where she was active in Moot Court and received the Dean's Award for Excellence during each of her three years.

Ms. Wolke is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, as well as the United States District Courts for the Northern, Southern, and Central Districts of California. She lives with her husband and two sons in Los Angeles.

## OF COUNSEL

**PETER A. BINKOW** has prosecuted lawsuits on behalf of consumers and investors in state and federal courts throughout the United States.  He served as Lead or Co-Lead Counsel in many class action cases, including: *In re Mercury Interactive Securities Litigation* ($117.5 million recovery); *The City of Farmington Hills Retirement System v Wells Fargo* ($62.5 million recovery); *Schleicher v Wendt* (Conseco Securities litigation - $41.5 million recovery); *Lapin v Goldman Sachs* ($29 million recovery); *In re Heritage Bond Litigation* ($28 million recovery); *In re National Techteam Securities Litigation* ($11 million recovery for investors); *In re Lason Inc. Securities Litigation* ($12.68 million recovery), *In re ESC Medical Systems, Ltd. Securities Litigation* ($17 million recovery); and many others.  In *Schleicher v Wendt*, Mr. Binkow successfully argued the seminal Seventh Circuit case on class certification, in an opinion authored by Chief Judge Frank Easterbrook. He has argued and/or prepared appeals before the Ninth Circuit, Seventh Circuit, Sixth Circuit and Second Circuit Courts of Appeals.

Mr. Binkow joined the Firm in 1994.  He was born on August 16, 1965 in Detroit, Michigan.  Mr. Binkow obtained a Bachelor of Arts degree from the University of Michigan in 1988 and a Juris Doctor degree from the University of Southern California in 1994.

**MARK S. GREENSTONE** specializes in consumer, financial fraud and employment-related class actions. Possessing significant law and motion and trial experience, Mr. Greenstone has represented clients in multi-million dollar disputes in California state and federal courts, as well as the Court of Federal Claims in Washington, D.C.

Mr. Greenstone received his training as an associate at Sheppard, Mullin, Richter & Hampton LLP where he specialized in complex business litigation relating to investment management, government contracts and real estate. Upon leaving Sheppard Mullin, Mr. Greenstone founded an internet-based company offering retail items on multiple platforms nationwide. He thereafter returned to law bringing a combination of business and legal skills to his practice.

Mr. Greenstone graduated Order of the Coif from the UCLA School of Law. He also received his undergraduate degree in Political Science from UCLA, where he graduated Magna Cum Laude and was inducted into the Phi Beta Kappa honor society.

Mr. Greenstone is a member of the Consumer Attorneys Association of Los Angeles, the Santa Monica Bar Association and the Beverly Hills Bar Association. He is admitted to practice in state and federal courts throughout California.

**ROBERT I. HARWOOD**, Of Counsel to the firm, graduated from William and Mary Law School in 1971, and has specialized in securities law and securities litigation since beginning his career in 1972 at the Enforcement Division of the New York Stock Exchange.  Mr. Harwood was a founding member of Harwood Feffer LLP.  He has prosecuted numerous securities, class, derivative, and ERISA actions.  He is a member of the Trial Lawyers' Section of the New York State Bar Association and has served as a guest lecturer at trial advocacy programs sponsored by the Practicing Law Institute.  In a statewide survey of his legal peers published by Super Lawyers Magazine, Mr. Harwood has been consistently selected as a "New York Metro Super Lawyer."  Super Lawyers are the top five percent of attorneys in New York, as chosen by their peers and through the independent research.  He is also a Member of the Board of Directors of the MFY Legal Services Inc., which provides free legal representation in civil matters to the poor and the mentally ill in New York City.  Since 1999, Mr. Harwood has also served as a Village Justice for the Village of Dobbs Ferry, New York.

Commenting on Mr. Harwood's abilities, in *In re Royal Dutch/Shell Transport ERISA Litigation*, (D.N.J.), Judge Bissell stated:

> the Court knows the attorneys in the firms involved in this matter and they are highly experienced and highly skilled in matters of this kind.  Moreover, in this case it showed.  Those efforts were vigorous, imaginative and prompt in reaching the settlement of this matter with a minimal amount of discovery….  So both skill and efficiency were brought to the table here by counsel, no doubt about that.

Likewise, Judge Hurley stated in connection with *In re Olsten Corporation Securities Litigation*, No. 97 CV-5056 (E.D.N.Y. Aug. 31, 2001), wherein a settlement fund of $24.1 million was created:  "The quality of representation here I think has been excellent."  Mr. Harwood was lead attorney in *Meritt v. Eckerd*, No. 86 Civ. 1222 (E.D.N.Y. May 30, 1986), where then Chief Judge Weinstein observed that counsel conducted the litigation with "speed and skill" resulting in a settlement having a value "in the order of $20 Million Dollars."  Mr. Harwood prosecuted the *Hoeniger v. Aylsworth* class action litigation in the United States District Court for the Western District of Texas (No. SA-86-CA-939), which resulted in a settlement fund of $18 million and received favorable comment in the August 14, 1989 edition of *The Wall Street Journal* ("*Prospector Fund Finds Golden Touch in Class Action Suit*" *p*. 18, col. 1).  Mr. Harwood served as co-lead counsel in *In Re Interco Incorporated Shareholders Litigation*, Consolidated C.A. No. 10111 (Delaware Chancery Court) (May 25, 1990), resulting in a settlement of $18.5 million, where V.C. Berger found, "This is a case that has an extensive record that establishes it was very hard fought.  There were intense efforts made by plaintiffs' attorneys and those efforts bore very significant fruit in the face of serious questions as to ultimate success on the merits."

Mr. Harwood served as lead counsel in *Morse v. McWhorter* (Columbia/HCA Healthcare Securities Litigation), (M.D. Tenn.), in which a settlement fund of $49.5 million was created for the benefit of the Class, as well as *In re Bank One Securities Litigation*, (N.D. Ill.), which resulted in the creation of a $45 million settlement fund.  Mr. Harwood also served as co-lead counsel in *In re Safety-Kleen Corp. Stockholders Litigation*, (D.S.C.), which resulted in a settlement fund of $44.5 million; *In re Laidlaw Stockholders Litigation*, (D.S.C.), which resulted in a settlement fund of $24 million; *In re AIG ERISA Litigation*, (S.D.N.Y.), which resulted in a settlement fund of $24.2 million*; In re JWP Inc. Securities Litigation*, (S.D.N.Y.), which resulted in a $37 million settlement fund; *In re Oxford Health Plans, Inc. Derivative Litigation*, (S.D.N.Y.), which resulted in a settlement benefit of $13.7 million and corporate therapeutics; and *In re UNUMProvident Corp. Securities Litigation*, (D. Me.), which resulted in the creation of settlement fund of $45 million.  Mr. Harwood has also been one of the lead attorneys in litigating claims in *In re FedEx Ground Package Inc. Employment Practices Litigation*, No. 3:05-MD-527 (MDL 1700), a multi-district litigation concerning employment classification of pickup and delivery drivers which resulted in a $242,000,000 settlement.

**ERIKA SHAPIRO** has extensive experience in a broad range of litigation matters. Until 2019, Ms. Shapiro's work primarily focused on complex antitrust cases involving pharmaceutical companies, and through this work, she helped successfully defend pharmaceutical companies against antitrust and unfair competition allegations, with a particular concentration on the Hatch-Waxman Act, product hopping, and reverse payment settlement allegations. As of 2019, Ms. Shapiro has represented clients in a vast array of litigation, including commercial real estate matters, with a particular focus on the global COVID-19 pandemic's impact on commercial real estate, bankruptcy matters, commercial litigation involving breach of contract, tort, trademark infringement, and trusts and estates law with a focus on will contests. Ms. Shapiro has further managed multiple cases defending physicians and hospitals against allegations of malpractice.

Ms. Shapiro is committed to the academic community, and is the Founder and CEO of Study Songs, an app aimed at helping students study for the multistate bar exam through melodies contained in over 80 original songs and through pop-up definitions of over 1200 legal terms and concepts.

Ms. Shapiro's publications include: *Third Circuit Holds, "Give Peace a Chance": The De Beers Litigation and the Potential Power of Settlement*, Jack E. Pace, III, Erika L. Shapiro, 27-SPG Antitrust 48 (2013).

Ms. Shapiro graduated from Washington University in St. Louis with a Bachelor of Arts degree.  She received her Juris Doctor degree from Georgetown University Law Center. She also earned a Master's degree in Economic Global Law from Sciences-Po Universite.

## SENIOR COUNSEL

**NATALIE S. PANG** is Senior Counsel in the firm's Los Angeles office. Ms. Pang has advocated on behalf of thousands of consumers during her career. Ms. Pang has extensive experience in case management and all facets of litigation: from a case's

inception through the discovery process--including taking and defending depositions and preparing witnesses for depositions and trial--mediation and settlement negotiations, pretrial motion work, trial and post-trial motion work.

Prior to joining the firm, Ms. Pang lead the mass torts department of her last firm, where she managed the cases of over two thousand individual clients. There, Ms. Pang worked on a wide variety of complex state and federal matters which included cases involving pharmaceutical drugs, medical devices, auto defects, toxic torts, false advertising, and uninhabitable conditions. Ms. Pang was also trial counsel in the notable case, *Celestino Acosta et al. v. City of Long Beach et al.* (BC591412) which was brought on behalf of residents of a mobile home park built on a former trash dump and resulted in a $39.5 million verdict after an eleven-week jury trial in Los Angeles Superior Court.

Ms. Pang received her J.D. from Loyola Law School. While in law school, Ms. Pang received a Top 10 Brief Award as a Scott Moot Court competitor, was chosen to be a member of the Scott Moot Court Honor's Board, and competed as a member of the National Moot Court Team. Ms. Pang was also a Staffer and subsequently an Editor for Loyola's Entertainment Law Review as well as a Loyola Writing Tutor. During law school, Ms. Pang served as an extern for: the Hon. Rolf Treu (Los Angeles Superior Court), the Los Angeles City Attorney's Office, and the Federal Public Defender's Office. Ms. Pang obtained her undergraduate degree from the University of Southern California and worked in the healthcare industry prior to pursuing her career in law.

**PAVITHRA RAJESH** is Senior Counsel in the firm's Los Angeles office. She specializes in fact discovery, including pre-litigation investigation, and develops legal theories in securities, derivative, and privacy-related matters.

Ms. Rajesh has unique writing experience from her judicial externship for the Patent Pilot Program in the United States District Court for the Central District of California, where she worked closely with the Clerk and judges in the program on patent cases. Drawing from this experience, Ms. Rajesh is passionate about expanding the firm's Intellectual Property practice, and she engages with experts to understand complex technology in a wide range of patents, including network security and videogame electronics.

Ms. Rajesh graduated from University of California, Santa Barbara with a Bachelor of Science degree in Mathematics and a Bachelor of Arts degree in Psychology. She received her Juris Doctor degree from UCLA School of Law. While in law school, Ms. Rajesh was an Associate Editor for the UCLA Law Review.

**CHRISTOPHER M. THOMS** is Senior Discovery Counsel in Glancy, Prongay & Murray's Los Angeles office. His practice includes large-scale electronic discovery encompassing all stages of litigation, securities and anti-trust litigation. He manages attorneys in fact-finding for depositions, expert discovery, and trial preparation.

Prior to joining Glancy, Prongay & Murray, Christopher worked as a staff attorney at O'Melveny & Meyers LLP where he managed eDiscovery issues in complex class actions

and multi-district litigations.  Chris also worked as a contract attorney for various law firms in Los Angeles.

**MELISSA WRIGHT** is Senior Counsel in the firm's Los Angeles office.  Ms. Wright specializes in complex litigation, including the prosecution of securities fraud and consumer class actions.  She has particular expertise in all aspects of the discovery phase of litigation, including drafting and responding to discovery requests, negotiating protocols for the production of Electronically Stored Information (ESI) and all facets of ESI discovery, and assisting in deposition preparation.  She has managed multiple document production and review projects, including the development of ESI search terms, overseeing numerous attorneys reviewing large document productions, drafting meet and confer correspondence and motions to compel where necessary, and coordinating the analysis of information procured during the discovery phase for utilization in substantive motions or settlement negotiations.

Ms. Wright received her J.D. from the UC Davis School of Law in 2012, where she was a board member of Tax Law Society and externed for the California Board of Equalization's Tax Appeals Assistance Program focusing on consumer use tax issues. Ms. Wright also graduated from NYU School of Law, where she received her LL.M. in Taxation in 2013.

## ASSOCIATES

**REBECCA DAWSON** specializes in complex civil litigation, class action securities litigation, and anti-trust litigation.

Ms. Dawson previously worked at a highly respected plaintiff-side class action firm specializing in mass torts and anti-trust litigation where she managed a wide variety of complex state and federal matters including false advertising, environmental torts and product liability claims.

Ms. Dawson has also held two prestigious clerkships.  She was a clerking intern for the Chief Justice of the Court of International Trade during law school.  After law school, she clerked at the New York Supreme Court where she handled hundreds of complex commercial and civil litigation decisions. Ms. Dawson also participated in the Securities and Exchange Commission Honors program in the Office of the Investors Advocate.  Prior to law school, she worked for the Brooklyn Bar Association. Ms. Dawson also has a background in financial data analysis.

Ms. Dawson earned her J.D. from City University of New York School of Law, where she was a Moot Court Competition Problem Author.  She earned her B.A. from Bard College at Simon's Rock, where she majored in Political Science with a minor in Economics.

**CHRIS DEL VALLE** is an experienced attorney who has been a valuable member of the Glancy Prongay & Murray LLP team since 2017. During his time at the firm, he has worked on a range of complex securities fraud cases, including In re Akorn, Inc. Securities Litigation, Case No. 15-CV-01944, (N.D. Ill.); In re Yahoo! Inc. Securities Litigation, Case No. 17-CV-00373-LHK (N.D. Cal.); In re Endurance International Group Holdings, Case

No. 1:15-cv-11775-GAO; In re LSB Industries, Inc. Securities Litigation, Case No. 1:15-cv-07614-RA-GWG; In re Alibaba Group Holding Limited Securities Litigation, Case No. 1:15-md-02631 (CM); In re Community Health Systems Inc, Case No.: 3:19-cv-00461.

One of Chris' most notable recent cases was Hartpence v. Kinetic Concepts, Inc., No. 19-55823 (9th Cir. 2022), alleging violations of the False Claims Act (FCA). Chris was part of the legal team that successfully represented a whistleblower in obtaining 9th Circuit reversal of the lower court's order granting summary judgment. This victory established Chris as a leading attorney in the field of FCA litigation.

With highly technical expertise in electronic discovery, Chris manages all facets of the firm's e-discovery needs, including crafting advanced search algorithms, predictive coding, and technology-assisted review. Chris also has a wealth of experience in deposition preparation, expert discovery, and preparing for summary judgment and trial.

Chris' experience prior to joining GPM includes trial and discovery preparation for complex corporate securities fraud litigation, patent prosecution, oral arguments, injunction hearings, trial work, mediations, drafting and negotiating contracts, depositions, and client intake.

He received a Bachelor of Arts degree from S.U.N.Y. Buffalo, majoring in English Literature/Journalism, and a Juris Doctor from California Western School of Law in San Diego. Chris is a proud native of Buffalo, New York, and a passionate fan of the Buffalo Bills, hosting a weekly podcast entitled The Bills Dudes. In addition to his legal work, Chris enjoys traveling, playing basketball, archery and is on a quest to locate the most flavorful tequila and mezcal ever produced in Mexico. With his experience in securities litigation and a strong educational background, Chris Del Valle is a valuable member of the GPM team.

**CHRISTOPHER FALLON** focuses on securities, consumer, and anti-trust litigation. Prior to joining the firm, Mr. Fallon was a contract attorney with O'Melveny & Myers LLP working on anti-trust and business litigation disputes. He is a Certified E-Discovery Specialist through the Association of Certified E-Discovery Specialists (ACEDS).

