**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| BO SHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>EXELA TECHNOLOGIES, INC., RONALD COGBURN, JAMES G. REYNOLDS, and PAR CHADA<br><br>　　　　　　　　Defendants | Case No. 3:20-CV-00691-D<br><br>**CLASS ACTION** |

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR DISTRIBUTION ORDER; AND
BRIEF IN SUPPORT THEREOF**

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     CLAIMS ADMINISTRATION...................................................................................... 3

III.    LATE BUT OTHERWISE ELIGIBLE CLAIMS ................................................................. 5

IV.     DISTRIBUTION OF THE NET SETTLEMENT FUND ....................................................... 6

V.      RELEASE OF CLAIMS.............................................................................................. 8

VI.     THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION RELATED
        FEES AND EXPENSES.............................................................................................. 9

VII.    RECORDS RETENTION AND DESTRUCTION ............................................................... 9

VIII.   CONCLUSION....................................................................................................... 10

## TABLE OF AUTHORITIES

<u>CASES</u>

*Hartman v. Powell*,
   2001 WL 410461 (D.C. Cir. Mar. 15, 2001) ................................................................. 6

*In re "Agent Orange" Prod. Liab. Litig.*,
   689 F. Supp. 1250 (E.D.N.Y. 1988) ....................................................................... 6

*In re Citigroup Inc. Sec. Litig.*,
   2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) ............................................................ 6

*In re Gypsum Antitrust Cases*,
   565 F.2d 1123 (9th Cir. 1977) ......................................................................... 5, 6

*In re Medicis Pharm. Corp. Sec. Litig.*,
   2013 WL 12149720 (D. Ariz. Mar. 8, 2013) ............................................................ 9

*In re Nuvelo, Inc. Sec. Litig.*,
   2012 WL 12920613 (N.D. Cal. July 16, 2012) ......................................................... 9

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   246 F.3d 315 (3d Cir. 2001) ............................................................................ 5

*In re Toyota Motor Corp. Sec. Litig.*,
   2014 WL 12586787 (C.D. Cal. Aug. 4, 2014) ........................................................ 6, 9

*Wilson v. LSB Indus., Inc.*,
   2020 WL 5628039 (S.D.N.Y. Sept. 21, 2020) ......................................................... 9

Court-appointed lead plaintiff Insur Shamgunov ("Lead Plaintiff"),[1] on behalf of himself and the Settlement Class, respectfully submits this unopposed motion for entry of the [Proposed] Class Distribution Order (the "Class Distribution Order"), which, among other things, will: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the above-captioned action (the "Action"); (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action. The proposed plan for distribution of the Net Settlement Fund is set forth in the Webb Declaration. *See* Webb Decl. ¶¶44(a)-(e).

## I.    INTRODUCTION

On July 27, 2023, the Parties entered into the Stipulation, the terms of which established a $5,000,000 Settlement Fund on behalf of the Settlement Class, consisting of all persons and entities who or which purchased or otherwise acquired publicly traded Exela common stock between March 16, 2018 and March 16, 2020, inclusive, and were damaged thereby.[2]

The Court entered its Order Preliminarily Approving Settlement and Providing for Notice

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement (ECF No. 91, pp. 4-41; the "Stipulation"), or the concurrently filed Declaration of Susanna Webb in Support of Lead Plaintiff's Unopposed Motion for Class Distribution Order (Appendix ("App."), pp. 9-151; "Webb Declaration" or "Webb Decl.").

[2] Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) (i) Defendants; (ii) the legal representatives, heirs, successors, assigns, and Immediate Family members of the Individual Defendants; (iii) the parents, subsidiaries, assigns, successors, predecessors and affiliates of Exela; (iv) any person who served as an Officer and/or director of Exela during the Settlement Class Period; (v) any entity in which any of the foregoing (i)-(iv) excluded persons have or had a majority ownership interest during the Settlement Class Period; (c) any trust of which any Individual Defendants is the grantor or settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Family; and (d) Defendants' liability insurance carriers.

on August 21, 2023, which, among other things, approved Lead Counsel's selection of Epiq Class Action & Claims Solutions, Inc. ("Epiq") to serve as the Claims Administrator.  ECF No. 94 (the "Preliminary Approval Order").   Pursuant to the Preliminary Approval Order, the Claims Administrator Epiq has mailed 6,643 Postcard Notices and 1,026 Notice Packets[3] to 7,669 potential Settlement Class Members, brokers and other nominees.  Additionally, 4,082 potential Settlement Class Members have been sent a link to the Notice Packet via email.  Altogether, notice has been disseminated to 11,751 potential Settlement Class Members, brokers and other nominees. *See* Webb Decl., ¶6.