Mr. Fallon earned his J.D. and a Certificate in Dispute Resolution from Pepperdine Law School in 2004. While attending law school, Christopher worked at the Pepperdine Special Education Advocacy Clinic and interned with the Rhode Island Office of the Attorney General. Prior to attending law school, he graduated from Boston College with a Bachelor of Arts in Economics and a minor in Irish Studies, then served as Deputy Campaign Finance Director on a U.S. Senate campaign.

**HOLLY HEATH** specializes in managing all aspects of discovery and trial preparation in securities and consumer fraud class actions. Since joining the firm in 2017, Ms. Heath has participated in cases that have led to over $100 million in recoveries for consumers and investors.

Ms. Heath started her career at a boutique business law firm in Century City that targeted trademark infringement. After that, Ms. Heath worked as a contract attorney for several New York firms including Gibson Dunn and Sullivan & Cromwell. Ms. Heath has handled various complex litigation matters such as patent infringement, anti-trust, and banking regulations.

While in law school, Ms. Heath advocated for children's rights at Children's Legal Services and served as a student attorney for Greater Boston Legal Services.

**THOMAS J. KENNEDY** works out of the New York office, where he focuses on securities, antitrust, mass torts, and consumer litigation.  He received a Juris Doctor degree from St. John's University School of Law in 1995.  At St. John's, he was a member of the ST. JOHN'S JOURNAL OF LEGAL COMMENTARY.  Mr. Kennedy graduated from Miami University in 1992 with a Bachelor of Science degree in Accounting and has passed the CPA exam.  Mr. Kennedy was previously associated with the law firm Murray Frank LLP.

**CHASE STERN** concentrates his practice on complex commercial litigation, with a particular emphasis on securities fraud and consumer protection class actions, as well as shareholder derivative matters. For nearly a decade, Mr. Stern's practice has been largely dedicated to representing individual and corporate entity plaintiffs in complex commercial and class action litigation in state and federal courts throughout the country. Mr. Stern's work and experience over the course of his career have proven instrumental in vindicating his clients' rights and helping recover tens of millions of dollars on their behalf. His work and experience have also led to his recent recognition as a Super Lawyers® Rising Star for 2022 – 2023.

Mr. Stern holds a B.S. in Finance and Entrepreneurship & Emerging Enterprises from Syracuse University and a J.D. from California Western School of Law, graduating from both institutions with honors.

**RAY D. SULENTIC** prosecutes complex class actions specializing in securities fraud, data privacy, and consumer fraud. Before law school, Mr. Sulentic worked on Wall Street for roughly a decade—on both the buy-side, and the sell-side. His experience includes working as a former Director of Investments for a private equity fund; a special situations analyst for a $10.0 billion multi-asset class hedge fund; and as a sell-side equity and commodity analyst for Bear Stearns & Co. Inc. While at Bear Stearns, Mr. Sulentic's investment analysis was featured in Barron's. Mr. Sulentic's relevant experience includes:

•       Represented lead plaintiffs in *In re Eros International PLC Securities Litigation*, Case No. 2:19-cv-14125-JMV-JSA (D.N.J.), a securities class action alleging violations of the Securities Exchange Act of 1934. The parties have reached an agreement to settle the case for $25 million, subject to court approval.

•       Represented lead plaintiffs *in In re Tintri Securities Litigation*, Case No. 17-civ-04321, San Mateo Superior Court, a securities class action alleging violations of Securities Act of 1933. The parties have reached an agreement in principle to settle the case, subject to court approval.

• Represented lead plaintiffs in *Ivan Baron v. HyreCar Inc. et al,* 2:21-cv-06918-FWS-JC (C.D. Cal), a securities class action alleging violations of the Securities Exchange Act of 1934, which recently defeated Defendants' Motion to Dismiss and is in discovery.

• Represented lead plaintiffs in *Shen v. Exela Technologies Inc. et al*, 3:20-cv-00691 (N.D. Tex.), a securities class action alleging violations of the Securities Exchange Act of 1934, which defeated Defendants' Motion to Dismiss and is in discovery.

Mr. Sulentic holds a B.S.M. in Finance from Tulane University; an M.B.A. with a concentration in Finance from Georgetown University; and a J.D. from the UCLA School of Law. The synergy of his finance and legal education and experience makes him well-suited for disputes related to complex accounting frauds, market manipulation matters, valuation disputes, and damages. Prior to joining GPM, Ray was an associate at DLA Piper in San Diego.

**ROBERT YAN** is an associate specializing in international cases involving foreign language documents and foreign clients. He has expertise in all aspects of pre-trial litigation, including document productions, deposition preparation, deposition outlines, witness preparation, compilation of privilege logs, and translation of documents into English. He has served as team lead for various document review projects, conducted QC on large document populations, and worked with lead counsel to meet production deadlines.

Robert is a native speaker of Mandarin Chinese and fluent in Japanese. Robert has volunteered his services in the Los Angeles area including at the Elder Law Clinic and monthly APABA Pro Bono Legal Help Clinic. In his free time, Robert likes to play tennis and dodgeball and watches Jeopardy every day with his wife.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| BO SHEN, Individually and On Behalf of All Others Similarly Situated, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | § | Civil Action No. 3:20-cv-0691-D |
| | § | |
| EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS AND PAR CHADHA, | §<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

**DECLARATION OF JOE KENDALL, ESQ. IN SUPPORT OF LEAD
COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES FILED
ON BEHALF OF THE KENDALL LAW GROUP, PLLC**

I, JOE KENDALL, declare as follows:

1. I am the owner of The Kendall Law Group, PLLC (the "Kendall Law Group"). The Kendall Law Group was appointed local counsel in the above-captioned action (the "Action"). *See* ECF No. 11. I submit this declaration in support of Lead Counsel's application for an award of attorneys' fees in connection with services rendered in the Action, as well as for reimbursement of litigation expenses incurred in connection with the Action. I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2. In its capacity as local counsel in this Action, the Kendall Law Group, among other things, reviewed and commented on draft pleadings, facilitated filings with the Court, ensured that Lead Counsel complied with local rules, customs, practices and attended all Court hearings.

127

3.      The schedule attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by attorneys and professional support staff employees of my firm who, from inception of the Action through and including October 18, 2023, billed time to the Action, and the lodestar calculation for those individuals based on my firm's current billing rates.  The schedule was prepared from daily time records regularly prepared and maintained by my firm.

4.      I am the lawyer who oversaw or conducted the day-to-day activities in the Action and I reviewed these daily time records in connection with the preparation of this declaration. The purpose of this review was to confirm both the accuracy of the records as well as the necessity for, and reasonableness of, the time committed to the litigation.  As a result of this review, I exercised billing judgment.  Based on this review and the adjustments made, I believe that the time of Kendall Law Group attorneys reflected in Exhibit A was reasonable and necessary for the effective and efficient prosecution and resolution of the Action.  No time expended on the application for fees and reimbursement of expenses has been included.

5.      The hourly rates for the attorneys included in Exhibit A are consistent with the rates approved by courts in other commercial, federal securities fraud and derivative cases for me personally.

6.      The total number of hours reflected in Exhibit A is 28 hours.  The total lodestar reflected in Exhibit A is $23,800.00, consisting of $23,800.00 for attorneys' time and no time for professional support staff time.  I carried support staff time, e.g. paralegals, as overhead and thus a "cost of doing business" in this particular case.

7.      My firm is seeking no reimbursement of expenses incurred in connection with the prosecution of this Action.

3

8.      Attached hereto as Exhibit B is a brief biography of the Kendall Law Group, including the attorneys who were involved in the Action.

I declare, under penalty of perjury, that the foregoing is true and correct.  Executed on this 18th day of October, 2023, in Dallas, Texas.


                                        */s/ Joe Kendall*
                                        JOE KENDALL

3

129

**EXHIBIT A**

*Bo Shen v. Exela Technologies, Inc., et al.*
Case No.: 3:20-cv-0691-D

**KENDALL LAW GROUP, PLLC**

**LODESTAR REPORT**
**FROM INCEPTION THROUGH OCTOBER 18, 2023**

| *NAME* | *STATUS* | *HOURS* | *RATE* | *LODESTAR* |
|---|---|---|---|---|
| **ATTORNEY:** | | | | |
| Joe Kendall | Owner | 28.0 | $850.00 | $23,800.00 |
| | | | | |
| **TOTAL** | | **28.0** | **$850.00** | **$23,800.00** |

130

**EXHIBIT B**

[FIRM RESUME]



**FIRM RESUME**

Kendall Law Group was founded by former federal judge Joe Kendall.  It is a boutique trial law firm exclusively representing plaintiffs.  Led by Judge Kendall, the firm brings value-added assistance to their clients in complex class action, securities, and business litigation matters. Since 2002, in class action cases, Joe Kendall has participated in obtaining over 1 billion dollars for clients.  He has served as lead, co-lead, or local counsel in numerous merger & acquisition, derivative, securities fraud, consumer and other class action cases in both state and federal courts, including: *Gazda v. Ryan et al.*, Case No. 3:04-cv-02113-K (N.D. Tex.); *Sunset Management LLC v. American Realty Investors, Inc et al.,* Case No. 3:04-cv-02162-K (N.D. Tex.); *NECA-IBEW Pension Fund v. The Neiman Marcus Group Inc et al.,* Case No. 3:05-cv-00898-L (N.D. Tex.); *Alaska U.F.C.W Pension Trust v. Kleisner et al.,* Case No. 3:05-cv-01323-B (N.D. Tex.); *Hulliung v. Bolen et al,* Case No. 3:06-cv-01083-N (N.D. Tex.); *Patrick Wheeler v. Frozen Food Express Industries, Inc et al.*, Case No. 3:13-cv-02823-P (N.D. Tex.); *Linda K. Blankman v. Bradley et al.,* Case No. 3:15-cv-00339-L (N.D. Tex.); *Bazini et al v. Bradley et al.*, Case No. 3:15-cv-00389-L (N.D. Tex.); *Berlin v. Regency Energy Partners LP et al.*, Case No. 3:15-cv-00519-L (N.D. Tex.); *Budde et al v. Global Power Equipment Group Inc et al.*, Case No. 3:15-cv-01679-M (N.D. Tex.); *Benouis v. Match Group Inc et al.,* Case No. 3:19-cv-02356-S (N.D. Tex.); *Harrison v. XTO Energy Inc et al.*, Case No. 4:09-cv-00768-Y (N.D. Tex.); *Atayi v. AZZ, Inc. et al.*, Case No. 4:19-cv-00928-A (N.D. Tex.);  *Erica P John Fund Inc et al. v. Halliburton Company et al,* Case No. 3:02-cv-01152-M (N.D. Tex.); *Schwartz, et al v. TXU Corp.,* Case No. 3:02-cv-02243-K (N.D. Tex.); *Rogers v. TXU Corp, et al.,* Case No. 3:02-cv-02586-K (N.D. Tex.); *Jorgensen, et al v. TXU Corp, et al.,* Case No. 3:02-cv-

1

132

02600-K (N.D. Tex.); *Taubenfeld v. Hotels.com, et al.,* Case No. 3:03-cv-00069-N (N.D. Tex.); *In re Michaels Stores, Inc. Securities Litigation*, Case No. 3:03-cv-00246-M (N.D. Tex.); *In re Carreker Corporation Securities Litigation,* Case No. 3:03-cv-00250-B (N.D. Tex.); *Sims v. Michaels Stores, Inc, et al.*, Case No. 3:03-cv-00278-M (N.D. Tex.); *Green v. Hotels.com, et al.*, Case No. 3:03-cv-00279-N (N.D. Tex.); *McKnight, et al v. TXU Corp., et al.,* Case No. 3:03-cv-00289-K (N.D. Tex.); *JIS Trading Group v. TXU Corp., et al.*, Case No. 3:03-cv-00290-K (N.D. Tex.); *Steele, et al v. Hotels.com, et al.,* Case No. 3:03-cv-00323-N (N.D. Tex.); *In re Blockbuster Inc. Securities Litigation,* Case No. 3:03-cv-00398-M (N.D. Tex.); *Massachusetts State Carpenters Pension Fund v. Fleming Companies Inc et al.,* Case No. 3:03-cv-00460-M (N.D. Tex.); *Heller v. Michaels Stores, Inc et al.*, Case No. 3:03-cv-00499-M (N.D. Tex.); *Futransky v. Michael Stores Inc et al.*, Case No. 3:03-cv-00511-M (N.D. Tex.); A*IG Annuity Insurance Company et al v. Ebbers et al.,* Case No. 3:03-cv-01566-L (N.D. Tex.); *Robbins v. Brick et al.*, Case No. 3:03-cv-01687-M (N.D. Tex.); *Imperial County v. Brick et al.*, Case No. 3:03-cv-01688-M (N.D. Tex.); *Ryan v. Flowserve Corporation et al.,* Case No. 3:03-cv-01769-B (N.D. Tex.); *TDH Partners LLP v. Ryland Group Inc et al.,* Case No. 3:04-cv-00073-B (N.D. Tex.); *Massachusetts Laborers Annuity Fund et al v. Odyssey Healthcare, Inc et al.,* Case No. 3:04- cv-00844-N(N.D. Tex.); *Caldarola v. Odyssey Healthcare, Inc et al.,* Case No. 3:04- cv-00988-N (N.D. Tex.); *In re UICI Securities Litigation,* Case No. 3:04-cv-01149-P (N.D. Tex.); *Fener v. Belo Corporation et al,* Case No. 3:04-cv-01836-D (N.D. Tex.); *In re SourceCorp Inc. Securities Litigation,* Case No. 3:04-cv-02351-N (N.D. Tex.); *Lentz v. Citadel Security Software Inc et al.,* Case No. 3:05-cv-00100-D (N.D. Tex.); *Holland v. Citadel Security Software Inc et al.*, Case No. 3:05-cv-00184-D (N.D. Tex.); *Pipefitters Local No. 636 Defined Benefit Plan v. Ryland Group, Inc. et al.,* Case No. 3:06-cv-00022-B (N.D. Tex.); *Laborers National Pension Fund v. AOL Time Warner Inc et al.,* Case No. 3:06-cv-00220-K (N.D.

2

133

Tex.); *Hansen v. Fradella et al.*, Case No. 3:06-cv-01096-N (N.D. Tex.); *In re Affiliated Computer Services Derivative Litigation,* Case No. 3:06-cv-01110-O (N.D. Tex.); *Galatoire v. Fradella et al.*, Case No. 3:06-cv-01205-N (N.D. Tex.); *In re Affiliated ComputerServices Derivative Litigation,* Case No. 3:06-cv-01212-M (N.D. Tex.); *Pipefitters Local No. 636 Defined Benefit Plan v. Zale Corporation et al.,* Case No. 3:06-cv-01470-N (N.D. Tex.); *Massachusetts Laborers Annuity Fund v. Michaels Stores Inc et al.,* Case No. 3:06-cv-01635-N (N.D. Tex.); *Beatrice et al v. Home Solutions of America, Inc et al.,* Case No. 3:06- cv-01665-N (N.D. Tex.); *City of Pontiac Police and Fire Retirement System v. Kartsotis et al.,* Case No. 3:06-cv-01672-F (N.D. Tex.); *Minich v. Kartsotis et al.,* Case No. 3:06-cv-01977-P (N.D. Tex.); *Crowell v. Mannatech Inc et al.,* Case No. 3:07-cv-00238-K (N.D. Tex.); *Vella v. Kartsotis et al.*, Case No. 3:07-cv-00955-F (N.D. Tex.); *Rines v. Heelys Inc et al.,* Case No. 3:07-cv-01468-K (N.D. Tex.); *Securities and ExchangeCommission v. Stanford International Bank Case No. Ltd et al.,* Case No. 3:09-cv-00298-N (N.D. Tex.); *Buettgen v. Harless et al.,* Case No. 3:09-cv-00791-K (N.D. Tex.); *Heffner v. Harless et al.,* Case No. 3:09-cv-00938-K (N.D. Tex.); *Goldberg v. Klein et al.*, Case No. 3:09-cv-01049-K (N.D. Tex.); *Bill Rains et al v Zale Corporation, et al.,* Case No. 3:09-cv-02133-B (N.D. Tex.); *Lawyer v. Zale Corporation et al.,* Case No. 3:09-cv-02218-B (N.D. Tex.);  *Hopson v. MetroPCS Communications Inc et al.,* Case No. 3:09-cv-02392-G *Richardson v. SolarWinds Inc et al.*, Case No. 3:10-cv-02085-B (N.D. Tex.); *North Port Firefighters' Pension et al v. Temple-Inland Inc. et al.,* Case No. 3:11-cv-03119-B (N.D. Tex.); *Bauman v. Simmons et al.*, Case No. 3:11-cv-03607-M (N.D. Tex.); *Brady v. Kosmos Energy, Ltd. et al.*, Case No. 3:12-cv-00373-B (N.D. Tex.); *Mounger v. Kosmos Energy Ltd et al.,* Case No. 3:12-cv-02383-B (N.D. Tex.); *Hohenstein v. Behringer Harvard REIT I, Inc. et al.*, Case No. 3:12-cv-03772-G (N.D. Tex.); *Herrley v. Frozen Food Express Industries, Inc.*, Case No. 3:13-cv-03004-B (N.D. Tex.); *Wallis v. Frozen Food Express Industries Inc et al.,* Case No. 3:13-cv-03104-B (N.D.