The Claims Administrator also published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service); established a case-specific website dedicated to this Settlement (www.ExelaSecuritiesLitigation.com; the "Settlement Website"); and set up a toll-free helpline. *See* Webb Decl., ¶2; *see also* ECF No. 102, p.49, ¶10 (proof of publication).  The Settlement Website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, as well as provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Claim Form.  *See id.*, ¶2; *see also* Settlement Website.

On December 7, 2023 the Court entered the Judgment Approving Class Action Settlement (ECF No. 109).  The Order Approving the Plan of Allocation of Net Settlement Fund was also entered on December 7, 2023  (ECF No. 110).  The Settlement has reached its Effective Date. *See*

---

[3] A "Notice Packet" consists of the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement (II) Settlement Fairness Hearing; and (III) Motion for an award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"; ECF No. 102, App. Ex. 2-B, pp. 52-68) and the Proof of Claim and Release Form, (the "Claim Form"; ECF No. 102, App. Ex. 2-C, pp. 69-77).

Stipulation, ¶31.

Lead Counsel now requests that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator's expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.

## II.   CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms by mail or online, postmarked by, or received, no later than January 24, 2024.  *See* ECF No. 102, App. Ex. 2-B (Notice), p. 54. The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency.  *See* Webb Decl., ¶¶11-21, 25-29.

Of the 3,214 Claim Forms received by the Claims Administrator, 81 were paper Claim Forms or Claims submitted through the Settlement Website.  *Id.*, ¶11.  The remaining 3,133 Claims were Electronic Claims.  *Id.*, ¶17.  Electronic Claims are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants ("E-Claim Filers").  *Id.* Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing reams of paper requiring manual data entry.  *Id.*  This process is designed to expedite the claims process.

If a paper or online Claim was deficient or defective, the Claims Administrator sent a letter to the Claimant, a sample of which is attached as Exhibit C to the Webb Declaration.  *Id.*, ¶26, Ex. C.  The letter advised the Claimant that he, she, or it had twenty (20) days from the date of the

letter to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection.  *Id.*  Of the 81 paper and online Claims, the Claims Administrator sent deficiency letters for 51 Claims (or approximately 62.9%).  *Id.*, ¶25.

If an Electronic Claim was deficient or defective, the Claims Administrator sent an email to the E-Claim Filer with an attached spreadsheet containing detailed information associated with the Claims and indicating which of those Claims within the filing were deficient and/or rejected. *Id.*, ¶28.  Of the 3,133 Electronic Claims, 1,989 were incomplete or deficient (or approximately 63.5%).  *Id.*

The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible.  *Id.*, ¶¶25-26, 28.  Ultimately, as detailed in the Webb Declaration, after the deficiency process was complete, the Claims Administrator determined that 1,181 Claims are acceptable (in whole or in part) and should receive a distribution.  ¶¶37, 40.  This number includes 1,177 timely and valid claims, and 4 Late But Otherwise Eligible Claims (addressed in Section III below). Webb Decl., ¶¶31, 37, 39-40, Exs. D-1, D-2.  These Claims represent a total Recognized Loss amount of $56,455,139.[4]  *Id.*, ¶40, Exs. D-1, D-2.  The Claims Administrator also determined that 2,033 Claims are not eligible and should be rejected for the following reasons: (i) 1,711 Claims did not result in a Recognized Loss under the Plan of Allocation; (ii) 237 Claims had no purchases of Exela common stock during the Settlement Class Period; (iii) 70 Claims were withdrawn by the filer or voided by request; (iv) 12 Claims had uncured conditions of ineligibility; and (v) 3 Claims were duplicates.  *Id.*, ¶¶38, Ex. D-3.

---

[4] The Recognized Loss amount is $56,435,655.86 for timely and valid Claims, and $19,483.14 for Late But Otherwise Eligible Claims.  *Id.*, ¶40.

4

### III.    LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the January 24, 2024, claims filing deadline. Webb Decl., ¶31. There must, however, be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, Lead Counsel, after consultation with Epiq, respectfully requests that the Court order that no Claim received after August 9, 2024, be eligible for payment, and no adjustments to Claim Forms received on or before August 9, 2024, that would result in an increased Recognized Loss amount may be accepted after August 29, 2024.[5] Webb Decl., ¶32.