3

134

Tex.); *Securities and Exchange Commission v. Arcturus Corporation et al.,* Case No. 3:13-cv-04861-K (N.D. Tex.); *Kumar v. Santander Consumer USA Holdings Inc. et al.,* Case No. 3:14-cv-03746-K (N.D. Tex.); *Panes v. Trinity Industries Inc et al.,* Case No. 3:15-cv-01316-N (N.D. Tex.); *Isolde v. Trinity Industries Inc et al.,* Case No. 3:15-cv-02093-K (N.D. Tex.); *Budde v. Global Power Equipment Inc et al.,* Case No. 3:15-cv-02120-M (N.D. Tex.); *Steck v. Santander Consumer USA Holdings Inc. et al.*, Case No. 3:15-cv-02129-K (N.D. Tex.); *Kenney v. Pier 1 Imports Inc. et al.,* Case No. 3:15-cv-02798-D (N.D. Tex.); *Town of Davie Police Pension Plan v. Pier 1 Imports Inc et al.,* Case No. 3:15-cv-03415-S (N.D. Tex.); *In re United Development Funding IV Securities Litigation,* Case No. 3:15-cv-04030-M (N.D. Tex.); *McCloskey et al v. Match Group Inc et al.,* Case No. 3:16-cv-00549-S (N.D. Tex.); *Securities and Exchange Commission v. Narayan et al.*, Case No. 3:16-cv-01417-M (N.D. Tex.); *Securities and Exchange Commission v. Faulkner et al.*, Case No. 3:16-cv-01735-D (N.D. Tex.); *Ramirez v. Exxon Mobil Corporation et al.*, Case No. 3:16-cv-03111-K (N.D. Tex.); *Ashraf v. Energy Transfer Partners LP et al.,* Case No. 3:17-cv-00118-B (N.D. Tex.); *Irving Firemen's Relief & Retirement System v. Signet Jewelers Limited et al.,* Case No. 3:17-cv-00875-D (N.D. Tex.); *Sciabacucchi v. State National Companies Inc. et al.,* Case No. 3:17-cv-02412-C (N.D. Tex.); *Block v. Interoil Corporation et al.,* Case No. 3:18-cv-00007-X (N.D. Tex.); *Iglesias v. Southcross Energy Partners, L.P. et al.,* Case No. 3:18-cv-00158-N (N.D. Tex.); *Franchi v. Southcross Energy Partners LP et al.,* Case No. 3:18-cv-00179-N  (N.D. Tex.); *Cunha v. La Quinta Holdings Inc et al.,* Case No. 3:18-cv-00540-S (N.D. Tex.); *Rosenblatt v. La Quinta Holdings, Inc. et al.*, Case No. 3:18-cv-00558-K (N.D. Tex.); *Robinson v. RSP Permian Inc. et al.*, Case No. 3:18-cv-01047-L (N.D. Tex.); *Rosenblatt v. RSP Permian Inc et al.,* Case No. 3:18-cv-01117-B (N.D. Tex.); *Franchi v. Nationstar Mortgage Holdings Inc et al.*, Case No. 3:18-cv-01170-B (N.D. Tex.); *Chun v. Fluor Corporation et al.,* Case No. 3:18-cv-01338-X (N.D. Tex.); *In re*

4

135

*Forterra, Inc Securities Litigation*, Case No. 3:18-cv-01957-X (N.D. Tex.); *Peak et al v. Zion Oil & Gas Inc et al.,* Case No. 3:18-cv-02067-X (N.D. Tex.); *Brooks v. United Development Funding III et al.,* Case No. 3:18-cv-03097-X (N.D. Tex.); *Strahan v. Cambium Learning Group Inc et al.,* Case No. 3:18-cv-03123-K (N.D. Tex.); *Fox et al v. United Development Funding III et al.,* Case No. 3:19-cv-00274-M (N.D. Tex.); *Linenweber v. Southwest Airlines Co et al.,* Case No. 3:20-cv-00408-K (N.D. Tex.); *Union Asset Management Holding AG v. Fluor Corporation et al.,* Case No. 3:20-cv-00518-X (N.D. Tex.); *Shen v. Exela Technologies Inc et al.,* Case No. 3:20-cv-00691-D (N.D. Tex.); *Schulze v. Hallmark Financial Services Inc et al.*, Case No. 3:20-cv-01130-X (N.D. Tex.); *Torres v. Berry Corporation et al.,* Case No. 3:20-cv-03464-S (N.D. Tex.); *Securities and Exchange Commission v. Randall*, Case No. 3:21-cv-00979-N (N.D. Tex.); *Damore v. RadioShack Corporation et al.*, Case No. 4:07-cv-00179-A (N.D. Tex.); *Pappas et al v. Simpson et al.,* Case No. 4:10-cv-00094-Y (N.D. Tex.); *Ruedelstein v. U.S. Concrete, Inc. et al.,* Case No. 4:17-cv-00266-O (N.D. Tex.); *Mullins v. AZZ, Inc. et al.,* Case No. 4:18-cv-00025-Y (N.D. Tex.); *Fox et al v. United Development Funding III et al.,* Case No. 4:20-cv-00150-O (N.D. Tex.); *In Re Six Flags Entertainment Corporation Derivative Litigation,* Case No. 4:20-cv-00262-P (N.D. Tex.); *Martin et al v. Reid-Anderson et al.,* Case No. 4:20-cv-00311-P (N.D. Tex.); *Albayrak v. Reid-Anderson et al.*, Case No. 4:20-cv-00312-P (N.D. Tex.); *Genesee County Employees' Retirement System v. FirstCash Holdings Inc et al.,* Case No. 4:22-cv-00033-P (N.D. Tex.); *van der Gracht de Rommerswael v. Speese et al.,* Case No. 4:17-cv-00227-ALM-CMC (E.D. Tex.); *Alaska Electrical Pension Fund v. Brown et al*., Case No. 6:04-cv-00464-LED (E.D. Tex.); *Wayne County Employees Retirement System v. Brown et al*., Case No. 6:04-cv-00466-LED (E.D. Tex.); *Sippy v. Powell, et al*., Case No. 2:03-cv-00222-TJW (E.D. Tex.); *Acaldo v. Pilgrim's Pride Corporation et al*., Case No. 2:08-cv-00419-JRG (E.D. Tex.); *Howes v. Pilgrim's Pride Corporation et al*., Case No. 2:08-cv-00443-JRG

(E.D. Tex.); *Nemky v. Trinity Industries, Inc. et al*., Case No. 2:15-cv-00732-JRG (E.D. Tex.); *Barry Family LP v. Electronic Data Sys, et al*., Case No. 4:02-cv-00300-LED (E.D. Tex.); *Braun, et al v. Electronic Data Sys, et al.,* Case No. 4:02-cv-00304-LED (E.D. Tex.); *Harnik v. Electronic DataSys, et al*., Case No. 4:02-cv-00308-LED (E.D. Tex.); *Bridgewater Partners v.Electronic Data Sys, et al*., Case No. 4:02-cv-00310-LED (E.D. Tex.); *Vanderwarter v. Electronic Data Sys, et al*., Case No. 4:02-cv-00314-LED (E.D. Tex.); *Thorne-Thomsen v. EDS, et al*., Case No. 4:02-cv-00321-LED (E.D. Tex.); *Britt v. EDS, et al*., Case No. 4:02-cv-00322-LED (E.D. Tex.); *Sved v. EDS, et al*., Case No. 4:02-cv-00323-LED (E.D. Tex.); *Zia v. EDS, et al.,* Case No. 4:02-cv-00329-RAS-DDB (E.D. Tex.); *Kluemper v. EDS, et al*., Case No. 4:02-cv-00331-LED (E.D. Tex.); *McLoughlin v. Electronic Data, et al*., Case No. 4:02-cv-00335-LED (E.D. Tex.); *Stanton Pharmacy v. EDS, et al.,* Case No. 4:02-cv-00336-LED (E.D. Tex.); *Fink v. Electronic Data, et al*., Case No. 4:02-cv-00365-LED (E.D. Tex.); *Angeloni v. Microtune Inc, et al*., Case No. 4:03-cv-00056-RAS-DDB (E.D. Tex.); *Morris v. Microtune Inc, et al*., Case No. 4:03-cv-00064-RAS-DDB (E.D. Tex.); *Yakuboff v. Microtune Inc, et al*., Case No. 4:03-cv-00066-RAS-DDB (E.D. Tex.); *Clark v. Microtune Inc, et al*., Case No. 4:03-cv-00082-RAS-DDB (E.D. Tex.); *Xu v. Microtune Inc, et al*., Case No. 4:03-cv-00115-RAS-DDB (E.D. Tex.); *Aiken v. Microtune Inc, et al*., Case No. 4:03-cv-00123-RAS-DDB (E.D. Tex.); *Fontana v. Microtune Inc, et al*., Case No. 4:03-cv-00133-RAS-DDB (E.D. Tex.); *Pipefitters Local v. Microtune Inc, et al*., Case No. 4:03-cv-00158-RAS-DDB (E.D. Tex.); *Wahl, et al v. Daisytek, et al*., Case No. 4:03-cv-00212-PNB (E.D. Tex.); *Chambers v. Daisytek, et al.,* Case No. 4:03-cv-00250-PNB (E.D. Tex.); *Sippy v. Powell, et al*., Case No. 4:03-cv-00328-PNB (E.D. Tex.); *Morris v. Fontaine, et al*., Case No. 4:03-cv-00409-PNB (E.D. Tex.); *PLA LLC v. Advanced Neuromodulation Systems Inc et al*., Case No. 4:05-cv-00078-RAS-DDB (E.D. Tex.); *RAI Investment Club v. Advanced Neuromodulation Systems Inc et al*., Case No. 4:05-cv-00094-RAS-DDB (E.D. Tex.);

6

137

*Hall v. Rent-A-Center, Inc. et al.*, Case No. 4:16-cv-00978-ALM-CMC (E.D. Tex.); *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc. et al.*, Case No. 4:17-cv-00449-ALM (E.D. Tex.); *Witmer v. Dr. Pepper Snapple Group, Inc. et al.*, Case No. 4:18-cv-00209-ALM-KPJ (E.D. Tex.); *Celeste v. Intrusion Inc. et al.,* Case No. 4:21-cv-00307-SDJ (E.D. Tex.); *Gaynor v. Fleming Companies, et al.*, Case No. 5:02-cv-00178-TJW (E.D. Tex.); *Dolan v. Fleming Companies, et al.*, Case No. 5:02-cv-00190-TJW (E.D. Tex.); *Sved v. Fleming Companies, et al.*, Case No. 5:02-cv-00198-TJW (E.D. Tex.); *Edwards v. Fleming Companies, et al.,* Case No. 5:02-cv-00204-TJW (E.D. Tex.); *Patterson v. Fleming Companies, et al.*, Case No. 5:02-cv-00205-TJW (E.D. Tex.); *Feder v. Electronic Data Sys, et al.,* Case No. 5:02-cv-00207-DF (E.D. Tex.); *Huk v. Fleming Companies, et al.*, Case No. 5:02-cv-00208-TJW (E.D. Tex.); *Gordon v. Fleming Companies, et al.*, Case No. 5:02-cv-00212-TJW (E.D. Tex.); *Rudisill v. Fleming Companies, et al.*, Case No. 5:02-cv-00218-TJW (E.D. Tex.); *Eglinton v. Fleming Companies, et al.*, Case No. 5:02-cv-00222-TJW (E.D. Tex.); *Jackson Capital Mgt v. Fleming Companies, et al.*, Case No. 5:02-cv-00223-TJW (E.D. Tex.); *Horwitz, et al v. Electronic Data Sys, et al.*, Case No. 5:02-cv-00232-TJW (E.D. Tex.); *Miller v. Electronic Data Sys, et al.*, Case No. 5:02-cv-00233-DF (E.D. Tex.); *Thompson v. Electronic Data, et al.*, Case No. 5:02-cv-00248-DF-CMC (E.D. Tex.); *Massachusetts State v. Hansen, et al.*, Case No. 5:03-cv-00083-TJW (E.D. Tex.); *Massachusetts State v. Fleming Companies, et al.*, Case No. 5:03-cv-00204-TJW (E.D. Tex.); *Feder v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00110-LED (E.D. Tex.); *Horwitz, et al v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00111-LED (E.D. Tex.); *Miller v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00112-LED (E.D. Tex.); *Thompson v. Electronic Data, et al.*, Case No. 6:03-cv-00113-LED (E.D. Tex.); *Barry Family LP v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00114-LED (E.D. Tex.); *Braun, et al v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00115-LED (E.D. Tex.); *Harnik v. Electronic Data Sys, et al.,* Case No. 6:03-

cv-00116-LED (E.D. Tex.); *Bridgewater Partners v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00117-LED (E.D. Tex.); *Vanderwarter v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00118-LED (E.D. Tex.); *Thorne-Thomsen v. EDS, et al.*, Case No. 6:03-cv-00119-LED (E.D. Tex.); *Britt v. EDS, et al.*, Case No. 6:03-cv-00120-LED(E.D. Tex.); *Sved v. EDS, et al.*, Case No. 6:03-cv-00121-LED (E.D. Tex.); *Zia v. EDS, et al.*, Case No. 6:03-cv-00122-LED (E.D. Tex.); *Kluemper v. EDS, et al.*, Case No. 6:03-cv-00123-LED (E.D. Tex.); *McLoughlin v. Electronic Data, et al.*, Case No. 6:03-cv-00124-LED (E.D. Tex.); *Stanton Pharmacy v. EDS,et al.*, Case No. 6:03-cv-00125-LED (E.D. Tex.); *Fink v. Electronic Data, et al.*, Case No. 6:03-cv-00128-LED (E.D. Tex.); *Marcus v. J.C. Penney Company, Inc. et al.,* Case No. 6:13-cv-00736-RWS-KNM (E.D. Tex.); *Gilbert v. J.C. Penney Company, Inc. et al.*, Case No. 6:13-cv-00810-RWS-KNM (E.D. Tex.); *Johnson v. J.C. Penney Company, Inc. et al.*, Case No. 6:14-cv-00722-KNM (E.D. Tex.); *PFS Investments Inc et al v. De Leeuw et al.*, Case No. 6:16-cv-00429-MHS-JDL (E.D. Tex.); *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc. et al.*, Case No. 6:16-cv-01243-RWS(E.D. Tex.); *Kim v. Adeptus Health Inc. et al.*, Case No. 6:17-cv-00150-RWS (E.D. Tex.); *McKnight v. TXU Corp, et al.*, Case No. 9:02-cv-00274-JH (E.D. Tex.); *Trading Group v. TXU Corp, et al.*, Case No. 9:02-cv-00307-JH JIS (E.D. Tex.); *The Duck Pond CRT Ltd v. PAA Natural Gas Storage, L.P. et al.*, Case No. 4:13-cv-03170 (S.D. Tex.); *Rougier v. Applied Optoelectronics, Inc. et al.,* Case No. 4:17-cv-02399 (S.D. Tex.); *Heck v. Orion Group Holdings, Inc. et al.*, Case No. 4:19-cv-01337 (S.D. Tex.); *Hoffman v. RCI Hospitality Holdings, Inc. et al.*, Case No. 4:19-cv-01841 (S.D. Tex.); *Ludovissy et al v. Bellicum Pharmaceuticals, Inc. et al.*, Case No. 4:19-cv-02450 (S.D. Tex.); *Miller et al. v. Cadence Bancorporation et al.*, Case No. 4:19-cv-03492 (S.D. Tex.); *Miskella v. Christmann et al.*, Case No. 4:21-cv-01836 (S.D. Tex.); *Brodeen v. Christmann et al.,* Case No. 4:21-cv-02082 (S.D. Tex.); *Pirelli Armstrong, et al v. Hanover Compressor*, et al., Case No. 4:02-cv-00410 (S.D. Tex.);