Of the 3,214 Claims submitted, 16 were received or postmarked after the January 24, 2024, deadline, but before the Claim's Administrator's imposed cut-off date of August 9, 2024. Webb Decl., ¶31. Of these 16 Claims, 4 are otherwise eligible ("Late But Otherwise Eligible Claims"). *Id.*, ¶¶31, 39 & Ex. D-2. These 4 Late But Otherwise Eligible Claims have been recommended for payment. *Id.* at ¶31, 39. Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to

---

[5] Should an adjustment be received that results in a lower Recognized Loss amount, that adjustment will be made and the Recognized Loss amount will be reduced accordingly.

submit Proofs of Claim, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at \*1 (C.D. Cal. Aug. 4, 2014) (accepting "Late but Otherwise Eligible Claims"); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims."). Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Webb Decl., ¶¶31, 39 & Ex. D-2.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claim received after August 9, 2024, be eligible for payment, and no adjustments to Claim Forms received on or before August 9, 2024, that would result in an increased Recognized Loss amount may be accepted after August 29, 2024. *See* Webb Decl., ¶¶32, 44(d). "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at \*1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at \*4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## IV.    DISTRIBUTION OF THE NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution"). *See* Webb Decl., ¶44(a)(i)-(iii). Based on the substantial experience of the

6

Claims Administrator and Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed, deposited, or negotiated promptly. To encourage Authorized Claimants to promptly cash, deposit, or negotiate their distributions and to avoid or reduce future expenses relating to unpaid distributions, the Claims Administrator and Lead Counsel propose that all the distribution checks bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." *Id*., ¶44(a)(iii).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after six (6) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so. *Id*., ¶44(b). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id*. Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible. *Id*., ¶40(c).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice

7

and Administration Costs and Taxes, the remaining balance shall be contributed to the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy. *See id.*, ¶40(c)(ii); *see also* Declaration of Sharon M. McGowan of the Public Justice Foundation, ¶¶2-10, ¶¶11-12 (securities cases in which the Public Justice Foundation received court approval as the *cy pres* beneficiary).

## V.      RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, Lead Plaintiff respectfully requests that the Court: (a) release and discharge all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Plaintiff's Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts

8

allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See, e.g.*, *Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *see also In re Nuvelo, Inc. Sec. Litig.*, 2012 WL 12920613, at *2 (N.D. Cal. July 16, 2012); *In re Toyota*, 2014 WL 12586787, at *3; *In re Medicis Pharm. Corp. Sec. Litig.*, 2013 WL 12149720, at *2 (D. Ariz. Mar. 8, 2013).

## VI. THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION RELATED FEES AND EXPENSES

Based on the work performed by the Claims Administrator, the total amount of the fees and expenses charged and incurred by the Claims Administrator through September 30, 2024, is $97,246.96, of which, $92,121.29 has been paid. Webb Decl., ¶43. The estimate to conduct the Initial Distribution is $12,633.50. *Id*. Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $15,759.17 in anticipation of the work that will be performed for the Initial Distribution.[6] *Id.*

## VII. RECORDS RETENTION AND DESTRUCTION

Lead Plaintiff respectfully requests that the Court order that: (a) in no less than one (1) year

---

[6] If the anticipated fees and expenses to conduct the Initial Distribution are greater than the actual

after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, one year after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (b) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.*, ¶40(e).

## VIII.    CONCLUSION

For these reasons, Lead Plaintiff respectfully requests that the Court grant the unopposed Motion and enter the proposed Distribution Order.

DATED: December 11, 2024                 **GLANCY PRONGAY & MURRAY LLP**

By: */s/ Joseph D. Cohen*
Joseph D. Cohen (*pro hac vice*)
jcohen@glancylaw.com
Kara M. Wolke (*pro hac vice*)
kwolke@glancylaw.com
Raymond D. Sulentic (*pro hac vice*)
rsulentic@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

*Lead Counsel for Lead Plaintiff and the Settlement Class*
**KENDALL LAW GROUP, PLLC**
Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
3811 Turtle Creek, Suite 825
Dallas, Texas 75219
Telephone: (214) 744-3000

*Local Counsel for Lead Plaintiff and the Settlement Class*

---

cost to conduct the distribution, the excess will be returned to the Settlement Fund. *See* Webb Decl., ¶43, at n.3.

## <u>CERTIFICATE OF CONFERENCE</u>

The Parties met and conferred concerning this Motion, and Defendants do not oppose entry

of the [Proposed] Distribution Order.

<u>*/s/ Joseph D. Cohen*</u>
Joseph D. Cohen

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of December, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Joseph D. Cohen*

Joseph D. Cohen (admitted *pro hac vice*)