8

139

*Lampkin, et al v. UBS Painewebber Inc, et al*., Case No. 4:02-cv-00851 (S.D. Tex.); *Anderson v. Hanover Compressor, et al.,* Case No. 4:02-cv-02306 (S.D. Tex.); *Equitec-Cole Roesler v. McClanahan, et al.,* Case No. 4:02-cv-04048 (S.D. Tex.); *Securities & Exchange v. Rocky Mountain Energy, et al.,* Case No. 4:03-cv-01133 (S.D. Tex.); *Capstone Asset Management Company v. AOL Time Warner Inc et al*., Case No. 4:06-cv-00306 (S.D. Tex.); *Brodsky v. Superior Offshore International, Inc et al*., Case No. 4:08-cv-01297 (S.D. Tex.); *In Re: Repros Therapeutics, Inc. Securities Litigation*, Case No. 4:09-cv-02530 (S.D. Tex.); *Simpson et al v. Repros Therapeutics, Inc et al*., Case No. 4:09-cv-03127 (S.D. Tex.); *In Re: BP plc Securities Litigation*,  Case No. 4:10-md-02185 (S.D. Tex.); *Davis et al v. Duncan EnergyPartners L.P. et al*., Case No. 4:11-cv-02486 (S.D. Tex.); *Matthews v. Rynd et al*., Case No. 4:11-cv-02706 (S.D. Tex.); *Phillips v. Harvest Natural Resource et al*., Case No. 4:13-cv-00801 (S.D. Tex.); *Myers v. Harvest Natural Resources, Inc. et al.,* Case No.  4:13-cv-01139 (S.D. Tex.); *Knoll v. Phillips et al*., Case No. 4:13-cv-01528 (S.D. Tex.); *Wolfson v. PNGS GP LLC et al*., Case No. 4:13-cv-03483 (S.D. Tex.); *Cady v. Key Energy Services, Inc. et al*., Case No. 4:14-cv-02368 (S.D. Tex.); *Davidson v. Key Energy Service, Inc. et al*., Case No. 4:14-cv-02403 (S.D. Tex.); *Ogden v. Cobalt International Energy, Inc. et al*., Case No.  4:15-cv-00139 (S.D. Tex.); *John Hancock Capital Series et al v. BP, PLC et al*., Case No. 4:15-cv-02704 (S.D. Tex.); *Ho v. Flotek Industries, Inc. et al.*, Case No. 4:15-cv-03327 (S.D. Tex.); *Walpole v. Flotek Industries, Inc. et al*., Case No. 4:15-cv-03383 (S.D. Tex.); *Edgar v. Anadarko Petroleum Corporation et al.,* Case No. 4:17-cv-01372 (S.D. Tex.); *Stern v. Atwood Oceanics, Inc. et al.,* Case No. 4:17-cv-01942 (S.D. Tex.); *Composto v. Atwood Oceanics, Inc. et al*., Case No. 4:17-cv-01968 (S.D. Tex.); *Carter v. Atwood Oceanics, Inc. et al.,* Case No. 4:17-cv-02013 (S.D. Tex.); *Scarantino v. Parkway, Inc. et al*., Case No. 4:17-cv-02441 (S.D. Tex.); *Panella v. Tesco Corporation et al*., Case No. 4:17-cv-02904 (S.D. Tex.); *The Vladimir Gusinsky Rev. Trust v. Tesco Corporation et al*.,

9

140

Case No. 4:17-cv-02918 (S.D. Tex.); *Scarantino v. Calpine Corporation et al.*, Case No. 4:17-cv-03256 (S.D. Tex.); *Paskowitz v. Dynegy Inc. et al.*, Case No. 4:18-cv-00027 (S.D. Tex.); *McIntyre v. Chicago Bridge & Iron Company N.V. et al.*, Case No. 4:18-cv-00273 (S.D. Tex.); *The George Leon Family Trust v. Chicago Bridge & Iron Company N.V. et al.*, Case No. 4:18-cv-00314 (S.D. Tex.); *Witmer v. Layne Christensen Company et al.*, Case No. 4:18-cv-01051 (S.D. Tex.); *Paik v. Fair et al.*, Case No. 4:18-cv-02513 (S.D. Tex.); *Edwards v. McDermott International, Inc. et al.*, Case No. 4:18-cv-04330 (S.D. Tex.);*Vladimir Gusinsky Rev. Trust v. Rowan Companies PLC et al.*, Case No. 4:18-cv-04341 (S.D. Tex.); *Van 'T Hoofd v. Nobilis Health Corp. et al.*, Case No. 4:18-cv-04727 (S.D. Tex.); *Manopla v. Lexicon Pharmaceuticals, Inc. et al.,* Case No. 4:19-cv-00301 (S.D. Tex.); *Kokareva v. Bristow Group Inc. et al.*, Case No. 4:19-cv-00509 (S.D. Tex.); *Assad v. Penn Virginia Corporation et al.,* Case No. 4:19-cv-00656 (S.D. Tex.); *In Re: Anadarko Petroleum Corporation Securities Litigation*, Case No. 4:20-cv-00576 (S.D. Tex.); *Griggs v. Crown Castle International Corp. et al.,* Case No. 4:20-cv-00843 (S.D. Tex.); *Alexander et al v. Conn's Inc. et al.*, Case No. 4:20-cv-01705 (S.D. Tex.); *Ahnefeldt et al v. Dickson et al.,* Case No. 4:20-cv-02539 (S.D. Tex.); *Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation et al.*, Case No. 4:21-cv-02045 (S.D. Tex.); *Coggins v. Camber Energy, Inc. et al.*, Case No. 4:21-cv-03574 (S.D. Tex.); *Justin Pierce and Hillary Kay, Derivatively on Behalf of AT&T Inc. v. Randall L. Stephenson, et al.*, Cause No. DC-14-13645, (193rd District Court, Dallas County, Texas); *Jacob Hulsebus, et al. v. Belo Corp., et al.*, Cause No. DC-13-06601, (68th District Court, Dallas County, Texas); *Ron Phillips and Scott Moorehead, Derivatively on Behalf of CLST Holdings, Inc., v. Timothy S. Durham, et al.*, Cause No. DC-10-07655 (134th District Court, Dallas County, Texas); *Regan Held, et al., v. C. Kelly Hall, et al.*, Cause No. CC-11-05258-D, (County Court No. 4, Dallas County, Texas); *David Flecker, Individually and on Behalf of All Others Similarly Situated and Derivatively*

10

141

*on Behalf of Pioneer Southwest Energy Partners L.P.*, Cause No. DC-13-05371-G (134th District Court, Dallas County, Texas); *In re U.S. Home Systems, Inc. Shareholder Litigation*, Cause No. CC-12-04962-B (County Court No. 2, Dallas County, Texas); *Terry Neff, Derivatively on Behalf of Weatherford International Ltd., et al., v. Nicholas F. Brady, et al.*, Cause No. 2010-40764 (270th District Court, Harris County, Texas); *In re Burlington Northern Santa Fe Corporation Shareholder Class Action Litigation,* Cause No. 348-241465-09, (348th District Court, Tarrant County, Texas) *Dillingham v. Schmitz,* Cause No. 2005C119934 (288th District Court, Bexar County, Texas); *Holowach v. Gilliland, et al.*, Cause No. 017-221963-07 (17th District Court, Tarrant County, Texas); *Levy Investments v. Donald Steen, et al.,* Cause No. DC-07-00208 (101st District Court Dallas County, Texas); *In re Petco Animal Supplies, Inc., Shareholder Litigation,* Case No. GIC 869399 (Superior Court, San Diego, California); *Frank Capovilla v. Lone Star Technologies, Inc., et al.,* Cause No. DC-07-002979 (14th District Court, Dallas County, Texas); *Louis Dudas v. Encore Medical Corporation, et al.,* Cause No. D-1-GN-002495 (345th District Court, Travis County, Texas); *Waggoner v. Ryan, et al,* Cause No. CC-05-13893 (County Court at Law No. 2, Dallas County, Texas); *Evans v. Paulson, et al.,* Cause No. 05-01818-JMR-FLN (D. Minn.); In *re Accuray, Inc. Shareholder Derivative* Litigation, Case No. C 09 05580 CW (N.D. Cal.); *In re Microtune, Inc. Litigation,* Cause No. 219-03729-2010 (219th District Court, Collin County, Texas); *Edward Ferguson v. Louis Raspino*, *et al*., Cause No. 2010-23805 (281st District Court, Harris County, Texas); *In re Duncan Energy Partners L.P. Shareholder Litigation*, Cause No. 2011-13981 (269th District Court, Harris County, Texas); and many others.

11

**JOE KENDALL**

Former United States District Judge Joe Kendall is the owner of Kendall Law Group. Mr. Kendall served on the federal bench in the Northern District of Texas from 1992-2002, appointed by President George Herbert Walker Bush. He was unanimously confirmed by the U.S. Senate. At the time of his appointment, he was the youngest U.S. District Judge in the country. He also served as state district judge of the 195th Judicial District Court in Dallas from 1987-1992. In his judicial career, he has presided over approximately 500 jury trials and disposed of over 11,000 cases. Mr. Kendall has a B.B.A. from the Cox School of Business at Southern Methodist University and a law degree from Baylor University. Mr. Kendall served as a Commissioner on the United States Sentencing Commission from 1999 through 2002, appointed by President Bill Clinton.

Since leaving the bench for economic reasons and returning to trial work, Mr. Kendall has had tremendous success at the prosecution of patent and class action litigation either as lead, co-lead or local counsel.

While on the federal bench, Mr. Kendall handled class actions of various types and presided over numerous civil jury trials, including complex litigation, securities, antitrust, qui tam, medical malpractice, products liability, and patent infringement cases. He presided over a multi-district litigation case, and also environmental and CERCLA cases. He is the author of more than 250 judicial opinions published in the federal reporters or legal research databases. In his career as a lawyer, Mr. Kendall has personally tried more than 100 jury trials to judgment.

Additionally, Mr. Kendall taught new federal judges for the Federal Judicial Center in Washington, D.C. and has taught docket management techniques to experienced federal judges throughout the country. He is a former board member of the Federal Judges Association and was editor of *In Camera*, the newsletter of the Federal Judges Association.

# EXHIBIT 5



**NERA**
ECONOMIC CONSULTING

24 January 2023



# Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review

Federal Filings Declined for the Fourth Consecutive Year

Average and Median Settlement Values Increased by More than 50% Compared to 2021

By Janeen McIntosh, Svetlana Starykh, and Edward Flores

Insight in Economics™

## Analysis of Motions

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the 2013–2022 period in which purchasers of common stock are part of the class and in which a violation of Rule 10b-5, Section 11, and/or Section 12 is alleged.

### Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class action suits filed and resolved. A decision was reached in 73% of these cases, while 18% were voluntarily dismissed by plaintiffs, 8% settled before a court decision was reached, and 1% of the motions were withdrawn by defendants. Among the cases where a decision was reached, 61% were granted (with or without prejudice) and only 20% were denied (see Figure 11).

Figure 11. **Filing and Resolutions of Motions to Dismiss**
Cases Filed and Resolved January 2013–December 2022



### Motion for Class Certification

A motion for class certification was filed in only 17% of the securities class action suits filed and resolved, as most cases are either dismissed or settled before the class certification stage is reached. A decision was reached in 60% of the cases where a motion for class certification was filed. Almost all of the other 40% of cases were resolved with a settlement. Among the cases where a decision was reached, the motion for class certification was granted (with or without prejudice) in 86% of cases (see Figure 12). Approximately 65% of decisions on motions for class certification occur within three years of the filing of the first complaint, with nearly all decisions occurring within five years (see Figure 13). The median time was about 2.7 years.

## NERA-Defined Investor Losses

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[11]

A statistical review reveals that settlement values and NERA-Defined Investor Losses are highly correlated, although the relationship is not linear. The ratio is higher for cases with lower NERA-Defined Investor Losses than for cases with higher Investor Losses (see Figure 18). Since 2013, annual median Investor Losses have ranged from a high of $972 million to a low of $358 million. For cases settled in 2022, the median Investor Losses were $972 million, which is 33% higher than the 2021 value and the highest recorded value during the 2013–2022 period. Between 2020 and 2022, the median ratio of settlement amount to Investor Losses has been stable at 1.8% (see Figure 19).

Figure 18. **Median Settlement Value as a Percentage of NERA-Defined Investor Losses**
By Investor Losses
Cases Filed and Settled December 2011–December 2022



Figure 19. **Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year**
January 2013–December 2022



NERA has identified the following key factors as driving settlement amounts:

- NERA-Defined Investor Losses;
- The market capitalization of the issuer immediately after the end of the class period;
- The types of securities (in addition to common stock) alleged to have been affected by the fraud;
- Variables that serve as a proxy for the merit of plaintiffs' allegations (e.g., whether the company has already been sanctioned by a government or regulatory agency or paid a fine in connection with the allegations);
- The stage of litigation at the time of settlement; and
- Whether an institution or public pension fund is named lead plaintiff (see Figure 20).

## About NERA

NERA Economic Consulting (**www.nera.com**) is a global firm of experts dedicated to applying economic, finance, and quantitative principles to complex business and legal challenges. For more than six decades, we have been creating strategies, studies, reports, expert testimony, and policy recommendations for government authorities and the world's leading law firms and corporations. We bring academic rigor, objectivity, and real-world industry experience to issues arising from competition, regulation, public policy, strategy, finance, and litigation.

NERA's clients value our ability to apply and communicate state-of-the-art approaches clearly and convincingly, our commitment to deliver unbiased findings, and our reputation for quality and independence. Our clients rely on the integrity and skills of our unparalleled team of economists and other experts backed by the resources and reliability of one of the world's largest economic consultancies. Continuing our legacy as the first international economic consultancy, NERA serves clients from major cities across North America, Europe, and Asia Pacific.

## Contacts

For further information, please contact:



**Janeen McIntosh**
Senior Consultant
New York City: +1 212 345 1375
janeen.mcintosh@nera.com



**Svetlana Starykh**
Senior Consultant
White Plains, NY: +1 914 448 4123
svetlana.starykh@nera.com

*The opinions expressed herein do not necessarily represent the views of NERA Economic Consulting or any other NERA consultant.*



**Edward Flores**
Senior Consultant
New York City: +1 212 345 2955
edward.flores@nera.com



To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.

149



Visit **www.nera.com** to learn
more about our practice areas
and global offices.

© Copyright 2023
National Economic Research
Associates, Inc.

All rights reserved.
Printed in the USA.

# EXHIBIT 6

| Select Fifth Circuit Cases Awarding Attorneys' Fee Awards of 33% or Above | | |
|---|---|---|
| **Case** | **Settlement Amount** | **Fee Award** |
| In re Shell Oil Refinery, No. 88-cv-01935, 155 F.R.D. 552, 575 (E.D. La. Oct. 20, 1993) | $170,000,000 | 33⅓% |
| In re Combustion, Inc., No. 94-mdl-04000, 968 F. Supp. at 1136, 1142  (W.D. La. June 4, 1997) | $127,396,000 | 36.00% |
| Erica P. John Fund, Inc. v. Halliburton Company, No. 02-cv-01152, 2018 WL 1942227 (N.D. Tex. Apr. 25 2018) | $100,000,000 | 33.33% |
| Sims v. Shearson Lehman Bros., No. 90-cv-00252, 1993 WL 646022, at *3 (N.D. Tex. Nov. 29, 1993) | $30,000,000 | 33⅓% |
| In re Bayou Sorrel Class Action, No. 04-cv-01101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) | $28,000,000 | 36% |
| Burford v. Cargill, Inc., No. 05-cv-00283, ECF No 339, 2012 WL 5471985 (W.D. La. Nov. 8, 2012) | $27,500,000 | 33⅓% |
| Prause v. Technip FMC plc, No. 17-cv-02368, ECF No. 215 (S.D. Tex. Mar. 23, 2021) | $19,500,000 | 33.00% |
| Rougier v. Applied Optoelectronics, Inc., No. 17-cv-02399, ECF No. 156 (S.D. Tex. Nov. 24, 2020) | $15,500,000 | 34.20% |
| Al's Pet care v. Woodforest National Bank, NA, 2019 WL 387409, at *4 (S.D. Tex. Jan 30, 2019) | $15,000,000 | 33.33% |
| In re Universal Access, Inc. Sec. Litig., No. 02-cv-00103, ECF No. 182 (E.D. Tex. May 16, 2005) | $11,000,000 | 33⅓% |
| Glock v. FTS Int'l, Inc., No. 20-cv-03928, 2021 WL 1422714, at *1-2 (S.D. Tex. Apr. 13, 2021) | $9,875,000 | 33.00% |
| Parmelee v. Santander Consumer USA Holdings Inc., No. 16-cv-00783, ECF No. 86 (N.D. Tex. June 3, 2019) | $9,500,000 | 33⅓% |
| Singh v. 21Vianet Group, Inc., No. 14-cv-00894, 2018 WL 6427721, at *2 (E.D. Tex. Dec. 7, 2018) | $9,000,000 | 33.3% |
| In re DrKoop.com, No. 00-cv-00427, ECF No. 48 (W.D. Tex. Nov. 14, 2001) | $8,550,000 | 33⅓% |
| Friedman v. Penson Worldwide, Inc., No. 11-cv-02098, ECF No. 100 (N.D. Tex. Aug. 23, 2013) | $6,500,000 | 33⅓% |
| In re Bristow Group Inc. Sec. Litig., No. 19-cv-00590, ECF No. 70 (S.D. Tex. Aug. 6, 2021) | $6,250,000 | 33.00% |
| In re: Pool Products Distr. Market Antitrust Litig., 12-md-02328, 2016 WL 235781 at *12 (E.D. La. Jan. 20, 2016) | $6,000,000 | 33⅓% |
| Williams v. Go Frac, LLC, No. 15-cv-00199, 2017 WL 3699350 at *2 (E.D. Tex. Apr. 26, 2017) | $5,782,848 | 35% |
| In re Forterra Inc. Sec. Litig., No. 18-cv-01957, 2020 WL 4727070, at *1 (N.D. Tex. Aug. 12, 2020) | $5,500,000 | 33⅓% |
| Miller v. Global Geophysical Services, Inc., No. 14-cv-00708, ECF No. 137 (S.D. Tex. Jan. 1, 2016) | $5,300,000 | 33⅓% |
| In re EZCORP, Inc. Sec. Litig., No. 15-cv-00608, 2019 WL 6649017, at *1 (W.D. Tex. Dec. 6, 2019) | $4,875,000 | 33.00% |
| In re: CaptureRX Data Breach Litig., 21-cv-00523, ECF No. 49 (W.D. Tex. June 23, 2022) | $4,750,000 | 33⅓% |
| Carlton v. Cannon, No. 15-cv-00012, ECF No. 158 (S.D. Tex. June 7, 2017) | $4,500,000 | 33⅓% |
| Bodin v. SAExploration Holdings, Inc., No. 19-cv-03089, ECF No. 103 (S.D. Tex. Aug 12, 2021) | $4,500,000 | 33.33% |
| Jenkins v. Trustmark Nat'l Bank, No. 12-cv-00380, 300 F.R.D. at 307 (S.D. Miss. Mar 25, 2014) | $4,000,000 | 33⅓% |
| Kemp v. Unum Life Insurance Company of America, No. 14-cv-00944, 2015 WL 8526689, at *9 (E.D. La. Dec 11, 2015) | $3,738,402 | 33⅓% |
| Celeste v. Intrusion Inc., No. 21-cv-00307, ECF No. 74 (E.D. Tex. Dec 16, 2022) | $3,250,000 | 33⅓% |
| Fairway Med. Ctr., L.L.C. v. McGowan Enterprises, Inc., No. 16-cv-03782, 2018 WL 1479222, at *2 (E.D. La. Mar. 27, 2018) | $3,250,000 | 33⅓% |
| Fitzpatrick v. Uni-Pixel, Inc., No. 13-cv-01649, ECF No. 58 (S.D. Tex. Apr. 30, 2015) | $2,350,000 | 33⅓% |
| In re: RCI Hospitality Holdings, Inc. Sec. Litig., No. 19-cv-01841, ECF No. 81 (S.D. Tex. Aug 12, 2022) | $2,200,000 | 33⅓% |
| Vassallo v. Goodman Networks, Inc., No. 15-cv-00097, 2016 WL 6037847, at *4, *6 (E.D. Tex. Oct 14, 2016) | $2,000,000 | 39.78% |
| Branca v. First USA Paymentech, Inc., No. 97-cv-02507, ECF No. 59 (N.D. Tex. Jan. 4, 2001) | $2,000,000 | 33⅓% |
| Campton v. Ignite Rest. Grp., Inc., No. 12-cv-02196, 2015 WL 12766537, at *3 (S.D. Tex. June 5, 2015) | $1,800,000 | 33⅓% |
| Barfuss v. DGSE Co. Inc., No. 12-cv-03664, ECF No. 52 (N.D. Tex. Sept. 16, 2013) | $1,700,000 | 33⅓% |
| Faircloth v. Certified Fin. Inc., No. 99-cv-03097, 2001 WL 527489, at *9 (E.D. La. May 16, 2001) | $1,534,321 | 35.00% |
| Lee v. Active Power, Inc., No. 13-cv-00797, ECF No. 65 (W.D. Tex. May 15, 2015) | $1,500,000 | 33⅓% |
| In re CBD Energy Limited Sec. Litig., No. 15-cv-01668, ECF No. 147 (S.D. Tex. July 27, 2017) | $1,500,000 | 33⅓% |

# EXHIBIT 7

| Plaintiffs' Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Bernstein Litowitz Berger & Grossman LLP | In re Oracle Corporation Securities Litigation, No. 5:18-cv-04844-BLF | (N.D.Cal.) (Dec. 2022) (Dkt. No. 140) | Associate: $425 - $575<br><br>Staff Attorney: $425 - $450<br><br>Investigator: $325 - $600<br><br>Paralegal: $335 - $375 | $850 - $1,100 |
| | Lord Abbett Affiliated Fund, Inc., et al. v. Navient Corp., et al., No. 1:16-cv-00112--MN | (D. Del.) (Feb. 2022) (Dkt. No. 347-5) | Senior Counsel: $775<br><br>Associate: $425 - $700<br><br>Staff Attorney: $350 - $400<br><br>Paralegal: $325 - $350 | $900 - $1,300 |
| | SEB Investment Management AB, et al. v. Symantec Corporation and Gregory S. Clark, No. 3:18-cv-02902-WHA | (N.D.Cal.) (Dec. 2021) (Dkt. No. 415-3) | Senior Counsel: $775 - $800<br><br>Associate: $425 - $575<br><br>Staff Attorney: $375 - $425<br><br>Investigator: $300 - $575<br><br>Paralegal: $325 - $350 | $875 - $1,300 |
| Boies, Schiller & Flexner LLP | Brown et al. v. Google LLC, No. 4:30-cv-03664-YGR-SVK | (N.D.Cal.) (Jun. 2022) (Dkt. No. 597) | Associate: $475 - $950<br><br>Paralegal: $225 - $380 | $725 - $1,950 |
| | Erica P John Fund Inc et al v. Halliburton Company et al, No. 3:02-cv-01152-M | (N.D. Tex.) (July 2017) (Dkt. No. 819) | Of Counsel: $700 - $750<br><br>Associate: $420 - $720<br><br>Staff Attorney: $180 - $390<br><br>Paralegal: $100 - $260 | $350 - $1,650 |

*Listed in order of filing date.

| Plaintiffs' Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Cohen Milstein Sellers & Toll, PLLC | Plumbers & Pipefitters National Pension Fund et al v. Kevin Davis et al, No. 1:16-cv-03591-GHW | (S.D.N.Y.) (Oct. 2022) (Dkt. No. 292) | Of Counsel: $725 - $750<br><br>Associate: $475 - $585<br><br>Staff Attorney: $495 - $585<br><br>Investigator: $450 - $535<br><br>Paralegal: $270 - $335 | $775 - $1,150 |
| | In re GreenSky Securities Litigation, No. 1:18-cv-11071-AKH | (S.D.N.Y.) (Sep. 2021) (Dkt. No. 195) | Of Counsel: $675<br><br>Associate: $495 - $585<br><br>Staff Attorney: $455 - $575<br><br>Paralegal: $290 - $325 | $740 - $1,125 |
| | In re Flint Water Cases, No. 5:16-cv-10444-JEL-MKM | (E.D. Mich.) (Mar. 2021) (Dkt. No. 1458-2) | $530 - $740<br>(Associate / Of Counsel) | $645 - $1,125 |
| Hausfeld LLP | In re TikTok, Inc., Consumer Privacy Litigation, MDL No. 2948 | (N.D.Ill.) (Mar. 2022) (Dkt. No. 197-20) | Of Counsel: $875<br><br>Associate: $500 - $610<br><br>Paralegal: $300 - $325 | $725 - $1,525 |
| | In re Foreign Exchange Benchmark Rates Antitrust Litigation, No. 1:13-cv-07789-LGS | (S.D.N.Y.) (Jan. 2018) (Dkt. No. 939-3) | Associate: $350 - $500<br><br>Staff Attorney: $350 - $600<br><br>Contract Attorney: $350 - $425<br><br>Paralegal: $75 - $280 | $630 - $1,375 |
| Keker, Van Nest & Peters LLP | OpenGov, Inc. v. GTY Technology Holdings Inc. et al, No. 3:18-cv-07198-JSC | (N.D. Cal.) (Mar. 2019) (Dkt. No. 40-1) | Of Counsel: $775 - $1,075<br><br>Paralegal: $250 - $290 | $700 - $1,500 |
| Labaton Sucharow LLP | In re Twitter Inc. Securities Litigation, No. 4:16-cv-05314-JST (SK) | (N.D.Cal.) (Oct. 2022) (Dk. No. 661-1) | Of Counsel: $675<br><br>Staff Attorney: $335 - $410<br><br>Paralegal $355 - $375 | $825 - $1,100 |

*Listed in order of filing date.

| Plaintiffs' Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Labaton Sucharow LLP | In re Nielsen Holdings PLC Securities Litig., No. 1:18-cv-07143-JMF | (S.D.N.Y.) (Jul. 2022) (ECF No. 146-5) | Of Counsel: $550 - $850<br><br>Associate: $425 - $675 | $875 - $1,300 |
| | In re Resideo Technologies, Inc. Securities Litigation, No. 0:19-cv-02863-WMW-BRT | (D. Minn.) (Dec. 2021) (Dkt. No. 144-5) | Of Counsel: $565 - $800<br><br>Associate: $400 - $525<br><br>Staff Attorney: $390 - $435<br><br>Paralegal: $335 - $375 | $800 - $1,150 |
| | In re ADT Inc. Shareholder Litigation, No. 502018CA003494 | (Palm Beach County, Fla.) (Dec. 2020) (Dkt. No. 170) | $425 - $750 | $775 - $1,100 |
| | In re Facebook Biometric Information Privacy Litigation, No. 3:15-cv-03747-JD | (N.D. Cal.) (Oct. 2020) (Dkt. No. 499-5) | $360 - $850 | $800 - $1,200 |
| Levi & Korsinsky LLP | In re U.S. Steel Consolidated Casts, No. 2:17-cv-00579-CB | (W.D.Penn.) (Mar. 2023) (Dkt. No. 351) | Of Counsel: $450 - $850<br><br>Associate: $425 - $850 | $765 - $1,050 |
| | In re Restoration Robotics, Inc. Securities Litigation, No. 5:18-cv-03712-EJD | (N.D.Cal.) (Jul. 2021) (Dkt No. 117) | $425 - $850 | $1,000 - $1,050 |
| | In re ADT Inc. Shareholder Litigation, No. 502018CA003494 | (Palm Beach County, Fla.) (Dec. 2020) (Dkt. No. 170) | $495 - $800 | $1,000 - $1,050 |
| Lieff Cabraser Heimann & Bernstein, LLP | In re BofI Holding, Inc. Securities Litigation, No. 3:15-cv-02324-GPC-KSC | (S.D.Cal) (Jul. 2022) (Dkt. No. 383-2) | Associate: $395 - $535<br><br>Staff Attorney: $415 | $555 - $1,150 |
| | In re Volkswagen "Clean Diesel' Marketing, Sales Practices, and Products Liability Litigation, No. 15-md-02672 | (N.D. Cal.) (Nov. 2016) (Dkt. No. 2175-1) | Associate: $150 - $790<br><br>Paralegal: $80 - $490 | $275 - $1,600 |
| Motley Rice LLC | In re Twitter Inc. Securities Litigation, No. 4:16-cv-05314-JST (SK) | (N.D.Cal.) (Oct. 2022) (Dk. No. 664-1) | Senior Counsel: $925<br><br>Associate: $425 - $600<br><br>Staff Attorney: $400 - $425<br><br>Contract Attorney: $395<br><br>Paralegal: $175 - $375 | $725 - $1,100 |

*Listed in order of filing date.

| Plaintiffs' Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Motley Rice LLC | In re SCANA Corp. Sec. Litig., No. 3:17-cv-02616-MBS | (D.S.C.) (Apr. 2020) (Dkt. No. 229-7) | Senior Counsel: $925<br><br>Associate: $500 - $600<br><br>Paralegal: $225 - $375 | $775 - $1,100 |
| | In re Investment Technology Group, Inc. Securities Litigation, No. 15-cv-06369 | (S.D.N.Y.) (Jan. 2019) (Dkt. No. 119) | $300 - $750 | $775 - $1,050 |
| Pomerantz LLP | Klein v. Altria Group, Inc. et al., No. 3:20-cv-00075-DJN | (E.D. Va.) (Feb. 2022) (Dkt. No. 311-5) | Of Counsel: $645 - $660<br><br>Associate: $375 - $660<br><br>Paralegal: $335 | $815 - $1,025 |
| Quinn Emanuel Urquhart & Sullivan, LLP | Alaska Electrical Pension Fund, et al., v. Bank of America, N.A., et al., No. 14-cv-07126-JMF-OTW | (S.D.N.Y.) (Mar. 2018) (Dkt. No. 617-1) | Of Counsel: $885 - $920<br><br>Associate: $630 - $875<br><br>Staff Attorney: $350 - $535<br><br>Paralegal: $300 - $320<br><br>Litigation Support: $175 - $365 | $940 - $1,375 |
| Robbins Geller Rudman & Dowd LLP | In re Infinity Q Diversified Alpha Fund Securities Litigation, No. 651295/2021 | (New York County, New York) (Dec. 2022) (Dkt. No. 223) | Of Counsel: $1,090<br><br>Associate: $375<br><br>Staff Attorney: $420 - $445<br><br>Research Analyst: $295 | $675 - $1,350 |
| | Azar v. Grubhub Inc., et al., No. 1:19-cv-07665 | (N.D.Ill.) (Dec. 2022) (Dkt. No. 2279) | Of Counsel: $955<br><br>Associate: $375 - $650<br><br>Staff Attorney: $410 -$445<br><br>Research Analyst: $295<br><br>Investigator: $290 | $675 - $1,350 |

*Listed in order of filing date.

| Plaintiffs' Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Robbins Geller Rudman & Dowd LLP | Gordon v. Vanda Pharmaceuticals, Inc. and Mihael H Polymeropoulos, No. 1:19-cv-01108-FB-LB | (E.D.N.Y.) (Dec. 2022) (Dkt. No. 104-6) | Of Counsel: $1,090<br><br>Associate: $375 - $630<br><br>Staff Attorney: $420 - $445<br><br>Litigation Support: $300<br><br>Investigator: $290 | $785 - $1,350 |
| | In re Twitter Inc. Securities Litigation, No. 4:16-cv-05314-JST (SK) | (N.D.Cal.) (Oct. 2022) (Dk. No. 663-1) | Of Counsel: $775 - $1,080<br><br>Associate: $425 - $520<br><br>Staff Attorney: $400 - $425<br><br>Paralegal: $275 - $350 | $820 - $1,325 |
| | Rodriguez v. CPI Aerostructures, Inc. et al., No. 1:20-cv-00982-ENV-CLP | (E.D.N.Y.) (Aug. 2022) (Dkt. No. 64-5) | Of Counsel: $925 - $1,090<br><br>Associate: $630 | $675 - $1,350 |
| Scott+Scott, Attorneys at Law, LLP | In re Infinity Q Diversified Alpha Fund Securities Litigation, No. 651295/2021 | (New York County, New York) (Dec. 2022) (Dkt. No. 230) | Associate: $675 - $795<br><br>Staff Attorney: $650<br><br>Research Analyst: $395<br><br>Paralegal: $395 | $995 - $1,395 |
| | Mo-Kan Iron Workers Pension Fund v. Teligent, Inc. et al., No. 1:19-cv-03354-VM | (S.D.N.Y.) (Oct. 2021) (Dkt. No. 91) | Associate: $475 - $695<br><br>Investigator: $550 - $650<br><br>Paralegal: $395 | $995 - $1,295 |

*Listed in order of filing date.

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Akin Gump Strauss Hauer & Feld LLP | In re Pipeline Health System, LLC, *et al.*, Debtors, No. 22-90291 (MI) | (Bankr. S.D.Tex.) (Mar. 2023) (Dkt. No. 1169) | Senior Counsel: $1,105 - $1,300<br><br>Counsel: $1,025 - $1,190<br><br>Associate: $670 - $880<br><br>Paraprofessional: $510 | $1,400 - $1,775 |
| | In re GTT Communications, Inc., *et al.*, Debtors, No. 21-11880-MEW | (Bankr. S.D.N.Y.) (Nov. 2021) (Dkt. No. 133) | Senior Counsel: $845 - $1,655<br><br>Counsel: $1,025 - $1,225<br><br>Associate: $605 - $1,130<br>("2022 Range") | $1,125 - $1,995<br>("2022 Range") |
| | In re True Religion Apparel Inc., *et al.*, Debtors, No. 20-10941 (CSS) | (Bankr. D. Del.) (May 2020) (Dkt. No. 216) | Senior Counsel: $735 - $1,510<br><br>Counsel: $820 - $1,090<br><br>Associate: $535 - $960<br><br>Paraprofessional: $100 - $455 | $995 - $1,995 |
| | In re Purdue Pharma L.P., *et al.,* Debtors, No. 19-23649 (RDD) | (Bankr. S.D.N.Y.) (Mar. 2020) (Dkt. No. 947) | Senior Counsel & Counsel: $850 - $1,110<br><br>Associate: $535 - $810<br><br>Staff Attorneys & Paraprofessional: $205 - $625<br>("2020 Rate") | $1,075 - $1,655<br>("2020 Rate") |
| Arnold & Porter Kaye Scholer LLP | In re BDC Inc., *et al.*, Debtors, No. 20-10010 (CSS) | (Bankr. D. Del.) (Feb. 2021) (Dkt. No. 1423) | Counsel: $920 - $1,050<br><br>Associate: $520 - $910<br><br>Staff Attorney: $545 - $610<br><br>Legal Assistant: $295 - $405 | $910 - $1,240 |
| Boies, Schiller Flexner LLP | In re Marshall Broadcasting Group, Inc., Debtor, No. 19-36743 (DRJ) | (Bankr. S.D.Tex.) (Mar. 2021) (Dkt. No. 443) | Associate: $850 - $890 | $1,050 - $1,080 |

*Listed in order of filing date.

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Cleary Gottlieb Steen & Hamilton LLP | In re Genesis Global Holdco, LLC, *et al.*, Debtors, No. 23-10063 (SHL) | (Bankr. S.D.N.Y.) (May 2023) (Dkt. No. 316) | Counsel: $1,280 - $1,765<br><br>Associate: $845 - $1,400<br><br>Contract Attorney: $300 - $375<br><br>Litigation Paralegal: $370 - $430 | $1,305 - $2,135 |
|  | In re LATAM Airlines Group S.A., *et al.*, Debtors, No. 20-11254 (JLG) | (Bankr. S.D.N.Y.) (Aug. 2020) (Dkt. No. 967) | Counsel / Senior Attorney: $1,130 - $1,215<br><br>Associate: $770 - $955<br><br>First-year Associate: $565 - $670<br><br>Staff / Project Attorney: $420 - $495<br><br>Paralegal: $355 - $415 | $1,065 - $1,525 |
| Dechert LLP | In re PURDUE PHARMA L.P., *et al.*, Debtors, No. 19-23649-shl | (Bankr. S.D.N.Y.) (Aug. 2023) (Dkt. No. 5840) | Associate: $880 - $1,050<br><br>Paralegal: $300 | $1,125 - $1,650 |
|  | In re LATAM Airlines Group S.A., *et al.*, Debtors, No. 20-11254 (JLG) | (Bankr. S.D.N.Y.) (Dec. 2022) (Dkt. No. 7235) | Counsel: $1,145<br><br>Associate: $630 - $1,065<br><br>Legal Assistant: $460 | $1,200 - $1,650 |
| DLA Piper LLP (US) | In re Amsterdam House Continuing Care Retirement Community, Inc., Debtor, No. 23-70989-ast | (Bankr. E.D.N.Y.) (Jun. 2023) (Dkt. No. 254) | Associate: $750 - $1,195<br><br>Paralegal: $380 - $475 | $1,195 - $1,240 |
|  | In re Tilden Marcellus, LLC, Debtor, No. 22-20212-GLT | (Bankr. W.D.Penn.) (Jun. 2022) (Dkt. No. 496) | Associate: $675 - $1,020<br><br>Paralegal: $340 - $360 | $1,020 - $1,285 |

*Listed in order of filing date.

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Freshfields Bruckhaus Deringer LLP | In re Revlon, Inc. *et al.*, Debtors, No. 22-10760 (DSJ) | (Bankr. S.D.N.Y.) (Apr. 2023) (Dkt. No. 1835) | Counsel: $843<br><br>Associate: $321 - $1,323<br><br>Paralegal/Non-Legal Staff: $320 - $525 | $1,057 - $1,723 |
| | In re Expro Holdings US Inc., *et al.*, Debtors, No. 17-60179 (DRJ) | (Bankr. S.D. Tex.) (Dec. 2017) (Dkt. No. 154) | Counsel: $1,065<br><br>Associate: $545 - $965<br><br>Paralegal: $325 - $425 | $1,165 - $1,250 |
| Gibson, Dunn & Crutcher LLP | In re Stimwave Technologies Incorporated, *et al.*, Debtors, No. 22-10541 (TMH) | (Bankr. D.Del.) (May 2023) (Dkt. No. 901) | Associate: $1,105 - $1,210 | $1,860 |
| | In re Sequential Brands Group, Inc., *et al.*, Debtors, No. 21-11194 (JTD) | (Bankr. D.Del.) (Sep. 2021) (Dkt. No. 95) | Counsel: $1,025 - $1,210<br><br>Associate: $610 - $1,060 | $1,095 - $1,645 |
| Greenberg Traurig LLP | In re Kabbage, Inc. d/b/a Kservicing, *et al.*, Debtors, No. 22-10951 (CTG) | (Bankr. D.Del.) (Jun. 2023) (Dkt. No. 855) | Associate: $870<br><br>Paralegal: $435 | Shareholder: $1,255 - $1,540 |
| | In re American Eagle Delaware Holding Company LLC, et al, Debtors, No. 22-10028-JKS | (Bankr. D. Del.) (Mar. 2022) (Dkt. No. 250) | Associate: $750<br><br>Paralegal: $150 - $365 | Shareholder: $1,255 - $1,430 |
| | In re Avadel Specialty Pharmaceuticals, LLC, Debtor, No. 19-10248 (CSS) | (Bankr. D. Del.) (Nov. 2020) (Dkt. No. 443) | Associate: $395 - $900<br><br>Paralegal: $150 - $325 | Shareholder: $650 - $1,480 |
| | In re IFS Securities, Inc., Debtor, No. 20-65841-LRC | (Bankr. N.D. Ga.) (May 2020) (Dkt. No. 49-2) | Of Counsel: $400 - $995<br><br>Associate: $395 - $825<br><br>Legal Assistant/Paralegal: $120 - $475 | Shareholder: $565 - $1,500 |
| Hogan Lovells US LLP | In re LTL Management LLC, Debtor, No. 21-30589 (JCW) | (Bankr. D.N.J.) (May 2022) (Dkt. No. 2240-1) | Counsel: $910 - $1,735<br><br>Associate: $605 - $1,055<br><br>Paralegal: $275 - $550 | $950 - $2,465 |

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Jones Day | In re Purdue Pharma L.P., et al., Debtors, No. 19-23649 (SHL) | (Bankr. S.D.N.Y.) (Jun. 2023) (Dkt. No. 5669) | Associate: $650 -$880<br><br>Paralegal & Staff: $325 - $450 | $1,050 - $1,418 |
| | In re LTL Management LLC, Debtor, No. 21-30589 (JCW) | (Bankr. W.D.N.C.) (Nov. 2021) (Dkt. No. 404) | Associate: $525 - $975 | $1,125 - $1,450 |
| Katten Muchin Rosenman LLP | In re Voyager Digital Holdings, Inc.et al., Debtors, No. 22-10943 (MEW) | (Bankr. S.D.N.Y.) (Mar. 2023) (Dkt. No. 1147) | Associate: $765 - $815 | $1,040 - $1,755 |
| | In re: Sheridan Holding Company I, LLC, et al. Reorganized Debtors, No. 20-31884 (DRJ) | (Bankr. S.D.Tex.) (Apr. 2020) (Dkt. No. 124) | Of Counsel: $895 - $1,475<br><br>Associate: $460 - $970<br><br>Paraprofessional: $195 - $580 | $770 - $1,555 |
| | In re: High Ridge Brands Co., et al., Debtors, No. 19-12689 (BLS) | (Bankr. D.Del.) (Jan. 2020) (Dkt. No. 161) | Of Counsel: $895 - $1,475<br><br>Associate: $460 - $970<br><br>Paraprofessional: $195 - $580 | $770 - $1,555 |
| King & Spalding LLP | In re DCL Holdings (USA), Inc., et al., Debtors, No. 22-11319 (JKS) | (Bankr. D.Del.) (May 2023) (Dkt. No. 442) | Associate: $685 - $1,315<br><br>Project Assistant: $250 | $1,340 - $1,780 |
| | In re Briggs & Stratton Corporation, et al., Debtors, No. 20-43597 | (Bankr. E.D.Mo.) (Jul. 2020) (Dkt. No. 194) | Counsel: $750 - $1,005<br><br>Associate: $440 - $750<br><br>Paraprofessional: $190 - $325 | $820 - $1,290 |
| Kirkland & Ellis, LLP | In re: Celsius Network LLC, No. 22- 10964 | (Bankr. S.D.N.Y. Aug. 2022) (ECF No. 360) | Of Counsel: $805 - $1,845<br><br>Associate: $650 - $1,245 | $1,135 - $1,995 |
| | In re Seadrill New Finance Limited, et al., Reorganized Debtors, No. 22-90001 (DRJ) | (Bankr. S.D. Tex.) (Feb. 2022) (Dkt. No. 96) | Associate: $660 - $1,245<br><br>Paralegal: $295 - $480 | $1,195 - $1,995 |
| | In re rue21, inc., et al., Debtors, No. 17-22045-GLT | (Bankr. W.D. Pa.) (Nov. 2017) (Dkt. No. 1308-6) | Associate: $555 - $965<br><br>Paralegal: $220 - $420<br><br>Support Staff: $210 - $340 | $965 - $1,625 |

*Listed in order of filing date.

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Mayer Brown LLP | In re GWG Holdings, Inc., *et al.*, Debtors, No. 22-90032 (MI) | (Bankr. S.D.Tex.) (Dec. 2022) (Dkt. No. 1220) | Counsel: $1,025 to $1,250<br><br>Associate: $590 - $1,075<br><br>Paraprofessionals: $210 - $475 | $1,120 - $1,940 |
| | In re Greensill Capital Inc., Debtor, No. 21-10561 (MEW) | (Bankr. S.D.N.Y.) (Sep. 2021) (Dkt. No. 262) | Counsel: $995<br><br>Associate: $505 - $870<br><br>Paralegal: $400 | $865 - $1,425 |
| | In re Scottish Holdings, Inc., *et al.,* Debtors, No. 18-10160 (LSS) | (Bankr. D. Del.) (Mar. 2018) (Dkt. No. 193) | Of Counsel: $775 - $895<br><br>Associate: $605 - $780<br><br>Paralegal: $350 | $960 - $1,130 |
| McDermott Will & Emery LLP | In re: Voyager Digital Holdings, Inc., No. 22-0943 | (Bankr. S.D.N.Y.) (Aug. 2022) (Dkt. No. 317) | Of Counsel: $755 - $1,300<br><br>Associate: $545 - $1,190 | $875 - $1,510 |
| Milbank LLP | In re Talen Energy Supply, LLC, *et al.*, Debtors, No. 22-90054 (MI) | (S.D.Tex.) (Mar. 2023) (Dkt. No. 1931) | Special Counsel: $1,320<br><br>Associate: $695 - $1,200<br><br>Legal Assistant: $270 - $390 | $1,495 - $2,045 |
| | In re: Kfir Gavrieli, Debtor, No. 21-bk-10826-BB | (Bankr. C.D. Cal.) (Oct. 2021) (Dkt. No. 517) | Associate: $1,050 - $1,090 | $1,695 |
| Norton Rose Fulbright US LLP | In re TRIVASCULAR SALES LLC, *et al.*, No. 20-31840-SGJ | (Bankr. E.D.Tex.) (Aug. 2020) (Dkt. No. 291) | Of Counsel: $670 - $1,225<br><br>Senior Counsel: $520 - $1,175<br><br>Associate: $355 - $855<br><br>Paraprofessional: $230 - $480 | $700 - $1,350 |

*Listed in order of filing date.

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| O'Melveny & Myers LLP | In re: FHC Holdings Corporation, *et al.*, Debtors, No. 20-13076-BLS | (Bankr. D. Del.) (Jun. 2021) (Dkt. No. 792) | Senior Counsel: $1,105<br><br>Associate: $708 - $940 | $1,100 - $1,400 |
| | In re Remington Outdoor Company, Inc., *et al.*, Debtors, No. 20-81688-11 | (Bankr. N.D. Ala.) (Jul. 2020) (Dkt. No. 24) | Associate and Counsel: $545 - $995<br><br>Paraprofessional and Legal Assistant: $180 - $415 | $955 - $1,555 |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP | In re Mallinckrodt PLC, *et al.*, Debtors, No. 20-12522 (JTD) | (Bankr. D.Del.) (Apr. 2022) (Dkt. No. 7037) | Counsel: $1,525<br><br>Associate: $1,040 - $1,135 | $1,605 - $2,025 |
| | In re Diamond Offshore Drilling, Inc., *et al.*, Debtors, No. 20-32307 (DRJ) | (Bankr. S.D.N.Y.) (Dec. 2020) (Dkt. No. 766) | Counsel: $1,200<br><br>Associate: $255 - $380<br><br>Paraprofessional: $255 - $380 | $1,225 - $1,650 |
| Proskauer Rose LLP | In re Alpha Media Holdings LLC, *et al.*, Debtors, No. 21-30209 (KRH) | (Bankr. E.D. Va.) (Mar. 2021) (Dkt. No. 197) | Senior Counsel: $1,150 - $1,375<br><br>Associate: $730 - $1,195 | $1,225 - $1,795 |
| Quinn Emanuel Urquhart & Sullivan, LLP | In re J.C. Penney Company, Inc., *et al.*, Debtors, No. 20-20182 (DRJ) | (Bankr. S.D. Tex.) (Jan. 2021) (Dkt. No. 2313) | $750 - $1,100 | $1,200 - $1,325 |
| | In re: Garrett Motion Inc., No. 20-12212 | (Bankr. S.D.N.Y. Sep. 2020) (ECF No. 137) | $625 - $1,270 | $745 - $1,595 |
| Ropes & Gray LLP | In re Vewd Software USA, LLC, *et al.*, Debtors, No. 21-12065 (MEW) | (Bankr. S.D.N.Y.) (Jan. 2022) (Dkt. No. 62) | Counsel: $770 - $1,140<br><br>Associate: $700 - $1,270<br><br>Paraprofessional: $290 - $485 | $1,400 - $2,100 |
| | In re Weatherford International plc, *et al.,* Debtors, No. 19-33694 (DRJ) | (Bankr. S.D. Tex.) (Aug. 2019) (Dkt. No. 276) | Associate: $580 - $1,050<br><br>Paralegal: $400 | $1,150 - $1,520 |
| Shearman & Sterling LLP | In re Carlson Travel, Inc., *et al.*, Reorganized Debtors, No. 21-90017 (MI) | (Bankr. S.D. Tex.) (Jan. 2022) (Dkt. No. 249) | Associate: $435 - $1,210<br><br>Paralegal: $395 | $1,195 - $1,825 |

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Sidley Austin LLP | In re: GVS Texas Holdings I, LLC, *et al.*, Debtors, No. 21-31121-MVL | (Bankr. N.D. Tex.) (Nov. 2021) (Dkt. No. 279) | Counsel: $1,075<br><br>Associate: $815 - $930<br><br>Paralegal: $415 - $490 | $1,100 - $1,450 |
| | In re Boy Scouts of America and Delaware BSA, LLC, Debtors, No. 20-10343 (LSS) | (Bankr. D. Del.) (Jun. 2020) (Dkt. No. 760) | Counsel: $925 - $1,000<br><br>Associate: $570 - $955<br>($550 for Associate pending Admission)<br><br>Paralegal: $250 - $460 | $1,100 - $1,375 |
| | In re Borden Dairy Company, *et al.,* Debtors, No. 20-10010 (CSS) | (Bankr. D. Del.) (Feb. 2020) (Dkt. No. 264) | Senior Counsel and Counsel: $775 - $1,750<br><br>Associate: $570 - $960<br><br>Paraprofessional: $250 - $470 | $1,000 - $1,800 |
| Simpson Thacher & Bartlett LLP | In re MetlinPatterson Global Opportunities Partners II L.P., *et al.*, Debtors, No. 21-11255-DSJ | (Bankr. S.D.N.Y.) (Nov. 2021) (Dkt. No. 243) | Senior Counsel and Counsel: $1,320 - $1,350<br><br>Associate: $655 - $1,240<br><br>Paralegal: $320 - $475 | $1,550 - $1,895 |
| | In re Arsenal Energy Holdings LLC, Reorganized Debtor, No. 19-10226 (BLS) | (Bankr. D. Del.) (Feb. 2019) (Dkt. No. 77) | Senior Counsel and Counsel: $1,190 - $1,220<br><br>Associate: $840 - $1,050 ($590 for Associate pending Admission)<br><br>Paralegal: $265 | $1,425 - $1,535 |
| | In re FR Dixie Acquisition Sub Corp., Reorganized Debtor, No. 18-12476 (KG) | (Bankr. D. Del.) (Feb. 2019) (Dkt. No. 26) | Senior Counsel and Counsel: $1,140 - $1,170<br><br>Associate: $540 - $1,085<br><br>Paralegal: $240 - $410 | $1,350 - $1,550 |

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | In re: Armstrong Flooring, Inc., No. 22-bk-10426 | (Bankr. D. Del. May 2022) (ECF No. 187) | Of Counsel: $1,300 - $1,495<br><br>Associate: $550 - $1,275 | $1,465 - $1,980 |
| | In re VIVUS, Inc. *et al.*, Reorganized Debtors, No. 20-bk-11779 (LSS) | (Bankr. D. Del.) (Jan. 2021) (Dkt. No. 443) | Of Counsel: $1,260<br><br>Associate: $695 - $1,120<br>($495 for Associate pending Admission) | $1,425 - $1,565 |
| | In re JCK Legacy Company, *et al.,* Debtors, No. 20-10418 (MEW) | (Bankr. S.D.N.Y.) (Oct. 2020) (Dkt. No. 938) | Counsel: $1,125 - $1,325<br><br>Associate: $575 - $1,120<br><br>Paraprofessional: $95 - $520 | $1,275 - $1,775 |
| Sullivan & Cromwell LLP | In re SVB Financial Group, Debtor, No. 23-10367 (MG) | (Bankr. S.D.N.Y.) (Sep. 2023) (Dkt. No. 543) | Senior Counsel: $2,165<br><br>Special Counsel: $1,575 - $1,790<br><br>Associate: $775 - $1,475<br><br>Paralegal: $425 - $595<br><br>Legal Analyst: $595 | $1,083 - $2,165 |
| | In re FTX Trading LTD, *et al.*, Debtors, No. 22-11068 (JTD) | (Bankr. D. Del.) (Aug. 2023) (Dkt. No. 2271) | Of Counsel: $2,165<br><br>Special Counsel: $1,575 - $1,825<br><br>Associate: $775 - $1,475<br><br>Law Clerk: $550<br><br>Paralegal: $425 - $595<br><br>Legal Analyst: $595 | $1,595 - $2,165 |

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Vinson & Elkins LLP | In re California Resources Corporation, *et al.*, Debtors, No. 20-33568 (DRJ) | (Bankr. S.D.Tex.) (Nov. 2020) (Dkt. No. 674) | Counsel: $835 - $1,085<br><br>Associate: $565 - $955 | $1,025 - $1,630 |
| | In re Cloud Peak Energy Inc., *et al.*, Debtors, No. 19-11047 (KG) | (Bankr. D. Del.) (Sept. 2019) (Dkt. No. 663) | Counsel: $1,010 - $1,070<br><br>Associate: $525 - $1,065<br><br>Paralegal: $330 - $380<br><br>Practice Support: $300 - $375 | $1,070 - $1,550 |
| Weil, Gotshal & Manges LLP | In re ORG GC MIDCO, LLC, Debtor, No. 21-90015 (MI) | (Bankr. S.D. Tex.) (Dec. 2021) (Dkt. No. 124-2) | Associate: $630 - $1,100<br><br>Paraprofessional: $260 - $460 | $1,225 - $1,795 |
| | In re Sears Holdings Corporation, *et al.*, Debtors, No. 18-23538 (RDD) | (Bankr. S.D.N.Y.) (Oct. 2018) (Dkt. No. 344) | Associate: $560 - $995<br><br>Paraprofessional: $240 - $420 | $1,075 - $1,600 |
| Willkie Farr & Gallagher LLP | In re Frontier Communications Corporation, *et al.*, Debtors, No. 20-22476 (RDD) | (Bankr. S.D.N.Y.) (Nov. 2020) (Dkt. No. 1365) | Associate: $1,050<br><br>Paralegal: $265 - $435 | $1,450 |
| | In re Imerys Talc America, Inc., *et al.*, Debtors, No. 19-10289 (LSS) | (Bankr. D. Del.) (Nov. 2020) (Dkt. No. 2554) | Associate: $515 - $1,100<br><br>Paraprofessional: $310 - $435 | $1,200 - $1,600 |
| Wilson Sonsini Goodrich & Rosati | In re Tonopah Solar Energy, LLC, Debtor, No. 20-11884 (KBO) | (Bankr. D. Del.) (Jul. 2020) (Dkt. No. 43) | Counsel: $440 - $1,350<br><br>Associate: $510 - $920<br><br>Legal Staff: $120 - $480 | Member: $925 - $1,750 |
| | In re Insys Therapeutics, Inc., *et al.*, Debtors, No. 19-11292 (JTD) | (Bankr. D. Del.) (Apr. 2020) (Dkt. No. 1289) | Associate: $590- $815 | Member: $840 -$1,390 |

*Listed in order of filing date.

# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADHA <br><br> Defendants. | Case No. 3:20-cv-00691-D |

**DECLARATION OF LEAD PLAINTIFF INSUR SHAMGUNOV IN SUPPORT OF:**
**(1) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) LEAD**
**COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION EXPENSES**

169

I, Insur Shamgunov, declare as follows:

1.      I am the Court-appointed Lead Plaintiff in the above-captioned securities class action (the "Action").[1]  *See* ECF No. 11.  I respectfully submit this declaration in support of (a) Lead Plaintiff's motion for final approval of the proposed Settlement and approval of the proposed Plan of Allocation; and (b) Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, including approval of my request to recover the reasonable costs and expenses I incurred in connection with my representation of the Settlement Class in the prosecution of this Action.

2.      I am aware of and understand the requirements and responsibilities of a representative plaintiff in a securities class action, including those set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.  I have personal knowledge of the matters set forth in this declaration, as I have been directly involved in monitoring and overseeing the prosecution of the Action, as well as the negotiations leading to the Settlement, and I could and would testify competently to these matters.

## I.      OVERSIGHT OF THE LITIGATION

3.      By Order dated June 12, 2020, the Court: (a) appointed Elena Shamgunova and me to serve Lead Plaintiffs for the Action;[2] and (b) approved our selection of Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel") to serve as lead counsel, and the Kendall Law Group PLLC to serve as local counsel, for the putative class.  ECF No. 11.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated July 27, 2023.  ECF No. 91, Ex. 2.

[2] On December 20, 2022, Elena Shamgunova voluntarily dismissed her claim.  ECF Nos. 69-70. Following her December 20, 2022 voluntary dismissal, I became the only Lead Plaintiff.

1

4.      In fulfillment of my responsibilities as a Lead Plaintiff on behalf of all class members in this Action, I worked closely with Lead Counsel regarding the litigation and resolution of this case.

5.      Throughout my involvement in this litigation, I received periodic status reports from Lead Counsel on case developments, and participated in regular discussions concerning the prosecution of the Action, the strengths of and risks to the claims, and potential settlement.  In particular, I: (a) produced my trading to Lead Counsel; (b) moved to be appointed as one of the Lead Plaintiffs in this Action; (c) regularly communicated with GPM attorneys regarding the posture and progress of the case, including providing my written consent to continue the trial date on two occasions; (d) reviewed all significant pleadings and briefs filed in this Action; (e) reviewed the Court's orders and discussed them with attorneys at GPM; (f) provided documents, and written responses and objections to Defendants' requests for the production of documents; (g) responded to interrogatories; (h) prepared for my deposition and was deposed; (i) moved for class certification and to serve as the class representative; (j) consulted with GPM attorneys regarding the settlement negotiations; and (k) evaluated and approved the proposed Settlement.

## II.      APPROVAL OF THE SETTLEMENT

6.      Through my active participation, I was kept informed of the progress of the settlement negotiations in this litigation.  Before and after the mediation process presided over by mediator Jed Melnick, Esq. of JAMS, I conferred with my attorneys regarding the parties' respective positions and the progress of the settlement negotiations.

7.      Based on my involvement in the prosecution and resolution of the claims asserted in the Action, I believe the Settlement is a very good result for the Settlement Class, particularly in light of the risks of continued litigation.  Thus, I believe the proposed Settlement is fair,

2

DocuSign Envelope ID: AA0F2BA4-0285-4335-88F1-9FBBAA7ACA87

reasonable, and adequate to the Settlement Class and I endorse approval of the Settlement by the Court.

### III.    LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

8.    I believe Lead Counsel's request for an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund is fair and reasonable in light of the work Lead Counsel performed on behalf of the Settlement Class.  I evaluated Lead Counsel's fee request by considering the work performed, the recovery obtained for the Settlement Class, and the risks of the Action, and have authorized this fee request for the Court's ultimate determination.

9.    I further believe that the litigation expenses Lead Counsel has requested reimbursement for are reasonable, and represent costs and expenses necessary for the prosecution and resolution of the claims in the Action.  Based on the foregoing, and consistent with my obligation to the Settlement Class to obtain the best result at the most efficient cost, I fully support Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.

10.    I understand that reimbursement of a class representative's reasonable costs and expenses is authorized under the PSLRA, 15 U.S.C. § 78u-4(a)(4).  For this reason, in connection with Lead Counsel's request for reimbursement of Litigation Expenses, I am seeking reimbursement for the costs and expenses that I incurred directly relating to my representation of the Settlement Class in the Action.

11.    By way of background, I have, among other degrees, earned a Ph.D. from the University of Oxford, and an Executive MBA from the Saïd Business School, University of Oxford.  I am currently employed as a Senior Scientist at All In Works and, prior to that, I worked at World Vision as a Senior Director and Global Head of People & Organisational Capability.  My hourly rate ranges from £800-£1200 per hour.

3

172

12.     The time I devoted to the representation of the Settlement Class in this Action was time that I otherwise would have spent at my job, investing or engaged in other activities and, thus, represented a cost to me.  I seek reimbursement in the amount of $25,000 for the time I devoted to participating in this Action.  I make this request based on the conservative effort that I devoted approximately 73 hours in the litigation-related activities described.  It is my belief that this request for reimbursement is fair and reasonable.

## IV.     CONCLUSION

13.     In conclusion, I endorse the Settlement as fair, reasonable, and adequate.  I appreciate the Court's attention to the facts presented in my declaration and request that the Court approve: (a) Lead Plaintiff's motion for final approval of the proposed Settlement and approval of the Plan of Allocation; (b) Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses; and (c) my request for reimbursement of the reasonable costs and expenses incurred in prosecuting the Action on behalf of the Settlement Class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this October 25, 2023 in Liverpool, United Kingdom.


_Insur Shamgunov_
Insur Shamgunov

4

173

# EXHIBIT 9

United States District Court
Southern District of Texas

**ENTERED**

August 12, 2022

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re RCI Hospitality Holdings, Inc. Securities Litigation | Master File No.: 4:19-cv-01841-AHB |

**ORDER AWARDING ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES**

175

This matter came on for hearing on August 12, 2022 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was provided to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and litigation expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated April 14, 2022 (ECF No. 70-1, "Stipulation") and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the action and all parties to this action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(7)), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

1

176

4.      Lead Counsel are hereby awarded attorneys' fees in the amount of ___33⅓___% of the Settlement Fund (which amount includes interest earned at the same rate as the Settlement Fund) and $___93,016.85___ in reimbursement of counsel's out-of-pocket litigation expenses (which fees and expenses shall be paid from the Settlement Fund). The Court finds these sums to be fair and reasonable.

5.      In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)      The Settlement has created a fund of $2,200,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel and other Plaintiffs' Counsel;

(b)      Copies of the Postcard Notice were mailed, or links to the online Notice were emailed, to approximately 14,408 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not exceed 33⅓% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $135,000. There were no objections to the requested attorneys' fees and reimbursement of Litigation Expenses;

(c)      Lead Counsel has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(d)      The Action raised a number of complex issues;

(e)      Had Lead Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the other members of the Settlement Class may have recovered less than the Settlement Amount, or nothing at all, from Defendant;

(f)     Plaintiffs' Counsel devoted at least 1,931.60 hours through July 5, 2022, with a lodestar value of approximately $1,223,646.00, to achieve the Settlement; and

(g)     The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.      Lead Plaintiffs Roger DeMaggio, Patrick Prahl, Justin Kinslow, Joseph Milo, and Edgar M. Kee are each hereby awarded $____3,000____ from the Settlement Fund as reimbursement for their reasonable costs and expenses directly related to their representation of the Settlement Class.   *See Miller v. Glob. Geophysical Servs., Inc.*, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016) (awarding $15,000 to Lead Plaintiff pursuant to PSLRA).

7.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

8.      Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

9.      In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Settlement.

10.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

3

IT IS SO ORDERED.

_____8/12/22_____

Date

_____

The Honorable Alfred H. Bennett
United States District Judge

4

179

# EXHIBIT 10

Filed    12/16/16

Clerk, U. S. District Court
Western District of Texas

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

By _____ am

Deputy

<table>
<tr><td>

KB PARTNERS I, LP Individually and on
Behalf of All Other Similarly Situated,

    Plaintiff,

v.

PAIN THERAPEUTICS, INC., REMI
BARBIER, NADAV FRIEDMANN, and
PETER RODDY

    Defendants.

</td><td>

Case No.  A-11-CV-1034-SS

</td></tr>
</table>

**[PROPOSED] ORDER APPROVING CLASS PLAINTIFF'S MOTION FOR (I) AWARD
OF ATTORNEYS' FEES, (II) REIMBURSEMENT OF EXPENSES, AND (III)
COMPENSATORY AWARD TO CLASS REPRESENTATIVE**

This matter having come before the Court on Class Plaintiff's motion for (I) award of

attorneys' fees, (II) reimbursement of expenses, and (III) compensatory award to class

representative (the "Motion"), the Court, having considered all papers filed and proceedings

conducted herein, having found the Settlement of this Action to be fair, reasonable and adequate,

and otherwise being fully informed in the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.    This Order incorporates by reference the definitions in the Amended Stipulation

of Settlement dated August 30, 2016 (the "Stipulation") and all capitalized terms used, but not

defined herein, shall have the same meanings as set forth in the Stipulation.

2.    This Court has jurisdiction over the Motion and all matters relating thereto,

including all members of the Class who have not timely and validly requested exclusion.

181

3.      The Court hereby awards Class Counsel attorneys' fees of 30% of the Settlement Amount ($2,250,000 if the Settlement Amount remains $7.5 million and an additional $300,000 upon the payment of the million dollar contingent amount set forth in the Stipulation), plus expenses in the amount of $932,122.56. The Court finds that the amount of fees awarded is appropriate and that the amount of fees awarded is fair and reasonable under the "percentage-of-recovery" method.

4.      The fees and expenses shall be allocated amongst other Plaintiffs' Counsel in a manner that Class Counsel in good faith believes reflects the contributions of such counsel to the prosecution and Settlement of the Action.

5.      The awarded attorneys' fees and expenses shall be paid to Class Counsel subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein.

6.      The Court also hereby awards compensatory awards for Class Plaintiff in the amount of $38,500 each for its time and service to the Class.

IT IS SO ORDERED.

DATED: _December 16, 2016_

_____
THE HONORABLE SAM SPARKS
UNITED STATES DISTRICT JUDGE

2

182

# EXHIBIT 11

**SCHNADER HARRISON SEGAL &
LEWIS LLP**
Lisa J. Rodriguez
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1165
Telephone: (856) 482-5222
Facsimile: (856) 482-6980

*Liaison Counsel for Lead Plaintiff
and the Settlement Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Kara M. Wolke
Vahe Mesropyan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Lead Counsel for Lead Plaintiff
and the Settlement Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARLAN ZACHARIA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> STRAIGHT PATH COMMUNICATIONS, INC., DAVIDI JONAS, AND JONATHAN RAND, <br><br> Defendants. | Case No. 2:15-cv-08051-JMV-MF |

**[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES**

1

This matter came on for hearing on September 7, 2018 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was disseminated to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and litigation expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Amended Stipulation of Settlement filed on December 5, 2017 (Dkt. No. 77-4) (the "Amended Stipulation") and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Amended Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3. Notice of Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7)), due process, and all other applicable law and rules,

415444.1 STRAIGHTPATH

constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.     Lead Counsel are hereby awarded attorneys' fees in the amount of 26% of the Settlement Fund and $94,659.54 in reimbursement of Lead Counsel litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable.  Lead Counsel shall allocate the attorneys' fees awarded amongst counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution and settlement of the action.

5.     In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)     The Settlement has created a fund of $9,450,000 in cash that has been funded into escrow pursuant to the terms of the Amended Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

(b)     The fee sought by Lead Counsel has been reviewed and approved as reasonable by Lead Plaintiff, a sophisticated investor that oversaw the prosecution and resolution of the action;

(c)     Copies of the Postcard Notice, which directed Settlement Class Members to the Settlement website where the Notice was available, were mailed to thousands of Settlement Class Members and nominees.  The notices alerted Settlement Class Members that Lead Counsel would apply for attorneys' fees in an amount not exceed 33.3% of the Settlement Fund and for reimbursement of litigation expenses. There was no objections to the requested attorneys' fees and expenses;

3

415444.1 STRAIGHTPATH

186

(d)     Lead Counsel has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(e)     The action raised a number of complex issues;

(f)     Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from Defendants;

(g)     Plaintiff's Counsel devoted over 2,175 hours, with a lodestar value of approximately $1,243,642.00 to achieve the Settlement;

(h)     The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases; and

(i)     There were no objections to the request for attorneys' fees or reimbursement of litigation expenses.

6.     Lead Plaintiff Charles Frischer is hereby awarded $30,000.00 from the Settlement Fund as reimbursement for his reasonable costs and expenses directly related to its representation of the Settlement Class.

7.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

8.     Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

4

415444.1 STRAIGHTPATH

187

9.      In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10.      There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this 7th day of September, 2018.

HONORABLE JOHN MICHAEL VAZQUEZ
UNITED STATES DISTRICT JUDGE

5

188

# EXHIBIT 12

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE VIRGIN MOBILE USA IPO LITIGATION | Civil Action No. 07- 5619 (SDW)<br><br>**FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE** |

This matter came before the Court for hearing on the application of the Settling Parties for approval of the Settlement set forth in the Stipulation and Agreement of Settlement dated as of July 23, 2010. Due and adequate notice having been given of the Settlement, and the Court having considered all papers filed and proceedings held herein, otherwise being fully informed in the premises and good cause appearing,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

1.      This Judgment incorporates by reference the definitions in the Stipulation, and all capitalized terms used herein shall have the same meanings set forth in the Stipulation.

2.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including Class Members.

3.      The Court finds, for the purposes of settlement only, that the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure are satisfied in that: (a) the number of Class Members is so numerous that joinder of all Class Members is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Lead Plaintiffs are typical of the claims

1

190

of the Class they seek to represent; (d) Lead Plaintiffs fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to the Class Members predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: (i) the interests of the Class Members in individually controlling the prosecution of separate actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by Class Members, (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum, and (iv) the difficulties likely to be encountered in the management of a class action.

4.     Pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, the Court hereby certifies, for settlement purposes only, a class consisting of all Persons (including, as to all such Persons, their beneficiaries) who purchased or otherwise acquired the common stock of Virgin Mobile between October 10, 2007 and March 12, 2008, inclusive, and all Persons (including, as to all such Persons, their beneficiaries) who purchased or otherwise acquired call options on the common stock of Virgin Mobile between October 10, 2007 and March 12, 2008, inclusive, and all Persons (including, as to all such Persons, their beneficiaries) who sold or otherwise disposed of put options on the common stock of Virgin Mobile between October 10, 2007 and March 12, 2008, inclusive (including, as to all such Persons, their beneficiaries). Excluded from the Class are the Defendants; any officers or directors of Virgin Mobile during the Class Period and any current officers or directors of Virgin Mobile; any corporation, trust or other entity in which any Defendant has a controlling interest; and the members of the immediate families of Daniel H. Schulman, John D. Feehan, Jr., Frances Brandon-Farrow, Mark Poole, Robert Samuelson, and Douglas B. Lynn and their successors, heirs, assigns, and legal representatives. Also excluded from the Class

2

191

are those Persons who timely and validly request exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for purposes of settlement only, Lead Plaintiffs are certified as class representatives and Lead Plaintiffs' selection of Kahn Swick & Foti, LLC and Carella, Byrne, Cecchi, Ostein, Brody & Agnello, P.C. as Lead Counsel for the Class is approved.

6.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement and finds that said Settlement is, in all respects, fair, reasonable, and adequate to, and is in the best interests of, the Lead Plaintiffs, the Class, and each of the Class Members.  This Court further finds the Settlement is the result of arm's-length negotiations between experienced counsel representing the interests of the Lead Plaintiffs, the Class Members, and the Defendants.  Accordingly, the Settlement is hereby approved in all respects and shall be consummated in accordance with its terms and provisions.  The Settling Parties are hereby directed to perform the terms of the Stipulation.

7.      Except as to any individual claim of those Persons who have validly and timely requested exclusion from the Class, the Action and all claims contained therein, as well as all of the Released Claims, are dismissed with prejudice as against each and all of the Released Persons, including all Defendants.  Lead Plaintiffs and the Class will not make applications against any Released Person, and Defendants will not make applications against Lead Plaintiffs and the Class, for fees, costs or sanctions, pursuant to Rule 11, Rule 37, Rule 45 or any other court rule or statute, with respect to any claims or defenses in this Action or to any aspect of the institution, prosecution, or defense of this Action.

8.      Upon the Effective Date, the Lead Plaintiffs and each of the Class Members, on behalf of themselves, their respective present and former parent entities, subsidiaries, divisions, and affiliates, the present and former employees,

3

officers, directors, advisors, partners, and agents of each of them, and the predecessors, heirs, executors, administrators, trusts, family members, successors and assigns of each of them, and anyone claiming through or on behalf of any of them, shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims (including Unknown Claims) as against the Released Persons, whether or not such Class Member executes and delivers a Claim Form or participates in the Settlement Fund.

9.     Upon the Effective Date, all Class Members (including Lead Plaintiffs) and anyone claiming through or on behalf of any of them, except any Persons who have validly and timely requested exclusion from the Class, will be forever barred and enjoined from commencing, instituting, intervening in or participating in, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind or character (whether brought directly, in a representative capacity, derivatively, or in any other capacity) asserting any of the Released Claims against any of the Released Persons.

10.     Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Lead Plaintiffs, each and all of the Class Members, any confidential witness, any individual contacted by Lead Counsel in the course of their investigation, and Lead Counsel from all claims whatsoever arising out of, relating to, or in connection with the investigation, institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims, except for those claims brought to enforce the Settlement.

11.     The Court hereby finds that the distribution of the Notice of Pendency and Proposed Settlement of Class Action and the publication of the Summary

4

193

Notice as provided for in the Order Preliminarily Approving Settlement and Providing for Notice constituted the best notice practicable under the circumstances, including individual notice to all Class Members who could be identified through reasonable effort. Said notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including the proposed Settlement, to all Persons entitled to such notice, and said notice fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, and any other applicable law.

12. Neither the Plan of Allocation submitted by Lead Counsel or any portion of this order regarding the attorneys' fee and expense application and the Lead Plaintiffs' expense application shall in any way disturb or affect this Judgment and shall be considered separate from this Judgment.

13. Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, concession or evidence of, the validity of any Released Claim, the truth of any fact alleged by Lead Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, or of any alleged wrongdoing, liability, negligence, or fault of any Released Person; or (b) is or may be deemed to be or may be used as an admission, concession or evidence of, any fault or misrepresentation or omission of, including with respect to any statement or written document attributed to, approved or made by, any Released Person in any civil, criminal, administrative, or other proceeding before any court, administrative agency, arbitration tribunal, or other body. Any Released Person may file the Stipulation and/or the Judgment in any other action or other proceeding that may be brought against them in order to support a defense, argument, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith

5

settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense, argument, or counterclaim.

14.   Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this Settlement; (b) disposition of the Settlement Fund; (c) hearing and determining any further applications for attorneys' expenses in the Action; and (d) all Settling Parties hereto for the purpose of construing, enforcing and administering the Stipulation and this Judgment.

15.   After completion of the processing of all claims by the claims administrator, Lead Plaintiffs shall disburse the Net Settlement Fund in accordance with the Stipulation and Plan of Allocation without further order of this Court.

16.   The Court finds that during the course of the Action, the Lead Plaintiffs, Defendants, and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

17.   Pursuant to and in full compliance with Rule 23 of the Federal Rules of Civil Procedure, the Court finds and concludes that due and adequate notice was directed to all Class Members advising them (i) that Lead Counsel would seek an award of attorneys' fees of $33^1/_3\%$ of the Settlement Fund and reimbursement of expenses incurred in connection with the prosecution of the Action not to exceed $700,000, and (ii) that Class Members had a right to object to such application(s). A full and fair opportunity was given to all Persons who are Class Members to be heard with respect to the application for the award of attorneys' fees and expenses. The Court finds and concludes that the requested fee award is reasonable and awards attorneys' fees of $33^1/_3\%$ percent of the Settlement Fund, plus reimbursement of expenses in the amount of $480,366.06, plus any interest on such attorneys' fees and expenses accrued at the same rate and for the same periods as earned by the Settlement Fund (until paid), both to be paid from the Settlement

6

195

Fund pursuant to the terms of the Stipulation, immediately after the Effective Date of the Settlement.

18.    Pursuant to and in full compliance with Rule 23 of the Federal Rules of Civil Procedure, the Court finds and concludes that due and adequate notice was directed to all Class Members advising them of the Plan of Allocation and of their right to object, and a full and fair opportunity was given to all Class Members to be heard with respect to the Plan of Allocation. The Court finds that the formula for the calculation of the claims of Authorized Claimants, which is set forth in the Notice of Pendency and Proposed Settlement of Class Action sent to Class Members, provides a fair and reasonable basis upon which to allocate among Class Members the proceeds of the Settlement Fund established by the Stipulation, with due consideration having been given to administrative convenience and necessity. The Court hereby finds and concludes that the Plan of Allocation set forth in the Notice is in all respects fair and reasonable and the Court hereby approves the Plan of Allocation.

19.    Pursuant to and in full compliance with Rule 23 of the Federal Rules of Civil Procedure, the Court finds and concludes that due and adequate notice was directed to all Class Members, advising them that Lead Plaintiffs would seek reimbursement of time, costs, and expenses. A full and fair opportunity was given to Class Members to be heard with respect to Lead Plaintiffs' application for the reimbursement of time, costs, and expenses. The Court finds and concludes that the requested reimbursement for time, costs, and expenses is reasonable and awards reimbursement to the Lead Plaintiffs as follows: $29,370 to Aaron Cheng; $29,205 to Zhao Li; $30,000 to John Mekari; and $25,245 to Alan Whiting, in consideration for the role of each as a Lead Plaintiff.

20.    This Action is hereby dismissed in its entirety with prejudice as to all Defendants.

7

196

21.   In the event that the Settlement does not become Final in accordance with the terms of the Stipulation or the Effective Date does not occur, this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated.  In such event, all orders entered and releases delivered in connection herewith shall also be null and void to the extent provided by and in accordance with the Stipulation.

22.   There is no just reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

DATED: December 8, 2010.

_____
THE HONORABLE SUSAN D. WIGENTON
UNITED STATES DISTRICT JUDGE

8

197